UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
ANAND DASRATH,

                    Plaintiff,

  -against-

ROSS UNIVERSITY SCHOOL OF MEDICINE,

                    Defendant.
----------------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM &**
**ORDER**
07-CV-2433 (CBA) (RER)

AMON, Chief United States District Judge:

      Anand Dasrath sued Ross University School of medicine, an institution at which he was once a medical student, and alleged various state and federal causes of action stemming from Ross's spring 2006 decision to award him a failing grade, to administratively withdraw him from its degree program, and to revoke its sponsorship of his application to sit for the United States Medical Licensing Examination, Step One Exam ("USMLE Step 1").

      The only claim left in this case is one for breach of contract. The parties have cross-moved for summary judgment. Ross's motion is granted.

**BACKGROUND**

    **1. Enrollment and AICM Course**

      Ross, a foreign corporation, operates a medical school in the West Indies on the island of Dominica. Ross educates at least some individuals who hope to practice medicine in the United States, and those individuals, before they may be licensed to practice in the United States, must successfully complete several qualifying examinations, including the USMLE Step 1 exam.

      One of those individuals is Dasrath, who first enrolled at Ross in May 2004 when he was forty six years old. From that time, Dasrath was regularly enrolled at Ross, earning credits towards his medical degree.

1

At the close of the academic term ending in December 2005, Dasrath had accumulated an academic average of 2.36 over sixty seven credits. To that point, Dasrath had earned one failing grade, which he earned in a biogenetics course that he originally took during his first semester at Ross. (Def. S.J. Ex. I.)

Dasrath, in an affidavit filed in connection with the cross motions, says that this grade was originally issued as a B plus, but lowered to an F after the semester break. (Pl. S.J. Aff. ¶¶ 10–11.) He states that he discussed this failing grade with his professor, a Dr. Houghton, who "laughed in his face" and told him that she could do nothing about his grade. (Id. ¶ 12.) Dasrath subsequently spoke with the head of the Genetics Department, a Dr. Larsen, who told him that he could not assist him because he did not assign the grade. (Id. ¶ 13.)

Dasrath next took his complaint to the chairman of the Biochemistry Department (of which the Genetics Department is a part), a Dr. Meisenberg, who took him to see a Dr. Desalu, who was in charge of the examination center. (Id. ¶ 14.) Dr. Desalu told Dasrath and Dr. Meisenberg that there appeared to be a problem with the grade, but Dasrath says that "by the tone of Dr. Desalu's voice, it became obvious to [Dasrath] that [he] was not going to resolve this issue." (Id. ¶¶ 15–17.)

In January 2006, at the beginning of Dasrath's fifth semester, Dasrath began taking a course called Advanced Introduction to Clinical Medicine ("AICM"), which was taught that term by Dr. Enrique Fernandez. (Def. R. 56.1 ¶ 14.) It is undisputed that Ross students must successfully complete the AICM course before they may sit for the USMLE Step 1 exam. (Id. ¶ 46; Def. S.J. Ex. D at 13.)

Although there is no evidence in the record on this fact, at oral argument on the cross motions, Ross represented that the Educational Commission for Foreign Medical Graduates, the

organization that administers the USMLE Step 1 exam, also requires that students who sit for the exam first pass the AICM course.

Ross students hoping to sit for the USMLE Step 1 exam also must successfully complete the basic sciences curriculum and an exam called the National Board of Medical Exams ("NBME").  (Id.)  Dasrath successfully completed the basic sciences curriculum during the final academic term of 2005, and he passed the NBME sometime before March 9, 2006.  (Def. R. 56.1 ¶ 47; Pl. S.J. Ex. J.)

Consistent with Ross policy, in March 2006, while he was enrolled in the AICM course, Dasrath applied to sit for the July 27, 2006 USMLE Step 1 exam.  (Def. R. 56.1 ¶ 38.)  As part of that application, Dasrath asked Ross to certify his application and a Ross associate registrar certified the application on March 20, 2006.  (Def. S.J. Ex. G.)

Dasrath subsequently completed the AICM course on April 7, 2006 and was, apparently at some point after April 7, issued what the parties have called a "certificate of completion," which was signed by Dr. Fernandez.  (Def. R. 56.1 ¶ 14; Pl. S.J. Ex. 2d I.)

