# 11-2531-cv

IN THE

## United States Court of Appeals

FOR THE SECOND CIRCUIT



ANAND DASRATH,

*Plaintiff-Appellant,*

*v.*

ROSS UNIVERSITY SCHOOL OF MEDICINE,

*Defendant-Appellee.*

————————————

*On Appeal from the United States District Court
for the Eastern District of New York (Brooklyn)*

**JOINT APPENDIX
VOLUME I OF III
Pages A1 to A300**

CULLEN AND DYKMAN LLP
*Attorneys for Defendant-Appellee*
100 Quentin Roosevelt Boulevard
Garden City, New York 11530
516-357-3753

COSTELLO & COSTELLO, P.C.
*Attorneys for Plaintiff-Appellant*

ARNOLD E. DIJOSEPH, P.C.
*Appellate Counsel*
50 Broadway, Suite 1601
New York, New York 10004
212-344-7858

# **Table of Contents**

**Page**

## **Volume I**

District Court Docket Entries ................................................................ A1

Notice of Motion by Plaintiff for Summary
    Judgment, dated March 2, 2011 ....................................................... A17

Affirmation of Joseph R. Costello, for Plaintiff,
    in Support of Motion, dated March 2, 2011 ................................... A19

Affidavit of Anand Dasrath, Plaintiff, in Support
    of Motion, sworn to March 2, 2011 ................................................ A36

        Exhibit A to Costello Affirmation -
        Summons and Complaint, dated June 15, 2007 ...................... A51

        Exhibit B to Costello Affirmation -
        Amended Complaint, dated June 17, 2009 ............................. A61

        Exhibit C to Costello Affirmation -
        (i) Notice of Motion by Defendant, dated July 22, 2009,
        with Affidavit of Nancy A. Perri, M.D. in Support ................ A70

            Exhibit A to Perri Affidavit -
            Ross University School of Medicine
            Student Handbook, dated May, 2006 ............................. A74

        (ii) Memorandum of Law by Defendant in Further
        Support of Motion, dated September 28, 2009 ....................... A104

        Exhibit D to Costello Affirmation -
        Order of the Honorable Carol Bagley Amon,
        dated May 6, 2010 ................................................................. A114

        Exhibit E to Costello Affirmation -
        Answer of Defendant ............................................................ A115

**Table of Contents**
**(Continued)**

**Page**

Exhibit F to Costello Affirmation -
Excerpt from Verified Complaint in *Dasrath v.
Ross University,* Supreme Court, Queens County
("Queens County Action") ......................................................... A121

Exhibit G to Costello Affirmation -
Memorandum from Nancy A. Perri, M.D. to
Jennifer McLaughlin, dated February 6, 2008 ........................ A123

Exhibit H to Costello Affirmation -
Excerpt from the Deposition Testimony of
Nancy Perri, taken October 15, 2010 ..................................... A124

Exhibit I to Costello Affirmation -
Excerpt from the Deposition Testimony of
Enrique S. Fernandez, taken October 21, 2010 ...................... A126

Exhibit K to Costello Affirmation -
Various Clinical Clerkship Evaluation Documents ................ A128

Exhibit L to Costello Affirmation -
Excerpt from the Deposition Testimony of
Enrique S. Fernandez, taken October 21, 2010 ...................... A135

Exhibit M to Costello Affirmation -
(i) Email from Enrique S. Fernandez to Anand Dasrath,
dated April 23, 2006 ............................................................. A137
(ii) Memorandum for the Record, dated April 24, 2006 ........ A138
(iii) Spreadsheet .................................................................... A139

Exhibit N to Costello Affirmation -
Excerpt from the Deposition Testimony of
Enrique S. Fernandez, taken October 21, 2010 ...................... A141

Exhibit O to Costello Affirmation -
Excerpt from the Deposition Testimony of
Enrique S. Fernandez, taken October 21, 2010 ...................... A143

# Table of Contents
## (Continued)

**Page**

Exhibit P to Costello Affirmation -
Excerpt from the Deposition Testimony of
Enrique S. Fernandez, taken October 21, 2010 ...................... A145

Exhibit Q to Costello Affirmation -
Excerpt from the Deposition Testimony of
Enrique S. Fernandez, taken October 21, 2010 ...................... A147

Exhibit R to Costello Affirmation -
Excerpt from the Deposition Testimony of
Enrique S. Fernandez, taken October 21, 2010 ...................... A150

Exhibit S to Costello Affirmation -
Demands by Plaintiff for Requests,
dated December 14, 2010........................................................ A152

Exhibit T to Costello Affirmation -
Excerpt from the Deposition Testimony of
Anand Dasrath ....................................................................... A154

Exhibit U to Costello Affirmation -
Excerpt from the Deposition Testimony of
Enrique S. Fernandez, taken October 21, 2010 ...................... A156

Exhibit V to Costello Affirmation -
Excerpts from the Ross University School of
Medicine Student Handbook, dated May, 2006 ...................... A158

Exhibit W to Costello Affirmation -
Excerpt from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................ A161

Exhibit X to Costello Affirmation -
Excerpt from the Deposition Testimony of
Enrique S. Fernandez, taken October 21, 2010 ...................... A163

## Table of Contents
### (Continued)

**Page**

Exhibit Y to Costello Affirmation -
Excerpt from the Deposition Testimony of
Enrique S. Fernandez, taken October 21, 2010 ...................... A166

Exhibit Z to Costello Affirmation -
Excerpt from the Deposition Testimony of
Enrique S. Fernandez, taken October 21, 2010 ...................... A168

Exhibit A1 to Costello Affirmation -
Letter from Ross University to Anand Dasrath,
dated June 29, 2006 ................................................. A170

Exhibit B1 to Costello Affirmation -
Excerpt from the Ross University School of
Medicine Student Handbook, dated May, 2006 ...................... A171

Exhibit C1 to Costello Affirmation -
Excerpt from the Deposition Testimony of
Nancy Perri, taken October 15, 2010 ...................... A173

Exhibit D1 to Costello Affirmation -
Certifications by Ross University ........................... A175

Exhibit E1 to Costello Affirmation -
Excerpt from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................ A177

Exhibit F1 to Costello Affirmation -
Letter from the ECFMG, dated August 14, 2006,
and Ross University History Form of Anand Dasrath ............ A178

Exhibit G1 to Costello Affirmation -
Excerpt from the Ross University School of
Medicine Student Handbook, dated May, 2006 ...................... A180

Exhibit H1 to Costello Affirmation -
Excerpts from the Ross University School of
Medicine Student Handbook, dated May, 2006 ...................... A182

**Table of Contents**
**(Continued)**

**Page**

Exhibit I1 to Costello Affirmation -
(i) Certification of Enrique S. Fernandez, M.D. ..................... A184
(ii) Excerpt from the Deposition Testimony of
Enrique S. Fernandez, taken October 21, 2010 ...................... A185
(iii) Excerpt from the Ross University School of
Medicine Student Handbook, dated May, 2006 .................... A187

Exhibit J1 to Dasrath Affidavit -
Excerpts from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................ A189

Exhibit K1 to Dasrath Affidavit -
Letter from Ross University to Anand Dasrath,
dated April 17, 2003 ................................................................. A192

Exhibit L1 to Dasrath Affidavit -
Excerpt from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................ A193

Exhibit M1 to Dasrath Affidavit -
Excerpt from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................ A195

Exhibit N1 to Dasrath Affidavit -
Grades for Anand Dasrath from Ross University ................... A197

Exhibit O1 to Dasrath Affidavit -
Excerpt from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................ A198

Exhibit P1 to Dasrath Affidavit -
Excerpts from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................ A200

Exhibit Q1 to Dasrath Affidavit -
Excerpts from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................ A203

**Table of Contents**
**(Continued)**

**Page**

Exhibit R1 to Dasrath Affidavit -
Excerpt from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................ A206

Exhibit S1 to Dasrath Affidavit -
Excerpt from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................ A208

Exhibit T1 to Dasrath Affidavit -
Excerpt from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................ A210

Exhibit U1 to Dasrath Affidavit -
Excerpt from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................ A212

Exhibit V1 to Dasrath Affidavit -
Excerpt from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................ A214

Exhibit W1 to Dasrath Affidavit -
Excerpt from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................ A216

Exhibit X1 to Dasrath Affidavit -
Excerpt from the Ross University School of
Medicine Student Handbook, dated May, 2006 ..................... A218

Exhibit Y1 to Dasrath Affidavit -
Excerpt from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................ A220

Exhibit Z1 to Dasrath Affidavit -
Excerpt from the Deposition Testimony of
Enrique S. Fernandez, taken October 21, 2010 ...................... A222

**Table of Contents**
**(Continued)**

**Page**

Exhibit A2 to Dasrath Affidavit -
Excerpts from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................ A224

Exhibit B2 to Dasrath Affidavit -
Excerpt from the Ross University School of
Medicine Student Handbook, dated May, 2006 ...................... A227

Exhibit C2 to Dasrath Affidavit -
Excerpt from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................ A229

Exhibit D2 to Dasrath Affidavit -
Excerpt from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................ A231

Exhibit E2 to Dasrath Affidavit -
Excerpt from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................ A233

Exhibit F2 to Dasrath Affidavit -
Excerpt from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................ A235

Exhibit G2 to Dasrath Affidavit -
Excerpts from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................ A237

Exhibit H2 to Dasrath Affidavit -
Excerpt from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................ A240

Exhibit I2 to Dasrath Affidavit -
Excerpt from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................ A242

**Table of Contents**
**(Continued)**

**Page**

Exhibit J2 to Dasrath Affidavit -
Excerpt from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................ A244

Exhibit K2 to Dasrath Affidavit -
Memorandum for the Record, dated April 24, 2006 ............... A246

Exhibit L2 to Dasrath Affidavit -
Excerpts from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................ A247

Exhibit M2 to Dasrath Affidavit -
Excerpt from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................ A250

Exhibit N2 to Dasrath Affidavit -
Excerpt from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................ A252

Exhibit O2 to Dasrath Affidavit -
Excerpt from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................ A254

Exhibit P2 to Dasrath Affidavit -
Excerpt from the Ross University School of
Medicine Student Handbook, dated May, 2006 ..................... A255

Exhibit Q2 to Dasrath Affidavit -
Excerpts from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................ A257

Exhibit R2 to Dasrath Affidavit -
Excerpt from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................ A260

Exhibit S2 to Dasrath Affidavit -
Excerpt from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................ A262

# Table of Contents
## (Continued)

**Page**

Exhibit T2 to Dasrath Affidavit -
(i) Excerpt from the Deposition Testimony of
Nancy Perri, taken October 15, 2010 ...................................... A264
(ii) Excerpt from the Deposition Testimony of
Enrique S. Fernandez, taken October 21, 2010 ....................... A266

Exhibit U2 to Dasrath Affidavit -
Recommendation of Anthony F. Almeida, MA, Ph.D.,
dated February 21, 2006 ........................................................... A268

Exhibit V2 to Dasrath Affidavit -
Student Copy of Anand Dasrath's
Transcript from Ross University .............................................. A269

Exhibit W2 to Dasrath Affidavit -
Email from Brijette Sena to Anand Dasrath,
dated March 9, 2006 ................................................................. A270

Exhibit X2 to Dasrath Affidavit -
Excerpts from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................. A272

Exhibit Y2 to Dasrath Affidavit -
Excerpts from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................. A275

Exhibit Z2 to Dasrath Affidavit -
Excerpts from Response to Interrogatories ............................. A280

Memorandum of Law by Plaintiff in Support
of Motion, dated March 2, 2011 ................................................... A283

Notice of Motion by Defendant for Summary
Judgment, dated March 3, 2011 ................................................... A291

Affidavit of Enrique Fernandez, M.D., for Defendant,
in Support of Motion, sworn to February 27, 2011 ....................... A292

# Table of Contents
## (Continued)

**Page**

## Volume II

Affidavit of Jennifer A. McLaughlin, for Defendant,
in Support of Motion, sworn to March 3, 2011 ............................ A301

Exhibit A to Fernandez Affidavit -
Various Ross University Documents ...................................... A303

Exhibit B to Fernandez Affidavit -
Email from Enrique S. Fernandez to Anand Dasrath,
dated April 23, 2006
(Reproduced Herein at page A137)

Exhibit C to Fernandez Affidavit -
Memorandum for the Record, dated April 24, 2006
(Reproduced Herein at page A138)

Exhibit D to Fernandez Affidavit -
Ross University School of Medicine Student Handbook,
dated May, 2006
(Reproduced Herein at pages A74 to A103)

Exhibit E to Fernandez Affidavit -
Letter from Ross University to Anand Dasrath,
dated June 29, 2006
(Reproduced Herein at page A170)

Exhibit F to Fernandez Affidavit -
Letter from William C. Kelly to Anand Dasrath,
dated August 16, 2006 ........................................................ A309

Exhibit G to Fernandez Affidavit -
Certification by Ross University, dated March 20, 2006 ........ A311

Exhibit H to Fernandez Affidavit -
Certification by Ross University, dated May 5, 2006 ............. A312

## Table of Contents
### (Continued)

**Page**

Exhibit I to Fernandez Affidavit -
Request by Anand Dasrath for Transcript,
dated May 15, 2006, with Student Copy of Transcript ........... A313

Exhibit J to Fernandez Affidavit -
Transcript Request by Anand Dasrath,
dated August 1, 2006 .............................................................. A315

Exhibit K to Fernandez Affidavit -
Unofficial Copy of Anand Dasrath's
Transcript from Ross University ............................................. A316

Exhibit L to McLaughlin Affidavit -
Deposition Testimony of Anand Dasrath,
taken September 30, 2010 ........................................................ A318

### Volume III

Exhibit M to McLaughlin Affidavit -
Deposition Testimony of Nancy Perri,
taken October 15, 2010 ............................................................ A524

Exhibit N to McLaughlin Affidavit -
Order to Show Cause by Plaintiff in the Queens County
Action, dated July 25, 2006, with Supporting Documents ...... A613

Exhibit O to McLaughlin Affidavit -
Order of the Honorable Roger N. Rosengarten in
the Queens County Action, dated January 31, 2007,
with Notice of Entry ................................................................ A630

Exhibit P to McLaughlin Affidavit -
Certificate of William C. Kelly of Authenticity of Business
Records Pursuant to Federal Rule of Evidence 902(11),
dated November 10, 2010, with Attachments thereto ............. A632

Memorandum of Law by Defendant in
    Support of Motion, dated March 3, 2010 ..................................... A635

# Table of Contents
## (Continued)

**Page**

Statement of Material Facts by Defendant
Pursuant to Local Rule 56.1 ........................................................... A649

Affidavit of Jennifer A. McLaughlin, for Defendant, in Opposition
to Motion by Plaintiff, dated March 31, 2011 ............................... A660

      Exhibit 1 to McLaughlin Affidavit -
      Affidavit of Enrique Fernandez, M.D., for Defendant,
      sworn to February 27, 2011, with Exhibits A through K
      (Reproduced Herein at pages A292 to A300,
      and A303 to A317)

      Exhibit 2 to McLaughlin Affidavit -
      Affidavit of Jennifer A. McLaughlin, for Defendant,
      sworn to March 3, 2011, with Exhibits L through P
      (Reproduced Herein at pages A301 to A302,
      and A318 to A634)

Memorandum of Law by Defendant in Opposition
to Motion by Plaintiff, dated March 31, 2011 ............................... A661

Affidavit of Anand Dasrath, Plaintiff, in Opposition
to Motion by Defendant, sworn to April 14, 2011 ........................ A681

Reply Affidavit of Anand Dasrath, Plaintiff, in Further
Support of Motion, sworn to April 28, 2011 .................................. A696

      Exhibit A to Dasrath Reply Affidavit -
      Excerpt from the Deposition Testimony of
      Enrique S. Fernandez, taken October 21, 2010 ...................... A705

      Exhibit B to Dasrath Reply Affidavit -
      Excerpt from the Deposition Testimony of
      Nancy Perri, taken October 15, 2010 ...................... A707

Reply Memorandum of Law by Plaintiff in Further
Support of Motion, dated April 28, 2011 ....................................... A709

# Table of Contents
## (Continued)

**Page**

Reply Memorandum of Law by Defendant in Further
Support of Motion, dated April 28, 2011 ..................................... A723

Memorandum and Order of the Honorable Carol Bagley Amon,
dated May 26, 2011, Appealed From ............................................ A737

Judgment of the United States District Court, Eastern District
of New York, entered May 26, 2011, Appealed From .................. A750

Notice of Appeal, dated June 21, 2011 ................................................ A751

APPEAL

# U.S. District Court
## Eastern District of New York (Brooklyn)
### CIVIL DOCKET FOR CASE #: 1:07-cv-02433-CBA -RER

| | |
|---|---|
| Dasrath v. Ross University School of Medicine | Date Filed: 06/15/2007 |
| Assigned to: Judge Carol Bagley Amon | Date Terminated: 05/26/2011 |
| Referred to: Magistrate Judge Ramon E. Reyes, Jr | Jury Demand: Plaintiff |
| Cause: 42:2000 Job Discrimination (Age) | Nature of Suit: 440 Civil Rights: Other |
| | Jurisdiction: Federal Question |

**Movant**

**Bradley M Zelenitz**          represented by     **Bradley M. Zelenitz**
Gildin, Zelenitz & Shapiro, P.C.
138-44 Queens Boulevard
2nd Floor
Jamaica, NY 11435
718-523-1111
Fax: 718-725-9606
Email: bzelenitz@gzslaw.com
*TERMINATED: 05/05/2008*
*ATTORNEY TO BE NOTICED*

**Movant**

**Albert Adam Breud, II**

**Plaintiff**

**Anand Dasrath**          represented by     **Joseph Richard Costello**
Joseph G. Costello
5919 20th Avenue
Brooklyn, NY 11204
718-331-4600
Fax: 718-331-2400
Email: jrc@costellocostello.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Albert Adam Breud , II**
Law Offices of Albert Adam Breud,
P.L.L.C.
356 Veterans Memorial Highway
Suite 8n
Commack, NY 11725
(631)543-3030
Fax: (631)543-2888
Email: breudlaw@optonline.net
*TERMINATED: 04/30/2009*

**A2**

**Bradley M. Zelenitz**
(See above for address)
*TERMINATED: 05/05/2008*

**Salvatore D. Compoccia**
Salvatore D. Compoccia, Esq.
153 New Dorp Lane
Staten Island, NY 10306
718-668-9799
Fax: 718-668-9796
Email: compoccias@aol.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Ross University School of Medicine**          represented by **Candice Brook Ratner**
L'Abbate, Balkan, Colavita & Contini
LLP
1001 Franklin Avenue, 3rd Fl.
Garden City,, NY 11530
*TERMINATED: 06/22/2009*
*ATTORNEY TO BE NOTICED*

**Cynthia Ann Augello**
Cullen and Dykman LLP
100 Quentin Roosevelt Boulevard
Garden City, NY 11530
516-357-3753
Fax: 516-357-3792
Email:
caugello@cullenanddykman.com
*ATTORNEY TO BE NOTICED*

**Jennifer A. McLaughlin**
Cullen and Dykman Bleakley Platt,
LLP
100 Quentin Roosevelt Boulevard
Garden City, NY 11530
516-357-3713
Fax: 516-296-9155
Email:
jmclaughlin@cullenanddykman.com
*ATTORNEY TO BE NOTICED*

**Justin F. Capuano**
CULLEN AND DYKMAN, LLP
100 Quentin Roosevelt Boulevard
Garden City, NY 11530

A3

516-357-3708
Fax: 516-296-9155
Email:
jcapuano@cullenanddykman.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/15/2007 | 1 | COMPLAINT against Ross University School of Medicine $ 350, filed by Anand Dasrath. (Attachments: # 1 Civil Cover Sheet) (Bowens, Priscilla) (Entered: 06/19/2007) |
| 06/15/2007 | | Summons Issued as to Ross University School of Medicine. (Bowens, Priscilla) (Entered: 06/19/2007) |
| 07/26/2007 | 2 | SCHEDULING ORDER:Initial Conference set for 10/3/2007 @12:00 PM in Courtroom A, North Wing before Magistrate-Judge Ramon E. Reyes Jr. (see attached order).Ordered by Judge Ramon E. Reyes Jr. on 7/26/07. (Vertus, Miriam) (Entered: 07/26/2007) |
| 09/04/2007 | 3 | Letter by Ross University School of Medicine (Lieberman, Candice) (Entered: 09/04/2007) |
| 09/11/2007 | 4 | NOTICE OF PREMOTION CONFERENCE: Pre Motion CONFERENCE IS SCHEDULED for 10/4/2007 at 11:00 AM in 10D South before Judge Carol B. Amon. (Liberatore, Marie) (Entered: 09/11/2007) |
| 09/27/2007 | 5 | ORDER re 2 Scheduling Order: The initial conference currently scheduled for October 3, 2007 @ 12:00 PM before Magistrate Judge Ramon E. Reyes, Jr., HAS BEEN ADJOURNED SINE DIE. In lieu of the initial conference, the parties are directed to adhere to the requirements of Rules 26(f) and 16(b) of the Federal Rules of Civil Procedure and meet to discuss the matters specified in those Rules within ten (10) business days of the date of this order. The parties are further directed to file via ECF a complete scheduling order (see doc. # [2 ]) within five (5) business days of the meeting described in the preceding sentence. If the parties are unable to agree on the dates for the completion of the various stages of discovery, they must nevertheless submit a joint status report describing their disputes and the court will fashion an appropriate scheduling order based on the parties respective positions. If the parties jointly desire that this case be referred to the court-annexed mediation or arbitration programs, they must submit a request to do so within ten (10) business days. Ordered by Judge Ramon E. Reyes Jr. on 9/27/07. (Vertus, Miriam) (Entered: 09/27/2007) |
| 10/04/2007 | | Minute Entry: Pre Motion Conference held on 10/4/2007 before Judge Amon.Defendant's motion to dismiss will be served on 11/2/2007; Opposition due 11/30/2007; Reply due 12/7/2007. Oral argument will be heard on December 20, 2007 at 2:00 PM. (Court Reporter Lisa Schmid.) (Liberatore, Marie) (Entered: 10/04/2007) |
| 10/18/2007 | 6 | Proposed Scheduling Order by Ross University School of Medicine (Lieberman, Candice) (Entered: 10/18/2007) |

| 10/19/2007 | 7 | SCHEDULING ORDER: **Final Pretrial Conference set for 5/2/2008 at 10:00 AM before Magistrate-Judge Ramon E. Reyes Jr.., Status Conference set for 3/28/2008 at 10:00 AM before Magistrate-Judge Ramon E. Reyes Jr.., Telephone Conference set for 2/28/2008 at 11:00 AM before Magistrate-Judge Ramon E. Reyes Jr. All discovery to be completed by 4/30/08 (see order for details)..** Ordered by Judge Ramon E. Reyes Jr. on 10/19/07. (Vertus, Miriam) (Entered: 10/19/2007) |
| --- | --- | --- |
| 10/29/2007 | 8 | Letter by Ross University School of Medicine (Attachments: # 1 Revised Scheduling Order) (Lieberman, Candice) (Entered: 10/29/2007) |
| 10/31/2007 |  | ORDER: re 8 Letter filed on behalf of Defendant Ross University School of Medicine requesting an adjournment of the current briefing schedule for their motion to dismiss. APPLICATION GRANTED. Attached revised scheduling order approved. Oral argument is set for February 1, 2008 at 11:00 AM. So Ordered by Judge Carol B. Amon on 10/30/2007. (Liberatore, Marie) (Entered: 10/31/2007) |
| 11/30/2007 | 9 | Letter *to Bradley Zelenitz enclosing notice of motion and memorandum of law* by Ross University School of Medicine (McLaughlin, Jennifer) (Entered: 11/30/2007) |
| 12/18/2007 | 10 | Letter by Bradley M Zelenitz (Zelenitz, Bradley) (Entered: 12/18/2007) |
| 12/19/2007 | 11 | ENDORSED ORDER re 10 Letter filed by Bradley M Zelenitz: Application to file motion GRANTED. Ordered by Judge Carol B. Amon on 12/19/2007. (Abdallah, Fida) (Entered: 12/19/2007) |
| 12/26/2007 | 12 | MOTION for Order to Show Cause *to withdraw as cousel* by Bradley M Zelenitz. (Zelenitz, Bradley) (Entered: 12/26/2007) |
| 12/27/2007 |  | MOTION REFERRED: re 12 MOTION for an Order to Show Cause permitting the Law Office of Gildin, Zelenitz & Shapiro to withdraw as counsel for plaintiff, etc. is referred to Magistrate Ramon E. Reyes, Jr. to decide. (Liberatore, Marie) (Entered: 12/27/2007) |
| 12/31/2007 | 13 | NOTICE of Appearance by Candice Brook Lieberman on behalf of Ross University School of Medicine (aty to be noticed) (Lieberman, Candice) (Entered: 12/31/2007) |
| 01/03/2008 | 14 | ORDER TO SHOW CAUSE: Show Cause Hearing set for 1/9/2008 at 2:30 PM in Courtroom A, North Wing located on the second floor before Magistrate Judge Ramon E. Reyes Jr..It is hereby Ordered that Anand Dasrath,plaintiff and counsel including defendant's counsel must appear in-person at the scheduled hearing. So Ordered by Magistrate Judge Ramon E. Reyes, Jr on 1/3/2008. (Vertus, Miriam) (Entered: 01/03/2008) |
| 01/07/2008 | 15 | RESPONSE to Motion re 12 MOTION for Order to Show Cause *to withdraw as cousel* filed by Ross University School of Medicine. (McLaughlin, Jennifer) (Entered: 01/07/2008) |
| 01/09/2008 |  | Minute Entry for proceedings held before Magistrate Judge Ramon E. Reyes, Jr:Show Cause Hearing held on 1/9/2008. Appearances: Bradley M. Zelenitz, Esq. for plaintiff w/ client Anand Dasrath, Jennifer A. McLaughlin, Esq. for |

| | | defendant. Discussions held. Joint Status Report due by January 18, 2008, parties to indicate whether this case has settled. If a settlement is not reached Mr. Dasrath has until February 15, 2008 to seek new counsel and file a reply of opposition. (Tape #2:33:19-3:26:27.) (Vertus, Miriam) (Entered: 01/09/2008) |
|---|---|---|
| 01/18/2008 | 16 | Letter MOTION for Extension of Time to File *joint status report* by Ross University School of Medicine. (McLaughlin, Jennifer) (Entered: 01/18/2008) |
| 01/18/2008 | | ORDER granting 16 Motion for Extension of Time to File. Parties are to file a further joint status report by 2/1/2008 advising the Court whether the case has settled. If case has not settled, Mr. Dasrath has until 2/29/2008 to seek new counsel and file a reply of opposition. Ordered by Magistrate Judge Ramon E. Reyes, Jr. on 1/18/2008. (Warshaw, Aaron) (Entered: 01/18/2008) |
| 02/01/2008 | 17 | STATUS REPORT *to Magistrate Judge Reyes* by Ross University School of Medicine (McLaughlin, Jennifer) (Entered: 02/01/2008) |
| 02/01/2008 | 18 | STATUS REPORT ORDER: Further Status Report due by 2/15/2008. If, case is not settled by then plaintiff must retain new counsel and respond to motion to dismiss by 3/14/2008. Ordered by Magistrate Judge Ramon E. Reyes, Jr on 2/1/2008. (Vertus, Miriam) (Entered: 02/01/2008) |
| 02/01/2008 | 19 | Letter MOTION for Extension of Time to File *joint status report* by Ross University School of Medicine. (McLaughlin, Jennifer) (Entered: 02/01/2008) |
| 02/01/2008 | | ORDER granting 19 Motion for Extension of Time to File. (SEE STATUS REPORT ORDER ENTRY DATED 2/1/2008). Ordered by Magistrate Judge Ramon E. Reyes, Jr on 2/1/2008. (Vertus, Miriam) (Entered: 02/01/2008) |
| 02/15/2008 | 20 | Letter *Motion for Extension of Time to File joint status report* by Ross University School of Medicine (McLaughlin, Jennifer) Modified on 2/19/2008 (Vertus, Miriam). (Entered: 02/15/2008) |
| 02/19/2008 | | ORDER granting 20 Letter Motion for Extension of Time to File joint status report from 2/15/2008 until March 7, 2008. If the case is not settled, plaintiff will have until March 28, 2008 to retain new counsel and respond to Defendant's motion to dismiss. Ordered by Magistrate Judge Ramon E. Reyes, Jr on 2/15/2008. (Vertus, Miriam) (Entered: 02/19/2008) |
| 02/26/2008 | | ORDER re Telephone Conference set for 2/28/2008 at 11:00 AM has been adjourned sine die. Ordered by Magistrate Judge Ramon E. Reyes, Jr on 2/26/2008. (Vertus, Miriam) (Entered: 02/26/2008) |
| 02/28/2008 | 21 | Letter Motion for a Settlement Conference and Request for an Extension of Time for Plaintiff to respond to said motion to dismiss by Anand Dasrath (Zelenitz, Bradley) Modified on 2/28/2008 (Vertus, Miriam). (Entered: 02/28/2008) |
| 02/28/2008 | | ORDER granting 21 Letter Motion for a Settlement Conference and Request for an Extension of Time for Plaintiff to respond to said motion to dismiss. Ordered by Magistrate Judge Ramon E. Reyes, Jr on 2/28/2008. (Vertus, Miriam) (Entered: 02/28/2008) |
| | | |

Eastern District of New York - Live Database Version 4.0.3                    Page 6 of 16

| | | |
|---|---|---|
| 02/28/2008 | | SCHEDULING ORDER:Settlement Conference set for 3/21/2008 at 11:00 AM in Courtroom A, North Wing before Magistrate Judge Ramon E. Reyes Jr. Ordered by Magistrate Judge Ramon E. Reyes, Jr on 2/28/2008. (Vertus, Miriam) (Entered: 02/28/2008) |
| 03/14/2008 | 22 | Letter MOTION to Adjourn Conference *scheduled for March 21, 2008* by Ross University School of Medicine. (McLaughlin, Jennifer) (Entered: 03/14/2008) |
| 03/14/2008 | | ORDER granting 22 Letter MOTION to Adjourn Settlement Conference by Ross University School of Medicine. Settlement Conference is adjourned to 3/26/2008 at 12:00 PM. Ordered by Magistrate Judge Ramon E. Reyes, Jr. on 3/12/2008. (Rivera, Marta) (Entered: 03/14/2008) |
| 03/26/2008 | | Minute Order. for proceedings held before Magistrate Judge Ramon E. Reyes, Jr:granting 12 Motion for Order to Show Cause; Settlement Conference held on 3/26/2008. Appearances: Bradley M. Zelenitz counsel for plaintiff, Candice Brook Lieberman counsel for defendant. Discussions held. By 4/2/2008 Ms. Lieberman is to contact Mr. Zelenitz and indicate whether the settlement demand was accepted by Ross University. If, not accepted;Opposition due by 5/9/2008, Deft's motion to dismiss to be filed fully brief on 5/16/2008, Reply due 5/16/2008. (Vertus, Miriam) (Entered: 03/26/2008) |
| 04/28/2008 | 23 | Letter *Status* by Ross University School of Medicine (McLaughlin, Jennifer) (Entered: 04/28/2008) |
| 04/29/2008 | | ORDER re 23 Letter filed by Ross University School of Medicine. In light of the parties' inability to settle the matter, plaintiff shall have until May 9, 2008 to retain new counsel and respond to the motion to dismiss. Defendant shall have until May 16, 2008 to submit a reply and file the motion electronically. No further proceedings before magistrate judge Reyes will be scheduled absent an order from the assigned district judge. defendant's counsel is instructed to notify plaintiff of this order in writing and by telephone. Ordered by Magistrate Judge Ramon E. Reyes, Jr on 4/29/08. (Reyes, Ramon) (Entered: 04/29/2008) |
| 05/02/2008 | 24 | Letter *Status* by Ross University School of Medicine (Lieberman, Candice) (Entered: 05/02/2008) |
| 05/05/2008 | | Attorney Bradley M. Zelenitz terminated. As per my conversation with plaintiff Anand Dasrath, Mr. Zelenitz no longer represents him. Mr. Dasrath was also aware of the 5/9/2008 deadline for him to retain new counsel and respond to the motion to dismiss. Ordered by Magistrate Judge Ramon E. Reyes, Jr on 5/5/2008. (Vertus, Miriam) (Entered: 05/05/2008) |
| 05/09/2008 | 25 | MOTION for Extension of Time to File Response/Reply *to Defendant's Motion to Dismiss; filed* by Anand Dasrath, dated 5/7/2008. (Latka-Mucha, Wieslawa) (Entered: 05/09/2008) |
| 05/09/2008 | | ORDER endorsed on doc.# 25 : Application granted. Response due 5/22/08 - Reply due 5/30/08. So Ordered. (Ordered by Judge Carol B. Amon, on 5/9/2008) C/mailed by Chambers. (Latka-Mucha, Wieslawa) (Entered: |

| | | 05/09/2008) |
|---|---|---|
| 05/15/2008 | 26 | NOTICE of Appearance by Albert Adam Breud on behalf of Anand Dasrath (aty to be noticed) (Breud, Albert) (Entered: 05/15/2008) |
| 05/20/2008 | 27 | Letter MOTION to Stay *proceedings* by Anand Dasrath. (Breud, Albert) (Entered: 05/20/2008) |
| 05/22/2008 | 28 | NOTICE OF TELEPHONE CONFERENCE: A telephone conference will be held in the above-captioned case on MAY 29, 2008 at 10:30am before Judge Amon. Plaintiff's counsel Albert Breud, II is directed to coordinate the conference call to chambers (718)-613-2410. (Liberatore, Marie) (Entered: 05/22/2008) |
| 05/22/2008 | 29 | MEMORANDUM in Opposition *and Exhibits 2 and 3, Exhibit 1 to be mailed with courtesy copy* filed by Anand Dasrath. (Attachments: # 1 Exhibit, # 2 Exhibit) (Breud, Albert) (Entered: 05/22/2008) |
| 05/22/2008 | 30 | Letter MOTION to Adjourn Conference *scheduled for May 29, 2008* by Anand Dasrath. (Breud, Albert) (Entered: 05/22/2008) |
| 05/23/2008 | 31 | Letter MOTION to Adjourn Conference *via telephone* by Ross University School of Medicine. (McLaughlin, Jennifer) (Entered: 05/23/2008) |
| 05/23/2008 | | Motions terminated, docketed incorrectly: 27 Letter MOTION to Stay *proceedings* filed by Anand Dasrath. Terminated as per Chambers. This is not a motion; it is a letter requesting a pre-motion conference. (Abdallah, Fida) (Entered: 05/23/2008) |
| 05/23/2008 | 32 | ORDER: Pltff's request to file a motion to stay this action, and any subsequent motion to stay, are hereby referred to Magistrate Judge Reyes for disposition. Dft's motion to dismiss is referred to Magistrate Judge Reyes for a report and recommendation. In light of these referrals, the teleconference currently scheduled for May 29, 2008 is canceled. Ordered by Judge Carol B. Amon on 5/23/2008. (Abdallah, Fida) (Entered: 05/23/2008) |
| 05/27/2008 | 33 | Letter *response to plaintiff's letter requesting a pre-motion conference* by Ross University School of Medicine (McLaughlin, Jennifer) (Entered: 05/27/2008) |
| 05/28/2008 | | ORDER TO ANSWER re 33 Letter filed by Ross University School of Medicine. Plaintiff Anand Dasrath is ordered to file a reply, if any, by 6/6/2008. Ordered by Magistrate Judge Ramon E. Reyes, Jr. on 5/28/2008. (Warshaw, Aaron) (Entered: 05/28/2008) |
| 05/28/2008 | 34 | Letter MOTION for Extension of Time to File Response/Reply *to June 13, 2008* by Ross University School of Medicine. (McLaughlin, Jennifer) (Entered: 05/28/2008) |
| 05/28/2008 | | ORDER granting 34 Motion for Extension of Time to File Reply. Defendant's reply is due by 6/13/2008. Ordered by Magistrate Judge Ramon E. Reyes, Jr. on 5/28/2008. (Warshaw, Aaron) (Entered: 05/28/2008) |
| 06/06/2008 | 35 | REPLY in Support *of motion for a stay* filed by Anand Dasrath. (Breud, |

| | | |
|---|---|---|
| | | Albert) (Entered: 06/06/2008) |
| 06/13/2008 | 36 | Fully Briefed MOTION to Dismiss *Pursuant to Rules 12(b(1) and (6)* by Ross University School of Medicine. Responses due by 6/13/2008 (Attachments: # 1 Affidavit of Service Notice of Motion to Dismiss, # 2 Memorandum in Support Motion to Dismiss, # 3 Affidavit of Service Memo of Law on Motion to Dismiss, # 4 Memorandum in Opposition Motion to Dismiss and Exhibits, # 5 Affidavit in Support Reply to Motion to Dismiss, # 6 Exhibit Exhibit A to Perri Affidavit, # 7 Affidavit of Service Perri Affidavit and Exhibit, # 8 Memorandum in Support Reply Memorandum of Law, # 9 Affidavit of Service Reply Memorandum of Law) (McLaughlin, Jennifer) (Entered: 06/13/2008) |
| 06/13/2008 | 37 | Letter *enclosing hard copies of fully briefed motion* by Ross University School of Medicine (McLaughlin, Jennifer) (Entered: 06/13/2008) |
| 06/16/2008 | | MOTION REFERRED: Re 36 Defendant's Motion to Dismiss is referred to Magistrate Judge Reyes for a report and recommendation. (Liberatore, Marie) (Entered: 06/16/2008) |
| 06/19/2008 | 38 | Letter MOTION to Dismiss by Ross University School of Medicine. Responses due by 6/13/2008 (Attachments: # 1 Affidavit of Nancy A. Perri) (McLaughlin, Jennifer) (Entered: 06/19/2008) |
| 06/20/2008 | | Motions terminated, docketed incorrectly: 38 Letter MOTION to Dismiss filed by Ross University School of Medicine. This is a letter regarding motion #36. (Clarke, Melonie) (Entered: 06/20/2008) |
| 07/25/2008 | 39 | NOTICE of Appearance by Justin F. Capuano on behalf of Ross University School of Medicine (aty to be noticed) (Capuano, Justin) (Entered: 07/25/2008) |
| 08/06/2008 | 40 | REPORT AND RECOMMENDATIONS re 27 Motion to Stay and 36 Motions to Dismiss. Objections to R&R due by 8/20/2008. Ordered by Magistrate Judge Ramon E. Reyes, Jr. on 8/6/2008. (Warshaw, Aaron) (Entered: 08/06/2008) |
| 08/19/2008 | 41 | Letter *Objections to Report and Recommendation* by Anand Dasrath (Attachments: # 1 Exhibit, # 2 Exhibit) (Breud, Albert) (Entered: 08/19/2008) |
| 08/28/2008 | 42 | MEMORANDUM in Opposition *to Plaintiff's Objection to Magistrate Judge Reyes' August 6, 2008 Report and Recommendations* filed by Ross University School of Medicine. (Attachments: # 1 Affidavit of Service of Memorandum of Law) (Capuano, Justin) (Entered: 08/28/2008) |
| 08/28/2008 | 43 | AFFIDAVIT/DECLARATION in Opposition re 40 REPORT AND RECOMMENDATIONS filed by Ross University School of Medicine. (Attachments: # 1 Exhibit A, # 2 Affidavit of Service) (Capuano, Justin) (Entered: 08/28/2008) |
| 03/27/2009 | 44 | Letter MOTION to Withdraw as Attorney by Anand Dasrath. (Breud, Albert) (Entered: 03/27/2009) |
| 03/31/2009 | 45 | ORDER adopting in part 40 Report and Recommendations as to 36 Motion to |