Sometime before April 22, 2006, Dr. Fernandez posted the AICM course grades on a secure website called "eCollege" and emailed his students to let them know that the course grades were posted.  According to records that Ross produced during discovery, Dasrath was awarded a failing grade; he had earned only 426.6 of a possible 1,000 points.  (Fernandez Aff. ¶ 11; Def. S.J. Ex. A.)

On April 22, 2006, Dasrath emailed Dr. Fernandez about his grade, writing that he saw "a failing grade as [his] final grade" and asking that Dr. Fernandez "review the components of [his] grade."  (Def. S.J. Ex. B.)

Dasrath specifically identified four grade components about which he was concerned,

3

including (1) his "Epi/Biostatics grade," which he thought had been remediated to correct his initial failing grade; (2) his final essay, for which he received a score of thirty six percent (Dasrath thought that he may have been marked down for his poor penmanship); (3) his "second case write up," for which he received a C minus; and (4) an extra credit portion of the course for which Dasrath received thirty six of fifty points. (Id.)

Dasrath closed the April 22, 2006 email by noting that he had already passed the NBME, had already moved back to New York from Dominica, and had already begun preparing for the USMLE Step 1 exam. (Id.)

Dasrath and Dr. Fernandez spoke by telephone on April 24, 2006. Dr. Fernandez, who has testified that he memorialized the conversation, avers that he and Dasrath discussed the failing grade and that he advised Dasrath that, as a result of the grade, Dasrath would have to repeat the AICM course. In his affidavit, Dr. Fernandez states that he told Dasrath that he "would need to repeat the AICM course in the semester starting May 22, 2006." (Fernandez Aff. ¶ 17.)

The "memorandum to file" that Dr. Fernandez says he prepared after the telephone conference states that he advised Dasrath that Dasrath would have to repeat the AICM course, that he "may" repeat the course during the academic term beginning May 22, 2006, and that he could choose to begin the AICM course in September 2006. (Def. S.J. Ex. C.)

Dasrath appears to deny that Dr. Fernandez discussed the requirement that he retake the AICM course in the academic term beginning May 22, 2006, although he seems to concede that the telephone conversation occurred.

Sometime before May 5, 2006, Dasrath learned that his USMLE Step 1 application had been rejected because his date of birth had been misreported in some respect. Dasrath

subsequently prepared a new application and asked Ross to certify his application for a second time. Ross certified that application, as it had the first, on May 5, 2006. (Def. S.J. Ex. H.)

On May 8, 2006, Dasrath met with Dr. Nancy Perri, Ross's vice president for academic affairs. Dasrath asked Dr. Perri to investigate his failing AICM grade and to speak with Dr. Fernandez. Dr. Perri testified that she did this, although she was unable to recall the details of her conversation with Dr. Fernandez. (Def. R. 56.1 ¶ 24; Perri Dep. at 49.) Dasrath's grade was not changed.

By letter dated May 15, 2006, Dasrath, who had returned to his home in New York, wrote Ross asking that he be provided a copy of his academic transcript. (Def. S.J. Ex. I.) Ross sent Dasrath a copy of his transcript, which did not reflect any grade for the AICM course.

## 2. Administrative Withdrawal and State Court Litigation

Dasrath never registered for, or returned to campus to retake, the AICM course during the academic term beginning May 22, 2006. There is no evidence that he told anyone at Ross that he wanted to retake the AICM course in the academic term beginning September 2006.

Ross says that, because Dasrath failed to return for the May 22, 2006 term, it decided to administratively withdraw Dasrath from the medical school. Ross says that this decision was consistent with its internal policies, which state that the registrar "enters an administrative withdrawal when . . . the student does not return to the campus to register for the following semester and attend classes in Week One of a semester." (Def. S.J. Ex. D at 23.) Ross regulations provide that all administrative withdrawals are "effective as of the last day [the student] attended classes." (Id.)

Ross informed Dasrath of the administrative withdrawal by letter dated June 29, 2006, explaining that he had been withdrawn "for failure to register for the May 2006 AICM course."

(Def. S.J. Ex. E.)  The letter further explained that if Dasrath wished to resume his studies at Ross (then or in the future), he would have to reapply through the admissions office and to explain the reasons for his withdrawal.  (Id.)