Case 11-2531, Document 53-1, 10/07/2011, 412551, Page23 of 183

A9

| | | |
|---|---|---|
| | | Dismiss and 27 Motion to Stay. For the reasons set forth in the accompanying Memorandum and Order, the motion to dismiss the ADA claim for lack of subject matter jurisdiction is granted without prejudice to refiling after compliance with the ADAs notice and administrative exhaustion requirements. The motion to dismiss as to the contract, fraud and New York Human Rights Law claims is granted. Plaintiffs request to stay the proceedings is denied. The R&R is modified to provide plaintiff leave to file an amended complaint as to all claims within 30 days of the date of this Order. So Ordered by Judge Carol B. Amon on 3/31/2009. (Amon, Carol). C/m to Plaintiff Dasrath by Chambers. (Entered: 03/31/2009) |
| 04/08/2009 | 46 | CERTIFICATE of Counsel re 44 Letter MOTION to Withdraw as Attorney *for Plaintiff* by Albert Adam Breud, II on behalf of Anand Dasrath (Breud, Albert) (Entered: 04/08/2009) |
| 04/14/2009 | 47 | NOTICE advising that "Mr. Albert Breud was paid in full for services rendered so far," that the undersigned "does not have a replacement lawyer [...] and seeks to keep Mr. Breud as the lawyer in the above case," etc. W/Attachments: # 1 Appendix. (Latka-Mucha, Wieslawa) (Entered: 04/17/2009) |
| 04/21/2009 | 48 | REPLY in Support re 44 Letter MOTION to Withdraw as Attorney filed by Albert Adam Breud, II. (Attachments: # 1 Certificate of Service) (Breud, Albert) (Entered: 04/21/2009) |
| 04/24/2009 | 49 | NOTICE OF ORAL ARGUMENT: re 44 Oral argument is hereby scheduled in the above-captioned case for Thursday, April 30, 2009 at 2:30 pm before Judge Amon on the Motion to be relieved as counsel of record for Plaintiff Anand Dasrath in Courtroom 10 D, U.S. District Court, 225 Cadman Plaza East, Brooklyn, New York 11201. (copy mailed to Plaintiff Anand Dasrath). (Liberatore, Marie) (Entered: 04/24/2009) |
| 04/27/2009 | 50 | Letter *regarding motion filed by plaintiff's counsel seeking to be relieved* by Ross University School of Medicine (McLaughlin, Jennifer) (Entered: 04/27/2009) |
| 04/30/2009 | | Minute Order: Oral argument held re 44 Motion to Withdraw as Attorney before Judge Amon on 4/30/2009. Appearances: For Plaintiff - Allbert Adam Breud, III and Plaintiff Anand Dasrath. For Defendant - Justin F. Capuano. Judge Amon ordered that counsel for plaintiff is relieved. As status conference will be held in this case on Wednesday, May 6, 2009 at 2:00pm in Courtroom 10 D. Plaintiff is directed to inform his new counsel of the status conference and to request that he or she file a notice of appearance in advance of it. (Court Reporter Holly Driscoll.) (Liberatore, Marie) (Entered: 04/30/2009) |
| 05/06/2009 | | Minute Entry: Status Conference held on 5/6/2009 before Judge Amon. Appearances: For Plaintiff - Joseph R. Costello (Costello & Costello, P.C.) and Plaintiff Anand Dasrath. For Defendant - Justin F. Capuano. Plaintiff's time to file an amended complaint is extended to June 17, 2009. Any motions to be made by defendant must be made by July 22, 2009. Plaintiff's response is due August 19, 2009. Any reply by defendant is due August 28, 2009. |

Case 11-2531, Document 53-1, 10/07/2011, 412551, Page24 of 183

# A10

|  |  |  |
|---|---|---|
|  |  | (Court Reporter Anthony Frisolone.) (Liberatore, Marie) (Entered: 05/06/2009) |
| 05/06/2009 | 51 | NOTICE of Appearance by Joseph Richard Costello on behalf of Anand Dasrath (aty to be noticed). (Abdallah, Fida) (Entered: 05/07/2009) |
| 05/08/2009 | 52 | NOTICE of Appearance by Salvatore D. Compoccia on behalf of Anand Dasrath (aty to be noticed) (Compoccia, Salvatore) (Entered: 05/08/2009) |
| 06/17/2009 | 53 | Letter MOTION for Extension of Time to File *Amended Complaint* by Anand Dasrath. (Attachments: # 1 Correspondence) (Compoccia, Salvatore) (Entered: 06/17/2009) |
| 06/17/2009 | 54 | RESPONSE to Motion re 53 Letter MOTION for Extension of Time to File *Amended Complaint* filed by Ross University School of Medicine. (Capuano, Justin) (Entered: 06/17/2009) |
| 06/17/2009 | 55 | AMENDED COMPLAINT *Anand Dasrath* against Ross University School of Medicine, filed by Anand Dasrath. (Compoccia, Salvatore) (Entered: 06/17/2009) |
| 06/18/2009 | 56 | AMENDED COMPLAINT *Anand Dasrath* against Ross University School of Medicine, filed by Anand Dasrath. (Attachments: # 1 Corrected Amended Complaint, # 2 Cover Letter) (Compoccia, Salvatore) (Entered: 06/18/2009) |
| 06/19/2009 |  | ORDER: re 53 Plaintiff's motion for an extension of time from June 17, 2009 to June 24, 2009 to file his amended complaint. Application is moot in light of the timely filing of the amended complaint. So Ordered by Judge Carol B. Amon on 6/18/2009. (Liberatore, Marie) (Entered: 06/19/2009) |
| 06/19/2009 |  | ORDER: re 56 CORRECTED Amended Complaint filed by Anand Dasrath. Corrected amended complaint is accepted. So Ordered by Judge Carol B. Amon on 6/18/2009. (Liberatore, Marie) (Entered: 06/19/2009) |
| 07/22/2009 | 57 | Letter *enclosing service copy of motion to dismiss to adversary* by Ross University School of Medicine (McLaughlin, Jennifer) (Entered: 07/22/2009) |
| 08/18/2009 | 58 | MOTION for Extension of Time to File Response/Reply *Plaintiff* by Anand Dasrath, Ross University School of Medicine. (Costello, Joseph) (Entered: 08/18/2009) |
| 08/25/2009 | 59 | ORDER granting 58 Motion for Extension of Time to File Response/Reply. Ordered by Judge Carol B. Amon on 8/20/2009. (Abdallah, Fida) (Entered: 08/25/2009) |
| 09/01/2009 | 60 | Second MOTION for Extension of Time to File Response/Reply *Response* by Anand Dasrath. (Costello, Joseph) (Entered: 09/01/2009) |
| 09/01/2009 | 61 | MOTION for Extension of Time to File Response/Reply *Response to Defendant Ross' Motion to Dismiss* by Anand Dasrath. (Costello, Joseph) (Entered: 09/01/2009) |
| 09/02/2009 |  | ORDER: re 61 letter request on behalf of plaintiff requesting a short extension to file our opposition papers to the defendant's motion to dismiss with consent.APPLICATION GRANTED. Plaintiff's opposition to be filed by |

| | | |
|---|---|---|
| | | September 9, 2009. Defendant's reply to be filed by September 23, 2009. So Ordered by Judge Carol B. Amon on 9/2/2009. (Liberatore, Marie) (Entered: 09/02/2009) |
| 09/09/2009 | 62 | MOTION for Extension of Time to File Response/Reply *to motion to dismiss* by Anand Dasrath. (Costello, Joseph) (Entered: 09/09/2009) |
| 09/10/2009 | | ORDER: re 62 Motion on behalf of plaintiff with consent of defendant for an extension of time and a proposed new response schedule for the Court's approval.APPLICATION GRANTED. Plaintiff's opposition to be filed by 9/11/09; Defendant's reply to be filed by 9/28/09. So Ordered by Judge Carol B. Amon on 9/10/2009. (Liberatore, Marie) (Entered: 09/10/2009) |
| 09/11/2009 | 63 | MEMORANDUM in Opposition *to Defendant's Motion to Dismiss* filed by Anand Dasrath. (Attachments: # 1 Affidavit) (Costello, Joseph) (Entered: 09/11/2009) |
| 09/28/2009 | 64 | MOTION to Dismiss *Pursuant to 12(b)(1) and (6)* by Ross University School of Medicine. (Attachments: # 1 Affidavit Nancy Perri, # 2 Exhibit "A", # 3 Memorandum in Support, # 4 Memorandum in Support (Further Support), # 5 Letter to Hon. Carol Bagley Amon) (McLaughlin, Jennifer) (Entered: 09/28/2009) |
| 04/07/2010 | 65 | NOTICE OF ORAL ARGUMENT: Oral argument is hereby scheduled on 64 Dft's Motion to Dismiss for 5/6/10, at 2:00 p.m. in Courtroom 10D. Ordered by Judge Carol B. Amon on 4/7/2010. (Abdallah, Fida) (Entered: 04/07/2010) |
| 05/07/2010 | 66 | Minute Entry for proceedings held before Judge Carol B. Amon: Motion Hearing held on 5/7/2010. Oral argument held on Dft's Motion to Dismiss the Amended Complaint. The 1st, 3rd, and 4th causes of action are dismissed. The Court orders the parties to proceed with discovery on Pltff's breach or contract claim only. Order to follow. (Court Reporter Lisa Schmid) (Abdallah, Fida) (Entered: 05/07/2010) |
| 05/07/2010 | 67 | ORDER: For the reasons set forth on the record, the Court grants Ross University's motion in part with respect to Dasrath's ADA, fraud and tortious interference with contractual relations claims. Dasrath shall be permitted to proceed only with his claim of breach of contract. The parties are directed to confer with the magistrate judge and commence discovery. Ordered by Judge Carol B. Amon on 5/6/2010. (Abdallah, Fida) (Entered: 05/07/2010) |
| 05/10/2010 | | SCHEDULING ORDER: In-person status conference set for 5/13/2010 at 10:00 a.m. in Courtroom 2E North. Ordered by Magistrate Judge Ramon E. Reyes, Jr. on 5/10/2010. (Rivera, Marta) (Entered: 05/10/2010) |
| 05/11/2010 | 68 | MOTION to Adjourn Conference by Anand Dasrath. (Compoccia, Salvatore) (Entered: 05/11/2010) |
| 05/12/2010 | | ORDER granting 68 Motion to Adjourn Conference. The 5/13/2010 Status Conference RESCHEDULED for 5/25/2010 at 2:00 p.m. in Courtroom 2E North. Ordered by Magistrate Judge Ramon E. Reyes, Jr. on 5/12/2010. (Rivera, Marta) (Entered: 05/12/2010) |
| 05/17/2010 | 69 | STIPULATION *Extending Time to Answer to and including May 28, 2010* by |

| | | |
|---|---|---|
| | | Ross University School of Medicine (Capuano, Justin) (Entered: 05/17/2010) |
| 05/18/2010 | | ORDER re 69 Stipulation. The time for defendant file an answer is hereby extended to 5/28/2010. Ordered by Magistrate Judge Ramon E. Reyes, Jr. on 5/18/2010. (Rivera, Marta) (Entered: 05/18/2010) |
| 05/18/2010 | | RESET HEARING: The 5/25/2010 Status Conference RESCHEDULED to 6/2/2010 at 10:00 a.m. in Courtroom 2E North before Magistrate Judge Ramon E. Reyes, Jr. (Rivera, Marta) (Entered: 05/18/2010) |
| 05/28/2010 | 70 | Corporate Disclosure Statement by Ross University School of Medicine (Attachments: # 1 Affidavit of Service) (McLaughlin, Jennifer) (Entered: 05/28/2010) |
| 05/28/2010 | 71 | ANSWER to 56 Amended Complaint by Ross University School of Medicine. (Attachments: # 1 Affidavit of Service) (McLaughlin, Jennifer) (Entered: 05/28/2010) |
| 05/28/2010 | 72 | First MOTION to Adjourn Conference *of June 2, 2010* by Anand Dasrath. (Costello, Joseph) (Entered: 05/28/2010) |
| 06/01/2010 | | ORDER granting 72 First MOTION to Adjourn Conference by by Anand Dasrath. The 6/2/2010 Status Conference is RESCHEDULED to 6/11/2010 at 2:00 PM in Courtroom 2E North. Plaintiff's counsel is directed to confirm that all defendants are aware of this adjournment. NO FURTHER EXTENSIONS WILL BE GRANTED. Ordered by Magistrate Judge Ramon E. Reyes, Jr. on 6/1/2010. (Rivera, Marta) (Entered: 06/01/2010) |
| 06/09/2010 | | Set/Reset TIME of Hearings:The Status Conference set for 6/11/2010 will be held at 11:45 AM in Courtroom 2E North before Magistrate Judge Ramon E. Reyes Jr. (Vertus, Miriam) (Entered: 06/09/2010) |
| 06/11/2010 | | Minute Entry for proceedings held before Magistrate Judge Ramon E. Reyes, Jr:Status Conference held on 6/11/2010.Joseph R. Costello,Esq w/plaintiff Anand Dasrath. For Defendant - Justin F. Capuano. Discussions held. Discovery will close on 10/29/2010., Final Pretrial Conference set for 11/4/2010 @10:00 AM before Magistrate Judge Ramon E. Reyes Jr., Status Conference set for 9/9/2010 @10:00 AM in Courtroom 2E North before Magistrate Judge Ramon E. Reyes Jr..) (Tape #11:46:30-11:56:28.) (Vertus, Miriam) (Entered: 06/14/2010) |
| 07/15/2010 | 73 | ANSWER to Interrogatories by Anand Dasrath. (Costello, Joseph) (Entered: 07/15/2010) |
| 07/15/2010 | 74 | ANSWER to Interrogatories by Anand Dasrath. (Costello, Joseph) (Entered: 07/15/2010) |
| 07/15/2010 | 75 | ANSWER to Interrogatories by Anand Dasrath. (Costello, Joseph) (Entered: 07/15/2010) |
| 07/15/2010 | 76 | ANSWER to Interrogatories by Anand Dasrath. (Costello, Joseph) (Entered: 07/15/2010) |
| 07/15/2010 | 77 | RESPONSE to Discovery Request by Anand Dasrath. (Costello, Joseph) |

| | | |
|---|---|---|
| | | (Entered: 07/15/2010) |
| 09/02/2010 | 78 | Letter *requesting telephone conference on September 9, 2010* by Ross University School of Medicine (Capuano, Justin) (Entered: 09/02/2010) |
| 09/03/2010 | | ORDER re 78 Letter filed by Ross University School of Medicine. Request GRANTED. Defense counsel is allowed to attend the 9/9/2010 Status Conference at 10:00 a.m. via telephone. Plaintiff's counsel will appear in person. Ordered by Magistrate Judge Ramon E. Reyes, Jr., on 9/3/2010. (Rivera, Marta) (Entered: 09/03/2010) |
| 09/03/2010 | 79 | Letter *in response to defendant's letter* by Anand Dasrath (Costello, Joseph) (Entered: 09/03/2010) |
| 09/03/2010 | 80 | Letter *in response to Plaintiff's letter* by Ross University School of Medicine (Capuano, Justin) (Entered: 09/03/2010) |
| 09/08/2010 | 81 | NOTICE of Appearance by Cynthia Ann Augello on behalf of Ross University School of Medicine (aty to be noticed) (Augello, Cynthia) (Entered: 09/08/2010) |
| 09/09/2010 | | Minute Entry for proceedings held before Magistrate Judge Ramon E. Reyes, Jr:Status Conference held on 9/9/2010.Joseph R. Costello,Esq w/plaintiff Anand Dasrath. Cynthia Augello, Esq for defendant appearing by telephone. Discussions held. Defendants to produce requested documents by 9/17/10.Further proceedings pursuant to schedule. NO EXTENSIONS WILL BE PERMITTED.(Tape #10:05:56-10:13:32 cont. 10:14:10-10:14:34.) (Vertus, Miriam) (Entered: 09/09/2010) |
| 10/21/2010 | 82 | First MOTION to Adjourn Conference *Pre-Trial Conference of 11/4/2010* by Anand Dasrath. (Costello, Joseph) (Entered: 10/21/2010) |
| 10/22/2010 | | ORDER granting 82 Motion to Adjourn Conference 11/4/10 Final Pre-trial conference. Ordered by Magistrate Judge Ramon E. Reyes, Jr on 10/22/2010. (Vertus, Miriam) (Entered: 10/22/2010) |
| 10/22/2010 | | Set/Reset Hearings: Final Pretrial Conference set for 11/29/2010 at 10:00 AM before Magistrate Judge Ramon E. Reyes Jr. (Vertus, Miriam) (Entered: 10/22/2010) |
| 11/22/2010 | 83 | Letter *requesting pre-motion conference in anticipation of moving for summary judgment* by Ross University School of Medicine (McLaughlin, Jennifer) (Entered: 11/22/2010) |
| 11/25/2010 | 84 | RESPONSE to Discovery Request by Anand Dasrath. (Costello, Joseph) (Entered: 11/25/2010) |
| 11/29/2010 | 85 | NOTICE OF PREMOTION CONFERENCE BY TELEPHONE: A premotion conference will be held by telephone on January 10, 2011 at 11:30am before Judge Amon. Jennifer McLaughlin, Esq. is directed to coordinate the conference call to chambers (718) 613-2410. (Liberatore, Marie) (Entered: 11/29/2010) |
| 11/29/2010 | | Minute Entry for proceedings held before Magistrate Judge Ramon E. Reyes, |

| | | |
|---|---|---|
| | | Jr:Final Pretrial Conference held on 11/29/2010.Joseph Costello, Esq. for plaintiff, Jennifer A. McLaughlin, Esq. for defendant. Discussions held. Discovery is complete but for a few remaining documents to be produced by defendant. Plaintiff will respond to defendant's pre-motion letter 83 by 12/10/10. Settlement not possible. No further proceedings before Judge Reyes will be held unless requested by parties or Judge Amon. (Tape #10:58:04-11:12:28.) (Vertus, Miriam) (Entered: 11/29/2010) |
| 12/10/2010 | 86 | Letter *Request for Pre Motion Conference* by Anand Dasrath (Costello, Joseph) (Entered: 12/10/2010) |
| 12/17/2010 | 87 | Letter *in response to plaintiff's letter request for a pre-motion conference* by Ross University School of Medicine (McLaughlin, Jennifer) (Entered: 12/17/2010) |
| 01/06/2011 | 88 | Letter *in Response to Defendant's Letter of 12/17/2010* by Anand Dasrath (Costello, Joseph) (Entered: 01/06/2011) |
| 01/10/2011 | 89 | Minute Entry: Premotion conference held by telephone before Judge Amon on January 10, 2011. Defendant and Plaintiff to make cross-motions for summary judgment. Motions to be served by March 3, 2011.Responses to be served by March 31, 2011.Replies to be served by April 13, 2011.Oral argument will be held on April 21, 2011 at 2:00pm in Courtroom 10 D. (Court Reporter Sheldon Silverman.) (Liberatore, Marie) (Entered: 01/10/2011) |
| 03/03/2011 | 90 | Letter *attaching service copy of summary judgment motion* by Ross University School of Medicine (Capuano, Justin) (Entered: 03/03/2011) |
| 03/04/2011 | 91 | Letter *Advising of Motion* by Anand Dasrath (Costello, Joseph) (Entered: 03/03/2011) |
| 03/31/2011 | 92 | First MOTION for Extension of Time to File Response/Reply by Anand Dasrath. (Costello, Joseph) (Entered: 03/31/2011) |
| 03/31/2011 | 93 | Second MOTION for Extension of Time to File Response/Reply by Anand Dasrath. (Costello, Joseph) (Entered: 03/31/2011) |
| 03/31/2011 | | ORDER granting 92 , 93 : Responses due by 4/14/2011. Replies due by 4/28/2011. Oral argument scheduled for 5/17/2011 at 2:00 p.m. in Courtroom 10D.So Ordered by Judge Carol B. Amon on 3/31/2011. (Amon, Carol) (Entered: 03/31/2011) |
| 04/28/2011 | 94 | MOTION for Summary Judgment by Ross University School of Medicine. Responses due by 4/28/2011 (Attachments: # 1 Affidavit Fernandez, # 2 Affidavit McLaughlin, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D, # 7 Exhibit E, # 8 Exhibit F, # 9 Exhibit G, # 10 Exhibit H, # 11 Exhibit I, # 12 Exhibit J, # 13 Exhibit K, # 14 Exhibit L, # 15 Exhibit M, # 16 Exhibit N, # 17 Exhibit O, # 18 Exhibit P, # 19 Affidavit Service, # 20 Memorandum in Support, # 21 Affidavit Service, # 22 Rule 56.1 Statement, # 23 Affidavit Service, # 24 Supplement Letter to Plaintiff's Counsel) (Capuano, Justin) (Entered: 04/28/2011) |
| 04/28/2011 | 95 | REPLY in Support re 94 MOTION for Summary Judgment filed by Ross |

| | | |
|---|---|---|
| | | University School of Medicine. (Attachments: # 1 Affidavit Service) (Capuano, Justin) (Entered: 04/28/2011) |
| 04/28/2011 | 96 | MEMORANDUM in Opposition *to Plaintiff's Motion for Summary Judgment* filed by Ross University School of Medicine. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2 [Part 1], # 3 Exhibit 2 [Part 2], # 4 Exhibit 2 [Part 3], # 5 Exhibit 2 [Part 4], # 6 Affidavit Service, # 7 Memorandum in Opposition, # 8 Affidavit Service) (Capuano, Justin) (Entered: 04/28/2011) |
| 04/28/2011 | 97 | Letter *regarding courtesy copy of summary judgment motion* by Ross University School of Medicine (Capuano, Justin) (Entered: 04/28/2011) |
| 04/28/2011 | 98 | First MOTION for Summary Judgment by Anand Dasrath. Responses due by 4/28/2011 (Attachments: # 1 Affidavit in Support, # 2 Affidavit in Support, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit) (Costello, Joseph) (Entered: 04/28/2011) |
| 04/28/2011 | 99 | First MOTION for Summary Judgment *Memorandum of Law in Support of Motion for Summary Judgment* by Anand Dasrath. Responses due by 4/28/2011 (Costello, Joseph) (Entered: 04/28/2011) |
| 04/28/2011 | 100 | AFFIDAVIT/DECLARATION in Opposition re 99 First MOTION for Summary Judgment *Memorandum of Law in Support of Motion for Summary Judgment* filed by Anand Dasrath. (Costello, Joseph) (Entered: 04/28/2011) |
| 04/28/2011 | 101 | MEMORANDUM in Opposition re 98 First MOTION for Summary Judgment *and in further support of plaintiff's motion* filed by Anand Dasrath. (Costello, Joseph) (Entered: 04/28/2011) |
| 04/28/2011 | 102 | MEMORANDUM in Opposition re 99 First MOTION for Summary Judgment *Memorandum of Law in Support of Motion for Summary Judgment* filed by Anand Dasrath. (Costello, Joseph) (Entered: 04/28/2011) |
| 04/28/2011 | 103 | Letter *regarding copy of Motion for Summary Judgment* by Anand Dasrath (Costello, Joseph) (Entered: 04/28/2011) |
| 05/17/2011 | | Minute Entry: Oral argument held on motions for summary judgment before Chief Judge Amon on May 17, 2011. Appearances: For plaintiff - Joseph Costello. For Defendant - Jennifer McLaughlin. DECISION RESERVED. (Court Reporter Fred Guerino.) (Liberatore, Marie) (Entered: 05/17/2011) |
| 05/26/2011 | 104 | MEMORANDUM & ORDER granting 94 Motion for Summary Judgment: For the reasons stated, the defendant's motion for summary judgment is granted. The plaintiff's motion for summary judgment is denied. The Clerk of Court is directed to enter judgment accordingly and to close this case. So Ordered by Chief Judge Carol Bagley Amon on 5/26/2011. (Amon, Carol) (Entered: 05/26/2011) |
| 05/26/2011 | 105 | CLERK'S JUDGMENT directing that plaintiff take nothing of the defendant; thatthe defendant's motion for summary judgment is granted; and that the plaintiff's motion for summary judgment is denied. Ordered by Clerk of Court on 5/26/2011. c/m with appeal pkg (Fernandez, Erica) (Entered: 05/26/2011) |
| 06/22/2011 | 106 | NOTICE OF APPEAL by Anand Dasrath. Pltff appeals 104 Memo and Order |

# A16

| | | |
|---|---|---|
| | | and 105 Judgment. Service done electronically. (Costello, Joseph) Modified on 6/22/2011 (McGee, Mary Ann). (Entered: 06/22/2011) |
| 06/22/2011 | | NOTICE re 106 Notice of Appeal. Attorney Joseph Costello please remit payment of $455.00 for Notice of Appeal. (McGee, Mary Ann) (Entered: 06/22/2011) |
| 06/22/2011 | | Electronic Index to Record on Appeal sent to US Court of Appeals 106 Notice of Appeal. Please note: The documets in this case are online and may be downloaded. (McGee, Mary Ann) (Entered: 06/22/2011) |
| 06/27/2011 | 107 | USCA Appeal Fees received $ 455.00 receipt number 4653030744 re 106 Notice of Appeal filed by Anand Dasrath (McGee, Mary Ann) (Entered: 06/27/2011) |
| 06/27/2011 | | First Supplemental Electronic Index to Record on Appeal sent to US Court of Appeals 107 USCA Appeal Fees. (McGee, Mary Ann) (Entered: 06/27/2011) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 06/29/2011 13:27:31 | | |
| **PACER Login:** | pp0060 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:07-cv-02433-CBA - RER |
| **Billable Pages:** | 11 | **Cost:** | 0.88 |

## A17

UNITED STATES DISTRICT COURT
EASTERN DISTRICT COURT OF NEW YORK
-------------------------------------------------------------X   Case No. 07-2433
ANAND DASRATH,

                      Plaintiff,

                                        NOTICE OF MOTION FOR SUMMARY
    --against--                                      JUDGMENT

ROSS UNIVERSITY SCHOOL OF MEDICINE

                      Defendant.
-------------------------------------------------------------X

| | |
|---|---|
| **MOTION BY:** | Plaintiff |
| **DATE and TIME:** | April 21, 2011 |
| | PLACE: United States District Court - Eastern District of New York; 225 Cadman Plaza East, Brooklyn, New York 11201 Room 10 D S 904 before the Hon. Carol B. Amon |
| **SUPPORTING PAPERS:** | Affirmation of Joseph R. Costello, Affidavit of Anand Dasrath with attachments thereto. |
| **RELIEF DEMANDED:** | (a) An Order pursuant to Federal Rules of Civil Procedure- Rule 56 granting Summary Judgment to the Plaintiff. |
| | (b) Attorneys fees in an amount to be determined. |
| | (c) Such other and further relief as this court deems just and proper. |

ANSWERING PAPERS:              Please be advised that pursuant to the briefing schedule
                              answering papers, if any are required to be served upon the
                              undersigned no later than March 31, 2011.


Dated: Brooklyn, New York
       March 2, 2011

**COSTELLO & COSTELLO, P.C.**
**BY:    JOSEPH R. COSTELLO**
Attorneys for the Plaintiff
5919 20th Avenue
Brooklyn, New York 11204
(718) 331-4600
Our File No. 6970


TO:    **CULLEN AND DUKMAN, LLP**
       **Attorneys for the Defendant**
       **BY:    Jennifer A. McLaughlin, Esq.**
              **Justin Capuano**
              100 Quentin Roosevelt Boulevard
              Garden City NY 11530
              (516) 357-3700

**A19**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT COURT OF NEW YORK
-------------------------------------------------------------------X   Case No. 07-2433
ANAND DASRATH,

Plaintiff,

--against--

ROSS UNIVERSITY SCHOOL OF MEDICINE

Defendant
-------------------------------------------------------------------X

ATTORNEY AFFIRMATION IN
SUPPORT OF MOTION FOR SUMMARY
JUDGMENT

    **JOSEPH R. COSTELLO** an attorney admitted to the practice in the Eastern District Court of New York, hereby affirms the following under the penalties of perjury:

    1. I am the attorney for the Plaintiff and as such, am fully familiar with the facts and circumstances of this matter by reason of a file maintained by me in my office.

    2. This Affidavit is being submitted in support of the Plaintiff's Motion for Summary Judgment pursuant to the Federal Rules of Civil Procedure - Rule 56 and for such other and further relief as this Court deems just and proper.

**PROCEDURAL HISTORY**

    3. The above action was commenced on or about June 15, 2007 by service of a Summons and Complaint.

    4. At the time of the initial filing the Plaintiff, Anand Dasrath (Hereinafter referred to as "DASRATH") was represented by Bradley M. Zelenitz, Esq.

    5. The initial Summons and Complaint alleged the following causes of action: *A copy of said Summons and Complaint is annexed hereto as Exhibit "A"*.

    6. On September 11, 2007 a Pre-Motion Conference was scheduled for October 4, 2007 before the Hon. Carol B. Amon.

    7. On October 4, 2007 said conference was held and a scheduling order was entered as follows: Defendant's Motion to Dismiss will be served on November 2, 2007; opposition due by November 30, 2007; Reply due December 7, 2007 and oral argument is scheduled for December 20, 2007. On October 31, 2007 a letter by Defendant Ross University School of Medicine

(Hereinafter referred to as "ROSS") requesting an adjournment of the current briefing schedule for its Motion to Dismiss was granted and a revised briefing schedule was approved.

8.  Oral argument on Ross' Motion to Dismiss was now scheduled for February 1, 2008.

9.  However, on December 26, 2007 Attorney Bradley M. Zelenitz, by Order to Show Cause moved this Court to be relieved as Dasrath's counsel.

10. This application was granted on January 9, 2008.  As part of this hearing, the Court granted Anand until February 15, 2008 to retain new counsel and file a Reply to Ross' Motion to Dismiss.

11. On January 18, 2008, Ross sought an extension of time to file a joint status report and same was granted on same day extending Ross' time to February 1, 2008.  As part of the same Order, Anand now had until February 29, 2008 to seek new counsel and file a Reply to the aforementioned Motion.

12. Eventually, on May 15, 2008 Anand retained Albert Adam Breud, II, who on May 20, 2008 made application to stay these proceedings.  This application, together with Ross' Motion to Dismiss was referred to Magistrate Judge Reyes for a report and recommendation on May 23, 2008.

13. Between May 23, 2008 and June 16, 2008 letters were exchanged between the parties and the Court requesting extensions of time to submit the Motion, file Opposition papers as well as Reply papers.

14. On June 16, 2008 the Motion was referred to Magistrate Judge Reyes for a report and recommendation.

15. From June 16, 2008 to August 23, 2008 additional documents in support of and in opposition to Ross' Motion to Dismiss were exchanged between parties.

16. On March 27, 2009 Attorney Breud, II filed by Letter, a Motion seeking to be relived of counsel.

17. On March 31, 2009 an Order adopting in part the Report and Recommendations as to Ross' Motion to Dismiss was entered.  Said Order granted Ross' dismissal of the ADA claim for lack of subject matter jurisdiction.  Said granting was made with prejudice to refiling after Anand complied with the ADAs notice and administrative exhaustion requirements.  That part of

the Motion which sought dismissal as to the breach of contract claim, fraud and violation of New York Human Rights claims was granted. Anand's request to stay the proceedings was denied.

18. However, the Report and Recommendation was modified to provide Anand leave to file an amended complaint as to all claims within thirty (30) days of March 31, 2009.

19. On April 30, 2009 oral argument was heard on Attorney Breud's application to be relived of counsel. This application was granted and a status conference was scheduled for May 6, 2009 at 2:00PM.

20. On May 6, 2009, your deponent first appeared in this matter and made application to file an amended complaint to June 17, 2009. This application was granted and a briefing schedule was entered into at that time.

21. On June 17, 2009 your deponent's office requested an extension of time to file an amended answer. Over objection by Ross' counsel, and having submitted an amended complaint on June 17, 2009, the Court considered Ross' opposition moot.

22. Thereafter, this case proceeded predicated on the amended Summons and Complaint filed on June 17, 2009. *A copy of said Amended Complaint is annexed hereto as Exhibit "B"*.

23. On September 28, 2009, Ross filed a Motion to pursuant to 12(b)(1) and (6) seeking dismissal of the Amended Complaint. *A copy of said Motion is annexed hereto as Exhibit "C"*.

24. On May 7, 2010 oral argument was heard on Ross' Motion. The Court dismissed Dasrath's 1st, 3rd, and 4th causes of action. It was further Ordered that the parties are to proceed with discovery on Dasrath's breach of contract action. *A copy of said Order is annexed hereto as Exhibit "D"*.

25. On May 28, 2010, Ross served its Answer upon your deponent. *A copy of said Answer is annexed hereto as Exhibit "E"*.

26. Thereafter, the parties proceeded with Discovery.

27. On June 11, 2010 a Status Conference was held wherein it was ordered that Discovery is to close on October 29, 2010.

28. Thereafter depositions of Anand, Dr. Nancy Perri and Dr, Enrique Fernandez were held.

29. Subsequent to the depositions both sides requested documents from each other as a follow up to the respective depositions held herein.

30. It is to be noted that your deponent has made a demand upon Ross' counsel for Anand's actual exams, but to date a response has not been received although demand has been made via email to Justin Capuano, Esq. on February 24, 2011.

31. For the recitation of facts relevant to this matter, and so as not to burden the Court with repetition, your deponent respectfully refers the Court to the Affidavit of the Plaintiff, Anand.

32. For the applicable law in Support of Anand's Motion, your deponent refers this Court to the memorandum of law submitted herewith.

33. This Affirmation will supply relative facts taken from the various depositions held herein as well the procedural merits of this case.