Dasrath did not reapply; instead, through counsel, he filed a lawsuit in New York state court, alleging breach of contract and seeking to compel Ross to "sponsor" him for the July 27, 2006 USMLE Step 1 exam.  (Def. S.J. Ex. N.)  In support of Dasrath's request for emergency relief, Dasrath's attorney submitted an affirmation in which he stated that Ross had promised to sponsor Dasrath for the exam and had, impermissibly, informed Dasrath that it would withdraw that sponsorship.  He further stated that Dasrath "believes that he should have passed the AICM course but the Defendant has not provided Plaintiff with his grade for the course."  (Id.)

Although it is not clear just how the state court litigation progressed, Dasrath sat for the July 27, 2006 USMLE Step 1 exam, notwithstanding the fact that he had not succeeded in changing his AICM grade, was not enrolled at Ross, and had not successfully compelled Ross to sponsor him for the examination.  (Def. R. 56.1 ¶ 8.)

The state court suit was dismissed on January 31, 2007 for lack of personal jurisdiction—Dasrath had not properly served the summons and complaint.  (Def. S.J. Ex. O.)

### 3.  This Litigation

 On June 15, 2007, Dasrath, through counsel, filed suit in this Court, alleging breach of contract, fraud, and age discrimination in violation of 42 U.S.C. § 6102 and the New York Human Rights Law, N.Y. Exec. Law § 296.

On March 31, 2009, the Court adopted in part the report and recommendation of the Honorable Ramon Reyes, U.S. Magistrate Judge, which recommended that (1) the federal age discrimination claim be dismissed for failure to exhaust administrative remedies; (2) the fraud

claim be dismissed as inadequately pleaded; (3) the state law discrimination claim be dismissed as inadequately pleaded; and (4) the breach of contract claim be dismissed as inadequately pleaded. The Court adopted all of those recommendations, but it permitted Dasrath leave to re-plead all of the dismissed claims. See Dasrath v. Ross Univ. Sch. of Med., No. 07-CV-2433, 2009 WL 891765 (E.D.N.Y. Mar. 31, 2009).

Dasrath, again through counsel, then filed the currently operative complaint on June 18, 2009. In that complaint, by way of background, he alleged that he "did not receive a grade for the AICM course despite his demand for his grade." (Am. Compl. ¶ 6.) He further alleged that he had been denied the right to inspect school records, including "scantron" sheets that he had submitted in connection with certain unnamed examinations. (Id.) Additionally, he alleged that Dr. Fernandez had advised him that "he received a 94% on the physical exam," which, presumably, was a component of the AICM course. (Id.) He further alleged that on or about June 29, 2006, he was notified that he had been withdrawn from Ross and that, without any warning, his sponsorship to sit for the USMLE Step 1 exam had been revoked. (Id. ¶ 8.) He additionally claimed that "upon information and belief, during Plaintiff's time as a student at Defendant's school of medicine, his grades were changed, withheld, and / or inaccurately reported." (Id. ¶ 10.)

Dasrath again pleaded four claims. The first was for federal age discrimination. He pleaded that "upon information and belief" Ross had excluded him from participation in the medical school, denied him the benefits of that school, harassed him, and "evaluated and treated [him] differently than similarly situated younger students." (Id. ¶ 15.) Dasrath alleged that Ross maintained a policy of discriminating against older students because Ross found it difficult to place older students in hospital training programs after they passed the USMLE Step 1 exam.

(Id. ¶¶ 16–17.)

The second claim alleged breach of contract. Dasrath alleged that he contracted with Ross and that the contract required Ross to "accurately record Plaintiff's grades and sponsor Plaintiff to take the USMLE Step 1 examination." (Id. ¶ 20.) He claimed that Ross breached the contract when it withdrew him from school "without justification and in violation of its own academic rules and regulations." (Id. ¶ 22.) Moreover, Ross breached the contract when it "without any justification or valid reason withdrew its sponsorship for the USMLE exam after it had accepted Plaintiff's application and duly certified Plaintiff to take said exam." (Id. ¶ 23.)

The third claim alleged fraud, pleading that (1) on August 14, 2006, Ross falsely stated that Dasrath had failed the AICM course; (2) by letter dated June 27, 2006 Ross falsely stated that Dasrath was being withdrawn for failure to register for the May 2006 AICM course; and (3) Dr. Perri falsely stated that she had reviewed Dasrath's AICM evaluations and that Dasrath had failed the AICM course. (Id. ¶¶ 25–27.) Dasrath pleaded that each of these false statements was made in furtherance of a scheme to prevent older students from passing the USMLE Step 1 exam. (Id. ¶ 28.)