## GROUNDS FOR BREACH OF CONTRACT

34. Dasrath's argument that Ross breached a contract arises from an implied contract which arose when Anand applied for, and was accepted to Ross to receive a degree in medicine.

35. Upon admission to Ross and registration for courses, an implied contract was created between the student and Ross. Namely, the student would pay tuition and Ross would educate, train and prepare him to complete his Medical Degree Program and become a licensed doctor.

36. Plaintiff paid his tuition and fees but Ross failed to fulfill its obligations to the point that it became destructive to Dasrath's intended career, which is briefly outlined below:

     1) Ross prepared Dasrath and allowed him to complete the Basic Science curriculum;

     2) Ross registered Dasrath for the AICM course in the spring of 2006, allowed him to complete the course on April 7, 2006, and issued a Certificate of Completion;

     3) Ross prepared Dasrath and allowed him to sit for and complete the NBME examination;

     4) Ross congratulated Dasrath and instructed him to sit for the USMLE Step I exam within the period May 1, 2006 through July 31, 2006;

     5) Through an application process, Ross certified Dasrath and sponsored him for the USMLE Step I exam;

     6) Thereafter, in several separate instances, Ross persisted on a path of destruction of Dasrath's medical career while there was an on going court case in the matter. This included but was not limited to, falsely accusing Dasrath of failure to complete the AICM course,

issuing an Administrative Withdrawal letter on false pretenses without any prior warning, and issuing a failing grade for a clinical clerkship course which does not exist in the state of Florida where the AICM course was allegedly taken; at an identified address which is in fact the office address of Dr. Enrique Fernandez, the Assistant Dean of Clinical Sciences of Ross. Additionally, Dr. Fernandez claimed he signed the clinical clerkship form but that "the handwriting part of the form" is not his.

7) A falsified Administrative Withdrawal letter was used to withdraw sponsorship of Dasrath for the USMLE Step I exam given on August 14, 2006, after the claimant had taken the exam on July 27, 2006.

8) Ross proceeded in an attempt to have the student barred from becoming a licensed doctor by supplying false and/or misleading information to the United States Medical Licensing Examinations/Examination Commission for foreign Medical Graduates (Hereinafter referred to as the "USMLE/ECFMG") USMLE/ECFMG Office.

37. At Dasrath's depostition, Ross produced court papers in which Ross attempted to claim that Dasrath was warned that his sponsorship for taking the USMLE Step I would be withdrawn. *A copy of said papers are annexed hereto as Exhibit "F".*

38. However, Ross was never able produce, whether at Dasrath's deposition or the depositions of Dr. Perri or Dr, Fernzndez, and as subsequent demands any proof whatsoever that Dasrath ever failed any part of the AICM course.

39. Nor was Ross able to produce documentation warning of an impending Administrative Withdrawal or impending withdrawal of certification and sponsorship for taking the USMLE Step I.

40. Thus, Ross has failed, and continues to fail to comply with the implicit terms of its responsibility to its students, in particular, Dasrath.

41. On January 9, 2008, the Honorable Judge Ramon Reyes ordered Dr. Nancy Perri, the Dean of Clinical Sciences of Ross at that time, to review the AICM grade issued to the Plaintiff. Dr. Perri issued a statement "concurring" with Dr. Fernandez's failing grade on January 24, 2008. *A copy of Dr. Perri's statement is annexed hereto as Exhibit "G".*

42. At the time, it was known that both Dr. Perri and Dr. Fernandez were aiding and abating each other in fabricating a failing grade in order to prevail in the on going lawsuit and to set Dasrath up for barring from medical licensure by the USMLE/ECFMG.

43. On March 26, 2008, the Hon. Judge Ramon Reyes ordered Dasrath to provide proof of passing all five certification courses to Ross, which he did in fact comply with on March 27, 2008.

### DR. PERRI'S DEPOSITION

44. At page 28 lines 12 through 16, Dr. Perri confirmed that after the student completes the AICM course they are then required to take the USMLE Step I. *A copy of the relevant portion of Dr. Perri's deposition is annexed hereto as Exhibit "H".*

45. In Dr. Perri's deposition, she could not substantiate reasons for issuing a failing grade and Ross' counsel claimed that they were not in possession of the proof of passing the five certification courses.

46. In fact, Ross, through its attorneys requested another copy of these certifications. *See Dep. of Dr. Fernandez P. 70 Lines 16-21. A copy of the relevant portion of Dr. Fernandez' deposition is annexed hereto as Exhibit "I".*

47. This request was complied with on March 27, 2008 when your deponent, via FedEx mailed a copy of said certifications on March 27, 2008.

48. Furthermore, this request was complied with when Ross was sent an interrogatory for a second time. *A copy of said Interrogatories are annexed hereto as Exhibit "J".*

49. It was again requested in Plaintiff's Demand for Documents dated October 22, 2010 and propounded on Ross' counsel. *See Exhibit "J".*

50. Ross repeatedly denied having the copies. Ross's counsel even furiously opposed the surfacing of this "review" by Dr. Perry stating that it was not intended for court. Obviously, this review was a hoax.

51. On August 11, 2010, on demand, Ross produced a Clinical Clerkship Evaluation. It is argued herein that this Clinical Clerkship Evaluation is not possible for Dasrath to have received given his status as a student during the time he allegedly participated in said Clerkship. *A copy of the Clinical Clerkship Evaluation is annexed hereto as Exhibit "K".*

**DR. FERNANDEZ'S DEPOSITION CONFIRMED THAT PLAINTIFF COMPLETED THE AICM COURSE AND THAT THE FAILING "CLINICAL CLERKSHIP EVALUATION" WAS A FABRICATION**

52. Regarding the AICM grade, Dr. Fernandez was asked at his deposition on page 12, line 10, "When is the grade given?" to which he answered in lines 11 to 12 of the same page, "It is given approximately two weeks after the conclusion of the course." *A copy of the relevant portion of Dr. Fernandez' deposition is annexed hereto as Exhibit "L".*

53. This time interval excluded the failing "Clinical Clerkship Evaluation" submitted on June 23, 2006 and stamped June 27, 2006. *See Exhibit "K".*

54. The Administrative Withdrawal letter was issued on June 29, 2006. Thus, the allegedly failing grade issued on June 23, 2006 would serve to facilitate it.

55. In essence, because Ross excluded the fabricated Clinical Clerkship Evaluation, it is able to exclude the other grade submissions, thus negating the effect of the Clinical Clerkship Evaluation.

56. This includes the April 22, 2006 internet posting of a failed grade, the April 24, 2006 Memorandum supporting a failed grade, the June 23, 2006 defamed "Clinical Clerkship Evaluation" itself and any other earlier or later fabrications such as the spread sheet that surprisingly emerged on Dr. Fernandez's deposition on October 21, 2010. *A copy of the spreadsheet is annexed hereto as Exhibit "M".*

57. As further proof that Dasrath could not have failed the AICM course, Dr. Fernandez testified, on page 13, lines 20 to 21 that Dasrath "Completed 12 weeks of Advanced Introduction to Clinical Medicine." *A copy of the relevant portion of Dr. Fernandez' deposition is annexed hereto as Exhibit "N".*

58. Again on page 14 lines 13 to 14 Dr. Fernandez admitted, "He completed 12 weeks of Advanced Introduction to Clinical Medicine." *A copy of the relevant portion of Dr. Fernandez' deposition is annexed hereto as Exhibit "O".*

59. For a third time on page 42, lines 19 to 21 Dr. Fernandez was asked, "In order to be able to sit for the USMLE Step one, obviously he had to pass the AICM?" to which Dr. Fernandez replied on page 42, line 22, "Yes." *A copy of the relevant portion of Dr. Fernandez' deposition is annexed hereto as Exhibit "P".*

- 7 -

60. For a fourth time on page 43 line 24, Dr. Fernandez was asked, "Dr. Fernandez, in order to sit for the USMLE a student has to be certified in the AICM, correct?" to which Dr. Fernandez replied on page 44 line 3, "A student has to pass AICM." *A copy of the relevant portion of Dr. Fernandez' deposition is annexed hereto as Exhibit "Q".*

61. It is therefore conclusive that the Plaintiff did indeed complete the AICM course; which in turn allowed Ross to sponsor Dasrath to sit for and take the USMLE Step I on July 27, 2006.

62. Regarding the fabricated failing Clinical Clerkship Evaluation dated June 23, 2006 and stamped June 27, 2006 Dr. Fernandez was asked on page 56 lines 5 to 6, "Was he (Dasrath) enrolled in Clinical Clerkship?" to which Dr. Fernandez replied, "No." *A copy of the relevant portion of Dr. Fernandez' deposition is annexed hereto as Exhibit "R".*

63. Again on page 56 lines 20 to 21 Dr. Fernandez was asked, "Was Mr. Dasrath ever assigned to a hospital for Clinical Clerkship?" to which Dr. Fernandez replied "No." *See Exhibit "R".*

64. Therefore, Dr. Fernandez has admitted that Dasrath was never enrolled in a Clinical Clerkship course; nor did he complete a Clinical Clerkship course in a hospital. It is conclusive that the Clinical Clerkship course was fabricated. This explains why Ross cannot produce any of the examination papers it claims shows a failing grade. Instead, Ross has produced these spread sheets, which in reality, are nothing more than fabrications.

65. These fabrications include the April 22, 2006 failing grade, which, in violation of FERPA was posted on the internet; the April 24, 2006 Memorandum in support of the alleged failing grade; the June 22, 2006 Clinical Clerkship Evaluation stamped June 27, 2006.

66. On December 17, 2010 your deponent, as a follow up to Dr. Fernandez' deposition, propounded a demand for the *actual* exams taken by Dasrath. *A copy of said demand is annexed hereto as Exhibit "S".*

67. To date, these examinations have not been provided. The reason is simple. Ross is not able to produce an exam reflecting a failing grade for it does not exist. However, if such an exam is produced, Dasrath is requesting that this exam together with the questions be reviewed by an independent medical school at his cost.

68. In Dr. Fernandez's deposition he could not substantiate the Clinical Clerkship Evaluation certification. This "Clinical Clerkship Evaluation," allegedly incorporates all of Dasrath's failing grades into a failing grade issued for the AICM course.

69. However, Dasrath testified at his deposition that he took the AICM course in Miami, Florida, but he was not registered for any Clinical Clerkship course and did not do a Clinical Clerkship course there. *See Pl. Dep. P.71 Lines 23 - 24. A copy of the relevant portion of Dasrath's deposition is annexed hereto as Exhibit "T".*

70. Furthermore, Dasrath was not registered by Ross to do the Clinical Clerkship Course. It is clear that the form used to report his grade is a deliberate attempt to fabricate a failing grade in a manner that is difficult to challenge since clinical clerkship grading is a subjective process depending on the personal opinion of the instructor and not subjected to objective challenges as can be seen on the grading procedure indicated on the form itself.

71. On page 59, lines 3-4, of his deposition, Dr. Fernandez admitted that he signed the form but that he was never an instructor to any clinical clerkship course as the form stated, making the grade evaluation a total fabrication. *A copy of the relevant portion of Dr. Fernandez' deposition is annexed hereto as Exhibit "U".*

72. As per pages 5 to 6 of the Student Handbook regarding grading, Ross had an obligation to accurately report student grades. *A copy of the relevant portion of the handbook is annexed hereto as Exhibit "V".*

73. Thus, it cannot be disputed that Ross is in breach of contract.

74. Upon information and belief, Dr. Fernandez is Board Certified in the field of Family Practice but has never been Dasrath's clinical instructor in Family Practice in any hospital. This because Dasrath has never registered to do or ever did any Family Practice Clinical Clerkship yet. *See Pl. Dep. P. 56 Lines 20-21. A copy of the relevant portion of Dasrath's deposition is annexed hereto as Exhibit "W".*

75. The hospital implicated in the form was identified as the Greater Miami Health Education & Training Centers (Hereinafter referred to as the "HETC Hospital."). Upon information and belief, there is no such hospital in the state of Florida, the alleged state of the Clinical Clerkship.

76. The address used for the "HETC Hospital," 7000 SW 62nd Avenue, PH-A, Miami, Florida, 33143, is in fact, Dr. Fernandez's private penthouse office (this is what PH-A refers to)

in an office building. At Dr. Fernandez's deposition, page 4, lines 13-14, and again on page 59 lines 10-11, Dr. Fernandez admitted that this address is his office address. This is not a hospital's address. *A copy of the relevant portion of Dr. Fernandez' deposition is annexed hereto as Exhibit "X".*

77. Because such a hospital does not exist, it is not possible for Dr. Fernandez to have been the "Director of Medical Education" as he has stated on the evaluation form.

78. At his deposition, page 7 lines 4-5, Dr. Fernandez testified that he was the Assistant Dean of Clinical Sciences at Ross University School of Medicine, and not the Director of Medical Education as set forth on the HETC evaluation form. *A copy of the relevant portion of Dr. Fernandez' deposition is annexed hereto as Exhibit "Y".*

79. At the very least, Dr. Fernandez has misrepresented himself in furtherance of Ross' intention to issue Dasrath a failing grade in the AICM course.

80. Ross claims that it employs "professional educators". Therefore it has an obligation to accurately report Dasrath's grade. Ross, by its very own actions breached this obligation.

81. Considerable effort appears to have gone into the fabrication of the Clinical Clerkship Evaluation form. In the Comment section of said form, Dr. Fernandez made comments as if he was a clinical instructor supervising a clinical clerkship student in a hospital, which Dasrath was not.

82. It should be noted that he made subjective comments by handwriting in the same way that a clinical instructor in a hospital who does not have access to Ross's computer system via a log-on ID and password would.

83. It should also be noted that upon information and belief Dr. Fernandez does have access to Ross's computer system via a log-on ID and password. Furthermore, other parts of the form were filled in by computer, and Dasrath's photograph was generated by computer from Ross's roster of student IDs. In fact, these forms are printed in triplicate copies, and the individual sheets are white, yellow and blue. One sheet, the top white copy is for Ross's Registrar's Office in New Jersey, as stated on the form, one sheet is for the student, and one sheet is for the hospital at which the student completed the clinical clerkship.

84. In this particular case, it would appear that Ross produced a single copy and dated it June 23, 2006 and entered it into the Plaintiff's student record on June 27, 2006

85. Numerous inconsistencies with regard to this form point to a grade fabrication scheme perpetrated by Ross. First, the clinical clerkship grading sheet is dated June 23, 2006. However, a note at the bottom of the same form states "must be returned within 1 month of completion of the rotation."

86. The AICM course was completed on April 7, 2006. June 23, 2006 is more than two months after the completion of the AICM course.

87. Second, since Dasrath did not take the USMLE Step 1 until **July 27, 2006,** and a USMLE Step I licensure must be obtained before beginning a clinical clerkship course, how could Dasrath have even been registered for a clinical clerkship rotation? At page 60, lines 5-7 of his deposition, Dr. Fernandez changed his testimony knowing that the Plaintiff was an AICM student. *A copy of the relevant portion of Dr. Fernandez' deposition is annexed hereto as Exhibit "Z".*

88. Third, if this form was genuine, where are the other two sheets of the triplicate document? The alleged HETC Hospital does not exist in the state of Florida; nor did Dasrath ever receive one.

89. Fourth, if Dasrath had indeed failed the AICM, how could he have obtained certification on May 5, 2006 to sit for the USMLE Step I Exam given on July 27, 2006? It would not be possible for Ross to issue such a certification unless Ross was setting him up and thus precluding him from the USMLE Office. This feat was almost accomplished but if not for an appeal filed by Dasrath.

90. Fifth, why would the Administrative Withdrawal letter state "Withdrawn from Ross University School of Medicine for failure to register for the May 2006 AICM course" after the student had completed the AICM on April 7, 2006 and received a Certificate of Completion. That statement in the Administrative Withdrawal letter does not stand to reason.

A30

**ARGUMENTS IN SUPPORT OF THE ADMINISTRATIVE WITHDRAWAL
LETTER
BEING FALSE AND MISLEADING IN NATURE**

91. In the first sentence of the Administrative Withdrawal, it states "Effective immediately, you have been administratively withdrawn from Ross University School of Medicine for failure to register for the May 2006 AICM course." *See Exhibit "A1"*. Not only is this statement false, but it is also misleading for the following reasons:

    1) This letter is "effective immediately" and NO prior warning was issued. At the time this letter was issued, Dasrath was enrolled as a student at Ross. As such, he depended on the guidance of Ross for progression and completion toward his M.D., and ultimately for the ability to sit for the state licensing board

    2) The letter is dated June 29, 2006 and in Ross' Student Handbook of Academic Rules and Regulations (Student Handbook), it is stated at page 9, "Following the 12-week AICM, there is a 17-week scheduled break during which students remain fully enrolled." As of April 7, 2006, the Plaintiff had already completed the AICM course. It is quite obvious that June 29, 2006 falls within this 17-week period. Therefore, Ross breached the regulations as set forth by the Student Handbook. *A copy of the relevant portions of the Student Handbook is annexed hereto as Exhibit "B1"*.

92. In the third sentence of this letter, it is stated, "In order for a student to remain enrolled at RUSM, (Ross) they must either be registered for courses and/or registered for the Boards." Indeed, Dasrath was at the time registered for the USMLE Step I, which is referred to here as the "Boards." And as stated in the previous sentence, students must "pass USMLE Step I before advancing into the clinical curriculum."

93. It is further stated at page 13 of the Student Handbook that "students are required to take and pass the USMLE Step I in no more than three attempts and within one calendar year of becoming eligible." In her deposition on page 57, lines 8-13, Dr. Perri verified that the approved period in which Dasrath was supposed to sit for the USMLE Step I for the first time was May 1 to July 31, 2006. *A copy of Dr. Perri's relevant portion of her deposition is annexed hereto as Exhibit "C1"*.

94. On March 20, 2006 and again on April 27, 2006, Ross certified and sponsored him to sit for the USMLE Step I exam to be given on July 27, 2006. *A copy of the Certifications are annexed hereto as Exhibit "D1".*

95. Indeed, the Plaintiff took the exam on July 27, 2006 as stipulated by Ross.

96. In sentence four of the Administrative Withdrawal letter, it is stated, "Once a student becomes inactive, they are administratively withdrawn from RUSM (Ross)". However Dasrath was not inactive, but was instead, preparing for the USMLE Step I like the other students in the class. *See Pl. Dep. P.131 Lines 3-6. A copy of the relevant portion of Dasrath's deposition is annexed hereto as Exhibit "E1".*

97. In reality, the administrative withdrawal letter, in conjunction with the certification and sponsorship to take the USMLE Step I became a well calculated plan to preclude Dasrath from achieving his goal of becoming a medical doctor.

98. It is undisputed that Dasrath complied with Ross's stipulation that he take the USMLE Step I as certified, sponsored and, not only upon the recommendation of Dr. Fernandez but also as directed by Ross. However, his certification and sponsorship was withdrawn on August 14, 2006; at about the same time his score was scheduled to be released.

99. On August 14, 2006 Ross issued a letter to the ECFMG stating that he is "no longer eligible, withdrawn." *A copy of said letter is annexed hereto as Exhibit "F1".*

100. If Dasrath had not taken the USMLE Step I when directed to do so by Ross, then Ross would have also been left with the option of administratively withdrawing him for exhausting the time period allocated for taking the USMLE Step I; in this case, May 1, 2006 to July 31, 2006. In that instance, a student may not have been readmitted upon re-application for re-admission on the grounds of being "inactive"; which Ross indicated in the fourth sentence of the Administrative Withdrawal letter.

101. Thereafter, Ross submitted false and/or misleading information to the ECFMG in an attempt to permanently preclude Dasrath from obtaining his medical degree. It is to be noted that he has appealed this issue. The outcome of that Appeal is stayed pending the outcome of this action.

102.     Furthermore, Ross forwarded the application documents to the ECFMG office in Philadelphia, Pennsylvania. By doing so, Ross has certified to this governing body that the Dasrath was and is eligible to sit for the USMLE Step I exam.

103.     Ross confirmed that all three requirements as stated on page 13 of the Student Handbook were checked and satisfactorily complied with. Otherwise, Dasrath could not have been certified to take the USMLE Step I. Thus, he was left with no other choice but to follow the instructions of Ross. *A copy of the relevant portions of the handbook are annexed hereto as Exhibit "G1".*

104.     Ross posted a failing grade for the Plaintiff on the Internet on or about April 22, 2006. *See Exhibit "".* However, this grade is not valid for the following reasons:

        1) The grade was posted on the Internet and Ross "follows the guidelines of the US Family Educational Rights and Privacy Act (FERPA)" as stated on page 25 of the Student Handbook. FERPA stipulates that student grades may not be posted on the Internet as it violates the students' privacy;

        2) The grade distribution did not list any failing grades for the class. It would be inaccurate and misleading for Dasrath to be in the class and not have his grade listed regardless of whether he passed or failed;

        3) As previously stated, at page 25 of the Student Handbook, FERPA stipulates that a student has "the right to request the amendment of the student's education records that the student believes are inaccurate and misleading" which Dasrath had already done by informing Dr. Fernandez of the inconsistencies. The above facts were testified to by Anand at his deposition. *See Exhibit "H1".*

105.     It must also be emphasized that Ross has adopted FERPA, as stated on page 25 of the Student Handbook. In this case the AICM course grade can no longer be retrieved from the internet. Thus, Ross has violated FERPA, breached the Student Handbook Regulation regarding its commitment to student privacy, and is therefore in breach of contract with the student for violation of Title 9, of the United States Education law.

106.     Concerning the memorandum that surfaced on November 22, 2006, if in fact this memorandum was written on April 24, 2006, it should have been released to Dasrath shortly thereafter. This was never done.

- 14 -

107.     In addition, if the aforementioned memorandum did exist on April 24, 2006, it is in violation of the FERPA, which Ross has adopted on page 25 of the Student Handbook, since more than forty-five (45) days had elapsed from its alleged writing and placement in the Plaintiff's student record on April 24, 2006 and it surfacing for the first time on November 22, 2006.

108.     In the memorandum, it is stated "Dr. Fernandez told Dasrath he would have to repeat the semester," implying that the Plaintiff failed the AICM course. This is invalid for several reasons.

    1)  Dr. Enrique Fernandez himself issued the certificate of completion for the AICM Course. *A copy of the certificate of completion is annexed hereto as Exhibit "I1".*

    2)  Furthermore, as stated above, Dasrath was issued a Certification and Sponsorship by Ross to take the USMLE Step I on July 27, 2006, and did so on said date. It was not until August 14, 2006, that this Certification was withdrawn. Thus Ross has breached its own regulations and in doing so has breached its contract with Anand.

109.     In conclusion, it is stated in the Administrative Withdrawal letter at the second sentence, "RUSM (ROSS) policy dictates that students must successfully complete the AICM course, and pass the USMLE Step I exam before advancing into the clinical curriculum."

110.     Since the Plaintiff was not USMLE Step I licensed in the Spring of 2006, it was not possible that the Plaintiff could have done a Clinical Clerkship Course. Therefore, the failing Clinical Clerkship Evaluation issued to the Plaintiff as stated above is fictitious. This was already proven above.

111.     Furthermore, the Certification and Sponsorship by the Registrar's Office for the Plaintiff to take the USMLE Step I was appropriate. The fulfilling of the requirements to take the USMLE Step I exam as stated on page 13 of the Student Handbook was accomplished and now the wording of the Administrative Withdrawal letter confirms that the Plaintiff could not have failed a Clinical Clerkship Course because he could not have taken a Clinical Clerkship Course without having passed the USMLE Step I exam.

112.     Therefore, the failing Clinical Clerkship grade was a fabrication. As such, Ross was not justified in withdrawing its certification and sponsorship of Anand in sitting for the USMLE Step I exam.

- 15 -

113.     Ross therefore could not have been justified in issuing an Administrative Withdrawal letter based on a fictitious failing clinical clerkship evaluation for which Dasrath was not only not registered to do, but did not pay tuition for this clerkship; did not take the clerkship at an alleged hospital; and, was not licensed for said clerkship.

114.     Also, at the deposition of Dr. Fernandez, he testified that he did not supervise Dasrath for any clinical clerkship course. *See Dep. of Dr. Fernandez P.56 Lines 4-6. **See Exhibit "R"**.*

115.     Further, the failing Clinical Clerkship Evaluation is in violation of Ross' grading procedure outlined at pages 5 to 6 of the Student Handbook.  Said procedure implies fairness and accuracy in grading, not arbitrary and fictitious grading.

116.     Thus, Ross had an obligation to accurately report the Plaintiff's AICM grade but failed to do so.  It has used a failing fictitious clinical clerkship grade as reason to issue an Administrative Withdrawal letter which is therefore unfounded, then used this unfounded Administrative Withdrawal letter to as reason to withdraw certification and sponsorship of Dasrath for taking the USMLE Step I exam which he had taken weeks prior to the issuance of said letter.

117.     The intended goal of Ross was to block the release of Dasrath's score and thereby preclude him from achieving his goal of becoming a medical physician, contrary to the reasons of why he made application to Ross.

118.     In light of the foregoing, it is respectfully requested that the Court grant the Plaintiff's Motion in its entirety.

119.     No prior application for the relief sought herein has been made.

**A35**

**WHEREFORE,** Plaintiff requests that this Court grant his motion in its entirety and for the costs and disbursements of this action and for such other and further relief as this Court deems just and proper.

Dated:    Brooklyn, New York
           March 2, 2011

COSTELLO & COSTELLO, P.C.
BY:   JOSEPH R. COSTELLO
Attorneys for the Plaintiff
5919 20th Ave.
Brooklyn, N.Y. 11204
(718) 331-4600
Our File No. 6970

**A36**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT COURT OF NEW YORK
-------------------------------------------------------------X   Case No. 07-2433
ANAND DASRATH,

                              Plaintiff,

                                                    PLAINTIFF'S AFFIDAVIT IN SUPPORT
        --against--                                 OF MOTION FOR SUMMARY
                                                    JUDGMENT

ROSS UNIVERSITY SCHOOL OF MEDICINE

                              Defendant.
-------------------------------------------------------------X
STATE OF NEW YORK    )
                     )  SS.:
COUNTY OF KINGS      )

        ANAND DASRATH, being duly sworn deposes and says:

    1.  I am the Plaintiff in the above entitled matter and submit this Affidavit in Support of my

Motion for Summary Judgment pursuant to the Federal Rules of Civil Procedure - Rule 56 and

for such other and further relief as this Court deems just and proper.

    2.  In the spring of 2003 I applied to Ross University School of Medicine (Hereinafter

referred to as "ROSS"). *See Pl. Dep. at PP. 11 Lines 22-25 P. 12 Lines 1-3. A copy of the*

*relevant portions of my Deposition is annexed hereto as Exhibit "J1".*

    3.  My goal in applying to Ross was to become a medical doctor.

    4.  I thereafter submitted an application form and college transcript.

    5.  Later in the spring of 2003, I received an acceptance letter from Ross. *A copy of said*

*acceptance letter is annexed hereto as Exhibit "K1".*

    6.  Although I was accepted to begin classes at Ross beginning in May 2003, I had to defer

said acceptance due to a death in my family. Therefore, my studies with Ross did not begin until

May 2004. *See Pl. Dep. at P. 14, lines 10-24. A copy of the relevant portions of my Deposition*

*is annexed hereto as Exhibit "L1".*

    7.  Beginning in May 2004, I began my studies with Ross at its campus in Dominica,

specifically, in its medical school program.

A37

8. My first semester studies consisted of basic science courses; which entails the theoretical part of medicine. *See Pl. Dep. at P. 16, lines 5-14. A copy of the relevant portions of my Deposition is annexed hereto as Exhibit "M1".*

9. I also took Biochemistry, Medical Genetics, Histology and Patient Doctrine Society.

10. The semester ended at the beginning of August, 2004. At the end of this semester, I was issued a final grade in genetics of "B plus". I was thereafter on break until the next semester. *A copy of my transcript reflecting this grade is annexed hereto as Exhibit "N1".*

11. When I returned to campus after the recess, I was issued a failing grade in Genetics. However, I was not given a reason for such failing grade. *See Pl. Dep. at P 18, Lines 2-25. A copy of the relevant portions of my Deposition is annexed hereto as Exhibit "O1".*

12. At the beginning of the next semester, my second semester, I made several attempts to discuss this grade with Dr. Houghton. When I was finally able to meet her to discuss this failing grade, she essentially laughed in my face and said that there is nothing she can do about it. *See Pl. Dep. at PP. 24-Lines 13-25; P. 25, Lines 1-21. A copy of the relevant portions of my Deposition is annexed hereto as Exhibit "P1".*

13. Not being satisfied with this response, I spoke to Dr. Larsen, who, at the time was in charge of the Genetics department. After explaining my issue to him and showing him my transcript, he stated that he did not assign a failing grade to me for this course. *See Pl. Dep. at PP. 25-Lines 22-25; P. 26, Lines 1-16. A copy of the relevant portions of my Deposition is annexed hereto as Exhibit "Q1".*

14. After several more attempts to discuss this alleged failing grade with others at Ross, I was able to meet and speak with Dr. Meisenberg, the Chairman of the Biochemistry Department, under which the Genetics department is administered. He accompanied me to the Examination Center, where I met Dr. Desalu, the individual responsible for the administration of the Examination Center.

15. At this time, Dr. Desalu informed Dr. Meisenberg that there seems to be a problem with my grade.

16. He then told Dr. Meisenberg that he "doesn't' follow their procedures". *See Pl. Dep. at P. 29 Lines 13-25. A copy of the relevant portions of my Deposition is annexed hereto as Exhibit "R1".*

- 2 -

17. By the tone of Dr. Desalu's voice, it became obvious to me, that I was not going to be able to resolve this issue. At this time, Dr. Meisenberg asked Dr. Desalu and I to leave the office.

18. I thereafter completed semesters two through four at Ross.

19. The first four semesters at Ross constitute the Basic Science Curriculum.

20. Usually, within two (2) weeks after the completion of a semester, I would receive a final transcript in the mail.

21. If I had an issue with any of my grades, I would attempt to contact Dr. Deaslau or Dr. Alemdia, my student advisor. On each occasion, I was rebuffed at trying to have my issue resolved. In fact, on several occasions I was asked to leave the office. At times I was told not to make an issue of my grades because I could be kicked out of the School.

22. In September 2005, I started my fifth semester, which happens to be the last semester of the Basic Science Curriculum. During this semester I took Introduction to Clinical Medicine (ICM), Pathology 2, Microbiology/Immunology 2 and, Pharmacology 2.

23. After completing my fifth semester in December of 2005, I left Dominica and returned to my home in Queens, New York.

24. I was issued an incomplete grade for the ICM course.. However, I did not learn of this until after I received my transcript, which by then, I was back home.

25. In January of 2006 I reported to Ross' campus in Miami, Florida. It was here that I was to begin my fifth semester at Ross. This semester consisted of the Advanced Introduction to Clinical Medicine program (Hereinafter referred to as the "AICM").

26. The AICM was taught by several professors, including Dr. Enrique Fernandez.

27. Exams for the AICM were based on five (5) different certification tests, which were scan-tron tests as well as a practical portion wherein a student would work on plastic human beings so as to give the student the feeling of working on a human being.

28. On or about March 6, 2006 I sat and passed the National Board of Medical Examination (Hereinafter referred to as the "NBME").

29. In as much as I received a certification for each component of these scan-tron and practical exams, it was presumed that I passed each component of the AICM. To the best of my knowledge, no points were allocated for the clinical portion of the class. *See Pl. Dep. at P. 74*

- 3 -

*Lines 19-25. A copy of the relevant portions of my Deposition is annexed hereto as Exhibit "S1".*

30. On March 12, 2006, at the recommendation of Dr. Fernandez, I made application to sit for the United States Medical Licensing Exam Step I (Hereinafter referred to as the "USMLE Step I exam"). *See Pl. Dep. P. 132 Lines 9-13. A copy of the relevant portions of my Deposition is annexed hereto as Exhibit "T1".*

31. This application was certified by Ross' Registrar's office where students are maintained, upon completion of a course, certified. Therefore, Ross had sponsored me to take the USMLE Step I exam and forwarded my application to the governing body that administers the licensing examinations, to wit: United States Medical Examinations/Educational Commission for Foreign Medical Graduates (Hereinafter referred to as the USMLE/ECFMG").

32. However, this application was rejected because the governing body of the USMLE Step I exam, was not able to verify my date of birth. *See Pl. Dep. P. 133 Lines 2-11. A copy of the relevant portions of my Deposition is annexed hereto as Exhibit "U1".*

33. Therefore, on May 5, 2006, Ross' Registrar's office again reviewed my file, determined that I was eligible to sit for the exam and therefore certified and sponsored me to sit for the exam. Thereafter, Ross, again forwarded the application to the USMLE/ECFMG. *See Exhibit ""*.

34. On or about April 7, 2006, I completed the AICM course in Miami. I then received a Certification of Completion, and thereafter returned home. *See Pl. Dep. at P. 79 Lines 6-11. A copy of the relevant portions of my Deposition is annexed hereto as Exhibit "V1".*

35. According to the Ross' Student Handbook of Academic Rules and Regulations (Hereinafter referred to as the "Student Handbook"), at page 9, it is stated, "following the 12 week AICM, there is a 17 week-scheduled break during which students remain fully enrolled". *See Pl. Dep. P. 141 Lines 7-18. A copy of the relevant portions of my Deposition is annexed hereto as Exhibit "W1".*

36. It was after the completion of the AICM course that my 17 week recess, in which I remain fully enrolled, as a student at Ross began. *A highlighted copy of the relevant portion of page 9 is annexed hereto as Exhibit "X1".*

**A40**

37. According to the Student Handbook, at page 13, before a student is eligible to sit for the USMLE Step I exam, one must pass the Basic Science Curriculum, the NBME and the AICM. *See Exhibit "C1"*.

38. Having completed the Basic Science Curriculum, the AICM for which Ross issued a Certificate of Completion and the NBME, upon which Ross issued instructions to take the USMLE Step I Exam between May 1, 2006 - July 31, 2006 for the first time.

39. Upon the recommendation of Dr. Fernandez, the course director of the AICM, I completed and submitted the necessary application forms along with a $695 application fee for the exam. Thereafter, Ross Certified and sponsored me for the USMLE Step I exam on July 27, 2006. At page 13 of the Student Handbook it is stated, "Students are required to take and pass the USMLE Step I in no more than three Attempts."

40. Between April 22, 2006 and May 22, 2006 my official academic transcript did not reflect my official AICM grade, although I had requested a copy of same. *See Pl. Dep. P.118 Lines 12-24. A copy of the relevant portions of my Deposition is annexed hereto as Exhibit "Y1"*.

41. Furthermore, the scores for the AICM are not reflected on the transcript.

42. Based upon my knowledge of academic transcripts being released in a timely fashion, the posting of this grade should have been completed within two (2) weeks of the completion of the AICM. Both Dr. Perri and Dr. Fernandez confirmed this at their depositions. When asked how long it takes to receive the grade after completion of the course, in her deposition at page 46 line 25, Dr. Perri stated, "A week or two" and when Dr. Fernandez was asked in his deposition at page 12 lines 11 to 12 he stated, "It is given approximately two weeks after the conclusion of the course." *A copy of the relevant portions of their transcripts are annexed hereto as Exhibit "Z1"*.

43. Furthermore, the posting of grades within two (2) weeks of completion of a course is consistent with Ross' rules, regulations and policies as they are posted on the Registrar's door in Dominica. *See Pl. Dep. PP. 119 -120 Lines 23-24. A copy of the relevant portions of my Deposition is annexed hereto as Exhibit "A2"*.

44. On or about August 14, 2006 I received my academic transcript in the mail. In the transcript, a grade of "F" was given for the AICM course. This grade was inconsistent with

having received a Certification of Completion of said course as well as what I expected based upon my performance in the course.

45. According to Ross' polices, completion of the AICM is a predicate for Ross to issue a certification and offer a sponsorship of a student to sit for the USMLE Step I exam. *See Exhibit "D1"*.

46. On the same date, August 14, 2006, Ross issued a letter to the USMLE/ECFMG office stating "No longer eligible, withdrawn". *See Exhibit "F1"*.

47. However, on or about April 22, 2006 Ross had posted a failing grade for this course on a website called Devryu.net which had not been available to me prior to this date; nor is it available to me now.

48. Prior to this date I was not aware that grades were available to a student at this website.

49. The posting of grades on Ross' website does not comply with Ross' Regulations stated on Page 25 of the Student Handbook wherein it is stated that Ross adopts the Family Education Rights and Privacy Act (Hereinafter referred to as "FERPA"). *A highlighted portion of Ross Regulations is annexed hereto as Exhibit "B2"*.