The fourth and final claim was for tortious interference with contractual relations, and it alleged that Ross had interfered with its contract with Dasrath. (Id. ¶¶ 30–35.)

By way of relief, Dasrath requested money damages as well as an order directing that Ross reinstate him, sponsor him to sit for the USMLE Step 1 exam, and effectuate the release of his USMLE Step 1 exam score from the July 2006 sitting.

On May 7, 2010, on the record at oral argument, the Court granted in part Ross's second motion to dismiss and dismissed every claim except the claim for breach of contract. After the parties conducted discovery on the contract claim, they filed the cross motions for summary

judgment that are the subject of this order.

## DISCUSSION

The parties have not clearly addressed the issue, but both treat New York law as governing this dispute. The Court accepts that agreement. See Babiker v. Ross Univ. Sch. of Med., No. 98 Civ. 1429, 2000 WL 666342, at *6 n.9 (S.D.N.Y. May 19, 2000), citing Am. Fuel Corp. v. Utah Energy Dev. Co., 122 F.3d 130, 134 (2d Cir. 1997) ("where the parties have agreed to the application of the forum law, that consent concludes the choice of law inquiry").

The parties also agree that, "[u]nder New York law, a student can sue his school for breach of contract." Babiker, 2000 WL 666342, at *6; see also Clarke v. Trs. of Columbia Univ., No. 95 Civ. 10627, 1996 WL 609271, at *5 (S.D.N.Y. Oct. 23, 1996) ("New York courts have suggested that a student can sue a school for breach of contract."). "According to this line of cases, when a student is admitted to a school, an implied contract arises between the student and the school." Clarke, 1996 WL 609271, at *5 (citing Olsson v. Bd. of Higher Educ., 49 N.Y.2d 408, 414 (1980)); see also Gally v. Columbia Univ., 22 F. Supp. 2d 199, 206 (S.D.N.Y. 1998) ("When a student enrolls at a university, an implied contract arises . . . .").

"The terms of the implied contract are supplied by the bulletins, circulars and regulations made available to the student." Gally, 22 F. Supp. 2d at 206; see also Garg v. Albert Einstein Coll. of Med., 747 F. Supp. 231, 236 (S.D.N.Y. 1996) ("New York courts have reviewed academic decisions where the plaintiff has alleged that the school officials failed to adhere to the school's regulations or policies and have therefore breached a contract entered into with the students."); Vought v. Teachers Coll., Columbia Univ., 127 A.D.2d 654, 655 (2d Dep't 1987).

"Implicit in this contract is that the university must act in good faith in dealing with the student." Id. "Also implicit is that the student must fulfill her end of the bargain by satisfying

the university's academic requirements and complying with its procedures . . . ." Id.; see also

Keles v. New York Univ., No. 91 Civ. 7457, 1994 WL 119525, at *5 (S.D.N.Y. Apr. 6, 1994)

("by not passing the examinations at the proper stage of his studies, Keles did not fulfill the

requirements of the 1983 Guidelines, and thus, breached his part of the contract").

It is worth stressing that "the mere allegation of mistreatment without the identification of

a specific breached promise or obligation does not state a claim on which relief can be granted."

Gally, 22 F. Supp. 2d at 207. That is, "application of contract principles to the student-university

relationship does not provide judicial review for every disgruntled student." Id.

Moreover, as the parties agree, attacks on "the substantive evaluation of . . . academic

performance . . . are beyond judicial review." Benson v. Trs. of Columbia Univ., 215 A.D.2d

255, 255 (1st Dep't 1995); see also Gertler v. Goodgold, 107 A.D.2d 481, 485 (1st Dep't 1985)

("since the academic and administrative decisions of education institutions involve the exercise

of subjective professional judgment, public policy compels a restraint which removes such

determinations from judicial scrutiny").

Although his precise theory of the case is not entirely clear, Dasrath clearly contends that

Ross had a contractual duty not to withdraw its sponsorship of his application to sit for the

USMLE Step 1 exam that was administered in July 2006. His papers and representations at oral

argument suggest that this obligation stemmed from the fact of his enrollment at, and payment of

tuition to, Ross.

Ross contends that it honored this obligation because, consistent with its regulations, it

withdrew its sponsorship of Dasrath's application only after he failed the AICM course. At oral

argument on the pending motions, Dasrath agreed that Ross had the right to do what it did if he

failed the AICM course and he conceded that his contract claim depends on the truth of his

10

allegation that he passed the course.