50. According to FERPA, the posting of a student's grades on the internet is unlawful and, it violates student confidentiality. The reason FERPA does not consider the release of students' grades via the Internet as valid is because there is no way of ensuring the confidentiality of a student's grade once it has been released in this fashion.

51. It is to be noted that Ross refers to grades being posted on e-college. I am not aware of e-college, nor am I familiar with its application. *See Pl. Dep. at P. 89 Lines 14-18. A copy of the relevant portions of my Deposition is annexed hereto as Exhibit C2""*.

52. The grade that I was questioning was on Dervyu.net.

53. Although I was not able to print out the website page from Devryu.net, I attempted to contact Dr. Fernandez. *See Pl. Dep. at P. 79 Lines 19-25. A copy of the relevant portions of my Deposition is annexed hereto as Exhibit "D2"*.

54. On or about April 22, 2006 I emailed Dr. Fernandez questioning what grade I was given in the AICM course. Specifically, I requested that he check my grade for my EPI/Biostatic grade as I had not been provided with an upgraded grade.

- 6 -

55. Later that month, I was able to speak to Dr. Fernandez and I asked him to please look into the grade as I believed that I had not failed any part of the course. This was especially true since I received five (5) certifications in the AICM course. *See Pl. Dep. at P. 80 Lines 5-20. A copy of the relevant portions of my Deposition is annexed hereto as Exhibit "E2".*

56. Dr. Fernandez refused my request. *See Pl. Dep. at P. 82 Lines 18-25. A copy of the relevant portions of my Deposition is annexed hereto as Exhibit "F2".*

57. I therefore contacted Dr. Perri and requested that she too, look into the grade. *See Pl. Dep. at PP.83 84 Lines 18-13. A copy of the relevant portions of my Deposition is annexed hereto as Exhibit "G2".*

58. Dr. Perri indicated that she would do so. However, I never heard from her again although several attempts were made to contact her via email, and by phone.

59. In fact, when I telephoned her office in New Jersey, her secretary Judi would answer the phone. When I asked to speak to Dr. Perri, I would hear Judi call out, "Dr. Perri, Anand Dasrath is on the phone again". I would then would overhear someone I believed to be Dr. Perri respond, "tell him that I am in Dominica. This happened on more than one occasion. *See Pl. Dep. at P. 85 Lines 5 23. A copy of the relevant portions of my Deposition is annexed hereto as Exhibit "H2".*

60. Thereafter, I emailed Dr. Perri telling her that there is still an issue with my AICM grade. I again requested that she look into this issue. Eventually Dr. Perri replied stating that she would do so when she returned from Dominica. Of course, this never came to fruition. *See Pl. Dep. at P. 86 Lines 3-21. A copy of the relevant portions of my Deposition is annexed hereto as Exhibit "I2".*

61. This type of behavior was confirmed by fellow students Bahar and Anish, whose last names I do not recall. *See Pl. Dep. at P. 87 Lines 2-15. A copy of the relevant portions of my Deposition is annexed hereto as Exhibit "J2".*

62. Moreover, the posted failing grade was a fabricated grade that Ross cannot substantiate as will be set forth herein.

63. On July 27, 2006 I sat for the USMLE Step I exam. At no time prior to this date did Ross issue a failing grade for the AICM course via my academic transcript. Nor did Ross' Bursar issue a second bill to re-take the AICM course; nor did any concerned party attempt to withdraw

certification and sponsorship of me for taking the USMLE Step I exam. Several weeks after taking the exam, on August 14, 2006, is when Ross withdrew its certification and sponsorship of me for the USMLE Step I exam.

64. On or around November 22, 2006, Ross produced a memorandum dated April 24, 2006, which states amongst other things, that Dr. Fernandez conferred today by telephone with Anand Dasrath about the failing grade he earned for the fifth semester. *A copy of said memorandum is annexed hereto as Exhibit "K2".*

65. Prior to November 22, 2006, the Plaintiff did not have knowledge of this memorandum. In fact, I testified at my deposition that the first time I saw this memorandum was when the case was pending in the Supreme Court of Queens County. *See Pl. Dep. PP. 99 100 Lines 20-24. A copy of the relevant portions of my Deposition is annexed hereto as Exhibit "L2".*

66. This deprived me of my right in knowing what was in my school record, if it was actually in the school records, or maybe it was fabricated. Whatever the reason, Ross again violated the Student Handbook at page 25 wherein it is stated that, "The University follows the guidelines of the U.S. Family Educational Rights and Privacy Act.

67. Therefore, the failure to post my grade in the AICM was an impediment to my completion of my studies at Ross.

68. In addition, Ross cannot claim that I failed the AICM based upon its own registration process.

69. When I failed the genetics class during my first semester, I had to re-take said class. However, I did not register for the class. Rather, Ross registered me for the class, and sent me a bill. Upon payment of the bill, I become registered for the class. *See Pl. Dep. P.126 Lines 6-23. A copy of the relevant portions of my Deposition is annexed hereto as Exhibit "M2".*

70. At Ross, students do not have access to registration procedures. Rather, Ross decided if a student should be registered, and if so, for what class(es). The students' obligation is only to remit payment for said course.

71. At the end of the April 2006 semester, and after I had already completed the AICM course, I was issued a Certificate of Completion by Dr. Fernandez, the Course Director. At no point in time after this did I receive an invoice. Therefore, it was not possible that I failed the course. Therefore, there would be no reason for me to re-take the class. *See Pl. Dep. PP.126-*

*127 Lines 16-24.* ***A copy of the relevant portions of my Deposition is annexed hereto as Exhibit "N2".***

72. As of June 29, 2006 Ross still had not forwarded my academic transcript for the AICM course. That is why I commenced an action against Ross in the State Supreme Court of Queens County.

73. Because of the litigation Ross may have withdrawn its sponsorship of me sitting for the USMLE Step I exam, which it did on August 14, 2006. It then issued a failing grade on the academic transcript, suspiciously, the same date. *See Pl. Dep. PP. 136 Lines 12-22.* ***A copy of the relevant portions of my Deposition is annexed hereto as Exhibit "O2".***

74. Ross withdrew its Certification and sponsorship for my taking the USMLE Step I by releasing a failing grade in the AICM course at or around August 14, 2006. This date was after I had already taken the USMLE Step I exam.

75. Nowhere in the Student Handbook does it state that Ross can release a student's official grade via the Internet. However at page 6 of the student handbook it is stated that students will receive grades on his/her transcript. ***See Exhibit "V".***

76. On June 29, 2006, Ross issued an administrative withdrawal letter, withdrawing me from its medical program. Prior to issuing this letter, Ross did not advise me that such action would be taken; the intent of such an action; and the consequences of being marked "administratively withdrawn". As stated in the letter it was "effective immediately". ***See Exhibit "A1".***

77. The action of being marked "administratively withdrawn" does not preclude a student for sitting for the USMLE Step I exam as stated on page 14 of the Student Handbook. ***See Exhibit "P2".***

78. On August 14, 2006 Ross issued a failing grade for the AICM course via an academic transcript to the Plaintiff. Though the procedure of issuing the grade via the academic transcript was correct, the grade was not correct as will be shown.

79. On the same date, August 14, 2006, (the date in which Ross issued a failing grade) Ross withdrew its sponsorship of me for the USMLE Step I exam by issuing the statement "no longer eligible, withdrawn" to the USMLE/ECFMG Office.

80. However, as early as May 5, 2006, Ross certified and sponsored me to sit for the USMLE Step I exam. Thereafter, Ross claimed that I was warned that the sponsorship would be withdrawn.

81. It is quite clear that:

A) Ross never issued a failing grade for the said AICM course via an academic transcript before the issuance of the Administrative Withdrawal letter of June 29, 2006;

B) Ross' claim that I failed the AICM course cannot be substantiated and therefore never pre-registered me, or forwarded an invoice to me to sit for the AICM course a second time after having completed it on April 7, 2006 and having received a certificate of completion for the AICM;

C) Ross never issued any warning before the Administrative Withdrawal of the letter issued June 29, 2006. It was "effective immediately" as stated in the letter itself. Further, no notification came from any other concerned entity.

D) Ross never issued a warning that it would use the Administrative Withdrawal letter as a reason to withdraw its sponsorship of me to sit for the USMLE Step I exam.

The above facts are in direct contrast of Ross' own regulation on page 14 of the Student Handbook wherein it is stated that withdrawn students may "take or re-take the USMLE through the University". *See Exhibit "P2"*.

82. Therefore, it is quite evident that Ross fabricated the failing AICM grade, which in turn resulted in your affiant being issued an Administrative Withdrawal letter. Thereafter, Ross blocked the release of my score of the USMLE Step I exam, which was taken on July 27, 2006 and scheduled to be released on/or about the next day, August 15, 2006; the day after Ross withdrew its sponsorship of me.

83. In essence, I must have been enrolled as a medical student when I sat for the USMLE Step I exam. The letter of June 29, 2006 wherein it is marked Administrative Withdrawn states that, "In order for a student to remain enrolled with RUSM (Ross), they must either be registered for courses and/or registered for the Boards." What Ross failed to recognize was: (i) I was certified, sponsored and registered by Ross itself for the USMLE Step 1 which is the "Boards" being referred to here, (ii) It is stated in the Student Handbook at page 9 that "Following the 12-week AICM, there is a 17-week scheduled break during which students remain fully enrolled."

There is nothing in the Student handbook that states that students will be withdrawn during this 17-week break. (iii) As a matter of fact, it was Ross that last handled the Certification and sponsorship form: issued Certification, sponsorship and forwarded the documents to be registered with the USMLE. Therefore Ross should have recognized that I was registered for the "Boards." (iv) Ross is in possession of my academic records and should have known that there was a Certificate of Completion for the AICM course in its Registrar's Office. I testified to these facts at my deposition. Thus, it is quite obvious that Ross has withdrawn me without justification. *See Pl. Dep. PP. 151-152 Lines 7-7. **A copy of the relevant portions of my Deposition is annexed hereto as Exhibit "Q2".***

84. Defense counsel has repeatedly accused me of admitting to failing the AICM course. Apart from being false and misleading, this was serving to inflict mental anguish onto the Plaintiff. There is no valid justification or substantiating evidence for such a claim. At my deposition, at page 168 lines 8-9, I testified as follows: ""You claimed I failed the AICM. I didn't say that". Nevertheless, Ross continues to argue that I did in fact fail said course. *A copy of the relevant portions of my Deposition is annexed hereto as Exhibit "R2".*

85. The email posting of a grade for the student was unreliable, invalid, and against FERPA, which, as already established has been adopted by Ross. A failing grade for the AICM course via an academic transcript was sent to the student on August 14, 2006. The only thing significant about this grade was the date it was sent and the connection it has with all other events that occurred on the state set forth herein.

86. To reiterate, the AICM course is an Advanced Introduction to Clinical Medicine and is a prerequisite to the USMLE Step I examination. The USMLE Step I license is the immediate prerequisite for commencing clinical clerkships. The AICM is not one of the clinical clerkship courses. Clinical clerkship courses are done exclusively at hospitals licensed by the State Board of Medicine to do so. *See Pl. Dep. PP.82 Lines 7 - 9. **A copy of the relevant portions of Dasrath's deposition is annexed hereto as Exhibit "S2".***

87. In order to do clinical clerkships courses, a medical student must first have a passing score on the USMLE Step I exam. Furthermore, in the spring of 2006, I had not yet sat for the USMLE Step I exam. Thus I could not have been licensed to do clinical clerkship courses. Ross

blocked the release of the Plaintiff's score and as a result, it was not possible for the Plaintiff to begin clinical clerkships.

*88.* Furthermore, I was not even registered by Ross to do any Clinical Clerkship Course. This too was testified to by Dr. Fernandez. ***See Exhibit "R".***

89. As previously stated, I was not USMLE Step I licensed in the spring of 2006. Therefore, I was never registered by Ross's Registrar's Office to do any Clinical Clerkship Courses.

90. To the best of my knowledge, Dr. Fernandez was only employed by Ross at the time and Ross does not own a hospital. Therefore, it was not possible for Ross to have instructed a Clinical Clerkship Course to me. In turn, it could not have been possible for me to have received a failing grade.

91. Since my grade for the USMLE Step I exam was withheld, then I could not have done a Clinical Clerkship Course. Thus, the failing grade issued by Ross is nothing less than a fabrication.

92. In this particular case, it would appear that Ross produced a single copy of the Clinical Clerkship Evaluation and dated it June 23, 2006 and entered it into the Plaintiff's student record on June 27, 2006. ***See Exhibit "K".***

93. Numerous inconsistencies with regard to this form point to a grade fabrication scheme perpetrated by Ross onto me. First, the Clinical Clerkship Evaluation Form used to issue a failing grade in this case appears to have one computer generated sheet only onto which my photograph from my Ross Identification Card was affixed. Upon information and belief Ross maintains a roster of student I.D's in its computer system and this picture may have been computer generated onto the grade evaluation sheet. It is known that under normal circumstances this is not usually done. In addition, this form comes in triplicates; with one copy being white and this is sent to Ross registrar's office in New Jersey, one copy being yellow for the hospital's record where the Clinical Clerkship was done and the third copy being blue for the student's record. Of course I never received any copy and since I was never registered for, nor did I do a clinical clerkship course at any hospital. Furthermore, I do not believe any hospital has a copy. Several other inconsistencies were already stated above. ***See Exhibit "K".***

94. The AICM course was completed on April 7, 2006. The Certificate of Completion for the AICM, according to Dr. Perri in her deposition, at page 46, line 25: "Two weeks after

completion". This was confirmed by Dr. Fernandez in his deposition at page 12 lines 11 to 12. *Copies of the relevant portions of Dr. Perri and Dr. Fernandez are annexed hereto as Exhibit "T2"*.

95. On June 23, 2006, which is more than two months after the completion of the AICM course, a failing Clinical Clerkship Evaluation grade was issued. Since the Plaintiff did not take the USMLE Step I until **July 27, 2006**, and USMLE Step I licensure must be obtained before beginning clinical clerkship courses, it is not possible that I could have registered for a clinical clerkship course?

96. Furthermore, Ross confiscated three out of the four recommendations issued by three Basic Science Professors: Dr. Marvyn Reviere, Dr. Davendranand Sharma, and Dr. David Patton. These three recommendations were confidentially maintained in Ross' Registrar's Office. They are supposed to be released to hospitals when a student applies for residency training in hospitals. It would be difficult for me, or any student, to procure residency training without these recommendations from Professors who had instructed your affiant, and therefore has personal knowledge of me and my grades. However, Ross released only one of the four recommendations. *A copy of this recommendation is annexed hereto as Exhibit "U2"*.

97. Without the other three recommendations, Ross is in effect attempting to thwart my medical career, as it did when it barred by the USMLE/ECFMG Office from receiving my grade.

98. To provide proof that I have completed the requirements necessary for taking the USMLE Step I, I hereby submit the following:

a) Page 13 of the Student Handbook sets forth 3 requirements:

i) 2 years Basic Science Requirement, which has been completed and both parties are in agreement. *See Exhibit "V2"*.

ii) AICM Course – all five certification courses completed, with certificates of completion issued by the course director. *See Exhibit "I1"*.

iii) NBME comprehensive exam completed. *See Exhibit "W2"*. Congratulations and instructions regarding the period within which the USMLE Step I must be taken, May 1, 2006 through July 31, 2006.

Dr. Perri confirmed the date confirmed as being the correct date that I sat for the USMLE Step I exam. *Dr. Perri's Dep. P. 57, lines 8-13. See Exhibit "C1"*.

- 13 -

**A49**

99. I obtained certification and sponsorship for taking the USMLE Step I by: completing the biographic information on the form, enclosing a check for $695 fee and submitting the form to Ross' officials to do the rest such as checking the Ross Registrar's records to verify that all requirements were met, placing sealed stamp on certification form confirming it to be a binding contract, signing it, dating it, etc. After Ross officials verified that all requirements were met they then sent it to the USMLE/ECFMG office directly. By certifying me to sit for the USMLE Step I, Ross confirmed that all three requirements, as stated on page 13 of the Student Handbook were checked and satisfactorily complied with. Otherwise, I could not have been certified to take the USMLE Step I Exam. I was therefore compelled to follow the instructions of Ross officials.

100.     By subsequently withholding my AICM grade, then administratively withdrawing me as of June 29, 2006, issuing a failing grade for the AICM course on August 14, 2006, and then blocking the release of my score for the USMLE Step I Exam on August 14, 2006 and then subsequently withdrawing its sponsorship for taking the USMLE Step I Exam, it is quite obvious that Ross breached the contract that Defendant's counsel admits the we entered into when I enrolled at the Defendant's Medical School.

101.     With the preponderance of evidence presented, sound minds can only reach one conclusion: Ross has breached the contractual agreement entered into when the Plaintiff was admitted and enrolled into courses leading to an M.D. degree and licensure to practice medicine.

102.     Due to Ross' actions, I have been financially and mentally harmed. I have testified that I have incurred $165,000 due to tuition, housing, books, supplies and air fare and other modes of transportation. *See Pl. Dep. PP.176-177 Lines. 13-7. A copy of the relevant portions of my Deposition is annexed hereto as Exhibit "X2".*

103.     I have also incurred legal fees to date in excess of $25,000. Proof of payment of said fees were forwarded to Defendants' counsel shortly after my deposition of September 30, 2010.

104.     I have also lost income of $360,000.00 from the time I was attending Ross to the time that I was asked to leave and had to return to work. Said figure was calculated based on the salary that I was making during these times.

105.    I have also undergone medical treatment as a result of Ross' actions and have suffered embarrassment and humiliation to my family, friends and co-workers. These facts were testified to at my deposition. *See Pl. Dep. PP.177-181 Lines. 4-18. A copy of the relevant portions of my Deposition is annexed hereto as Exhibit "Y2".*

106.    It is to be noted that Ross has been provided with proof of said damages in my response to their demand dated June 11, 2010. *A copy of said Response is annexed hereto as Exhibit "Z2".*

107.    In light of the foregoing, it is respectfully requested that the Court grant the Plaintiff's Motion in its entirety.

108.    No prior application for the relief sought herein has been made.

**WHEREFORE,** Plaintiff requests that this Court grant his motion in its entirety and for the costs and disbursements of this action and for such other and further relief as this Court deems just and proper.

ANAND DASRATH

Sworn to before me this
2nd day of March, 2011

NOTARY PUBLIC

JOSEPH R. COSTELLO
Notary Public, State of New York
No. 01CO 5023572
Qualified in Kings County
Commission Expires

**CIVIL COVER SHEET**

JS 44 (Rev. 11-04)

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
Anand Dasrath

**DEFENDANTS**
Ross University School of Medicine

**(b)** County of Residence of First Listed Plaintiff  Queens
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  Edison/Dade
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Gildin, Zelentiz & Shapiro, P.C.
138-44 Queens Blvd.

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒1 | ☐1 | Incorporated or Principal Place of Business In This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business In Another State | ☐5 | ☒5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

CONTRACT
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

REAL PROPERTY
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

TORTS
PERSONAL INJURY
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury

PERSONAL INJURY
☐ 362 Personal Injury - Med. Malpractice
☐ 365 Personal Injury - Product Liability
☐ 368 Asbestos Personal Injury Product Liability
PERSONAL PROPERTY
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

CIVIL RIGHTS
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 444 Welfare
☐ 445 Amer. w/Disabilities - Employment
☐ 446 Amer. w/Disabilities - Other
☒ 440 Other Civil Rights

FORFEITURE/PENALTY
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs.
☐ 660 Occupational Safety/Health
☐ 690 Other

PRISONER PETITIONS
☐ 510 Motions to Vacate Sentence
Habeas Corpus:
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

LABOR
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt.Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

BANKRUPTCY
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

PROPERTY RIGHTS
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

SOCIAL SECURITY
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

FEDERAL TAX SUITS
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS—Third Party 26 USC 7609

OTHER STATUTES
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 890 Other Statutory Actions
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes

**V. ORIGIN** (Place an "X" in One Box Only)
☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C. Sec 6101-6107
Brief description of cause:
Age Discrimination ,Breach of Contract and Fraud

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** (See instructions):
JUDGE                    DOCKET NUMBER

DATE 06/15/2007
SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY
RECEIPT #        AMOUNT        APPLYING IFP        JUDGE        MAG. JUDGE

## ARBITRATION CERTIFICATION

I, Bradley M. Zelenitz_____, counsel for Plaintiff, Anand Dasrath _____ do hereby certify pursuant to the Local Arbitration Rule 83.10 that to the best of my knowledge and belief the damages recoverable in the above captioned civil action exceed the sum of $150,000 exclusive of interest and costs.
_____✓_____ Relief other than monetary damages is sought.

## DISCLOSURE STATEMENT - FEDERAL RULES CIVIL PROCEDURE 7.1

Identify any parent corporation and any publicly held corporation that owns 10% or more or its stocks:

_____

**Please refer to NY-E Division of Business Rule 50.1(d)(2)**

1.) Is the civil action being filed in the Eastern District of New York removed from a New York State court located in Nassau or Suffolk County: No_____

2.) If you answered "no" above:

a.) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in Nassau or Suffolk County? No_____

b.) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in the Eastern District? No_____

If your answer to question 2 (b) is "No," does the defendant (or a majority of the defendants, if there is more than one) reside in Nassau or Suffolk County, or, in an interpleader action, does the claimant (or a majority of the claimants, if there is more than one) reside in Nassau or Suffolk County? No_____

(Note: A corporation shall be considered a resident of the County in which it has the most significant contacts).

**I am currently admitted in the Eastern District of New York and currently a member in good standing of the bar of this court.**

Yes____✓____                          No_____

**Are you currently the subject of any disciplinary action(s) in this or any other state or federal court?**

Yes_____(If yes, please explain)          No____✓____

_____

Please provide your E-MAIL Address and bar code below. Your bar code consists of the initials of your first and last name and the last four digits of your social security number or any other four digit number registered by the attorney with the Clerk of Court.
(This information must be provided pursuant to local rule 11.1(b) of the civil rules).

**ATTORNEY BAR CODE:** BZ 4104 _____

**E-MAIL Address:** bzelenitz@gzslaw.com_____

I consent to the use of electronic filing procedures adopted by the Court in Administrative Order No. 97-12, "In re Electronic Filing Procedures(EFP)", and consent to the electronic service of all papers.

Signature: _____

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

| Eastern | District of | New York |
| --- | --- | --- |

Anand Dasrath

**SUMMONS IN A CIVIL ACTION**

V.

Ross University School of Medicine

CASE NUMBER:

CV 07      2433

REYES, M.J    AMON, J.

TO: (Name and address of Defendant)

Ross University School of Medicine
499 Thornall Street, 10th Floor
Edison, NJ 08837
&/or 7000 SW 62nd Avenue, Penthouse A
South Miami, FL 33143

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Gildin, Zelenitz & Shapiro, P.C.
138-44 Queens Blvd., 2nd Floor
Briarwood, NY 11435
Attn: Bradley M. Zelenitz, Esq.

an answer to the complaint which is served on you with this summons, within _____ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

ROBERT C. HEINEMANN

| | DATE | 6/15/2007 |
| --- | --- | --- |

CLERK

(By) DEPUTY CLERK

Bradley M. Zelenitz, Esq. (BMZ-4104)
Gildin, Zelenitz & Shapiro, P.C.
138-44 Queens Blvd., 2nd Floor
Briarwood, New York, 11435
P: (718) 523-1111
F: (718) 725-9606

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

ANAND DASRATH,

                       Plaintiff,                    Case No.:_____

    -against-

ROSS UNIVERSITY SCHOOL OF MEDICINE,

                       Defendant.

-----------------------------------------------------------------X

## COMPLAINT

    Plaintiff, complaining of the Defendant, by his attorney, Bradley M. Zelenitz, Esq., of

Gildin, Zelenitz & Shapiro, P.C., respectfully sets forth and alleges as follows:

### I. Introduction

    1. The within is an action for monetary and equitable relief based upon Defendant's

violations of Plaintiff's rights under the Age Discrimination Act of 1975, 42 U.S.C. §6102 and

the New York Executive Law §296(4), and breach of contract between the parties hereto.

### II. Parties

    2. Plaintiff was and still is a natural person, and at all times hereinafter mentioned

was a forty-eight year old medical student with an address of 89-25 209th Street, Queens Village,

New York 11427.

    3. Defendant is, upon information and belief, a corporate entity and a medical school,

which has offices at 499 Thornall Street, 10th Floor, Edison, New Jersey 08837, and 7000 SW

62nd Avenue, Penthouse A, South Miami, 33143. Defendant is an accredited institution by the

United States Department of Education certified as an eligible institution for Title IV U.S.

Federal Family Education Loan Program Loans, and receives various forms of Federal funding

and/or Federal financial assistance.

### III. Venue and Jurisdiction

4. Venue in the Eastern District of New York is appropriate in that the Plaintiff

resides at of 89-25 209th Street, Queens, Village, New York 11427, County of Queens, City and

State of New York.

5. Subject matter jurisdiction over the instant action exists over all claims herein

pursuant to 28 U.S.C. §1331, 1332, as the instant matter arises under the laws of the United

States, specifically the Age Discrimination Act of 1975, 42 U.S.C. §6101-6107, and diversity of

citizenship exists between the parties and the amount in controversy exceeds $75,000.00.

Additionally, pendant subject matter jurisdiction over the instant action exists over Plaintiff's

New York Executive Law and breach of contract claims pursuant to this Court's supplemental

jurisdiction.

### IV. Background

6. At all times hereinafter mentioned, Plaintiff was a forty-eight year old medical

student at the Defendant's school of medicine, since May of 2004, and had continually paid the

school tuition in exchange for the school delivering an education to the Plaintiff. Upon

information and belief, Plaintiff was one of the oldest members of his class.

7. The Plaintiff took the AICM (Advanced Introduction to Clinical Medicine) course

in the Spring 2006 semester, Plaintiff's fifth semester, at the Defendant's school of medicine in

Miami, but did not receive a grade therein despite due demand. Plaintiff's May 2006 transcript had a "blank space" where his grade should have been for the AICM class. Despite due demand, Plaintiff had been denied his right to inspect school records regarding his academic performance or the scantron sheets he submitted upon taking the examinations. The Plaintiff was advised by Dr. Fernandez, his professor, that he received a "94%" on the physical exam.

8. In March of 2006, Plaintiff submitted an application to take the United States Medical Licensing Examination (USMLE) Step I. Said application included a certification by an official of the Defendant medical school that the Plaintiff was enrolled in the Defendant school of medicine.

9. On or about June 29, 2006, Defendant withdrew the Plaintiff from enrollment as a student from Defendant's school of medicine and withdrew its sponsorship of Plaintiff, thereby denying the Plaintiff an opportunity to take the USMLE Step 1 Exam. The Defendant's purported basis for said withdrawal was that Plaintiff did not successfully complete the AICM course and pass the USMLE Step 1 Exam.

10. The Plaintiff believes that he has completed the requisite coursework in this class for him to achieve a passing grade and to take the USMLE Step 1 Exam.

11. In March of 2006, the Plaintiff had registered for the USMLE Step 1 Exam. The Plaintiff took said USMLE Step 1 Examination on July 27, 2006. His score for same was never released, as he was advised that he was "not authorized to take the exam" when he took it because he was not enrolled as a student in a medical school at the time he took the examination.

12. On August 14, 2006, Plaintiff received his grade in the AICM class, listed as "F". The Plaintiff was advised not only that he did not fail the AICM class, but that even if he had failed the AICM class, same was not a prerequisite to taking the USMLE Step 1 Exam, but rather

the NBME comprehensive exam which Plaintiff passed, was the prerequisite for same.

13. Upon information and belief, throughout Plaintiff's enrollment in Defendant's school of medicine, his grades were changed , withheld, and or inaccurately reported.

14. Upon information and belief, the Defendant approached his student advisor about these issues, and was advised by his student advisor not to "rock the boat" as the Defendant school of medicine discriminates on the basis of age.

### V. Causes of Action and Demand for Relief

15. The allegations contained in paragraphs "1" through and including "14" are incorporated as if restated herein.

#### Count One: Violation of the Age Discrimination Act of 1975

16. 42 U.S.C. § 6102 states that "no person in the United States shall, on the basis of age, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity receiving Federal financial assistance".

17. Upon information and belief, the Defendant receives Federal financial assistance as more fully set forth in paragraph "3" above.

18. Upon information and belief, the Defendant discriminated against the Plaintiff, in that solely on the basis of his age, Defendant excluded him from participation in Defendant's school of medicine, denied Plaintiff the benefits of said program, subjected Plaintiff to harassment, and evaluated and otherwise treated Plaintiff differently than similarly situated younger students.

19. Based upon the foregoing, Defendant violated the Age Discrimination Act of 1975, and Plaintiff herein seeks monetary compensatory damages, legal fees, and equitable relief in the form of reinstatement to the Defendant's school of medicine and sponsorship for the Step I

exam, release of Plaintiff's USMLE Step I score, and the release of the Plaintiff's grades and records.

## Count Two: Violation of New York Executive Law § 296

20. The allegations contained in paragraphs "1" through and including "19" are incorporated as if fully reinstated herein.

21. New York Executive Law § 296(4) states that "it shall be an unlawful discriminatory practice for an education corporation or association which holds itself out to the public to be non-sectarian and exempt from taxation pursuant to the provisions of article four of the real property tax law to deny the use of its facilities to any person otherwise qualified, or to permit the harassment of any student or applicant, by reason of his race, color, religion, disability, national origin, sexual orientation, military status, sex, age or marital status, except that any such institution which establishes or maintains a policy of educating persons of one sex exclusively may admit students of only one sex".

22. Upon information and belief, the Defendant holds itself out to the public as non-sectarian and exempt from taxation. Upon information and belief, Defendant does not maintain a policy of educating persons of only one sex.

23. Upon information and belief, the Defendants have harassed the Plaintiff and denied use of its facilities, whom was otherwise qualified, solely upon the basis of his age.

24. Based upon the foregoing, the Defendant has violated New York Executive Law § 296(4).

## Count Three: Breach of Contract

25. The allegations contained in paragraphs "1" through and including "24" are incorporated as if fully reinstated herein.

26. The Defendant accepted the Plaintiff to its school of medicine, enrolled Plaintiff in same and accepted Plaintiff's tuition money, and in return, was to provide the Plaintiff with an education and to accurately and timely report Plaintiff's grades to him on the basis of his performance. Same is a valid contract and/or agreement between the parties, together with an implied covenant of good faith and fair dealing.

27. Based upon the foregoing, The Defendant has breached said agreement, in failing to timely and accurately report Plaintiff's grades on the basis of his performance.

### Count Four: Fraud / Equity

28. The allegations contained in paragraphs "1" through and including "27" are incorporated as if fully reinstated herein.

29. The Plaintiff has no adequate remedy at law.

30. Upon information and belief, the Defendant made affirmative misrepresentations to the Plaintiff regarding his grades and the necessary requirements to take the USMLE, with knowledge that such representations were wholly false, and that Plaintiff did actually and justifiably rely on said representations.

31. That due to Defendant's fraud and intentional misrepresentations, the Plaintiff has been damaged in that he was caused to be withdrawn from the Defendant medical school without cause or justification, which in turn, caused his USMLE score to be withheld, all to Plaintiff's detriment. That upon information and belief and at all times hereinafter mentioned, the wanton, willful, and malicious nature of Defendant's intentional misrepresentations and fraud entitle Plaintiff to punitive damages to punish the Defendant and to discourage others from like conduct.

WHEREFORE, Plaintiff demands judgment against the Defendant herein for monetary compensatory damages, legal fees, and equitable relief in the form of reinstatement to the

**A60**

## VERIFICATION

STATE OF NEW YORK   )
                             )  ss.:
COUNTY OF QUEENS   )

I, ANAND DASRATH being duly sworn, deposes and says: I am the plaintiff in the within

action; I have read the foregoing COMPLAINT and know the contents thereof; the same is true

to my own knowledge, except as to the matters therein stated to be alleged on information and

belief, and as to those matters I believe it to be true.

ANAND DASRATH

Sworn to before me this
15 day of June , 2007

NOTARY PUBLIC

DAVID A. SHAPIRO, Esq.
Notary Public of the State of New York
# : 0 2 S H 5 0 5 5 1 2 3
Qualified in the County of Nassau
Commission Expires February 5, 2009

A61

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------X     Case No.: CV-07-2433
ANAND DASRATH

               Plaintiff ,          **AMENDED COMPLAINT**

   -against-

ROSS UNIVERSITY SCHOOL OF
MEDICINE
              Defendant.
---------------------------------------------------X

     Plaintiff, complaining of the Defendant, by his attorneys COSTELLO & COSTELLO,

P.C., respectfully shows and alleges as follows:

     1.     That at all times hereinafter mentioned, Plaintiff, ANAND DASRATH, is and still

resides in the Borough of Queens, County of Queens, City and State of New York.

     2.     Upon information and belief, at all times hereinafter mentioned, the Defendant,

ROSS UNIVERSITY SCHOOL OF MEDICINE, was and still is a corporate entity and a

medical school which has offices at 499 Thornall Street, 10th Floor, Edison, New Jersey 08837

and 7000 SW 62nd Avenue, Penthouse A, South Miami, Florida 33143. Defendant is an

accredited institution by the United States Department of Education and certified as an eligible

institution for the Title IV U.S. Federal Family Education Loan Program and receives various

forms of Federal funding and/or Federal financial assistance.

     3.     Venue in the eastern District of New York is appropriate in that Plaintiff resides at

89-25 209th Street, Queens Village, New York 11427, County of Queens, city and State of New

York.

     4.     Subject matter jurisdiction over the instant action exists over all claims herein

pursuant to 28 U.S.C. 1331, 1332, as the instant matter arises under the laws of the United States,

specifically the Age Discrimination Act of 1975, 42 U.S.C. 6101-6107, diversity of citizenship

exists between the parties and the amount in controversy exceeds $75,000.00 Additionally,

pendant subject matter jurisdiction over the instant action exists over Plaintiff's New York

Executive Law and breach of contract claims pursuant to this Court's supplemental jurisdiction.

Background

5.      At all times hereinafter mentioned, plaintiff was a forty-six year old medical

student at the Defendant's school of medicine since May 2004 and had continually paid the

school tuition in exchange for the school providing an education to the Plaintiff. Upon

information and belief, Plaintiff was one of the oldest members of his class.

6.      The Plaintiff took the "AICM" the Advanced Introduction to Clinical Medicine

course in the 2006 Spring semester, the Plaintiff's fifth semester, at the Defendant's school of

medicine located in Miami, Florida. The Plaintiff, however, did not receive a grade for the

AICM course despite his demand for his grade. Plaintiff's May 2006 transcript had a "blank

space" where his grade should have been for the AICM course. Despite his demands, Plaintiff

had been denied his right to inspect school records regarding his academic performance or the

scantron sheets he submitted his answers upon taking the examinations. The Plaintiff was

advised by Dr. Enrique Fernandez, his professor, and the Assistant Dean of Clinical Science, that

he received a "94%" on the physical exam.

7.      In March of 2006, Plaintiff submitted an application to take the United States

Medical Licensing Examination "USMLE" Step 1. Plaintiff's application indicated he passed all

five (5) parts of the AICM course, included a certification by an official of the Defendant

medical school that the Plaintiff was enrolled in the Defendant school of medicine, as well as a

rubber stamp attached to the Plaintiffs passport photo identification.  Said certification contained

# A63

the defendant school of medicine's sealed stamp certifying the plaintiff's application. A letter

was forwarded by Ms. Brijette Sena, associate Registrar of Clinical Sciences informing Plaintiff

that he had passed the NBME exam and that he was eligible to take the USMLE Step 1 Exam.

Lastly, an application fee of $695 was paid by the Plaintiff and accepted by the Defendant along

with the Plaintiff's application for the USMLE Step 1 examination.

8. On or about June 29, 2006, Defendant notified Plaintiff he had been

"Administratively Withdrawn" from Ross "for failure to register for the May 2006 AICM

course" enrollment as a student from Defendant's school medicine and without notifying

Plaintiff withdrew its sponsorship of Plaintiff.

9. On August 14, 2006, Plaintiff received his grade in the AICM course, which was

listed as an "F". According to the Defendants Handbook at page 13"Students become eligible to

take the USMLE Step I when they have passed all courses in the Basic Science Curriculim,

successfully the Advanced Intergration to Clinical Medicine clerkship, and, have passed the

NBME Comprehensive Basic Sciences Exam The results of the USMLE examination the

Plaintiff had previously taken were to be released the following day on August 15, 2006.

10. Upon information and belief, during Plaintiff's time as a student at Defendant's

school of medicine, his grades were changed, withheld, and/or inaccurately reported.

11. All administrative remedies relating to the Age Discrimination claim have been

exhausted.