Recognizing that, under New York law, he cannot challenge the academic judgment that he did not satisfactorily complete the requirements of the AICM course, Dasrath further conceded that his contract claim ultimately depends on the truth of his allegation that Ross "fabricated" his failing grade. That is, Dasrath concedes that, on his theory of the case, if after trial no reasonable jury could conclude that his AICM grade was fabricated, he cannot prevail.

Dasrath's motion papers are not helpful, but, at oral argument, when asked to identify the record evidence that supports his claim of grade fabrication, he said that he is relying on three pieces of evidence that he believes would permit a reasonable jury to find that his grade was fabricated: (1) the March 2006 certification to sit for the USMLE Step 1 exam; (2) the May 2006 certification to sit for the USMLE Step 1 exam; and (3) the undated "certificate of completion" for the AICM course. These forms, he contends, are evidence that Ross at various times took the position that he had passed the AICM course, which in turn is evidence of fabrication.

No reasonable jury could rely on the application certifications as evidence that, in March or May 2006, Ross took the position that Dasrath had passed the AICM course. The portion of the application that the parties have provided the Court (i.e. the certification page) shows only that a Ross associate registrar certified that certain representations—including representations regarding medical school attendance dates and student status—are true and that Dasrath was at the time of certification enrolled at Ross. (Def. S.J. Exs. G, H.) The portion of the application that is in the record does not show that the associate registrar certified that Dasrath had passed the AICM course.[1]

---

[1] Although the copies of the certification page provided the Court are of poor quality, the registrar appears also to have certified that unspecified representations in "Section 23" of the application are accurate. Section 23 is not in the record. But Dasrath has not suggested, or offered any evidence, that Section 23, or some other portion of the application not in evidence, would show that Ross certified that he passed the AICM course. And Ross has

It is not even clear at all how the registrar could have certified that Dasrath passed the course. She certified the first application in March 2006, which is before Dasrath had completed or received a grade in the AICM course. That seems to be consistent with practice: students apply for the USMLE Step 1 exam while the final prerequisite course is in process on the assumption that they will pass that final course.

Significantly, it is undisputed that, but for an error in the application, March 2006 is the only time that any Ross official would have certified the application. The fact that a registrar later certified a second application after Dasrath had been told of his failing grade, but before that grade had been officially made a part of his transcript, does not lessen the significance of this fact.

In sum, there is no reasonable view of the evidence on which the March and May 2006 certifications tend to prove that Ross ever took the position that Dasrath had passed the AICM course.

The certificate of completion also is not evidence that Ross thought that Dasrath had passed the AICM course. That one-page form certification, signed by Dr. Fernandez, includes blanks in which to enter student name, number of weeks, name of rotation, and hospital. The form, as completed, states that Dasrath completed twelve weeks in the AICM at Greater Miami Health Education and Training Center. (Pl. S.J. Ex. 2d I.) The certificate says nothing at all about Dasrath's performance in the course.

Dasrath has not explained how this form shows that Dr. Fernandez at some point took the position that Dasrath had passed the AICM course. He has not explained, or identified evidence in the record that explains, the purpose of the form, which purpose might show Dr. Fernandez's belief that Dasrath passed. The only evidence in the record that attempts to explain the form is a

affirmatively represented that its certification did not certify that fact.

two-page excerpt of Dr. Fernandez's deposition in which he testifies unhelpfully that the "document goes to the registrar."  (Id.)

The Court cannot see how any reasonable jury could rely on this form as evidence that Dr. Fernandez awarded Dasrath a passing grade in the AICM course, presumably (the form is not dated) at some point before he decided to take the position that Dasrath had earned a failing grade.

In sum, Dasrath's contract claim, as he has explained it to the court, depends on his proving at trial that Ross fabricated his failing grade in the AICM course, and Dasrath has not offered evidence sufficient to create a triable issue of fact with respect to fabrication.

## CONCLUSION

For the reasons stated, the defendant's motion for summary judgment is granted.  The plaintiff's motion for summary judgment is denied.

The Clerk of Court is directed to enter judgment accordingly and to close this case.

SO ORDERED.

Dated: Brooklyn, New York
       May 26, 2011

_____/s/_____
              Carol Bagley Amon
              United States District Judge