## AS AND FOR A FIRST CAUSE OF ACTION
## VIOLATION OF 42 U.S.C 6102

12. The allegations contained in paragraphs "1" through and including "11" are

incorporated as if restated herein.

13.　　42 U.S.C. 6102 states that no "person in the United States shall, on the basis of age, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity receiving Federal financial assistance".

14.　　Upon information and belief, the Defendant receives Federal financial assistance as more fully set forth in paragraph "3" above.

15.　　Upon information and belief, the Defendant discriminated against the Plaintiff solely on the basis of his age. Said discrimination consisted of excluding him from participation in Defendant's school of medicine, denying Plaintiff the benefits of said program, subjecting him to harassment, and Plaintiff had been evaluated and treated differently than similarly situated younger students.

16.　　Upon information and belief, the defendant discriminates against its older students due to its limited ability of placing its students in hospital training programs, which follow the passing of the USMLE exam, and its preference in placing its younger students in hospital training programs and thus making it either difficult, or as in the Plaintiff's case, preventing him from completing the requisite steps to complete his studies and gain admittance in a hospital training program.

17.　　Upon information and belief, the Defendant has continuously and systemically discriminated against older students of its medical school such as the Plaintiff.

18.　　Based on the foregoing, Defendant violated the Age Discrimination Act of 1975 and Plaintiff now seeks monetary compensatory damages, legal fees, and equitable relief in the form of reinstatement to the Defendant's school of medicine and sponsorship for the USMLE Step 1examination, release of Plaintiff's USMLE Step 1 examination score, and the release of the Plaintiff's grades and records.

<u>**AS AND FOR A SECOND CAUSE OF ACTION**</u>
<u>**BREACH OF CONTRACT**</u>

19.     The allegations contained in paragraphs "1" through and including "19" are incorporated as if fully reinstated herein.

20.     Plaintiff contracted with Defendant and paid Defendant tuition in consideration of Defendant preparing Plaintiff to become a licensed medical doctor eligible to practice medicine in the United States. Pursuant to the contract, Defendant was to accurately record Plaintiff's grades and sponsor Plaintiff to take the USMLE Step 1 examination.

21.     In March of 2006 the Plaintiff had submitted his application to take the USMLE Step 1 Examination. Plaintiff's application, as more fully described in paragraph "7," was accepted by the Defendant medical school. On June 27, 2006 the Defendant notified the Plaintiff that he was administratively withdrawn from the Defendant's school of medicine and that the Defendant subsequently withdrew its sponsorship for the USMLE Step 1 examination.

22.     The Defendant was in breach of its contractual obligation to the Plaintiff in administratively withdrawing Plaintiff from its school of medicine without justification and in violation of its own academic rules and regulations.

23.     The Defendant breached the contractual agreement when without any justification or valid reason withdrew its sponsorship for the USMLE exam after it had accepted Plaintiff's application and duly certified Plaintiff to take said exam.

### AS AND FOR A THIRD CAUSE OF ACTION
### FRAUD

24.     The allegations contained in paragraphs "1" through and including "23" are incorporated as if fully reinstated herein.

25.     Upon information and belief, the Defendant made false representations to the Plaintiff regarding his grades on the AICM course. On August 14, 2006 the Defendant released the Plaintiff's AICM grade and listed it as an "F", a failing grade. The Plaintiff passed all five parts of the AICM course and was in possession of those passing grades.

26.     The Defendant falsely represented in its June 27, 2006 letter signed by Michael Rendon, the University Registrar that Plaintiff was being administratively withdrawn from the defendant's school of medicine for failing to register for the May 2006 AICM course. The assertion in that letter is false and in contradiction to the Defendant school of medicine's rules and regulations.

27.     The Defendant's Dean of Clinical Studies, Nancy Perri has falsely represented that she had reviewed the Plaintiff's grades from the five part AICM course and has stated he has failed. Upon information and belief, Dean Perri was not in possession of the Plaintiff's AICM grade at the time.

28.     The foregoing false representations were committed in furtherance of the Defendant's ongoing practice of denying its older students placement in hospital training due to their limited placement opportunities. The Defendant's falsely withheld and then misrepresented the Plaintiff's grade in the AICM course as a means of having the results of his USMLE exam

blocked in order to avoid attempting to place Plaintiff in a training program in favor of its preferred younger students, of which Plaintiff was not.

29.     The Defendant succeeded in blocking the Plaintiff in advancing and succeeding in his medical studies due to its false representations and ongoing fraudulent behavior. All of which was to Plaintiff's detriment. The wanton, willful, and malicious nature of Defendant's intentional misrepresentations and fraud entitle Plaintiff to punitive damages to punish the Defendant and to discourage others from similar conduct.

## AS AND FOR A FOURTH CAUSE OF ACTION
## TORTUOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

30.     The allegations contained in paragraphs "1" through and including "29" are incorporated as if restated herein.

31.     The defendant accepted the Plaintiff's to its school of medicine, enrolled Plaintiff in same and accepted Plaintiff's tuition money and in return was to provide Plaintiff with an education and to accurately and timely report Plaintiff's grades based on his performance. Thus, a valid contract and/or agreement between the parties were formed.

32.     The defendant intentionally interfered with this contract by administratively withdrawing the Plaintiff from its school of medicine without any justification and in violation of its own rules and regulations.

33.     The Defendant further intentionally interfered with the contracted by withdrawing its sponsorship of the USMLE exam after it had accepted and certified his application for said exam.

34.     The Defendant failed and refused to provide the Plaintiff with his grades, to wit: his overall grade in the AICM course.

35.     As a result of Defendant's intentional interfered with said contract/agreement and the Plaintiff was unable to complete his studies as he deserved to and as a result suffered damages.

WHEREFORE, Plaintiff demands judgment against the Defendant herein for monetary compensatory damages, legal fees, and equitable relief in the form of reinstatement to the Defendant's school of medicine, sponsorship for the USMLE Step 1 Examination, release of the Plaintiff's USMLE Step 1 score, and the release of the Plaintiffs remaining grades and records, together with such other and further relief this Court deems just and proper.


Dated: June 17, 2009
      Brooklyn, New York


                  Respectfully  Submitted


                  COSTELLO & COSTELLO, P.C
                  BY: SALVATORE D. COMPOCCIA, ESQ
                  5919 20TH Avenue
                  Brooklyn, New York11204
                  (718) 331-4600

**A69**

**VERIFICATION**

STATE OF NEW YORK       )
                                  ) ss.:

COUNTY OF KINGS        )

        **SALVATORE D. COMPOCCIA**, being duly sworn deposes and says:

        That he is associated with the firm of **COSTELLO & COSTELLO, P.C.**, attorneys for the plaintiff **ANAND DASRATH** herein; that deponent has read the foregoing Verified Complaint and knows the contents thereof; that the same is true on information and belief. This verification is made by deponent because plaintiff resides in a county other than which deponent maintains its office.

                                         /S/_____
                                       SALVATORE D. COMPOCCIA

Sworn to before me this

_____ day of _____

_____
NOTARY PUBLIC

Case 1:07-cv-02433-CBA -RER   Document 64   Filed 09/28/09   Page 1 of 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X

ANAND DASRATH,                                              Case No.: CV 07 2433

                                    Plaintiff,              (C. Amon) (R. Reyes)

            - against -

ROSS UNIVERSITY SCHOOL OF MEDICINE,            **NOTICE OF MOTION**

                                    Defendant.
------------------------------------------------------------ X

      PLEASE TAKE NOTICE, that upon the affidavit of Nancy A. Perri, M.D., sworn to on

July 21, 2009, and the accompanying memorandum of law, the undersigned will move this Court

before the Honorable Carol B. Amon of the United States District Court, Eastern District of New

York, United States Courthouse, 225 Cadman Plaza East, Brooklyn, New York  for an order

dismissing the amended complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6) for lack of subject

matter and for failure to state a claim upon which relief can be granted and for any further relief

as this Court may deem appropriate.

Dated: Garden City, New York
      July 22, 2009

                                              CULLEN AND DYKMAN LLP

                            By: _____
                                              Jennifer A. McLaughlin (JM 5678)
                                              Attorneys for Defendant
                                              100 Quentin Roosevelt Boulevard
                                              Garden City, New York 11530

TO:   COSTELLO & COSTELLO, P.C.
      Salvatore D. Compoccia, Esq.
      5919 20th Avenue
      Brooklyn, NY 11204

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ANAND DASRATH,                                              Case No.: CV 07 2433

                                    Plaintiff,             (C. Amon)
        - against -                                        (R. Reyes)

ROSS UNIVERSITY SCHOOL OF MEDICINE,


                                    Defendant.
------------------------------------------------------------X

STATE OF NEW JERSEY    )
                       ) SS.:
COUNTY OF MIDDLESEX )

        NANCY A. PERRI, M.D., being duly sworn, deposes and says:

        1.      I am Vice President of Academic Affairs at Ross School of Medicine School of

Veterinary Medicine Limited, sued herein as Ross University School of Medicine ("Ross

University" or "Defendant"), the defendant in this matter.  I submit this affidavit in support of

Defendant's motion to dismiss pursuant to F.R.C.P. 12 (b)(1) and (6).


A.    **Plaintiff Failed A Required Course And Failed To Re-Take That Course**

        2.      Plaintiff was a medical student at Ross University.  He was administratively

deemed to have withdrawn from Ross for his failure to pass a course required to graduate.

        3.      Plaintiff failed the Advanced Introduction to Clinical Medicine ("AICM") course

which is required before a student can graduate.  Plaintiff admits he received a failing grade.

See Amended Complaint ¶9.  He disputes this grade in this lawsuit.

4.      Despite his failing grade, plaintiff failed to re-enroll in the semester immediately following his failure to re-take the AICM as required by the Ross University School of Medicine Student Handbook of Academic Rules and Regulations ("Handbook").  The Handbook holds all students to the rules outlined therein.

5.      The Handbook provides that an administrative withdrawal is required when the student does not return to campus to register for the following semester.  See page 23 of the Handbook.  A copy of the Handbook in effect at all times relevant to the Amended Complaint is attached hereto as Exhibit "A".

6.      Plaintiff's failure to re-enroll in order to successfully complete the AICM course is an act of withdrawal from Ross.

7.      As such, Ross was required to administratively withdraw plaintiff from the university, effective the last day of the failed class.

**B.    Plaintiff Was Ineligible to Take The USMLE Step 1 Exam**

8.      For foreign medical school graduates to become licensed to practice medicine in the United States, students are required to take several qualifying exams.

9.      The United States Medical Licensing Examination Step 1 exam ("USMLE Step 1 Exam") is the first of these exams.

10.     As stated above, Plaintiff failed the AICM course and failed to retake the AICM course.  Successful completion of this course, however, is required to participate in the USMLE Step 1 Exam.[1]

---

[1] The Exam is administered by an agency known as the Educational Commissioner for Foreign Medical Graduates – not by Ross University.

Case 1:07-cv-02433-CBA -RER    Document 64-1    Filed 09/28/09    Page 3 of 3

11.    The Handbook provides that in order to be eligible to take the USMLE Step 1 Exam, the student must have passed all courses in the first four semesters and successfully completed the AICM. See page 13 of the Handbook.

12.    Plaintiff's failure of the AICM course and his administrative withdrawal from Ross resulted in Plaintiff becoming ineligible to take the Exam despite his attempts otherwise. See pgs. 11 and 23 of the Handbook.

**C.    Plaintiff Has Never Provided Defendant With Notice Pursuant to 42 U.S.C. § 6104**

13.    Prior to commencing this action, Plaintiff was required to provide notice of the action, by registered mail, to the Secretary of Health and Human Services, the United States Attorney General, and Ross University thirty (30) days prior to commencing the action. This notice must set forth the alleged violation of the ADA, the relief requested, the court in which the action shall be brought, and whether attorney's fees will be demanded. 42 U.S.C. § 6104.

14.    Plaintiff has not provided Ross University with the notice required under 42 U.S.C. § 6104.

15.    For the reasons set forth herein and in the accompanying memorandum of law, plaintiff's complaint should be dismissed.

NANCY A. PERRI, M.D.

Sworn to before me this
_____ day of July, 2009.

Notary Public

Jean Kraemer
Notary Public
New Jersey
My Commission Expires 3-09-14

- 3 -

Case 11-2531, Document 53-1, 10/07/2011, 412551, Page88 of 183

Case 1:07-cv-02433-CBA -RER   Document 64-2   Filed 09/28/09   Page 2 of 31

*ROSS UNIVERSITY SCHOOL OF MEDICINE*

# *STUDENT HANDBOOK*

## *OF*

# *ACADEMIC RULES AND REGULATIONS*

*May 2006*



## *TABLE OF CONTENTS*

INTRODUCTION.......................................................... page 4
CHANGES IN THIS EDITION........................................ page 4
THE CURRICULUM..................................................... page 4
    THE DEGREE "DOCTOR OF MEDICINE"........................ page 4
ACADEMIC STANDARDS............................................. page 5
    PROMOTIONS COMMITTEE, PROMOTIONS.................... page 5
STUDENT GRADING AND PROMOTIONS POLICIES.......... page 5
    GRADING POLICY FOR THE BASIC SCIENCE SEGMENT....... page 5
    GRADES................................................................ page 6
        EXAMINATIONS................................................. page 7
        BASIC SCIENCE SEGMENT.................................... page 7
    NBME COMPREHENSIVE BASIC
        SCIENCES EXAMINATION.................................... page 7
PROMOTION POLICIES................................................ page 7
    BASIC SCIENCE SEGMENT....................................... page 7
    CLINICAL SCIENCE SEGMENT.................................. page 9
    GOOD STANDING
    AND SATISFACTORY ACADEMIC PROGRESS.................... page 10
    PROBATION.......................................................... page 11
    ATTENDANCE....................................................... page 12
LICENSURE TO PRACTICE MEDICINE IN THE U.S.............. page 12
    POLICY REGARDING U.S. LICENSING EXAM, STEPS 1 & 2.... page 13
        THE USMLE STEP 1.......................................... page 13
        THE USMLE STEP 2CK (CLINICAL KNOWLEDGE)...... page 13
        THE USMLE STEP 2CS (CLINICAL SKILLS)................ page 14
        CERTIFICATION FOR THE USMLE ......................... page 14
PROFESSIONAL CONDUCT, ETHICS................................page 15
SEXUAL HARASSMENT............................................... page 16
PROBLEMS, GRIEVANCES............................................ page 16
REGISTRATION AND OTHER REGISTRAR SERVICES.................. page 17
    INITIAL REGISTRATION OF INCOMING STUDENTS......... page 17
    REGISTRATION OF CONTINUING STUDENTS.................... page 18
    REGISTRATION – CLINICAL SCIENCE SEGMENT.......... page 18
    TRANSCRIPT REQUESTS....................................... page 19
    STUDENT LOAN DEFERMENT PROCESS.......................page 19
    TUITION DURING REMEDIAL SEMESTERS....................page 19
    TUITION REFUND POLICY FOR WITHDRAWALS.................... page 20
EMERGENCY ABSENCES, VACATION
    & ACADEMIC LEAVES OF ABSENCE..................................... page 21

EMERGENCY ABSENCES...............................................page 21
ACADEMIC LEAVE OF ABSENCE (ALOA).....................page 21
UNAUTHORIZED LEAVES.........................................page 22
WITHDRAWALS........................................................page 22
    STUDENT WITHDRAWALS...............................page 23
    ADMINISTRATIVE WITHDRAWALS........................page 23
DEFERRALS ...........................................................page 23
DISCIPLINARY ACTIONS...........................................page 24
SUSPENSION.........................................................page 24
DISMISSAL............................................................page 24
STUDENT HONOR CODE...........................................page 22
STUDENT POLICY ON ALCOHOL AND OTHER DRUGS...............page 25
STUDENT PRIVACY RIGHTS.......................................page 25
THE ANNE ROSS LIBRARY AND RELATED MATTERS.................page 26
MONETATY INSTRUMENTS (STUDENT REFUND CHECKS)..........page 27
BANKING IN DOMINICA...............................................page 27
ADDITIONAL MATTERS OF FINANCE.......................................page 28
HOUSING IN DOMINICA................................................page 28
VISAS ..................................................................page 28
SECURITY..............................................................page 28
STUDENT GOVERNMENT.............................................page 29
AMERICAN MEDICAL STUDENTS ASSOCIATION.......................page 29
STUDENTS WITH DISABILITIES.......................................page 30
WHEN YOU LEAVE DOMINICA........................................page 30
INTERPRETATION AND MODIFICATION................................page 30
ATTACHMENTS:
    TECHNICAL STANDARDS FOR THE MD DEGREE
    STUDENT HONOR CODE
    STUDENT POLICY ON ALCOHOL AND OTHER DRUGS
    ANNUAL SECURITY REPORT

## ROSS UNIVERSITY SCHOOL OF MEDICINE
## STUDENT HANDBOOK

### MAY 2006

## INTRODUCTION

Ross University publishes this handbook for the students in its School of Medicine.

Effective May 2006, all rules and regulations in this *Handbook* are binding upon all students enrolled in the School of Medicine, including students on academic leave of absence from the school and students who are visiting at other medical schools. **This edition supersedes all previous editions of the *Student Handbook* and, when appropriate, updates the *Ross University School of Medicine Catalog.***

Students are expected to be familiar with the content of both this *Handbook* and the *Catalog* of the School of Medicine. Those students who receive financial aid are expected to have read *Ways & Means of Financial Aid*, which has previously been supplied. Only general aspects of financial aid are included here.

**Ross University reserves the right to change its rules and regulations, course offerings, degree requirements, academic calendar and other material contained in this *Handbook* or the *Catalog* at any time. Such changes will be announced in advance of their effective dates whenever possible; and will be disseminated via email and posted on the campus website.**

## CHANGES IN THIS EDITION

There have been changes incorporated throughout this *Handbook*. Students are responsible to make note of all changes in policy, and will be held to the rules outlined in this handbook.

## THE CURRICULUM

### THE DEGREE "DOCTOR OF MEDICINE"

The degree *Doctor of Medicine* is awarded upon the successful completion of the Basic Science curriculum, the Clinical Science curriculum, and the U.S. Medical Licensing Examination (USMLE) Steps 1 and 2. Step 2 of the USMLE now consists of two examinations the Clinical Knowledge (CK) exam (formerly Step 2) and a Clinical Skills (CS) exam (formerly the Clinical Skills Assessment (CSA). These will be referred to as Step 2 CK and Step 2 CS throughout this handbook.

The Basic Science segment consists of 60 credits of specifically prescribed coursework. There are four semesters of Basic Science classes, for a total of two academic years. All Basic Science coursework is offered on the School of Medicine campus (located at Portsmouth, in the Commonwealth of Dominica) and must be satisfactorily completed there. The hours, credits, and credit limitations are strictly prescribed. Deviation from these standards may jeopardize a student's eligibility for licensure in the United States. Basic Science students taking 10 semester credit hours are considered full-time; students who are taking less than 12 semester credit hours (see *Remedial Semesters* under Promotions Policy) may not satisfy enrollment requirements of sponsoring organizations, outside health insurance plans, and other related services.

The Clinical Science curriculum consists of 90 weeks of clinical training. It begins with an introductory clinical segment of 12 weeks, the course "Advanced Introduction to Clinical Medicine"(AICM). This segment provides training in the basic clinical skills combined with an introduction to the pathophysiology of major disease processes, and is conducted in clinical facilities, in the U.S.

The remaining 78 weeks consist of 48 weeks of required ("core") clerkships and 30 weeks of elective clerkships as described in the *Catalog*. During this time, the student participates in patient care while rotating through various medical specialties in affiliated teaching hospitals and other approved health care facilities, in the United States. Clinical clerkships are performed under the guidance of clinical faculty, the Dean of Clinical Sciences and Student Affairs and the Executive Dean and under the general supervision of the School of Medicine's Dean of Clinical Sciences.

## ACADEMIC STANDARDS

### PROMOTIONS COMMITTEE, PROMOTIONS

All academic matters, including grading policies and academic standards, while students are pursuing the Basic Science portion of the curriculum (the first two academic years), are within the purview of the School's Promotions Committee. This committee acts within the framework of the policies set forth herein. It is a faculty committee, whose recommendations are transmitted to the Dean. The decision of the Dean is final.

## STUDENT GRADING AND PROMOTIONS POLICIES
### GRADING POLICY FOR THE BASIC SCIENCE SEGMENT

The aim of the policy is to establish a minimum acceptable performance that a student must achieve that does not depend on the performance of the entire class. A Minimum Passing Score (MPS) is established that must be achieved for a passing (C) grade. A well-established method (the "Hofstee" method) will be used to determine the MPS.

The Hofstee method utilizes the class performance but also sets a Minimum Passing Score (MPS) that is derived from the lower group of scores within a defined range. The range for the MPS to be used is between 55% and 65%. Therefore, students that enrolled after May 2004 scoring below 55% will have failing scores and those scoring above 65% will have passing scores. Students with scores between 55% and 65% have marginal performance that may result in course failure

Case 11-2531, Document 53-1, 10/07/2011, 412551, Page93 of 183

depending on the performance among the lowest performing group of students (in the range of 55% and 65%).

Recorded grades will be on an A (80 and higher), B (70-80), C (MPS-69), F (below MPS).

The percentage contribution to the final course score from each of the interim (mini) exams and other course evaluations will be announced by each course in advance. The final course score will include the student's score on a NBME subject examination (taken at the end of the course). The final course score weight from the NBME subject exams will be announced by each course director in advance.

## *GRADES*

Grades are interpreted as follows:

| A | 80-100 | 4.00 |
|---|---|---|
| B | 70-80 | 3.00 |
| C | MPS-69 | 2.00 |
| F | Failing | 0.00 |
| W | Withdrawn Before Interim Exams | 0.00 |
| WP | Withdrawn Passing | 0.00 |
| WF | Withdrawn Failing | 0.00 |
| I | Incomplete | 0.00 |
| SP | Satisfactory Progress | 0.00 |
| UP | Unsatisfactory Progress | 0.00 |

**Withdrawal from a single course during a semester is not permitted.**

A student electing to withdraw from the School prior to the time of the first examinations will receive grades of W on his/her transcript. Those leaving after taking one or more interim examinations will receive WP (withdrawn passing) grades or WF (withdrawn failing), based on their performance in the examination(s) taken.

A student that is granted an emergency absence resulting in an Academic Leave of Absence prior to the time of the first exam will receive grades of W. Those leaving after taking one or more interim examinations will receive WP (withdrawn passing) grades or WF (withdrawn failing), based on their performance in the examination(s) taken.

An I (Incomplete) grade is entered when a student is advanced, pending completion of a requirement of a course, as defined by the course director. In this case, the outstanding requirement must be completed the following semester and the I will be changed into a grade. Failure to do so will result in a grade of F being entered to replace the I.

Students, who maintain grades of A in all courses in two successive semesters, will qualify for the *Dean's List*. They will remain on the *Dean's List* as long as they do not receive a grade below B in subsequent semesters. The *Dean's List* will be posted at the beginning of every semester, as soon the grades are available from the previous semester. This applies for semesters 2-4.

Students with a grade point average, during basic sciences of 4.0 are designated as *Distinguished Scholars*. The *Honor Roll* recognizes students who receive all A's in the first semester.

## EXAMINATIONS

### BASIC SCIENCE SEGMENT

Examinations are generally in the single-best answer or extended matching format. In certain courses, there are assignments and/or practical examinations that contribute to the course grade. All courses also have a number of mid-term exams that contribute to the course grade. All examinations in the Basic Science segment must be taken on the Portsmouth campus, except that clinical practical examinations may be given in the Princess Margaret Hospital (Ross facility).

Students are expected to be at their assigned seat five minutes prior to the beginning of an examination. Students that arrive to the examination room once the proctor has begun giving instructions will be denied entry and receive a mark of 0 in the examination. Mid-term examinations that are missed for a valid reason may be "made up" by weighting the other examinations in the course. In order to be excused the student must present valid documentation prior to the initiation of the examination. The determination of a valid reason shall be approved by the Executive Dean, or the Dean of Academic Administration and Student Affairs or their designee and must include appropriate documentation that would qualify the student for an emergency absence described below. An examination missed without approved documentation will be assigned a grade of zero.

A final examination, which is missed for any reason(s), cannot be "made-up". Any student who misses a final examination will have a grade of F reported to the Registrar for that course unless the student is on an approved emergency absence. In that case, the grade of I (Incomplete) will be recorded and the student must take that examination at the end of the following semester.

### NBME COMPREHENSIVE BASIC SCIENCE EXAMINATION

All students are required to take the NBME Comprehensive Basic Science Examination at the end of their fourth semester in Dominica. Students must obtain a passing score (as determined by the NBME) prior to being certified to take Step 1 of the USMLE. A student who fails to obtain a passing score on the NBME Comprehensive Basic Science Examination after their 4th semester in Dominica will be required to re-take it at the completion of their Advanced Introduction to Clinical Medicine (AICM) course in Miami, Florida. Obtaining a passing grade on the NBME Comprehensive Basic Sciences Examination is mandatory prior to certification for the USMLE Step 1. Students will be given three opportunities to obtain a passing grade on the NBME Comprehensive Basic Science Examination. Students who fail to obtain a passing score on the NBME Comprehensive Basic Science Examination within three attempts are subject to dismissal.

## PROMOTIONS POLICIES

### BASIC SCIENCE SEGMENT

As a result of the new integrated curriculum for 1st and 2nd semester and 3rd and 4th semester, it was necessary to adjust the promotion policies to reflect that at the completion of 1st and 3rd semester, the content of a given discipline has only been covered partially.

- 7 -

These new policies were implemented for the semester beginning in May 2005 and are as follows:

- Students passing a course will receive a temporary grade SP (Satisfactory Progress) that will convert to a final grade (A, B, C, F) at the completion of the 2nd and 4th semester

- Students failing one or two courses with a minimum of 50% raw score will be given the option to advance to semester 2 or semester 4 with a UP (Unsatisfactory Progress) or, repeat the semester on probation.

- At the completion of the 2nd and 4th semester, students with UP must reverse the UP to a passing grade.

- Students who receive less than a 50% raw score in one or two courses, such that the possibility of a passing score was near impossible will be allowed to repeat semester 1 or 3 on probation before being allowed to advance to semester 2 or 4.

- Students in semester 1, 2, 3 or 4 who achieve scores, lower than MPS in three or more courses will be recommended for dismissal. These students, if allowed to repeat, must repeat the semester on probation before being allowed to advance to the next semester.

- The Promotions Committee will review the final grades of students in the above categories, after the course directors have reviewed the grades, and make a recommendation to the Executive Dean as to whether these students can be promoted to the next semester.

- The grades in semesters 1 and 3 will represent 45% of the final grade and grades in semesters 2 and 4 will represent 55% of the total grade.

- Students must complete all Basic Medical Sciences in no more than 6 semesters. Thus, a student can only repeat two semesters of the Basic Sciences.

- At the completion of semester 2 and 4, students who fail one or two courses will have their grades reviewed by the Promotions Committee to determine if the student must repeat only semester 2 or 4, or repeat semesters 1 and 2 or 3 and 4.

- Students must pay tuition for all courses taken.

Students are subject to dismissal if they:

- Fail three or more courses in a semester. (This applies to all four semesters.)

- Fail any course in a Remedial Semester.

- Are, or will be, unable to complete the four-semester Basic Science segment in no more than six semesters (including regular and Remedial Semesters).

- Fail any course after they have previously completed two Remedial Semesters.

- Fail the Comprehensive NBME in three attempts

- Fail USMLE step2 in three attempts

- Fail to abide by university policies set forth

- Fail to pass the USMLE Step 1 in three attempts and within one year after they become eligible to take this exam.

In order to be eligible to begin clinical core clerkship rotations, students must meet all of the following pre-requisites:

- Successfully complete all the requirements of the Basic Science Coursework.

- Complete successfully the course "Advanced Introduction to Clinical Medicine" offered at the beginning of the Clinical Science segment.

- Pass the USMLE Step 1  (see below).

### CLINICAL SCIENCE SEGMENT

The Clinical Science Curriculum begins with the "Advanced Introduction to Clinical Medicine" (AICM) course. All students are required to take the USMLE Step 1 for the first time within 6 months of becoming eligible.  Failure to do so will subject the student to be dismissed.

Following the 12-week AICM, there is a 17-week scheduled break during which students remain fully enrolled. (Aside from a private "Extra" loan for live board review course fees, students are ineligible for financial aid during this period.) Some students will use this time preparing for, taking, and passing USMLE Step 1. Students who have already passed Step 1 may begin clinical clerkships at any time during this period. Students who have not received passing scores and have not started clinical clerkship within that period may still preserve their "in-school" student loan deferment status by applying for an **academic leave of absence** extending up to 180 days from the last day of the AICM. Beyond this timeframe, students who have not resumed clinical training fall into repayment status on their student loans and must be reported as withdrawn, for most purposes, to outside agencies.

Passing the AICM course and USMLE Step 1 are required for continuation into clinical clerkships. During the remainder of the Clinical Science curriculum, all students must take and pass all the required core and elective clinical clerkships. In addition to the 12 weeks of the AICM course, the School requires 48 weeks of core clerkships and 30 weeks of electives, for a total of 90 weeks of clinical training. These requirements are however, subject to change in the future, depending on regulatory and other academic requirements.

A final examination is given at the end of each clerkship. Students are also required to pass the USMLE Steps 1, 2 CK and Step 2 CS licensure examinations (see below).

- 9 -

- If a student fails a core clerkship, the student must repeat that same clerkship before being allowed to continue in the program.

- If a student fails an elective clerkship, that student must repeat successfully either the same elective, or another elective involving the same number of weeks as the failed elective.

- Students with a repeated failure in core subjects or in electives are subject to dismissal.

- Passing the USMLE Step 2 Clinical Knowledge (CK) and Step 2 Clinical Skills (CS) examinations are required for graduation.

- Eligibility to take the USMLE Step 2 Clinical Knowledge (CK) requires completion of a minimum of 45 weeks of clinical training (including the 12-week AICM and the Internal Medicine core clerkship). This examination must be passed in no more than three attempts. A minimum of 36 weeks of core clerkships and be within 12 months of graduation is required before taking the USMLE Step 2 Clinical Skills (CS).

- The entire clinical segment, currently 90 weeks, must be successfully completed within 120 weeks of attendance.

## GOOD STANDING AND SATISFACTORY ACADEMIC PROGRESS

**Good Standing**: The University reserves the right to withhold services, transcripts and certifications from students who are not in good standing. Students maintain good standing by complying with all academic rules and regulations, and remaining current in all **financial obligations**.

**Satisfactory Academic Progress**: Satisfactory Academic Progress represents an acceptable level of performance in meeting degree requirements within specified time periods. It is used in both academic evaluation and determination of financial aid eligibility.

Students maintain *satisfactory academic progress* by meeting the requirements listed under "Promotions Policies."

- Completing the required courses of the Basic Science Curriculum of the first two academic years (four semesters) in no more than 6 semesters of attendance.

- Passing all coursework during probationary (remedial) semesters.

- Passing the NBME Comprehensive Basic Science Exam in no more than three attempts, taken within a year after completing the Basic Science segment.

- Taking the USMLE Step 1 within six months after becoming eligible.

- Passing the USMLE Step 1 in no more than three attempts, and within one year after becoming eligible.

- Completing the 90-week Clinical Science segment in no more than 120 weeks of attendance.

- Completing the entire Doctor of Medicine Program in no more than 210 weeks (4 calendar years) of attendance.

- Passing the USMLE Step 2 Clinical Knowledge (CK) and Step 2 Clinical Skills (CS) in no more than three attempts.

Note: All of the above items refer to actual attendance in regular or Remedial Semesters, as well as actual weeks of attendance in the clinical training segment. They do not include periods when the student is on an academic leave of absence (ALOA) for preparation and time needed to schedule to take the two national examinations (USMLE Steps 1, 2CK & 2CS), the time of regularly scheduled breaks between semesters, or while pending assignment to a scheduled clinical clerkship. Also excluded are emergency ALOA's. (See section on *Emergency Leaves*.)

A semester during which an emergency leave of absence is taken, or in which the student withdraws prior to the end of Week 2 of the semester, will not be counted toward the limit for meeting the above requirements.

Students who do not meet the standards for *Satisfactory Academic Progress* are subject to dismissal. However, in the case of very unusual circumstances, the Promotions Committee may determine, on an individual basis, that a student may continue in the School for one semester (on probation).

## *PROBATION*

Students may be placed on academic probation for academic or behavioral "non-cognitive" issues.

"Academic Probation" is based on course work and professional behavior and recommended by the Promotions Committee to the Executive Dean.

Students are on academic probation while they are repeating basic science courses in Remedial Semesters or clinical training periods. Students on academic probation are also placed on financial aid probation for one semester. During this probationary semester, students may obtain financial aid. If they are not removed from probationary status the following semester, they will be ineligible to obtain any aid. Additional detailed information regarding financial aid eligibility is provided in the University publication, Ways & Means of Financial Aid.

This being a professional school, professional behavior is as important as is academic performance. Students may be placed on academic probation for "non-cognitive" or behavioral problems at the recommendation of the Grievance Committee or the Honor Council with concurrence of the Grievance Committee with the approval of the Executive Dean. This academic probation is based on a student's behavior violating one of the requirements in the Student Handbook. Students may be requested by the Grievance Committee to undergo a physical or psychological examination as well as other associated assessments.

## ATTENDANCE

In the Basic Science segment of the curriculum, students are expected to attend all scheduled classes, lectures, conferences, laboratory sessions/exercises, and examinations. Unexcused absences may adversely affect the final grade in a course. In order to successfully pass the Problem-based Learning (PBL) program a student must attend and participate in the required number of sessions. Failure to do so may result in failure in the course or courses involved in the PBL case. In some courses, especially those in which specific sequential skills are learned, if a student does not attend all sessions, arrangements must be made with the course director to make up the missed sessions. Failure to take an exam results in a grade of zero in that exam.

In the Clinical training period, students are required to be in attendance 100% of the time.  Also, students must be in compliance with any specific rules and regulations mandated by the hospitals where they are completing their clerkships.

Any unauthorized absence or failure to report to a clinical clerkship will be grounds for dismissal. In addition, the student will receive a grade of F for that clerkship.

Ross University School of Medicine is non-sectarian, and as such does not close for the religious holidays of any specific denomination or group. Students who miss classes or laboratories for any reason will be responsible for the content of all missed course work. Examinations that are scheduled to occur on religious holidays will not be rescheduled and no accommodation will be made.

## LICENSURE TO PRACTICE MEDICINE IN THE U.S.

In order to be licensed and practice medicine in the United States, the Educational Commission for Foreign Medical Graduates (ECFMG) requires students to take and pass the United States Medical Licensing Examinations (USMLE) Step 1, Step 2CK and Step 2CS (See www.ecfmg.org.)

Ross University School of Medicine students and graduates are eligible to sit for these exams. The USMLE has three Steps, the first two of which are taken by students while in medical school. Passing Steps 1, 2CK (Step 2 Clinical Knowledge) and 2CS (Step 2 Clinical Skills) of the USMLE, is required for graduation.

Students must have their applications for these exams certified by the University Registrar's Office in New Jersey, before the exams are taken.  See section below on "Certification For The USMLE Examinations."

Step 3 of the USMLE, the final step for licensing, is taken after graduation, during, or at the conclusion of residency training.

Information regarding the examinations may be obtained from the **Educational Commission for Foreign Medical Graduates (ECFMG), 3624 Market Street, Philadelphia, Pennsylvania 19104-2685. Telephone: (215) 386-5900; Fax: (215) 387-9196; Website: www.ecfmg.org**

Certification by the ECFMG is required for entrance to residency training and licensure.

## POLICY REGARDING UNITED STATES MEDICAL LICENSING EXAMINATION (USMLE), STEPS 1 & 2

The University has adopted the following policy regarding the United States Medical Licensing Examination:

### THE USMLE STEP 1

The School of Medicine uses the USMLE Step 1 as one criteria of a student's overall knowledge necessary for entering into clinical clerkships.

Students become eligible to take the USMLE Step 1 when they have passed all courses in the Basic Science Curriculum, successfully completed the Advanced Integration to Clinical Medicine clerkship, and, have passed the NBME Comprehensive Basic Sciences Exam.

Students are required to sit for the USMLE Step 1 examination for the first time within 6 months after becoming eligible. Failing to do so will result in the student's administrative withdrawal from the school of medicine. Additionally, students cannot sit for the exam while on an approved Leave of Absence.

Students are required to take and pass the USMLE Step 1 in no more than three attempts, **and within one calendar year of becoming eligible.**

Students who do not pass the USMLE Step 1 in three attempts within a year after becoming eligible are dismissed from the School of Medicine. Such students may apply for readmission. If granted such readmission, additional preparation courses taken in Dominica may be recommended.

Those who receive very low scores on the USMLE in the first or second attempts may be required to repeat certain parts of the curriculum before they can be certified for another attempt. This will also depend on the time that has elapsed since they became eligible. These students are not eligible for financial aid.

**Passing Step 1 is <u>required</u> by the University to proceed to the core clinical clerkships of the curriculum.**

### THE USMLE STEP 2 CLINICAL KNOWLEDGE (Step 2 CK)

The USMLE Step 2 CK assesses whether the student is able to apply the medical knowledge and understanding of clinical science considered essential for the provision of patient care under supervision, including emphasis on health promotion and disease prevention. Step 2 CK of the USMLE is taken in the clerkship years, after completion of the required clinical training. Passing Steps 1 and 2 CK and CS (Clinical Skills) of the USMLE are requirements for graduation and acceptance into residency training.

Case 11-2531, Document 53-1, 10/07/2011, 412551, Page101 of 183

Students are eligible to be certified to take the USMLE Step 2 CK provided that the student has completed a minimum of 45 weeks of clinical training, which must include the Internal Medicine core clerkship and is within 12 months of graduation.

**Students must pass Step 2 CK in a maximum of three attempts, and within two calendar years of becoming eligible, in order to receive the Doctor of Medicine degree from Ross University School of Medicine.**

Students requesting a LOA to prepare for Step 2 CK will be allowed a period of time not to exceed 6 (six) weeks.

### THE USMLE STEP 2 CLINICAL SKILLS (Step 2 CS)

The Step 2 CS is taken during the final year of medical studies. The Step 2 CS assesses whether an examinee can obtain a relevant medical history, perform a physical examination of a patient, and compose a written record of the experience. It includes an evaluation of the examinee's ability to communicate effectively in the English language

To be certified to take the Step 2 CS, students must have completed 32 weeks of core clinical clerkships, which must include Internal Medicine, and must be scheduled for at least 36 weeks of core clerkships and be within 12 months of graduation.

### CERTIFICATION FOR THE USMLE

Applications for the USMLE Steps 1 and 2 CK and CS, are available online from www.ecfmg.org.

To be certified, a student must be in *good standing* and must have met all of his/her financial obligations to the University. All students requesting re-certification, in order to take this examination a second or third time, must submit to the University Registrar's Office a copy (both sides) of the USMLE score report for the previously taken examination. Students should normally re-take these examinations as soon as they are again eligible. However, the Dean of Clinical Sciences will, upon receiving documentation of a failing score on either Step 1, Step 2 CK or CS, review the student's performance to determine whether there is a need for remedial work before the student re-takes the examination.

Students who pass the USMLE Step 1 and are requesting placement in clinical clerkships must also submit a copy of the score report, along with the performance profile to the University Registrar's Office. Verbal statements or incomplete reports are not acceptable.

Students who are administratively withdrawn, and have not passed the USMLE on their first or second attempts, may request to be sponsored to take or re-take the USMLE through the University through a process of reapplication made through the University Admissions Office. Such requests for sponsorship will be reviewed individually, and may include certain conditions for approval.

Sponsorship for taking or re-taking the USMLE, within a specified period of time, will be provided to those who meet certain criteria (see below). Students will not be reinstated into active status until they pass the USMLE and begin their clinical clerkships.

Evaluations for sponsorship will include, but are not limited to:

a) The time that has elapsed between when they are eligible and when the USMLE is taken for the first time;

b) The USMLE scores received in prior attempts; and

c) Related items dealing with the student's activities during the interim period.

## PROFESSIONAL CONDUCT, ETHICS

Ross University School of Medicine expects its students to adhere to the highest standards of ethical and professional behavior in every aspect of their lives, as expected of medical professionals. Students shall conduct all aspects of their lives with honesty, integrity, and respect for others. Failure to do so may result in disciplinary action, including dismissal from the School.

Cheating (whether on examinations or with laboratory data), stealing (whether from the Library or from fellow students), and plagiarism will not be tolerated and can lead to expulsion from the school.

A student found cheating on an examination receives a grade of zero for that examination, and is subject to dismissal from the School.

All students must bring the official RUSM identification card to all exams. If a student suspects a fellow student of cheating during an exam, the student should discreetly alert an exam proctor. No bags or books may be brought into the examination room. Final and make-up examinations must be returned and they may not be removed from the examination room. If a student is ill and unable to attend the exam, he/she must produce a doctor's letter and inform the course director or the administration at the earliest opportunity.

Medical students shall demonstrate professional behavior that would be expected of a physician, including, but not limited to:

   (a) Being truthful in carrying out educational and clinical responsibilities, never falsifying information or purposefully misrepresenting a situation;

   (b) Being punctual, reliable, and conscientious, in fulfilling professional duties;

   (c) Maintaining confidentiality of information concerning patients, and refraining from discussing cases, except under appropriate circumstances;

   (d) Not participating in patient care under circumstances in which they are under the influence of any substance, or other condition, which might impair their ability to function;

- 15 -

(e) Maintaining professional hygiene, demeanor, and appearance when in a patient care setting;

(f) Accepting the responsibility to review plans or directives for patient care with the attending physician if the student, after careful consideration, believes that these plans or directives are not in the best interest of the patient;

(g) Clearly identifying him/herself as a medical student in patient care settings, and respecting civil laws, hospital rules, and University rules governing the conduct of students;

(h) when students are on campus or participating in RUSM activities they must at all times display their Ross University I.D. cards;

(i) Not be in possession of alcoholic beverages, knives, switchblades, firearms or illicit drugs when on University grounds or involved in RUSM sponsored activities;

(j) Showing compassion and respect for themselves, their colleagues, faculty, and patients who participate in their education.

## SEXUAL HARASSMENT

Sexual harassment undermines the character and purpose of the University. Sexual harassment includes unwelcomed sexual advances, verbal or physical conduct of a sexual nature and inappropriate sexualization of the working environment with words, materials or behavior. It may involve women being harassed by men, men being harassed by women or harassment between persons of the same sex. Sexual harassment is subject to disciplinary action within the University community. Charges of sexual harassment can be filed by following the University's established grievance procedures for students, faculty, and staff.

## PROBLEMS, GRIEVANCES

Assistance with a variety of concerns and problems is available to students on the campus in Dominica. Students are free to discuss academic problems with their professors, faculty advisors, course director, department heads, and the assistant/associate deans of Student Affairs. All professors publish times when they are available in their respective offices.

Counseling service is available for students experiencing academic or personal difficulties. The School's Behavioral Science Department operates this service. Representatives of most major religions are also available in Dominica.

All students and faculty members have the right to present grievances to the *Grievance Committee.*

The Grievance Committee consists of faculty and student representatives. It can also advise students and make recommendations to the administration. The Grievance Committee is the investigative and judicial arm of the Dean's Office, and its authority is derived from that office. The Grievance Committee has authority over all matters referred by the Executive Dean, the Dean of Academic Administration and Student Affairs, the Associate Dean of Student Affairs, the Student Government Association, and any individual student or faculty member, including, but not limited to, violations of the professional conduct standards. All decisions and reports go to the Executive Dean and the Dean of Academic Administration and Student Affairs for review, and by copy to the initiating source. The final decision is that of the Executive Dean will be copied to the President.

Any non-academic recommendation made by the Grievance Committee, and executed by the Dean to suspend or terminate a student from Ross University School of Medicine may be appealed to the Office of the President. The President and at least one other member of the administration, appointed by the President, hear the appeal of the Dean's decision. The student can be represented by counsel, and has the right to present witnesses and documentary evidence. The student can choose to present his/her appeal in writing, by telephone, or through an in-person hearing. A student who wishes to appeal a determination of the Grievance Committee must give written notice of intent to appeal to the Office of the President within ten days of receiving the Dean's decision, based upon the report from the Grievance Committee.

## *REGISTRATION AND OTHER REGISTRAR SERVICES*

### *INITIAL REGISTRATION OF INCOMING STUDENTS*

Students enrolled in the Basic Science courses **must register in person** each semester before classes begin, and must present their passports on campus at that time, in order to receive their official RUSM identification. Students registering late without satisfactory documentation are charged a **late registration fee** of US$100 daily. (This fee is not retained by the University but credited to the Student Government Fund). No unregistered student will be admitted to classes. Registration for Basic Science courses is conducted on the campus in Dominica. The official Registrar's records, however, are maintained in the University's central offices in New Jersey.

Any specified documentation upon which the student's admission is contingent must be submitted to the University Registrar by the end of that semester. If essential documentation remains missing, the student will not be permitted to attend the subsequent semester, and will be administratively withdrawn.

MCAT scores are required as part of the Admission requirements and will be used in conjunction with other information required for admission to RUSM.

Tuition and fees are generally due approximately 15 days before the start of classes. For students receiving financial aid, tuition is deferred until an in-person registration occurs. At that point, only students with approved financial aid and/or those sponsored by a Ross recognized third-party payer will be allowed to register unless approval is granted by the University Bursar.

In such cases, it is expected that the student complete a promissory note and remit payment within 30 days from the beginning of the semester. Late payments are subject to a $75.00 late fee and the student may also be considered for an administrative withdrawal based on non-payment as indicated on the terms and conditions of the promissory note. Furthermore, the student will not receive any credit for that semester.

## REGISTRATION OF CONTINUING STUDENTS

Continuing students in the Basic Sciences **must register in person on campus** at the beginning of each semester and must present at that time the official RUSM identification card, to ensure proper identification. There is a charge of US$25 to replace a lost ID card.

Students who are unavoidably late returning from break must:

1.    Notify the Dean of Academic Administration and Student Affairs and the Campus Registrar in writing before the registration date and, upon their return, present valid documentation that is satisfactory to the Dean of Academic Administration and Student Affairs. Fax communication is acceptable. Faxes may be sent to 1-767-445-3276.

2.    Students registering late without satisfactory documentation are charged a **late registration fee of US$100 daily.** (This fee is not retained by the University but credited to the Student Government Fund.)

3.    Students arriving on campus after the end of the registration period established for each semester will not be permitted to register for that semester. Any financial aid disbursements received by the University will be returned to the lender.

Tuition and fees are generally due approximately 15 days before the start of classes. For students receiving financial aid, tuition is deferred until an in-person registration occurs. At that point, only students with approved financial aid and/or those sponsored by a Ross recognized third-party payer will be allowed to register unless approval is granted by the University Bursar.

In such cases, it is expected that the student complete a promissory note and remit payment within 30 days from the beginning of the semester. Late payments are subject to a $75.00 late fee and the student may also be considered for an administrative withdrawal based on non-payment as indicated on the terms and conditions of the promissory note. Furthermore, the student will not receive any credit for that semester.

## REGISTRATION – CLINICAL SCIENCE SEGMENT

Students in the clinical phase of the curriculum register through the Office of the Dean of Clinical Sciences in New Jersey. This includes the introductory clinical semester.

Once students have successfully completed the AICM course, have passed the USMLE Step 1, have submitted documentation of their scores to the University Registrar (copies of both sides of the USMLE report), and have received financial clearance from the University Bursar, they will be assigned to clinical clerkships by the Office of the Dean of Clinical Sciences

The University has a responsibility to place students in their individual clinical clerkships. Solely the Office of the Dean of Clinical Sciences makes this determination. All students are required to report to the clerkships to which they are assigned.

In general, clerkship programs will be taken according to a pre-arranged schedule. Students will be notified of their entry into a given program via written confirmation from the Office of the Dean of Clinical Sciences.

Students in the Clinical Science curriculum register for an academic year (two semesters, each encompassing 15 weeks of clerkships.) Clerkship schedules will be issued to students in blocks of at least 30 weeks of clerkship assignments. Students who decline their clerkship schedule must sit out for a semester (4 months) before reassignment will be provided. Failure to attend a scheduled clinical clerkship is grounds for dismissal from the School and an F will be posted on the transcript for that clerkship.

Students performing clerkships are considered enrolled full-time, provided they are scheduled for a minimum of 12 weeks.   The calendar period in which fifteen weeks of clerkships are completed defines the semester for that student.

Students who are about to begin or are continuing in the clerkship program should consult the Clinical Clerkship Program Guidelines published by the Office of the Dean of Clinical Sciences for more detailed information.

### *TRANSCRIPT REQUESTS*

Official transcripts are requested from and provided by the University Registrar in New Jersey. Students may obtain a transcript request form from the Campus Registrar or online at www.rossmed.edu. The Campus Registrar will forward requests to the New Jersey office. Requests cannot be taken over the telephone or via e-mail. Students in the Basic Science segment will receive a grade report when received in Dominica. Transcripts are not released until all financial obligations to the University have been met and any missing administrative documents have been received.

### *STUDENT LOAN DEFERMENT PROCESS*

If you have previously attended another school and received financial aid in the form of student loans, and wish to defer repayment of your student loans using a form from your lender, please see the Campus Registrar for instructions. Loans cannot be deferred during curriculum gap periods of 30 days or longer.

### *TUITION DURING REMEDIAL SEMESTERS*

Full tuition is charged for students registered full-time (12 or more credits).  Prorated tuition is charged during Remedial Semesters for students who are remediating less than 12 credit hours of coursework.

Any reduction in course load will impact the total financial aid that the student receives, based on government regulations and financial aid policies.

## *TUITION REFUND POLICY FOR WITHDRAWALS*

A withdrawal occurs when a student's enrollment is permanently discontinued or, in some cases, even temporarily interrupted (see Note below). A withdrawal may be official (when the student notifies the Dean of Academic Administration and Student Affairs in writing) or unofficial (without written notification). The effective date of withdrawal is normally the student's last date of attendance.

If a student withdraws, Ross University's handling of tuition corresponds with Federal loan entitlement regulations, which are based on the period attended:

- If a new student withdraws prior to the start of the first semester, no tuition charges are due; however, acceptance deposits are forfeited.

- If a continuing student withdraws prior to the start of a semester, no tuition charges are due.

- If a student withdraws during the first 60% of a semester, tuition charges are directly prorated based on the portion of the semester that has elapsed. (As semesters are normally 15 weeks in length, tuition is prorated for withdrawals during weeks 1 through 9.)

- If a student withdraws after the first 60% (i.e., after completing the 9th week) of a semester, the full tuition charges remain due.

For withdrawal during the first 60% of a semester, as per Federal regulations, student loan entitlement is recalculated, and Ross University and the student are each proportionally responsible for returning "unearned" financial aid to the relevant lender(s). In addition to the lender returns required by Federal regulations, Ross University returns any remaining credit balance to lenders, which decreases the student's loan debt for that semester.

**Note:** Although a leave of absence may be authorized in limited circumstances, failure to return to school from a leave of absence is considered a withdrawal as of the last date of attendance. Please note that a leave of absence and an academic leave of absence are two different statuses. (For an explanation of an academic leave of absence, refer to the section on academic policies.) Additionally, under federal regulations, a leave of absence must be requested and approved in advance, may not exceed 180 days, and may not be granted within 12 months of a previous leave of absence. An interruption of enrollment status that does not qualify as a leave of absence is considered a withdrawal as of the last date of attendance.

See section above regarding policy on enrollment status for taking the USMLE. (Pages 13-15)

## EMERGENCY ABSENCES, VACATION & ACADEMIC LEAVES OF ABSENCE

The School of Medicine curriculum is designed to be a series of integrated, consecutively scheduled learning experiences. Interruptions of the educational program are academically undesirable and are of concern to medical licensure boards; they also can affect financial aid eligibility and loan repayment status. Emergency absences are granted only under extraordinary and well-documented circumstances.

Students are advised to consult with the Dean of Academic Administration and Student Affairs or the Dean of Clinical Sciences, as appropriate, to discuss their plans for any interruption of their studies and its academic impact. Those receiving student loans must also contact the Financial Aid Office; additional information is provided in the University publication *Ways & Means of Financial Aid.*

During the clinical semesters students must also abide by the policies and procedures of the institutions they are attending. Short breaks due to scheduling constraints may occur between clinical clerkships. Such breaks, if not exceeding four weeks have no impact on the student's enrollment status. (Consult the Financial Aid Office publication, *Ways & Means of Financial Aid,* for information about loan disbursements in the event of longer gaps.)

### EMERGENCY ABSENCES

Students may have unavoidable, non-academic reasons for interrupting their enrollment during a semester. With the approval of the Dean of Academic Administration and Student Affairs or her/his designee, a student may be temporarily excused from classes during a semester due to documented emergency circumstances, such as severe illness or major injury to the student himself, or a similar emergency or death in the student's immediate family. Such a brief absence, wherein a student intends to (and can) return within two weeks to complete all coursework for that semester, constitutes an emergency absence and has no effect on the student's enrollment status. Documentation of the emergency is required.

A student who finds it impossible to return from an emergency absence within two weeks may request an academic leave of absence (see ALOA below) extending for the remainder of the semester.   Failure to request an ALOA will result in administrative withdrawal (see below) and the student must apply for readmission.

The interrupted semester will not be counted when determining time limits for satisfactory academic progress.  In the case of an ALOA following an emergency absence, students will not be charged tuition twice for the same semester.

### ACADEMIC LEAVE OF ABSENCE (ALOA)

The Basic Science segment is scheduled in three semesters per calendar year with short breaks between semesters. A student who needs a longer break between semesters for personal reasons may request an academic leave of absence (ALOA) as outlined below. As a general policy an ALOA will be granted for only one semester, and the student must return in the following semester.

- An ALOA must be requested in writing on the standard form, stating specific reasons and return date, and must be approved by the Dean of Academic Administration and Student Affairs or her/his designee, or the Dean of Clinical Sciences and the University Registrar. The ALOA may only be requested following the end of the semester and the last day of registration of the ALOA semester. An ALOA is not valid until it is fully processed and recorded by the University Registrar, and the student has received a confirmation copy. Submission of forms to the University Registrar and confirmations may be conducted by fax. Faxes may be sent to 1-732-978-5306

- During the Basic Science phase, an ALOA can begin only after the completion of a semester, and the student must return at the beginning of the next semester following the completion of the student's ALOA. The ALOA may be renewed, prior to expiration, for an additional semester, based on the circumstances of the request. However, once the ALOA has extended beyond 180 days, you will be reported as withdrawn effective the last day of class attendance.

- During the Clinical Science phase, an ALOA can be taken only at the end of a clinical segment or clerkship, and the student must return to resume clinical clerkships at the time specified.

- During the Clinical Science phase, requirements for an ALOA to prepare for Step 2 will be granted for a period of time not to exceed 6 weeks.

A student who does not return from an ALOA at the specified time will be administratively withdrawn, effective the last day of class attendance. (Note the effect of this on financial aid obligations; see *Ways & Means of Financial Aid*.)

**All students returning from an authorized absence (emergency or ALOA) must report to the Campus Registrar or Dean of Clinical Sciences and must pursue the curriculum then in effect.** They are subject to all policies that are in force at that time and must pay the current tuition and fees. Similarly, students who defer their enrollment or are readmitted or reinstated to the School after any period of absence are also subject to all policies, tuition and fees then in effect.

## *UNAUTHORIZED LEAVES*

Except for approved emergency absences outlined above, students who leave during a semester or a scheduled clinical clerkship will be administratively withdrawn (see below).

Students wishing to return to the School after an unauthorized leave must apply for readmission. The past performance of these students will be reviewed by the Promotion Committee to determine whether they can be readmitted and, if so, under what conditions, including on academic probation.

## *WITHDRAWALS*

Students who have been withdrawn (by student request or administrative action) must apply for readmission if they wish to return to the School and are subject to the Tuition Polices for

Withdrawals. Such readmission must be reviewed by the Promotions Committee and is not guaranteed. They will be subject to all academic policies and tuition and fees then in effect, without any "grandfathering" provisions based on their original admission.

### STUDENT WITHDRAWALS

Students may not withdraw from a single course during a semester; they must withdraw completely from the School. Basic Science students may begin the withdrawal process by obtaining a withdrawal form from the Campus Registrar's Office in Dominica, and appropriate clearances from the Library, Financial Aid Office, and the Dean of Academic Administration and Student Affairs. Such students will receive W, WP, or WF on their transcripts depending on whether they were passing or failing a course at the time of their withdrawal, as specified under the *Student Grading and Promotions Policies* section of this Handbook.

Refunds, if required, will be determined by the last day of attendance in an academically related activity.

Those who received WF in any of their courses at the time of withdrawal will be reviewed by the Promotions Committee to determine whether they are eligible for readmission.

Students who were failing one or more courses at the time of withdrawal will be on academic probation if they are readmitted.

These students will also be on financial aid probation, and will not receive funds to continue if they are still on academic probation in the succeeding semester.

### ADMINISTRATIVE WITHDRAWALS

The University Registrar enters an administrative withdrawal in the student's record when any of the following apply. The student:

- Does not return to the campus to register for the following semester and attend classes in Week One of a semester.

- Does not return at the time specified for the end of an approved leave.

- Is not scheduled for a clinical rotation for a period of 30 days or more and has not applied for and received an approved academic leave of absence.

All students who are administratively withdrawn will be reported as withdrawn effective as of the last day they attended classes. The date of withdrawal will be reported to the U.S. Department of Education, if these students had Stafford loans.

### DEFERRALS

Prior to the start of classes, students admitted to a specific semester may request to defer their admission to a subsequent semester. This is limited to no more than the next two semesters.

Those who do not begin enrollment during that period are considered to have deactivated their applications and must re-apply for admission. Applications for deferrals must be made to the New Jersey Admissions Office. Students deferring to a future semester must meet all the requirements in effect for that semester.

Entering students who, following their initial registration, wish to defer their enrollment to the following semester may do so through the Dean's Office in Dominica, only during Week One of the semester.

Students who are admitted for a given semester, do not come to the Campus to register for that semester, and do not request a deferral, are considered to have deactivated their applications and must re-apply for admission.

## DISCIPLINARY ACTIONS

RUSM may implement a variety of disciplinary actions for non-academic infractions such as, but not limited to theft, vandalism, assault, drug use, animal neglect, or any blatant disregard for school policies, faculty or administrative authority, or professional ethics. These actions are verbal reprimand, letter of reprimand, restitution, suspension, and dismissal.

## SUSPENSION

Students may be suspended for a period, during which a student will not be allowed to enroll in classes and may have special requirements to complete prior to returning to his/her academic program. The Dean approves all suspensions.

Suspension during an academic semester does not warrant reduction of tuition and fee charges.

## DISMISSAL

Students may be dismissed from the School for poor academic performance, for violation of the Honor Code, and/or for disruptive or unprofessional behavior. As a general School policy, students who are dismissed will not be considered for readmission.

A process for appeal is available to dismissed students.

Suspension during an academic semester does not warrant reduction of tuition and fee charges.

## STUDENT HONOR CODE

*The student body has developed an Honor Code, with which all students must comply.* The Honor Code is attached hereto and incorporated herein.

Each student is bound by its provisions and required to sign a written acknowledgement of receipt. Documented failure to do so will result in disciplinary action, including dismissal from the School.

A98

Cheating (whether on examinations or with laboratory data), undisclosed knowledge of cheating, stealing (whether from the Library or from fellow students), and plagiarism will not be tolerated and can lead to expulsion from the school.

In the event that a student is accused of acts that are within the jurisdiction of both the Honor Council and the Grievance Committee, then the accused student shall have the right to choose the forum in which he or she will be heard.

### STUDENT POLICY ON ALCOHOL AND OTHER DRUGS

Ross University has developed a *Student Policy on Alcohol and Other Drugs,* with which all students must comply. It attached hereto and incorporated herein.

### STUDENT PRIVACY RIGHTS

The University follows the guidelines of the U.S. Family Educational Rights and Privacy Act (FERPA), which are as follows:

(1) The right to inspect and review the student's education record within 45 days of the day the University receives a request for access.

> Students should submit to the University Registrar a written request that identifies the records they wish to inspect. The Registrar will make arrangements for access and notify the student of the time and place where the record may be inspected.

(2) The right to request the amendment of the student's education records that the student believes are inaccurate or misleading.

> Students may ask the University to amend a record that they believe is inaccurate. They should write to the University Registrar, clearly identify the part of the record they want corrected, and specify why it is inaccurate.

> If the University decides not to amend the record as requested by the student, the University will notify the student of the decision and advise the student of his or her right to a hearing regarding the request for amendment. Additional information regarding the hearing procedures will be provided when the student is notified of the right to a hearing.

(3) The right to consent to disclosures of personally identifiable information contained in the student's education record, except to the extent that FERPA authorizes disclosure without consent.

> One exception, which permits disclosure without consent, is disclosure to school officials with legitimate educational interests. A school official is a person employed by the University in an administrative, supervisory, academic or research, or support staff position (including law enforcement unit personnel and health staff); a person or company with whom the University has contracted (such as an attorney, auditor, or collection agent); a person serving on the Board of Trustees; or a student serving on an

- 25 -

official committee, such as a disciplinary or grievance committee, or assisting another school official in performing his or her tasks.

A school official has a legitimate educational interest if the official needs to review an education record in order to fulfill his or her professional responsibility. Upon request, the University may disclose education records without consent to officials of another school in which a student seeks or intends to enroll.

The University may disclose directory information upon request.  Directory information includes:

> Name, address, telephone listing
> Dates of attendance, degrees and awards
> Field of study
> Most recent previous school attended
> Photographs
> Date and place of birth
> E-mail address

(4) The right to file a complaint with the U.S. Department of Education concerning alleged failures by the University to comply with the requirements of FERPA.  The name and address of the Office that administers FERPA is: Family Policy Compliance Office, U.S. Department of Education, 400 Maryland Avenue, SW, Washington, DC 20202-4605.

*THE ANNE ROSS LIBRARY AND RELATED MATTERS*

The Anne Ross Library and Learning Resource Center (LRC) strives to be the intellectual center of the Ross University School of Medicine, and provides services, resources, equipment and facilities needed to enhance self-directed learning, support evidence-based medicine, and help students succeed academically.

Students are expected to purchase required textbooks for each course. The Library houses a full range of biomedical books, journals, study aids, audiovisual programs, and computer-assisted instructional materials that supplement the required readings.

Students are required to display their Ross University student identification card to gain entry to the library. The identification card is also required for all Library transactions and services including borrowing books, making photocopies, using multimedia resources and accessing the Internet. The Library is intended for University students, faculty and staff, only. Children are not permitted in the Anne Ross Library & LRC.

During the semester, the Library is open 17 hours per day (7:00 a.m. to midnight) seven days per week. Five days prior to the Mini examinations, and 10 days prior to the final examinations, the Library will be open until 2 AM. There are other facilities on campus that are open 24 hours per day for students who wish to study at odd hours. It is not recommended that students stay up all night to study before exams. There are limited operating hours during breaks and holidays and generally the library will be closed during the weekend following the administration of the Comprehensive Basic Science Examination.

Students are expected to return Library materials on time. Overdue fines are assessed to ensure prompt return of high-use items, and any money collected is donated to the Student Government

Case 11-2531, Document 53-1, 10/07/2011, 412551, Page114 of 183

Association. Failure to pay fines or return books will affect a student's ability to borrow other materials and may affect the release of final grades.

Eating, drinking or smoking is not permitted in the Library.

Stealing or damaging Library materials, equipment or furniture is a serious offense. Students caught vandalizing, mutilating or stealing Library materials, equipment or furniture, or physically threatening staff members will be suspended immediately pending a hearing that may result in expulsion from the University.

Students are expected to take their notes, books or personal items with them when they leave the Library.  At closing time each day, the study tables and carrels will be cleared of all materials.

Students who consistently ignore basic rules of the Library will be identified and warned by the Library staff that will submit a written report to the Executive Dean. The Dean will refer the issue to the Grievance Committee for further action. Students that receive more than three (3) warnings for inappropriate behavior in the Library are subject to disciplinary action including but not limited to being denied access to the library for the rest of the current semester and/or a subsequent semester.

Students are encouraged to make suggestions and express their ideas about Library services, resources and facilities to the Library Director.

### *MONETARY INSTRUMENTS (STUDENT REFUND CHECKS)*

Please note that the United States Department of Customs and Border Patrol have specific rules regarding the transportation of monetary instruments (refund checks, cash, etc...) into and out of the United States.

For more information, please visit the United States Department of Customs and Border Patrol at www.cbp.gov and perform a search for currency reporting.

### *BANKING IN DOMINICA*

Banking can be conducted at two locations in Portsmouth, Barclay's Bank and National Commercial Bank, or at the Scotia Bank in Roseau, as well as at an automatic teller machine (ATM) on campus. Funds are disbursed in EC$ from the ATM.  To use the ATM, students must have an account at National Commercial Bank, to which funds may be transferred through one of the following American banks: Bank of New York, Bank of America, or Nations Bank.

Ross University checks can be cashed immediately at the Scotia Bank and certain other banks. Financial aid checks can also be cashed immediately in part or entirely at certain of the banks. Endorsements by two authorized signatories at the rank of Dean, Vice Dean, or Associate Dean, are required in order to cash checks at Barclay's Bank.  However, National Commercial Bank requires only one signature.  Ross University checks drawn on Chase Manhattan Bank do not require a Dean's signature to be cashed at the National Commercial Bank.

Students are strongly encouraged to establish banking in the US and Dominica with the appropriate procedures to be able to have electronic transfer of funds to their Dominica account

All banks impose a 30-working day (at least) delay before honoring US$ personal checks drawn outside Dominica. Banks will cash personal checks in U.S. dollars, without the delay, if they are signed by the Deans as listed above. The most reliable way for students to get money quickly in Dominica is to have an ATM card that will work at Royal Bank of Canada and at Barclay's, or to arrange for the money to be wire transferred. Wire-transferred funds are almost immediately negotiable. Another way of transferring funds is via international money orders. Traveler's checks are usually accepted.

VISA, MasterCard, and American Express credit cards can be used to obtain money in EC currency at the Dominican banks.

### ADDITIONAL MATTERS OF FINANCE

Occasionally, while studying in Dominica, students waiting for loan checks may find themselves in financial difficulties. In these circumstances, the Dean of Academic Administration and Student Affairs or her/his designee can authorize a temporary loan of EC$100.00 per week from local funds for living expenses.

Queries regarding financial aid in general, or about an individual student's loan status, should be channeled through the financial aid representative on campus.

### HOUSING IN DOMINICA

There is a reasonable stock of housing and hotels in Portsmouth and this stock is continually improving. The University has a housing officer who is available to assist students in securing appropriate accommodations. Students are urged to follow the recommendations of the housing officer on such matters as written inventories of furnishings, and clear statements on responsibility for property taxes, water, phone, and electricity bills before committing to a rental. Generally, these utilities are more expensive than in the U.S., especially international phone calls. Students sharing flats should also make a written agreement as to individual responsibilities.

### VISAS

The government of Dominica requires that all adults entering the country for more than three weeks must have submitted visa applications prior to arrival. Students must remember that they are guests in Dominica, and must observe all immigration rules and local laws. All students are required to possess a return ticket to their normal country of residence and have a valid visa in their passport. If in doubt, students should check with the campus office that handles immigration issues.

Non-resident, non-U.S. citizens may require a visa to enter the U.S. for the Clinical Science segment.

### SECURITY

The University employs all possible means to promote the security of its students, maintaining a security force on the campus whose duty it is to preserve order and the safety of the students and

the campus. This security force functions under policies and procedures established by the administration, as well as in response to directives from the administration that may be issued and publicized from time to time. All on- and off-campus incidents must be reported to the security force.

In accordance with U.S. Department of Education requirements, information about security and safety practices, as well as campus crime statistics are published annually. This information is distributed to current students and may be obtained, upon request, by any prospective student.

RUSM in Dominica employs a cadre of security officers to provide 24-hour security to the University, its students, and staff, at the Portsmouth Campus. All security officers have received in-house training, supplemented by formal training at the Dominica Police Training School. Thus, they are capable of providing a high level of professional service.

By and large, most student security problems occur outside the Campus compound, which is generally considered relatively safe. However, while the Island has a relatively low crime rate, students and visitors should still take the same precautions that they would take in major cities in the United States.

Security is also provided for the Ross University Clinical Facility at the Princess Margaret Hospital in Roseau, which is used by students during their clinical assignments and clinical clerkships.

### STUDENT GOVERNMENT

The student body elects class representatives, committee members, and officers for the Student Government Association (SGA) each semester. The SGA is active in coordinating athletic events, supervising the weight room, sponsoring and arranging the social activities on campus, and bringing student problems to the attention of the administration. To be qualified to run for office and to serve as an officer, class representative or on a committee, a student must be a full-time student and be in good academic standing as defined in this *Handbook*. Students who are officers in the SGA are considered leaders and role models for the student body. As such, they will be required to maintain a cumulative grade point average (GPA) above 2.6 prior to election. Those who do not meet this criterion will be asked to resign and another will be appointed or elected to serve.

The Associate Dean Student Affairs and the Director of Campus Life supervise the running of the SGA.

Students are required to pay an SGA fee, which is collected with other student fees. In addition, all late registration fees and library fines go entirely to the SGA.

### AMERICAN MEDICAL STUDENTS ASSOCIATION

The American Medical Students Association has a chapter at Ross University. The dues of this organization are voluntary. AMSA works with the faculty to select outside speakers for the Research Day held each semester, provides public service opportunities such as health screening activities for the general public, assists in providing health related services for students, and

provides access to the programs of the National Body of AMSA in legislative and other governmental areas.

## STUDENTS WITH DISABILITIES

In 1990, Congress passed the Americans with Disabilities Act (ADA) that reinforced and extended the nondiscrimination concepts of Section 504. Section 504 contains a nondiscrimination provision which provides that a qualified individual with a disability can not be denied participation in a program receiving Federal financial assistance solely on the basis of a disability. Students with a disability defined within the ADA may request an accommodation. The process to do so is as follows;

1. The student must submit to the school appropriate documentation (in compliance with ADA) prior to commencing classes each semester. These are to be submitted to the Director of the Exam Center.
2. All requests will be reviewed via external assessment by a licensed professional who will report his/her opinion to the RUSM Examination Committee that will make a final determination as to the type of accommodation that will be granted.
3. When an accommodation is granted, it is done so for a single semester. Students with ongoing needs must resubmit their request each semester.
4. If the documentation exceeds its time limitation, in accordance with the ADA, it is the students responsibility to resubmit to the school updated documents.

## WHEN YOU LEAVE DOMINICA

Please note that students are responsible for all debts in Dominica, whether to the phone company, landlord, Dean's account, or the SGA. While debts to the University remain outstanding, the student may not be allowed to proceed with clinical clerkships or obtain any transcripts from the New Jersey Office. Students must pay all their debts before they leave Dominica. The Dominican laws on debt are strict, and it has happened that students have found themselves in jail for debt.

Each student must find two faculty members to write letters of recommendation. These letters are kept on file for the Dean of Clinical Sciences to use when introducing you to your clinical assignment. These letters are references, not testimonials, and are, therefore, confidential; students may not have copies. It is advisable to check with the Registrar to confirm that your letters are on file.

## INTERPRETATION AND MODIFICATION OF THE STUDENT HANDBOOK

The final arbiter of the interpretation of any regulation in this *Handbook* is the Executive Dean or the President, as appropriate. The University reserves the right to modify, or make changes to any rule or regulation in this handbook. Any change pertaining to the Basic Science campus or changes communicated to enrolled clinical students by the Clinical Science Dean become effective on the first day of the semester, unless otherwise noted in the announcement of the change.

It is the student's responsibility to be aware of all regulation in this handbook and any changes or modifications to these regulations.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X

ANAND DASRATH,                                          CASE NO.: CV-07-2433

               Plaintiff,                    (C. Amon) (R. Reyes)

    - against -

ROSS UNIVERSITY SCHOOL OF MEDICINE,

               Defendant.

-------------------------------------------------------------------- X

## MEMORANDUM OF LAW IN FURTHER SUPPORT OF ROSS UNIVERSITY SCHOOL OF MEDICINE'S MOTION TO DISMISS THE AMENDED COMPLAINT PURSUANT TO RULES 12(b)(1) AND (6)



**CULLEN**and**DYKMAN**LLP

Garden City Center
100 Quentin Roosevelt Boulevard
Garden City, New York 11530-4850
Telephone (516) 357-3700

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X

ANAND DASRATH,                                    Case No.: CV 07 2433
                                                 (C. Amon)
                              Plaintiff,          (R. Reyes)

              - against -

ROSS UNIVERSITY SCHOOL OF MEDICINE,

                              Defendant.
-------------------------------------------------------------------X

### MEMORANDUM OF LAW IN FURTHER SUPPORT OF ROSS UNIVERSITY SCHOOL OF MEDICINE'S MOTION TO DISMISS THE AMENDED COMPLAINT PURSUANT TO RULES 12(b)(1) AND (6)

### PRELIMINARY STATEMENT

Defendant Ross University School of Medicine ("defendant" or "Ross University") submitting this Memorandum of Law in further support of its motion to dismiss pursuant to F.R.C.P. 12(b)(1) and (6). Plaintiff's submission in opposition to defendant's motion fails to rectify plaintiff's failure to exhaust the statutory prerequisites to asserting an Age Discrimination Act ("ADA") claim. Similarly, plaintiff fails to explain how his breach of contract and fraud claims are nothing more than veiled attempts to grieve a failing grade – a function left solely to academic administrators and not a court of law.

### ARGUMENT

To survive a motion to dismiss, a party cannot simply allege "labels and conclusions." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 at 555, 127 S. Ct. 1955 at 1965 (2007). In order to state a claim, a party's factual allegations must "raise a right to

1

relief above the speculative level..." <u>Twombly</u>, 550 U.S. at 555, 127 S. Ct. at 1965.  In

fact, the Supreme Court recently reaffirmed and clarified <u>Twombly</u> by stating that Rule 8

demands more than an "unadorned, the-defendant-unlawfully-harmed-me accusation."

<u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009).  A claim must be "plausible on its face."

<u>Id.</u>  The court must be equipped by the plaintiff's pleading to "draw the reasonable

inference that the defendant is liable for the misconduct alleged."  <u>Id.</u>  This standard asks

for more than a "possibility that a defendant has acted unlawfully."  <u>Id.</u>  The court is

required to engage in a "context-specific task that requires the reviewing court to draw on

its judicial experience and common sense."  <u>Id.</u> at 1950.  As will be demonstrated herein,

plaintiff has failed to meet his obligation to provide grounds entitling him to relief.

**POINT I**

**PLAINTIFF ADMITS HE DID NOT COMPLY**
**WITH STATUTORY PREREQUISITES TO COMMENCING THIS ACTION**

Plaintiff concedes that the ADA requires that notice of the action be given 30 days

prior to commencing suit to the Secretary of Health and Human Services, the United

States Attorney General, and Ross University.  <u>See</u> Plaintiff's Memorandum of Law p.5.

He also acknowledges the requisite information that this notice must contain:  the alleged

violation of the ADA, the relief requested, the court in which the action shall be brought,

and whether attorney's fees will be demanded.  <u>Id.</u>  However, he neither attests to such

notice being given nor attaches copies of the requisite notice to his affidavit.

Similarly, plaintiff concedes that 42 U.S.C.§6104(f) requires an exhaustion of

administrative remedies which occurs upon the expiration of 180 days from filing the

administrative complaint or from the date the agency finds in favor of the recipient of

financial assistance.  However, he asserts only that it "can be validly argued that

2

plaintiff's administrative remedies were effectively exhausted." See Id. at p.6.  It is

respectfully submitted that neither the allegations in the complaint nor his explanation on

this motion survives dismissal.

Plaintiff submits in opposition to this motion to dismiss a letter to the State

Attorney General of New Jersey dated nearly two years after the purported

discrimination.  The letter acknowledges recent correspondence received from plaintiff

and notes that the State Attorney General only has jurisdiction to investigate claims under

state discrimination statutes.  Plaintiff also attaches a letter dated February 4, 2009 from

the Department of Health and Human Services[1] which advises plaintiff that the

discrimination complained of occurred more than 180 days before filing the

administrative complaint and the information filed was not sufficient to extend the 180

day deadline.  Plaintiff has confirmed for this Court that a timely administrative

complaint was never filed thus barring this action under the ADA.  Plaintiff's failure to

exhaust necessary and available administrative remedies results in dismissal for failure to

state a claim.  See Brownscombe v. Dep't of Campus Parking, 203 F.Supp.2d 479, 483

(D. Md. 2002) (conversations with school administrators does not constitute exhaustion

of remedies).  As noted by plaintiff himself, the Department of Health and Human

Services "would not hear [his] claim." Dasrath Affidavit at ¶26.  It is simply not enough

---

[1] Plaintiff contends that the Department of Health and Human Services is not the appropriate entity with
which to assert a claim based on its own guidelines.  See Plaintiff's Memorandum of Law pg. 7.  Assuming
*arguendo* that this is true, plaintiff further concedes that not only did plaintiff fail to file a timely claim – he
failed to file a claim with the appropriate agency.

that plaintiff "had every intention of fulfilling"[2] the requirements of 42 U.S.C. §6104, et

seq.  See Plaintiff's Memorandum of Law pg. 7.

## POINT II

## PLAINTIFF FAILS TO STATE A BREACH OF CONTRACT CLAIM

Both parties agree that enrollment in a university gives rise to an implied contract

– if the student meets the conditions proscribed by the university he or she will obtain the

degree pursued.  Ward v. New York Univ., No. 99-8733, 2000 U.S. Dist. LEXIS 14067

at 9 (S.D.N.Y. Sept. 28, 2000).  However, plaintiff does not allege that he met the

conditions proscribed by the school – simply because he can't. As explained in

defendant's moving memorandum of law, plaintiff failed what is referred to in this

litigation as the AICM course.  The AICM course was a pre-requisite to obtaining "the

degree pursued" and to sit for what is referred to in this litigation as the USMLE Step 1

Exam.  Ross University complied with its own rules and regulations when it

administratively withdrew plaintiff for failure to re-enroll to remedy his failing grade.

(See Handbook, p. 13).

Plaintiff alleges in his amended complaint that "pursuant to contract, Defendant

was to accurately record Plaintiff's grades and sponsor Plaintiff to take the USMLE Step

1 examination."  See Amended Complaint at ¶ 20.  This identical allegation is found in

---

[2] It should be noted that the intentions of plaintiff described on this motion stand in stark contrast to plaintiff's former counsel Albert Adam Breud, II, Esq.'s letter to this Court in support of his application to be relieved as counsel.  According to that letter plaintiff believed that "he is exempt from the notice and exhaustion of administrative remedies applicable to the ADA cause of action" which would've caused Mr. Breud to "violate various rules of [Professional Conduct]" if he continued to represent plaintiff.  See Docket Entry 48, p.2.

Dasrath's original complaint on which Magistrate wrote the following in his Report and

Recommendation when granting defendant's motion to dismiss:

> Dasrath has failed to identify any contractual provision that
> necessitated giving him a passing grade, nor has he properly alleged that
> Ross University acted in an arbitrary or irrational manner nor in bad faith.
> Instead, Dasrath's complaint leads to the conclusion that Ross University
> was merely exercising its proper academic judgment by giving Dasrath an
> "F" in the AICM course.

<u>See</u> Report and Recommendation, Docket Entry 40 at p. 13.  Plaintiff fails to identify in

his amended complaint, or in his submission on this motion, what contractual provision

assures him of a passing grade.  This is especially critical since academic grading is in

the province of academia, not courts.  <u>See</u> <u>Susan M. v. New York Law Sch.</u>, 76 N.Y.2d

241, 245, 556 N.E.2d 1104, 1106 (1990) ("[s]trong policy considerations militate against

the intervention of courts in controversies relating to an educational institution's

judgment of a student's academic performance").

Plaintiff further alleges in the amended complaint that "defendant was in breach

of its contractual obligation to plaintiff in administratively withdrawing Plaintiff from its

school of medicine without justification."  <u>See</u> Amended Complaint at ¶ 22.  Moreover,

he alleges that Ross University had "no valid reason" for withdrawing its sponsorship of

plaintiff for the USMLE exam.  As Magistrate Reyes explained when evaluating an

identical allegation in plaintiff's original complaint:

> Dasrath's remaining allegations in support of his breach-of-
> contract claim all flow directly from his "F" in the AICM
> course, in that Ross University withdrew its sponsorship of
> Dasrath to take the USMLE and withdrew him from
> enrollment as a student at the university.  These allegations
> are immaterial to the resolution of Dasrath's breach-of-
> contract claim because Dasrath has yet again failed to
> allege that, once it was determined that Dasrath failed the

> AICM course, Ross University's subsequent actions were
> in breach of any contract that it had with Dasrath. In fact, it
> appears that Ross University's subsequent actions were in
> accordance with its proscribed rules and regulations.

See Report and Recommendation, Docket Entry 40 at p 13-14 (internal citations omitted).

As set forth in defendant's moving Memorandum of Law, it is well-settled that courts

will not supplant its judgment for that of educators. See Susan M. v. New York Law

Sch., 76 N.Y.2d 241, 245, 556 N.E.2d 1104, 1106 (1990) ("[s]trong policy considerations

militate against the intervention of courts in controversies relating to an educational

institution's judgment of a student's academic performance"). As was also mentioned by

Magistrate Reyes in his Report and Recommendation:

> Permitting Dasrath to proceed on a facially inadequate
> breach-of-contract claim would merely allow him to
> subvert the ADA's administrative exhaustion requirement,
> and would impermissibly entangle this Court in Ross
> University's subjective judgment over grading.

See Report and Recommendation at p. 15. Thus Ross University's motion to dismiss

plaintiff's breach of contract claim should be granted.

## POINT III

### PLAINTIFF'S FRAUD CLAIM SHOULD BE DISMISSED

Ross University seeks dismissal of plaintiff's fraud claims on two grounds: (1)

New York law prohibits plaintiff from asserting breach of contract and fraud based on the

same set of underlying facts (See defendant's MOL at pp. 9-10); and (2) plaintiff's fraud

claim is defective on its face. (See defendant's MOL at pp. 10-11). Plaintiff fails to

address the fact that his contract and fraud claim are based on identical facts and

therefore on that ground alone the cause of action should be dismissed.  In addition, plaintiff's woeful attempt to resuscitate his fraud cause of action is unavailing.

As mentioned in Ross University's moving Memorandum of Law, not only does plaintiff fail to plead the essential elements of fraud, he fails to allege facts that "give rise to a strong inference of fraudulent intent." Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994).  Plaintiff simply does not assert "motive and opportunity to commit fraud" or "conscious misbehavior or recklessness." Id.

In support of his fraud claim plaintiff states that he "passed all five parts of the AICM course" yet received a failing grade. See Amended Complaint ¶ 25.  He alleges that a letter reflecting the administrative withdrawal of plaintiff was "false" and an administrator's review of plaintiff's grade was similarly "false." See Amended Complaint ¶¶26-27.  As a result of his failing grade – which plaintiff essentially alleges is "false" and was "falsely withheld" – Ross University withdrew its sponsorship of plaintiff to sit for the USMLE Step 1 Exam. See, plaintiff's Memorandum of Law at 11-12.  However, these alleged falsities amount to nothing more than a grievance over a failed grade and concern over the timing in which he purportedly received the grade – not fraud.

Plaintiff alleges no set of facts under which Ross University's calculation of his grade constituted a "material misrepresentation".  Plaintiff does not point to statements that were untrue or that he detrimentally relied on these statements.  Similarly he fails to allege facts that would infer a strong inference of fraudulent intent.  He merely states in conclusory fashion that Ross University acted in a "wonton, willful, and malicious manner."  It is well-settled that Rule 8 requires more than "labels and conclusions." See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007).

Plaintiff's fraud claim, like his others, is simply another attempt to grieve his failing grade and consequential inability to complete the USMLE Step 1 exam.  It should be dismissed.

## POINT IV

### PLAINTIFF FAILS TO ADDRESS DEFENDANT'S MOTION TO DISMISS HIS TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS CLAIM

Plaintiff offers no argument in opposition to this motion to dismiss plaintiff's claim for tortious interference with contractual relations.  Presumably because plaintiff is unable to dispute the fact that his tortious interference with contractual relations cause of action fails as a matter of law since Ross University cannot be sued for tortious interference of a contract to which it was a party.  See Koret, Inc. v. Christian Dior, S.A., 161 A.D.2d 156, 157, 554 N.Y.S.2d 867, 869 (1st Dep't 1990); Flash Elec., Inc. v. Universal Music & Video Distrib. Corp., 312 F. Supp. 2d 379 (E.D.N.Y. 2004).  As such, plaintiff's tortiuous interference with a contract cause of action should be dismissed.

**CONCLUSION**

Based on the foregoing, Ross University respectfully submits that its motion to dismiss the Amended Complaint should be granted in its entirety.

Dated: Garden City, New York
        September 28, 2009

                                        Respectfully submitted,

                                        Cullen and Dykman LLP

By:     _____
                                        Jennifer A. McLaughlin (JM 5678)
                                        Attorneys for Defendant
                                        100 Quentin Roosevelt Boulevard
                                        Garden City, New York 11530

Of Counsel:
Jennifer A. McLaughlin (JM 5678)
Justin F. Capuano (JC 5853)

9

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
ANAND DASRATH,

            Plaintiff,                         **NOT FOR PUBLICATION**

-against-                                    **ORDER**
                                             07-CV-2433 (CBA) (RER)
ROSS UNIVERSITY SCHOOL OF MEDICINE,

            Defendant.
-------------------------------------------------------------x
AMON, United States District Judge:

       Plaintiff Anand Dasrath ("Dasrath") commenced this action against defendant Ross

University School of Medicine ("Ross University") alleging (1) violations of the Age

Discrimination Act ("ADA") of 1975, 42 U.S.C. §§ 6101 et seq.; (2) breach of contract; (3)

fraud; and (4) tortious interference with contractual relations.  Ross University now moves to

dismiss Dasrath's Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1)

and (6) on the grounds that the Court lacks subject matter jurisdiction over the ADA claim and

that Dasrath's remaining claims of fraud, breach of contract, and tortious interference with

contractual relations fail to state a claim upon which relief can be granted.  Oral argument was

held on May 6, 2010.  For the reasons set forth on the record, the Court grants Ross University's

motion in part with respect to Dasrath's ADA, fraud and tortious interference with contractual

relations claims.   Dasrath shall be permitted to proceed only with his claim of breach of

contract.  The parties are directed to confer with the magistrate judge and commence discovery.

       SO ORDERED.

Dated: Brooklyn, New York
      May 6, 2010

                                           Carol Bagley Amon
                                          United States District Judge

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

ANAND DASRATH,                                    Case No.: CV 07 2433
                                                  (C. Amon)
                            Plaintiff,            (R. Reyes)

        - against -

ROSS UNIVERSITY SCHOOL OF MEDICINE,               **ANSWER**

                            Defendant.
----------------------------------------------------------X

Defendant Ross University School of Medicine ("defendant" or "Ross University") by

and through its attorneys, Cullen and Dykman, LLP, for its answer to the complaint, alleges:

## ANSWER TO PARTIES

1.      Denies knowledge or information sufficient to form a belief as to the allegations

contained in paragraph "1" of the amended complaint.

2.      Admits that Ross University is a medical school located on the island of Dominica in

the West Indies, that it has offices at 7000 SW 62nd Avenue, Penthouse A, South, Miami Florida

33143 and that it is an eligible institution for Title IV funds, and except as so admitted denies

the remaining allegations contained in paragraph "2" of the amended complaint.

3.      To the extent the allegations contained in paragraph "3" of the amended complaint call

for a legal conclusion, no response is required. To the extent a response is required, defendant

denies knowledge or information sufficient to form a belief as to the allegations contained in

paragraph "3" of the amended complaint.  Defendant further refers all questions of law to the

Court at the trial of this action.

4.      To the extent the allegations contained in paragraph "4" of the amended complaint call

for a legal conclusion, no response is required. To the extent a response is required, defendant

1

denies knowledge or information sufficient to form a belief as to the allegations contained in

paragraph "4" of the amended complaint. Defendant further refers all questions of law to the

Court at the trial of this action.

## ANSWER TO BACKGROUND

5.      Defendant denies knowledge or information sufficient to form a belief as to the

allegations contained in paragraph "5" of the amended complaint.

6.      Admits that plaintiff "took the 'AICM' the Advanced Introduction to Clinical Medicine

course in the 2006 Spring semester" which was plaintiff's "fifth semester" at defendant

university, and except as so admitted denies the remaining allegations in paragraph "6" of the

amended complaint.

7.      Admits that "in March of 2006, Plaintiff submitted an application to take the United

States Medical Licensing Examination" and that the application submitted in 2006 included a

certification by defendant that plaintiff was enrolled at defendant university *at the time of the*

*application in March 2006* and that said application was stamped by defendant in March 2006

and except as so admitted denies knowledge or information sufficient to form a belief as to the

remaining allegations in paragraph "7" of the amended complaint.

8.      Admits that on or about June 29, 2006, defendant notified plaintiff he had been

"administratively withdrawn" from defendant university for failure to register for the May 2006

AICM course and except as so admitted denies the remaining allegations in paragraph "8" of the

amended complaint.

9.      Admits that plaintiff received his grade of "F" in the AICM course on or about April 22,

2006 and that the 2006 Ross University School of Medicine Handbook of Academic Rules and

Regulations dated May, 2006 states at page 13 "students become eligible to take the USMLE

Step 1 when they have passed all courses in the Basic Science Curriculum, successfully the Advanced Integration to Clinical Medicine clerkship, and, have passed the NBME Comprehensive Basic Sciences Exam." and except as so admitted denies knowledge and information sufficient to form a belief as to the allegations contained in paragraph "9" of the amended complaint.

10.     Denies the allegations contained in paragraph "10" of the amended complaint.

11.     Paragraph "11" does not require a response as claims relating to the Age Discrimination Act have been dismissed by this Court by order dated May 6, 2010.

## ANSWER TO FIRST CAUSE OF ACTION

12.     The answers to paragraphs "1" through "12" are repeated and realleged as if fully set forth herein.

13.     Paragraphs "13" through "18" do not require a response as claims relating to the Age Discrimination Act have been dismissed by this Court by order dated May 6, 2010 and all factual allegations are denied.

## ANSWER TO SECOND CAUSE OF ACTION

14.     The answers to paragraphs "1" through "18" are repeated and realleged as if fully set forth herein.

15.     Denies the allegations in paragraph "20" of the amended complaint.

16.      To the extent this paragraph refers to allegations set forth in paragraph "7" of the amended complaint the Court is referred to defendant's answer to paragraph "7" of the amended complaint herein at paragraph "7" and admits the remaining allegations of paragraph "21" of the amended complaint.

17.     Denies the allegations contained in paragraph "22" of the amended complaint.

3

18.    Denies the allegations contained in paragraph "23" of the amended complaint.

### ANSWER TO THIRD CAUSE OF ACTION

19.    The answers to paragraphs "1" through "19" are repeated and realleged as if fully set forth herein.

20.    Paragraphs "25" through "29" do not require a response as this cause of action sounding in fraud has been dismissed by this Court's order dated May 6, 2010.

### ANSWER TO FOURTH CAUSE OF ACTION

21.    The answers to paragraphs "1" through "20" are repeated and realleged as if fully set forth herein.

22.    Paragraphs "31" through "35" do not require a response as this cause of action sounding in tortuous interference has been dismissed by this Court's order dated May 6, 2010.

### AS AND FOR A FIRST AFFIRMATIVE DEFENSE

23.    Plaintiff fails to state a claim upon which relief may be granted.

### AS AND FOR A SECOND AFFIRMATIVE DEFENSE

24.    Damages incurred by Plaintiff, if any, are the result of Plaintiff's own culpable conduct.

### AS AND FOR A THIRD AFFIRMATIVE DEFENSE

25.    Damages incurred by Plaintiff, if any, are the result of the conduct of third parties over which Defendant had or has no control.

### AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

26.    Plaintiff's claims are barred in whole or in part by the applicable statute of limitations.

### AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

27.    Plaintiff's claims are barred in whole or in part by the applicable statute of frauds.

### AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

28. Plaintiff's claims are barred by the doctrines of waiver, estoppel, ratification, and laches.

### AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

29. Defendant did not breach any duty owed to Plaintiff.

### AS AND FOR A EIGHTH AFFIRMATIVE DEFENSE

30. Defendant has at all times herein acted in good faith.

### AS AND FOR A NINTH AFFIRMATIVE DEFENSE

31. Plaintiff is not entitled, as a matter of law, to recover from Defendant either the amount or kind of damages sought.

### AS AND FOR A TENTH AFFIRMATIVE DEFENSE

32. Plaintiff's claims are barred by the doctrine of unclean hands.

### AS AND FOR AN ELEVENTH AFFIRMATIVE DEFENSE

33. Plaintiff's claims are barred by documentary evidence.

### AS AND FOR A TWELFTH AFFIRMATIVE DEFENSE

34. While denying all allegations in the complaint regarding liability, the injury and damages allegedly sustained by Plaintiff, to the extent Plaintiff may be able to prove any injuries and/or damages, Plaintiff is not entitled to an award of attorneys' fees and/or costs of suit.

### AS AND FOR A THIRTEENTH AFFIRMATIVE DEFENSE

35. Plaintiff's claims are barred by the parol evidence rule.

## AS AND FOR A FOURTEENTH AFFIRMATIVE DEFENSE

36.    Plaintiff has failed to demonstrate this Court's subject matter jurisdiction over the claims asserted herein as plaintiff has failed to meet the jurisdictional amount in controversy.


WHEREFORE, Defendant demands judgment dismissing the Plaintiff's amended complaint, and for such other and further relief as the Court may deem just and proper.

CULLEN AND DYKMAN LLP

By:    _____

Justin F. Capuano (JC 5853)
Attorneys for Defendant
100 Quentin Roosevelt Boulevard
Garden City, New York 11530

TO:

COSTELLO & COSTELLO, P.C.
Salvatore D. Compoccia, Esq.
5919 20th Avenue
Brooklyn, NY 11204

**A121**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS
------------------------------------X    Index No. 15989/06

ANAND DASRATH

        Plaintiff.

        -against-        **VERIFIED COMPLAINT**

                           **ACTION FOR BREACH**
                           **OF CONTRACT**

ROSS UNIVERSITY SCHOOL OF MEDICINE

      . Defendant.

------------------------------------X

The Plaintiff, by George M. Gilmer, complaining of the Defendant, alleges the following:

1. The Plaintiff is a forty eight year old medical student with an address of 99-25 209ᵗ Street, Queens Village, New York 11427.

2. The Defendant Ross University School of Medicine has an address at 460 West 34ᵗ Street, New York, New York 10001.

3. The Plaintiff has been a medical student in Defendant's school since May of 2004.

4. The Plaintiff brings this action for breach of contract because the Defendant on June 29, 2006,

medical school without cause or justification.

5. The Plaintiff has paid the school tuition in exchange for the school delivering an education to Plaintiff.

6. The school stated the reason that the Plaintiff was withdrawn for the school was because the Plaintiff did not "successfully complete" the AICM course and "pass the USMLE Step 1 Exam".

7. The Plaintiff has already taken the AICM course but has yet to receive a grade therein.

8. The Plaintiff believes that he has completed the requisite coursework in this class for him to achieve a passing grade.

9. The Plaintiff is currently registered for the USMLE Step 1 Exam which are the Medical Boards.

(NB) 10. The school has stated however that it will withdraw its sponsorship of Mr. Dasrath which will deny the opportunity to take this exam.

11. The Plaintiff will suffer irreparable harm and injury if he is not re-enrolled in the school because he will be denied the opportunity to take this test.

12. By virtue of Plaintiff's enrollment in the school the school has an obligation to sponsor the Plaintiff to

FEB-06-2000 15:45     CULLEN DYKMAN

**FOR SETTLEMENT PURPOSES ONLY**
**NOT TO BE USED IN LITIGATION**

**DOES NOT WAIVE ATTORNEY-CLIENT PRIVILEGE**

**MEMORANDUM**

**TO:**     **JENNIFER McLAUGHLIN, ESQ.**

**FROM:**   **NANCY A. PERRI, M.D.**

**DATE:**   **FEBRUARY 06, 2008**

**RE:**     **ANAND DASRATH**

_____

On January 24, 2008 I reviewed Mr. Dasrath's performance in the AICM course including, but not limited to, the exam, write-ups and faculty evaluations. I concur with the final grade of "F".

NANCY A. PERRI, M.D.

1                                                    COPY

1

2        UNITED STATES DISTRICT COURT
         EASTERN DISTRICT OF NEW YORK

3        ---------------------------------------------X
         ANAND DASRATH,

4

5                                        PLAINTIFF,

6            -against-          CASE NO. CV-07-2433

         ROSS UNIVERSITY SCHOOL OF MEDICINE,

7

8                                        DEFENDANT.
         ---------------------------------------------X

9                          DATE: October 15, 2010

10                         TIME: 9:45 a.m.

11

12            EXAMINATION BEFORE TRIAL of the

13    Defendant, ROSS UNIVERSITY SCHOOL OF

14    MEDICINE, by NANCY PERRI, taken by the

15    Plaintiff, pursuant to an Order, held at the

16    offices of Cullen & Dkyman, Esqs., 44 Wall

17    Street, New York, New York, before a Notary

18    Public of the State of New York.

19

20

21

22

23

24

25

28

1              A. DASRATH

2          will follow-up in writing, but I will

3          call for the production of the faculty

4          names that were doing the spring

5          semester 2006 to the extent they have

6          not been provided.

7          Q.      So, what happens upon

8      completion of the AICM course with the

9      student, is he or she then matriculatd to the

10     next semester, are they then --  do they have

11     to sit for another exam?

12         A.      If the student completes the

13     advanced introduction of clinical medicine

14     program, they are then required to take and

15     pass the first step of the United States

16     medical licensing examination.

17         Q.      Is that called a step I

18     or --

19         A.      USMLE step I.

20         Q.      Is there a break in between the

21     AICM and the issuance of the USMLE step I

22     exam?

23         A.      Is there a break between the

24     step I --  I don't understand your question.

25         Q.      For lack of a better term,

COPY

1   UNITED STATES DISTRICT COURT
    EASTERN DISTRICT OF NEW YORK
2   - - - - - - - - - - - - - - - - - - - X
    ANAND DASRATH,
3

4
                            Plaintiff,
5

6       -against-                      Case No.
                                       CV-07-2433
7

8
ROSS UNIVERSITY SCHOOL OF MEDICINE,
9

10                          Defendant.
    - - - - - - - - - - - - - - - - - - - X
11

12                          October 21, 2010
                            9:55 a.m.
13
                            44 Wall Street
14                          New York, New York

15

16

17          DEPOSITION OF DR. ENRIQUE S. FERNANDEZ,

18   appearing as a witness on behalf of the Defendant

19   herein, taken by the attorneys for Plaintiff,

20   Pursuant to Notice, held at the above-mentioned

21   time and place, before Alec Dazenski, a Notary

22   Public in and for the State of New York.

23

24

25          ***     **     ***


SEVERIN & ASSOCIATES, INC.
1 South View Court
Bayville, New York  11709
TEL. (516) 628-1402 ~ FAX (516) 628-0423

Q     Dr. Fernandez, is there anything you would like to change about your testimony here today?

A     No.

Q     Is there anything you would like to add?

A     No.

Q     Have you taken any medication which would inhibit your ability to testify here today?

A     No.

MR. COSTELLO:  I have no further questions at this point.

MR. CAPUANO:  Off the record.

(Discussion off the record.)

MR. COSTELLO:  The certification that you were just questioning stating that we just provided them to you, my client tells me that according to Judge Reyes they were ordered to be sent to you back in March of '08 so they should be part of your file.

MR. CAPUANO:  I'll look through it. I didn't recognize them but I'll double-check.  Is that it?



## Mets, Inc.

13048 S.W. 133 Ct., Miami, FL 33186

Tel: 786-293-2206

# Medical Education Training Services, I

Certifies:

## DASRATH, ANAND

has successfully completed the training for:

**Provider # FBN 3448**

Mets Inc is approved by the Florida Board of Nursing to offer continuing education. Provider number: FBN 3448

3/1/06   Medical Errors, Domestic Violence, HIPAA Review   Vivian Gutierrez, LC

Date            Discipline           Course Director

**A129**

First Responder Rev. 7/03

## AMERICAN SAFETY & HEALTH INSTITUTE



This certifies that

**DASRATH, ANAND**

○ *Emergency Responder*
○ *First Responder*

VOID IF MORE THAN ONE COURSE CHECKED

## ASHI APPROVED CERTIFICATION CARD

Pete Gutierrez, MD

Authorized Instructor (Print Name)

_____
Holder's Signature

| 01-31-2006 | 01-2008 |
|---|---|
| Date Completed | Renewal Date |
| 786-293-2206 | M.E.T.S INC |
| Training Center Phone No. | Training Center Note |

Successful completion indicates card holder has met the required knowledge and skill objectives of the curriculum to the satisfaction of an ASHI authorized instructor. Successful completion does not guarantee future performance, nor imply state certification or licensure. The ASHI CPR curriculum is consistent with the objectives of the First Responder: National Standard Curriculum (USDOT/NHTSA). Rate this program online at www.ashinstitute.org or call (800) 682-5067.

American Heart
Association®

*Learn and Live.*™

# Healthcare Provider
### DASRATH, ANAND

This card certifies that the above individual has successfully completed the national cognitive and skills evaluations in accordance with the curriculum of the American Heart Association for the BLS for Healthcare Providers (CPR & AED) Program.

01-31-2006

Issue Date

01-2008

Recommended Renewal Date

| AHA Region | FLORIDA |
| Community Training Center | M.E.T.S INC |
| Training Site | METS,INC. |
| Instructor | Pete Gutierrez, MD |
| Holder's Signature | |

©2000 American Heart Association    Tampering with this card will alter its appearance.    70-2915

## Please do not lose this card.  A replacement fee of $10 will be charged.

70-2915    R3/04

**American Heart Association®**

*Learn and Live.™*

## ACLS Provider

DASRATH, ANAND

This card certifies that the above individual has successfully completed the national cognitive and skills evaluations in accordance with the curriculum of the American Heart Association for the Advanced Cardiovascular Life Support Program.

01-31-2006                    01-2008

Issue Date                    Recommended Renewal Date

| AHA Region | FLORIDA |
|---|---|
| Community Training Center | M.E.T.S INC |
| Training Site | METS,INC. |
| Instructor | Pete Gutierrez, MD |
| Holder's Signature | |

©2000 American Heart Association    *Tampering with this card will alter its appearance.*    70-2920

70-2920    R6/04

The sender of this message has requested a read receipt. Click here to send a receipt.

**Dasrath, Anand**

| | |
|---|---|
| **From:** | Sena, Brijette |
| **To:** | |
| **Cc:** | Fernandez, Dr. Enrique; Rendon, Michael; Reardon, Rosemary; Perri, Dr.Nancy |
| **Subject:** | Results of NBME comprehensive shelf exam |
| **Attachments:** | |

**Sent:** Thu 3/9/2006 4:52 PM

Dear Students,
We have received the results of your NBME comprehensive exam. **Congratulations!** You have passed the exam and are now eligible to sit for the USMLE Step 1 exam. Your six-month eligibility period is April 1 – September 30, 2006. You are required to sit for the USMLE Step 1 no later than 9/30/06. You will have 3 attempts or until April 30 2007 to pass Step 1.

If you have previously submitted a USMLE application along with a waiver, you may now schedule your USMLE Sitting date as soon as you receive your scheduling permit. Be sure to notify this office of the date you schedule.

Please see below for eligible USMLE windows and deadlines to submit USMLE applications. You will be ineligible for an extension beyond the 9/30/06 date so please plan accordingly.

Windows you may apply for:        Deadline to submit application to NJ Registrar:
May 1 – July 31, 2006        March 15, 2006
June 1 – August 31, 2006        April 15, 2006    * please inform me if you are choosing this window by replying to this email

July 1 – Sept. 30, 2006        May 15, 2006    * please inform me if you are choosing this window by replying to this email

In order to Match in 2008, you must complete the remaining 78 weeks no later than 6/31/08. As every clinical schedule is individualized, there may be gaps in the curriculum due to site availability, time off for sitting for Step 2 and interviewing. Therefore, your exact date of completion can not yet be determined. As a guideline, you should allow for a minimum of 90 weeks to complete the remaining 78 clinical weeks. Therefore you should attempt to have receipt of passing step 1 scores and begin rotations no later than Sept. 1, 2006.

Please go to the www.ECFMG.org website. If you have not already done so, please apply for the ECFMG number. You will receive it via email in approximately 24 hours. You may then proceed to complete the Step 1 online application. Print the certification form 183, attach a passport sized picture, sign and date and send to Ross University, Office of the Registrar, 499 Thornall St., 10th Floor, Edison, NJ 08837. *Please refer to the memo distributed during AICM Orientation on further instructions on how to complete the application.*

The deadline to RUSM for the 4/1/06 – 6/30/06 window has passed and that window is no longer available, as I would have needed to have the application in my office by the Feb. 15th.

If you wish to receive your score, please email me from your RUSM email address, being sure to include your ID and name.

Please note; As was discuss during AICM orientation and in the memo which was distributed, students who do not begin rotations by the end of the vacation period [16 weeks after completing AICM] must then be placed on Temporary Withdrawn status [TWD] retroactive back to the last date of attendance in the AICM and placed on less-than-half time status. While you are enrolled in the University for the purpose of taking the USMLE Exam, you are not registered for courses at least half time. DOE, as well as all lender regulations, do not allow for deferment of loans or receipt of financial aid when a student is not enrolled at least half time in classes. This means you would have to be a registered for courses in Basic Sciences or Clinical rotations in order to be deferred. The University is unable to submit enrollment verification while a student is in less than half time status. Even during the clinical curriculum, if at any time a student is not scheduled for longer than 30 days between rotations, they will be placed on less than half time status and are subject to repayment on loans. This is a gap which must be disclosed when applying for the Match and for licensure. *Please refer to the memo which was distributed during the AICM Orientation for exact dates and timeline information regarding statuses.*

During TWD status, loans can not be deferred through the University. Your lenders will place you on grace period and if the student does not begin rotations by the end of the grace period, the student must make arrangements with their lenders for an economic forbearance. Once the student passes the boards and begin rotations, the student must complete a reinstatement application and

...iew deferment forms from the lenders in to the University in order to place the loans back into deferred status.

...you have further questions, feel free to contact me via email at Registrar@rossU.edu or phone at 732-978-5300 Ext. 2601.

Sincerely,
Brijette Sena
Associate Registrar of Clinical Sciences

# A134

CL... DEPT.
...uation Received
...ed to Database
... 2006
CRN#76167SMP

**ROSS UNIVERSITY**
School of Medicine
499 Thornhall Street, 10th Floor
Edison, NJ 08837-2235

*B* JUN 2 17 2006

CAMPUS: PORTSMOUTH, DOMINICA WEST INDIES

STUDENT ID: @ 00088730 OR 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

TEL (732)978-5300
FAX: (732)978-5306
E-MAIL:CLINICAL@ROSSMED.EDU

## CLINICAL CLERKSHIP EVALUATION FORM

The physician responsible for supervising the clerkship will complete this evaluation at the end of a clinical clerkship. Print clearly.

Medical Student  DASRATH, ANAND    Name of Clerkship Advanced Intro to Clinical Medicine

Clerkship Duration (No. Of Weeks)  TWELVE    Dates: 01 \ 16 \ 06 to 04 \ 07 \ 06

In comparison with other medical students at the same level of clinical training, please rank the performance of the student. Select the grade evaluation from the five options listed below. Only whole numbers will be used in determining final grade.

**KEY**



| | |
|---|---|
| 5 | Excellent |
| 4 | Above Average |
| 3 | Average |
| 2 | Below Average |
| 1 | Fail |

Please see attached blue copy for clerkship grading policy used in calculating final grade.

_2_ Knowledge of medical sciences (basic sciences, clinical sciences)

_1_ Knowledge of assigned patients (specific medical problems, laboratory information, therapeutic modalities, follow-up)

_2_ Professionalism (reliability, thoroughness, carefulness, attendance, punctuality, interpersonal relationships with colleagues and staff, verbal and written case presentations, initiative)

_3_ Character (sensitivity to patients, patient rapport, ethical values, personal appearance, emotional stability)

**Comments:**

Cumulative performance scores fell >2 SD below class mean. Write-ups were deficient and not of the quality expected for a student at this level of training. Need to better demonstrate critical thinking skills. PE skills MARGINAL

Hospital: H.E.T.C.-Greater Miami Health Education & Training Centers    Telephone: ( 305 ) 667-5455

Address: 7000 S.W. 62nd Avenue, PH-A    City, State: Miami, Fl.    Zip 33143

Evaluator(Print) Enrique S. Fernandez, M.D., M.S.Ed.    Date: 6/23/06

Signature    Title: Director of Medical Education

After completion of rotation, return completed WHITE Copy to: Dean of Clinical Sciences, Ross University School of Medicine, 499 Thornhall Street, Tenth Floor, Edison, NJ 08837-2235 within 30 days. Retain YELLOW copy for Hospital files.

CREDIT IS AWARDED ONLY FOR ORIGINAL EVALUATIONS.

D00001

COPY

1   UNITED STATES DISTRICT COURT
    EASTERN DISTRICT OF NEW YORK
2   - - - - - - - - - - - - - - - - - - - - X
    ANAND DASRATH,
3

4                              Plaintiff,

5

6        -against-                    Case No.
                                      CV-07-2433
7

8

    ROSS UNIVERSITY SCHOOL OF MEDICINE,
9

10  - - - - - - - - - - - - - - - - - - - - X
                               Defendant.
11

12                             October 21, 2010
                               9:55 a.m.
13

                               44 Wall Street
14                             New York, New York

15

16

17          DEPOSITION OF DR. ENRIQUE S. FERNANDEZ,

18  appearing as a witness on behalf of the Defendant

19  herein, taken by the attorneys for Plaintiff,

20  Pursuant to Notice, held at the above-mentioned

21  time and place, before Alec Dazenski, a Notary

22  Public in and for the State of New York.

23

24

25              ***     **     ***


SEVERIN & ASSOCIATES, INC.
1 South View Court
Bayville, New York  11709
TEL. (516) 628-1402 - FAX (516) 628-0423

                        Dr. Fernandez - Direct                12

1   April.  I don't recall the exact last date of the

2   semester.

3          Q      Would it be the early part of April,

4   the late part of April?

5          A      Probably the early part of April.

6          Q      After a student completes the AICM, is

7   a grade given?

8          A      Yes.

9          Q      When is that grade given?

10         A      It's given approximately two weeks

11  after the conclusion of the course.

12         Q      Is the student also given a

13  certification of completion of that course?

14         A      I don't understand the question.

15         Q      In addition to a grade, let's say a

16  letter or a number, is the student then certified

17  that he or she has completed the course?

18         A      No.

19             MR. CAPUANO:  What do you mean by

20         certified?

21         A      I don't understand what you mean by

22  certified.

23         Q      Is a student given a certification

24  that he or she has completed the AICM?

25

SEVERIN & ASSOCIATES, INC.  *  (516) 628-1402

Cremata, Claire

| From: | Fernandez, Dr. Enrique |
| To: | Anand Dasrath |
| Sent: | Sunday, April 23, 2006 5:17 PM |
| Cc: | Coutinho, Ronnie; Cremata, Claire |
| Subject: | RE: [aicm62]Course Grades Posted |

Please contact Claire Cremata on Monday to schedule a teleconference to review your AICM performance: 305-804-7803

---

**From:** Anand Dasrath [mailto:anand_dasrath@yahoo.com]
**Sent:** Sat 4/22/2006 4:45 PM
**To:** Fernandez, Dr. Enrique
**Subject:** Re: [aicm62]Course Grades Posted

Dr. Fernandez,

I see a failing grade as my final grade. Please check: 1) I do not see an updated grade for my Epi/Biostatics grade, only the first failing grade of 50/76 is there. What happened to the remediated grade? 2) 36% for the final essay is very unconsciable. The person that marked it did not do a fair job. I knew what was asked and what the answers were; my poor penmanship may have annoyed the marker but not a reasonable excuse to get a failing grade. 3)Please look again at my second case write up - under subjective conditions such as this any reader can give any essay a c- and cause the student a failing final grade. 4) How did I end up with a 36/50 in the extra-credit after 10 points were allocated for staying to the end of the soap notes lecture ( which I did), 10 points for notifying you on time which I did, I wrote my soap, presented it and answer all the questions correctly except for one: "what is LOC (loss of consciousness)?"

I humbly ask that you review the components of my grade. I already passed my comprehensive examination, already moved back to New York, and is already preparing for my USMLE Step 1. If there is any other steps you would like me to take that would complete course please let me know.

Thanks,
Anand Dasrath.

*"Fernandez, Dr. Enrique" <ESFernandez@rossmed.edu> wrote:*

AICM Course grades are posted on eCollege. Grade breakdowns will be available by email request starting Monday. If you would like your second write-up back, you may pick it up from Alvaro Rosales starting Monday. If you are not in Miami, you may send an email to Mr. Rosales and provide him with a mailing address to send your write-up: ARosales@rossmed.edu

Grade Distributions:

28 percent "A"
18 percent "B+"
17 percent "B"
13 percent "C+"
19 percent "C"

MEMORANDUM FOR THE RECORD - April 24, 2006

Dr. Fernandez conferred today by telephone with Anand Dasrath about the failing grade he earned for the 5th semester just concluded. Dr. Fernandez informed Anand that he was essentially two Standard Deviations from the norm. He said that Anand earned a C on the midterm exam, failed the final exam and had a very low score on the essay portion (63 out of a possible 200). He remarked that the lowest grade had been 61. He told Anand that he failed the first write-up and got a marginal on the second. He said that would have been okay had everything else also been okay. He noted that Anand failed the PE and had remediated that. He said that Anand's overall grade placed him at the bottom of the class. He reminded Anand that extra credit cannot be applied to a failing grade.

Dr. Fernandez told Anand that he would have to repeat the semester.

> May start May 22
> Will do three weeks of clinicals
> Must do one write-up until a grade of Satisfactory or better is
>    achieved
> Is exempt from Epi and the PE
> Must attend Large and Small Group sessions (except for Epi)
> Must take Mid-term and Final

Dr. Fernandez told Anand that he would get individualized attention to help him succeed.

Dr. Fernandez noted that Anand passed the Comp. He pointed out that he could, if he wishes, defer starting 5th semester until September, freeing up the interval for preparing for Step 1. He said that if he chose to come in May he could extend his Step 1 window to July, August, September.

Anand asked how he could have scored so poorly on the essays and said he worried that his handwriting had challenged the graders. Dr. Fernandez said that he had graded two of the seven essays himself. He did not recall trouble with anyone's handwriting and had not heard of a problem from anyone else. He reported that on the stroke essay Anand earned 5 out of a possible 25 points; on Graves got no points, none for hepatitis, on sexual issues and HIV about the average, 20 of 50 on essay #7…

Anand asked if he would have to repeat the semester in its entirety. Dr. Fernandez explained that he would have to do the components listed above. Anand wondered if Dr. Fernandez knew that he had spent some 22 years in hospitals as a pharmacist and that, consequently, he found the clinical activities to be not meaningful. Dr. Fernandez said he regretted that Anand had not mentioned his dissatisfaction earlier but promised to make sure to work closely with Anand to ensure the relevance of the activities he is assigned. In answer to Anand's question, he said that he would be responsible for full tuition but would be eligible for financial aid.





DA002





DA001

```
 1   UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
 2   - - - - - - - - - - - - - - - - - - X
     ANAND DASRATH,
 3

 4                            Plaintiff,

 5

 6        -against-                    Case No.
                                       CV-07-2433
 7

 8

     ROSS UNIVERSITY SCHOOL OF MEDICINE,
 9

10                            Defendant.
     - - - - - - - - - - - - - - - - - - X
11

12                            October 21, 2010
                              9:55 a.m.
13

14                            44 Wall Street
                              New York, New York

15

16

17        DEPOSITION OF DR. ENRIQUE S. FERNANDEZ,

18   appearing as a witness on behalf of the Defendant

19   herein, taken by the attorneys for Plaintiff,

20   Pursuant to Notice, held at the above-mentioned

21   time and place, before Alec Dazenski, a Notary

22   Public in and for the State of New York.

23

24

25            ***      **     ***
```

SEVERIN & ASSOCIATES, INC.
1 South View Court
Bayville, New York 11709
TEL. (516) 628-1402 - FAX (516) 628-0423

```
 1                  Dr. Fernandez - Direct           13

 2          A    No.

 3               MR. COSTELLO:  Can we have this marked

 4          as Plaintiff's Exhibit 6.

 5               (Whereupon, Plaintiff's Exhibit 6 was

 6          marked for Identification, this date.)

 7          Q    Dr. Fernandez, you have now in front

 8    of you what's been marked as Plaintiff's Exhibit

 9    6.  Do you recognize this document?

10          A    Yes.

11          Q    Can you please tell me what this

12    document is?

13          A    It's the statement of the director of

14    medical education.

15          Q    Is that your signature at the bottom?

16          A    That is my signature.

17          Q    Can you please read what the document

18    says?

19          A    I hereby certify that, banner ID

20    number, Dasrath, Anand completed twelve weeks

21    in advanced introduction of clinical medicine

22    at Greater Miami Health Education and Training

23    Center Hospital.

24               This document goes to the registrar,

25    it does not go to the student.
```

SEVERIN & ASSOCIATES, INC.  *  (516) 628-1402

```
 1   UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
 2   - - - - - - - - - - - - - - - - - X
     ANAND DASRATH,
 3

 4                              Plaintiff,

 5

 6        -against-                    Case No.
                                       CV-07-2433
 7

 8

     ROSS UNIVERSITY SCHOOL OF MEDICINE,
 9

10                              Defendant.
     - - - - - - - - - - - - - - - - - X
11

12                              October 21, 2010
                                9:55 a.m.
13
                                44 Wall Street
14                              New York, New York

15

16

17         DEPOSITION OF DR. ENRIQUE S. FERNANDEZ,

18   appearing as a witness on behalf of the Defendant

19   herein, taken by the attorneys for Plaintiff,

20   Pursuant to Notice, held at the above-mentioned

21   time and place, before Alec Dazenski, a Notary

22   Public in and for the State of New York.

23

24

25              ***     **     ***
```

SEVERIN & ASSOCIATES, INC.
1 South View Court
Bayville, New York  11709
TEL. (516) 628-1402 - FAX (516) 628-0423

**A144**

Dr. Fernandez - Direct                    14

1

2      Q      When was this forwarded to the

3  registrar?

4      A      The date of the first page which is

5  the evaluation.

6      Q      Are you referring to another document

7  that's associated with this certification?

8      A      Yes.  The evaluation is the first

9  page of the evaluation, course evaluation.  This

10  attests to the fact that Mr. Dasrath was there

11  for a period of twelve weeks in Miami.

12      Q      And he completed the AICM, correct?

13      A      He completed twelve weeks in advanced

14  introduction of clinical medicine.

15      Q      Again, the advanced introduction of

16  clinical medicine is the AICM?

17      A      Fifth semester, yes, AICM.

18      Q      After completion of the AICM in

19  the early part of April of 2006, how far after

20  completion are grades issued?

21      A      I think I answered that already.

22      Q      And the grades are then posted?

23      A      At that time they were posted and I

24  believe they still are posted on eCollege.

25      Q      Were they posted anywhere in the

**A145**

```
 1    UNITED STATES DISTRICT COURT
      EASTERN DISTRICT OF NEW YORK
 2    - - - - - - - - - - - - - - - - - - X
      ANAND DASRATH,
 3

 4                                Plaintiff,

 5

 6         -against-                   Case No.
                                       CV-07-2433
 7

 8
      ROSS UNIVERSITY SCHOOL OF MEDICINE,
 9

10                                Defendant.
      - - - - - - - - - - - - - - - - - - X
11

12                                October 21, 2010
                                  9:55 a.m.
13
                                  44 Wall Street
14                                New York, New York

15

16

17              DEPOSITION OF DR. ENRIQUE S. FERNANDEZ,

18    appearing as a witness on behalf of the Defendant

19    herein, taken by the attorneys for Plaintiff,

20    Pursuant to Notice, held at the above-mentioned

21    time and place, before Alec Dazenski, a Notary

22    Public in and for the State of New York.

23

24

25                  ***     **     ***
```

SEVERIN & ASSOCIATES, INC.
1 South View Court
Bayville, New York  11709
TEL. (516) 628-1402 - FAX (516) 628-0423

Dr. Fernandez - Direct

1    the next phase of the education, the student must

2

3    pass step one.

4         Q    What is required in order to be

5    certified to sit for step one?

6         A    A passing score on the National Board

7    of Medical Examiners Comprehensive Examination

8    and satisfactory progress in the curriculum.

9         Q    Is that the NBME?

10        A    One in the same.

11        Q    Are you aware that Mr. Dasrath had

12   passed or was able to sit for the National Board

13   of Medical Exams?

14        A    I'm aware that Mr. Dasrath passed the

15   comprehensive basic science examination and I'm

16   aware that he was certified and sat for step one.

17        Q    Of the USMLE step one?

18        A    Yes.

19        Q    In order to be able to sit for the

20   USMLE step one, obviously he had to pass the

21   AICM?

22        A    Yes.

23        Q    And you're aware that he took the

24   USMLE?

25        A    Yes.

1  UNITED STATES DISTRICT COURT
    EASTERN DISTRICT OF NEW YORK
2  - - - - - - - - - - - - - - - - - - X
    ANAND DASRATH,
3

4                     Plaintiff,

5

6      -against-           Case No.
                      CV-07-2433
7

8
    ROSS UNIVERSITY SCHOOL OF MEDICINE,
9

10                  Defendant.
    - - - - - - - - - - - - - - - - - - X
11

12                October 21, 2010
                9:55 a.m.
13

14                44 Wall Street
                New York, New York

15

16

17        DEPOSITION OF DR. ENRIQUE S. FERNANDEZ,

18  appearing as a witness on behalf of the Defendant

19  herein, taken by the attorneys for Plaintiff,

20  Pursuant to Notice, held at the above-mentioned

21  time and place, before Alec Dazenski, a Notary

22  Public in and for the State of New York.

23

24

25           ***    **    ***

SEVERIN & ASSOCIATES, INC.
1 South View Court
Bayville, New York  11709
TEL. (516) 628-1402 - FAX (516) 628-0423

**A148**

<pre>
 1                  Dr. Fernandez - Direct        43

 2           Q    Do you know when he took it?

 3           A    I don't know the date.

 4           Q    Just for edification, what is the

 5   United States Medical Licensing exam?

 6           A    It is one of the examinations that is

 7   required for graduation from Ross University and

 8   to obtain the M.D. degree.  It's also a required

 9   examination for ECFMG certification.

10           Q    Do you know what ECFMG stands for?

11           A    Educational Commission for Foreign

12   Medical Graduates.  ECFMG is the process whereby

13   international medical graduates or students who

14   go to Ross University as an international medical

15   school certifies the graduate's ability to enter

16   residency training.

17           Q    Do you know the results of Mr.

18   Dasrath's USMLE step one exam?

19           A    I do not.  Would this be an

20   appropriate time to take a break?

21           MR. COSTELLO:  Yes.

22           (Whereupon, a brief recess was taken.)

23   BY MR. COSTELLO: (Continuing.)

24           Q    Dr. Fernandez, in order to sit for

25   the USMLE a student has to be certified in the
</pre>

SEVERIN & ASSOCIATES, INC.  *  (516) 628-1402

1                    Dr. Fernandez - Direct              44

2     AICM, correct?

3          A     A student has to pass AICM.

4          Q     But he has to be certified before he

5     could take the USMLE, correct?

6          A     Yes.

7          Q     And you administered the AICM and

8     issued a failing grade?

9          A     I'm a little confused here.

10         Q     You were the professor that

11    administered the AICM course; is that correct?

12         A     Yes, but I'm not the person who

13    certified Mr. Dasrath for the USMLE.

14         Q     But you issued the failing grade in

15    the AICM, correct?

16         A     Mr. Dasrath earned a failing grade

17    based on the scores in the ICM, yes.

18         Q     So yes, you issued the failing grade?

19         A     I forwarded a failing grade to the

20    registrar, yes.

21         Q     If he received an F he would not have

22    been certified to take the USMLE, correct?

23         A     He would not have been eligible to sit

24    for USMLE and should not have sat for USMLE step

25    one.

```
 1   UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
 2   - - - - - - - - - - - - - - - - - - X
     ANAND DASRATH,
 3

 4
                            Plaintiff,
 5

 6      -against-                    Case No.
                                     CV-07-2433
 7

 8

     ROSS UNIVERSITY SCHOOL OF MEDICINE,
 9

10                          Defendant.
     - - - - - - - - - - - - - - - - - - X
11

12                          October 21, 2010
                            9:55 a.m.
13
                            44 Wall Street
14                          New York, New York

15

16

17          DEPOSITION OF DR. ENRIQUE S. FERNANDEZ,

18   appearing as a witness on behalf of the Defendant

19   herein, taken by the attorneys for Plaintiff,

20   Pursuant to Notice, held at the above-mentioned

21   time and place, before Alec Dazenski, a Notary

22   Public in and for the State of New York.

23

24

25              ***      **      ***
```

SEVERIN & ASSOCIATES, INC.
1 South View Court
Bayville, New York 11709
TEL. (515) 628-1402 - FAX (516) 628-0423

Dr. Fernandez - Direct                     56

again Mr. Dasrath's instructor?

    A   No, because he never returned to

repeat the fifth semester.

    Q   Was he enrolled in a clinical

clerkship?

    A   No.

    Q   Can you please tell me what a clinical

clerkship is?

    A   A clinical clerkship is a rotation

that follows the successful passing of step one

and is part of the 78 weeks after fifth semester

that a student completes clinical activities at

assigned hospitals as part of the 150 weeks

required for graduation.

    Q   Where would the assigned hospitals be?

    A   At any one of our affiliates in the

United States and/or Princess Margaret Hospital

in Dominica.

    Q   Was Mr. Dasrath ever assigned to a

hospital for clinical clerkship?

    A   No.

    Q   How long are clinical clerkships?

    A   They vary in duration from required

clerkships of six weeks to required clerkships of

# A152

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------X    Index No.: CV 07-2433
**ANAND DASRATH**

           Plaintiff (s),

   -against-    **DEMANDS FOR REQUESTS**


**ROSS UNIVERSITY SCHOOL OF**
**MEDICINE,**
           Defendant (s).
------------------------------------------------------X

    Plaintiff, **ANAND DASRATH,** by and through his attorneys, **COSTELLO &**
**COSTELLO, P.C.** serves the following requests for production of documents upon the
Defendant, **ROSS UNIVERSITY SCHOOL OF MEDICINE** to be responded to, pursuant to
Fed. R. Civ. P. 34, within 30 days after the date of service.

## INSTRUCTIONS FOR RESPONDING

    1.    Plaintiff, **ANAND DASRATH** incorporates Local Civil Rule §26.3 of the Federal
Rules of Civil Procedure as the instructions and definitions applicable herein.

    2.    The word "document" shall include electronic (computer), files, e-mails,
voicemail messages, audio recordings and any other items that may be contained in Defendants
records or Defendants computer system that relate in any way to matter in dispute.

### REQUESTS FROM DEPOSITION OF DR. NANCY PERRI

    1.    Any documentation reflecting the cost of tuition for attendance to the Medical
School for 2006.

    2.    A copy of the Ross University School of Medicine Catalog.

    3.    A list of the names of the faculty members teaching the clinical rotation course in
2006.

    4.    Complete name and address of Michael Rendon's current employer.

    5.    A copy of the exam sheet for the AICM for the Plaintiff, **ANAND DASRATH**

### REQUESTS FROM DEPOSITION OF DR. ENRIQUE FERNANDEZ

    1.    Copies of the Plaintiffs midterm and final exams in Scantron.

    2.    Any copies of midterm and final exams that were given to the Plaintiff

    3.    Copies of all the portions of the AICM exams taken by the Plaintiff.

**A153**

    4.      A copy of the semester report from E-College for the Plaintiff

    5.      A copy of the first spreadsheet reflecting the Plaintiffs grades on the AICM exams.

    6.      A copy of any and all extra credit material that was submitted by the Plaintiff, as well copies of any and all exams the Plaintiffs failing grades.

    7.      A copy of the spreadsheets pertaining to the Plaintiffs grades.

    8.      A copy of the class mean standards.

**THE PLAINTIFF(S) RESERVE(S) THE RIGHT TO SUPPLEMENT THIS RESPONSE UP TO AND INCLUDING THE TIME OF TRIAL IN THIS MATTER.**

Dated:     Brooklyn, New York
            December 14, 2010

                                    _____

                                      **COSTELLO & COSTELLO, P.C.**
                                      **By: JOSEPH R. COSTELLO, ESQ.**
                                      **Attorneys for Plaintiff**
                                      5919 20th Avenue
                                      Brooklyn, New York 11204
                                      (718) 331-4600
                                      Our File No. 6970

TO:    **CULLEN AND DYKMAN, LLP.**
          **JENNIFER A. MCLAUGHLIN, ESQ.**
          100 Quentin Roosevelt Boulevard
          Garden City, New York 11530
          (516) 357-3700

192

```
 1
 2                    I N D E X
 3    WITNESS          EXAMINATION BY        PAGE
 4    ANAND DASRATH    MS. McLAUGHLIN        4
 5
 6                  E X H I B I T S
 7    DEFENDANT'S       DESCRIPTION          PAGE
 8       A            Document               13
 9       B            Copy of transcript     20
10    C & D           E-mails                47
11       E            Transcript             57
12       F            E-mail                 87
13       G            Memo                   99
14       H            E-mail                 111
15       I            Letter                 115
16       J            Transcript             118
17       K            Letter                 121
18       L            Letter                 123
19    M & N           USMLE application      129
20       O            Affidavit              135
21       P            Handbook               140
22       Q            Letter                 144
23       R            Letter                 145
24       S            Affidavit in opposition 150
25
```

71

```
 1                    A. DASRATH
 2          Q.      What happened at that time with
 3   your incomplete with the pathology one
 4   course?
 5          A.      It was changed from an
 6   incomplete to a C.
 7          Q.      Before you started the AICM
 8   class?
 9          A.      Right around then.  I don't
10   recall the exact date.
11          Q.      How did you find out it was
12   changed to a C?
13          A.      I received a transcript.
14          Q.      The AICM course that you were
15   taking, do you remember what your grades were
16   based on?
17          A.      It was based --
18                  MR. COSTELLO:  For the AICM?
19          Q.      For the AICM.
20          A.      Test.
21          Q.      Test only or was there a
22   practical portion of the course?
23          A.      On many things.  Plastic
24   things that looks like human.
25          Q.      You had taken the exams for the
```

1  UNITED STATES DISTRICT COURT
   EASTERN DISTRICT OF NEW YORK
2  - - - - - - - - - - - - - - - - - - - X
   ANAND DASRATH,
3

4                          Plaintiff,

5

6       -against-                    Case No.
                                     CV-07-2433
7

8

   ROSS UNIVERSITY SCHOOL OF MEDICINE,
9

10                         Defendant.
   - - - - - - - - - - - - - - - - - - - X
11

12                         October 21, 2010
                           9:55 a.m.
13
                           44 Wall Street
14                         New York, New York

15

16

17        DEPOSITION OF DR. ENRIQUE S. FERNANDEZ,

18  appearing as a witness on behalf of the Defendant

19  herein, taken by the attorneys for Plaintiff,

20  Pursuant to Notice, held at the above-mentioned

21  time and place, before Alec Dazenski, a Notary

22  Public in and for the State of New York.

23

24

25              ***    **    ***


              SEVERIN & ASSOCIATES, INC.
                 1 South View Court
               Bayville, New York  11709
        TEL. (516) 628-1402 - FAX (516) 628-0423

Dr. Fernandez - Direct          59

evaluation form.

Q     Is that your signature at the bottom?

A     Yes, it is.

Q     The address at the bottom of that
document, is that the address for the Greater
Miami Health Education and Training Center?

A     No.   That's our sponsoring institution
accredited through Florida.

Q     What is the address there, the 7000?

A     That's my office, that's the program
office for AICM.

Q     This clinical clerkship evaluation
form states that the duration of it was for
twelve weeks, correct?

A     Correct.

Q     What were the dates to the right of
the number twelve?

A     January 16th, 2006 to April 7th, 2006.

Q     This is for Anand Dasrath, correct?

A     Yes.

Q     Who would place this picture?

A     The staff member.

Q     Staff member where, at the registrar's
office?

*ROSS UNIVERSITY SCHOOL OF MEDICINE*

*STUDENT HANDBOOK*

*OF*

*ACADEMIC RULES AND REGULATIONS*

*May 2006*



The Basic Science segment consists of 60 credits of specifically prescribed coursework. There are four semesters of Basic Science classes, for a total of two academic years. All Basic Science coursework is offered on the School of Medicine campus (located at Portsmouth, in the Commonwealth of Dominica) and must be satisfactorily completed there. The hours, credits, and credit limitations are strictly prescribed. Deviation from these standards may jeopardize a student's eligibility for licensure in the United States. Basic Science students taking 10 semester credit hours are considered full-time; students who are taking less than 12 semester credit hours (see *Remedial Semesters* under Promotions Policy) may not satisfy enrollment requirements of sponsoring organizations, outside health insurance plans, and other related services.

The Clinical Science curriculum consists of 90 weeks of clinical training. It begins with an introductory clinical segment of 12 weeks, the course "Advanced Introduction to Clinical Medicine"(AICM). This segment provides training in the basic clinical skills combined with an introduction to the pathophysiology of major disease processes, and is conducted in clinical facilities, in the U.S.

The remaining 78 weeks consist of 48 weeks of required ("core") clerkships and 30 weeks of elective clerkships as described in the *Catalog*. During this time, the student participates in patient care while rotating through various medical specialties in affiliated teaching hospitals and other approved health care facilities, in the United States. Clinical clerkships are performed under the guidance of clinical faculty, the Dean of Clinical Sciences and Student Affairs and the Executive Dean and under the general supervision of the School of Medicine's Dean of Clinical Sciences.

## *ACADEMIC STANDARDS*

### *PROMOTIONS COMMITTEE, PROMOTIONS*

All academic matters, including grading policies and academic standards, while students are pursuing the Basic Science portion of the curriculum (the first two academic years), are within the purview of the School's Promotions Committee. This committee acts within the framework of the policies set forth herein. It is a faculty committee, whose recommendations are transmitted to the Dean. The decision of the Dean is final.

## *STUDENT GRADING AND PROMOTIONS POLICIES*
### *GRADING POLICY FOR THE BASIC SCIENCE SEGMENT*

The aim of the policy is to establish a minimum acceptable performance that a student must achieve that does not depend on the performance of the entire class. A Minimum Passing Score (MPS) is established that must be achieved for a passing (C) grade. A well-established method (the "Hofstee" method) will be used to determine the MPS.

The Hofstee method utilizes the class performance but also sets a Minimum Passing Score (MPS) that is derived from the lower group of scores within a defined range. The range for the MPS to be used is between 55% and 65%. Therefore, students that enrolled after May 2004 scoring below 55% will have failing scores and those scoring above 65% will have passing scores. Students with scores between 55% and 65% have marginal performance that may result in course failure

depending on the performance among the lowest performing group of students (in the range of 55% and 65%).

Recorded grades will be on an A (80 and higher), B (70-80), C (MPS-69), F (below MPS).

The percentage contribution to the final course score from each of the interim (mini) exams and other course evaluations will be announced by each course in advance. The final course score will include the student's score on a NBME subject examination (taken at the end of the course). The final course score weight from the NBME subject exams will be announced by each course director in advance.

## *GRADES*

Grades are interpreted as follows:

| A  | 80-100 | 4.00 |
|----|--------|------|
| B  | 70-80  | 3.00 |
| C  | MPS-69 | 2.00 |
| F  | Failing | 0.00 |
| W  | Withdrawn Before Interim Exams | 0.00 |
| WP | Withdrawn Passing | 0.00 |
| WF | Withdrawn Failing | 0.00 |
| I  | Incomplete | 0.00 |
| SP | Satisfactory Progress | 0.00 |
| UP | Unsatisfactory Progress | 0.00 |

**Withdrawal from a single course during a semester is not permitted.**

A student electing to withdraw from the School prior to the time of the first examinations will receive grades of W on his/her transcript. Those leaving after taking one or more interim examinations will receive WP (withdrawn passing) grades or WF (withdrawn failing), based on their performance in the examination(s) taken.

A student that is granted an emergency absence resulting in an Academic Leave of Absence prior to the time of the first exam will receive grades of W. Those leaving after taking one or more interim examinations will receive WP (withdrawn passing) grades or WF (withdrawn failing), based on their performance in the examination(s) taken.

An I (Incomplete) grade is entered when a student is advanced, pending completion of a requirement of a course, as defined by the course director. In this case, the outstanding requirement must be completed the following semester and the I will be changed into a grade. Failure to do so will result in a grade of F being entered to replace the I.

Students, who maintain grades of A in all courses in two successive semesters, will qualify for the *Dean's List*. They will remain on the *Dean's List* as long as they do not receive a grade below B in subsequent semesters. The *Dean's List* will be posted at the beginning of every semester, as soon the grades are available from the previous semester. This applies for semesters 2-4.

**A161**

192

1

2                              I N D E X

3    WITNESS                EXAMINATION BY              PAGE

4    ANAND DASRATH          MS. McLAUGHLIN              4

5

6                              E X H I B I T S

7

     DEFENDANT'S            DESCRIPTION                 PAGE

8        A                 Document                     13

9        B                 Copy of transcript           20

10   C & D                 E-mails                      47

11       E                 Transcript                   57

12       F                 E-mail                       87

13       G                 Memo                         99

14       H                 E-mail                      111

15       I                 Letter                      115

16       J                 Transcript                  118

17       K                 Letter                      121

18       L                 Letter                      123

19   M & N                 USMLE application           129

20       O                 Affidavit                   135

21       P                 Handbook                    140

22       Q                 Letter                      144

23       R                 Letter                      145

24       S                 Affidavit in opposition     150

25

56

1                        A. DASRATH

2        on the wall.

3              Q.      And there is no way to access

4        it electronically or otherwise?

5              A.      I don't recall that.

6              Q.      So, the first time you found

7        out about your grade in pathology was in

8        August of 2005?

9              A.      Yes, pathology one.

10             Q.      Pathology one, I'm sorry.

11                     What did you find out in August

12       of 2005?

13             A.      I received grades for the other

14       three courses, but not pathology one.

15             Q.      Did you call someone or talk to

16       someone about this?

17             A.      Yes.

18             Q.      What was discussed?   I'm

19       sorry, who did you speak to?

20             A.      Dr. Desalu.

21             Q.      And Dr. Desalu, if you

22       remember, was in charge of the grading center

23       at the school; is that correct?

24             A.      Yes.

25             Q.      What did you say to Dr. Desalu?

COPY

1   UNITED STATES DISTRICT COURT
    EASTERN DISTRICT OF NEW YORK
2   - - - - - - - - - - - - - - - - - - - - X
    ANAND DASRATH,
3

4
                                    Plaintiff,
5

6        -against-                    Case No.
                                      CV-07-2433
7

8
    ROSS UNIVERSITY SCHOOL OF MEDICINE,
9

10                                  Defendant.
    - - - - - - - - - - - - - - - - - - - - X
11

12                                  October 21, 2010
                                    9:55 a.m.
13
                                    44 Wall Street
14                                  New York, New York

15

16

17            DEPOSITION OF DR. ENRIQUE S. FERNANDEZ,

18   appearing as a witness on behalf of the Defendant

19   herein, taken by the attorneys for Plaintiff,

20   Pursuant to Notice, held at the above-mentioned

21   time and place, before Alec Dazenski, a Notary

22   Public in and for the State of New York.

23

24

25            ***      **     ***


                 SEVERIN & ASSOCIATES, INC.
                   1 South View Court
                 Bayville, New York  11709
            TEL. (516) 628-1402 - FAX (516) 628-0423

```
                        Dr. Fernandez - Direct              4
1
2     DR. ENRIQUE S. FERNANDEZ, the witness herein,
3            after having first been duly sworn by
4            Alec Dazenski, a Notary Public in and for
5            the State of New York, was examined and
6            testified as follows:
7     DIRECT EXAMINATION
8     BY MR. COSTELLO:
9            Q    Can I have your full name for the
10    record, please?
11           A    Enrique S. Fernandez.
12           Q    What is your business address?
13           A    7000 Southwest 62nd Avenue, Penthouse
14    A, Miami, Florida, 33143.
15           Q    Good morning, Dr. Fernandez.  How are
16    you today?
17           A    I'm well.  And yourself?
18           Q    Good, thank you.  My name is Joseph
19    Costello and I represent the Plaintiff, Anand
20    Dasrath, in a lawsuit that has been brought
21    against Ross University.  Today I'm going to be
22    asking you some questions with regard to that
23    lawsuit.
24           As you see, we have a court reporter
25    here who's taking down everything that we say, so
```

Dr. Fernandez - Direct

evaluation form.

Q    Is that your signature at the bottom?

A    Yes, it is.

Q    The address at the bottom of that
document, is that the address for the Greater
Miami Health Education and Training Center?

A    No.  That's our sponsoring institution
accredited through Florida.

Q    What is the address there, the 7000?

A    That's my office, that's the program
office for AICM.

Q    This clinical clerkship evaluation
form states that the duration of it was for
twelve weeks, correct?

A    Correct.

Q    What were the dates to the right of
the number twelve?

A    January 16th, 2006 to April 7th, 2006.

Q    This is for Anand Dasrath, correct?

A    Yes.

Q    Who would place this picture?

A    The staff member.

Q    Staff member where, at the registrar's
office?

1   UNITED STATES DISTRICT COURT
    EASTERN DISTRICT OF NEW YORK
2   - - - - - - - - - - - - - - - - - X
    ANAND DASRATH,
3

4                      Plaintiff,

5

6     -against-            Case No.
                        CV-07-2433
7

8

9   ROSS UNIVERSITY SCHOOL OF MEDICINE,

10                   Defendant.
    - - - - - - - - - - - - - - - - - X
11

12                October 21, 2010
                9:55 a.m.
13
                44 Wall Street
14              New York, New York

15

16

17        DEPOSITION OF DR. ENRIQUE S. FERNANDEZ,

18  appearing as a witness on behalf of the Defendant

19  herein, taken by the attorneys for Plaintiff,

20  Pursuant to Notice, held at the above-mentioned

21  time and place, before Alec Dazenski, a Notary

22  Public in and for the State of New York.

23

24

25           ***    **   ***

SEVERIN & ASSOCIATES, INC.
1 South View Court
Bayville, New York  11709
TEL. (516) 628-1402 - FAX (516) 628-0423

                    Dr. Fernandez - Direct                 7

1

2    there in the clinical department.

3           Q      What is your title at Ross?

4           A      Senior associate dean for clinical

5    sciences.

6           Q      How long have you been employed at

7    Ross University?

8           A      Since 2003, January.

9           Q      As a senior associate dean for

10   clinical sciences?

11          A      No.  I've been in this position for

12   two years.

13          Q      What was your position prior to this?

14          A      Associate dean and director of the

15   advanced introduction to clinical medicine

16   course, fifth semester.

17          Q      Is that the AICM?

18          A      AICM.

19          Q      How long were you the director of the

20   AICM course?

21          A      Since its inception in 2001.

22          Q      So in 2006 what was your position with

23   Ross?

24          A      I was the associate dean for clinical

25   sciences and I was the director of the advanced

         SEVERIN & ASSOCIATES, INC.  *  (516) 628-1402

**A168**

```
 1   UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
 2   - - - - - - - - - - - - - - - - - - X
     ANAND DASRATH,
 3

 4
                            Plaintiff,
 5

 6      -against-                    Case No.
                                     CV-07-2433
 7

 8
     ROSS UNIVERSITY SCHOOL OF MEDICINE,
 9

10                          Defendant.
     - - - - - - - - - - - - - - - - - - X
11

12                          October 21, 2010
                            9:55 a.m.
13
                            44 Wall Street
14                          New York, New York

15

16

17         DEPOSITION OF DR. ENRIQUE S. FERNANDEZ,

18   appearing as a witness on behalf of the Defendant

19   herein, taken by the attorneys for Plaintiff,

20   Pursuant to Notice, held at the above-mentioned

21   time and place, before Alec Dazenski, a Notary

22   Public in and for the State of New York.

23

24

25             ***     **     ***
```

SEVERIN & ASSOCIATES, INC.
1 South View Court
Bayville, New York 11709
TEL. (516) 628-1402 - FAX (516) 628-0423

```
                    Dr. Fernandez - Direct              60

 1

 2        A    In Miami.

 3        Q    You said before that he wasn't

 4   enrolled in a clinical clerkship, correct?

 5        A    He was not enrolled in the clerkships

 6   that I just described to you, counselor, the core

 7   rotations or the elective rotations.

 8        Q    But the programs you described to me

 9   all dealt with the clinical clerkship, correct?

 0        A    AICM is also a clinical clerkship.

 1        Q    And the AICM, is it a core or is it an

 2   elective clinical clerkship?

 3        A    It is neither.

 4        Q    What kind of clinical clerkship is it?

 5        A    It is a clinical experience, clinical

 6   rotation that students must do prior to progress-

 7   ing to the core and electives.

 8        Q    So he would still be enrolled in a

 9   clinical clerkship though?

 0        A    Yes.  The form is called a clinical

     clerkship.  If I confused you, I apologize.

     AICM is a clinical experience and it is a

     clinical clerkship.  It is not a core rotation

     and it is not an elective rotation.

          Q    After the completion of this clinical
```