# 11-2531-cv

IN THE

## United States Court of Appeals

FOR THE SECOND CIRCUIT



ANAND DASRATH,

*Plaintiff-Appellant,*

*v.*

ROSS UNIVERSITY SCHOOL OF MEDICINE,

*Defendant-Appellee.*

_____

*On Appeal from the United States District Court
for the Eastern District of New York (Brooklyn)*

## JOINT APPENDIX
## VOLUME III OF III
## Pages A524 to A751

CULLEN AND DYKMAN LLP
*Attorneys for Defendant-Appellee*
100 Quentin Roosevelt Boulevard
Garden City, New York 11530
516-357-3753

COSTELLO & COSTELLO, P.C.
*Attorneys for Plaintiff-Appellant*

ARNOLD E. DIJOSEPH, P.C.
*Appellate Counsel*
50 Broadway, Suite 1601
New York, New York 10004
212-344-7858

# Table of Contents

**Page**

## Volume I

District Court Docket Entries ................................................. A1

Notice of Motion by Plaintiff for Summary
Judgment, dated March 2, 2011 ....................................... A17

Affirmation of Joseph R. Costello, for Plaintiff,
in Support of Motion, dated March 2, 2011 ................................... A19

Affidavit of Anand Dasrath, Plaintiff, in Support
of Motion, sworn to March 2, 2011 ................................. A36

Exhibit A to Costello Affirmation -
Summons and Complaint, dated June 15, 2007 ...................... A51

Exhibit B to Costello Affirmation -
Amended Complaint, dated June 17, 2009 ............................ A61

Exhibit C to Costello Affirmation -
(i) Notice of Motion by Defendant, dated July 22, 2009,
with Affidavit of Nancy A. Perri, M.D. in Support ................ A70

Exhibit A to Perri Affidavit -
Ross University School of Medicine
Student Handbook, dated May, 2006 ............................ A74

(ii) Memorandum of Law by Defendant in Further
Support of Motion, dated September 28, 2009 ...................... A104

Exhibit D to Costello Affirmation -
Order of the Honorable Carol Bagley Amon,
dated May 6, 2010 ..................................................... A114

Exhibit E to Costello Affirmation -
Answer of Defendant ............................................. A115

**Table of Contents**
**(Continued)**

**Page**

Exhibit F to Costello Affirmation -
Excerpt from Verified Complaint in *Dasrath v.*
*Ross University,* Supreme Court, Queens County
("Queens County Action") ...................................................... A121

Exhibit G to Costello Affirmation -
Memorandum from Nancy A. Perri, M.D. to
Jennifer McLaughlin, dated February 6, 2008 ........................ A123

Exhibit H to Costello Affirmation -
Excerpt from the Deposition Testimony of
Nancy Perri, taken October 15, 2010 ..................................... A124

Exhibit I to Costello Affirmation -
Excerpt from the Deposition Testimony of
Enrique S. Fernandez, taken October 21, 2010 ...................... A126

Exhibit K to Costello Affirmation -
Various Clinical Clerkship Evaluation Documents ................ A128

Exhibit L to Costello Affirmation -
Excerpt from the Deposition Testimony of
Enrique S. Fernandez, taken October 21, 2010 ...................... A135

Exhibit M to Costello Affirmation -
(i) Email from Enrique S. Fernandez to Anand Dasrath,
dated April 23, 2006 ............................................................... A137
(ii) Memorandum for the Record, dated April 24, 2006 ......... A138
(iii) Spreadsheet .................................................................... A139

Exhibit N to Costello Affirmation -
Excerpt from the Deposition Testimony of
Enrique S. Fernandez, taken October 21, 2010 ...................... A141

Exhibit O to Costello Affirmation -
Excerpt from the Deposition Testimony of
Enrique S. Fernandez, taken October 21, 2010 ...................... A143

## **Table of Contents**
### **(Continued)**

**Page**

Exhibit P to Costello Affirmation -
Excerpt from the Deposition Testimony of
Enrique S. Fernandez, taken October 21, 2010 ...................... A145

Exhibit Q to Costello Affirmation -
Excerpt from the Deposition Testimony of
Enrique S. Fernandez, taken October 21, 2010 ...................... A147

Exhibit R to Costello Affirmation -
Excerpt from the Deposition Testimony of
Enrique S. Fernandez, taken October 21, 2010 ...................... A150

Exhibit S to Costello Affirmation -
Demands by Plaintiff for Requests,
dated December 14, 2010........................................................ A152

Exhibit T to Costello Affirmation -
Excerpt from the Deposition Testimony of
Anand Dasrath ........................................................................ A154

Exhibit U to Costello Affirmation -
Excerpt from the Deposition Testimony of
Enrique S. Fernandez, taken October 21, 2010 ...................... A156

Exhibit V to Costello Affirmation -
Excerpts from the Ross University School of
Medicine Student Handbook, dated May, 2006 ...................... A158

Exhibit W to Costello Affirmation -
Excerpt from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................. A161

Exhibit X to Costello Affirmation -
Excerpt from the Deposition Testimony of
Enrique S. Fernandez, taken October 21, 2010 ...................... A163

## Table of Contents
### (Continued)

**Page**

Exhibit Y to Costello Affirmation -
Excerpt from the Deposition Testimony of
Enrique S. Fernandez, taken October 21, 2010 ...................... A166

Exhibit Z to Costello Affirmation -
Excerpt from the Deposition Testimony of
Enrique S. Fernandez, taken October 21, 2010 ...................... A168

Exhibit A1 to Costello Affirmation -
Letter from Ross University to Anand Dasrath,
dated June 29, 2006 .................................................. A170

Exhibit B1 to Costello Affirmation -
Excerpt from the Ross University School of
Medicine Student Handbook, dated May, 2006 ...................... A171

Exhibit C1 to Costello Affirmation -
Excerpt from the Deposition Testimony of
Nancy Perri, taken October 15, 2010 ...................... A173

Exhibit D1 to Costello Affirmation -
Certifications by Ross University ........................... A175

Exhibit E1 to Costello Affirmation -
Excerpt from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................ A177

Exhibit F1 to Costello Affirmation -
Letter from the ECFMG, dated August 14, 2006,
and Ross University History Form of Anand Dasrath ............ A178

Exhibit G1 to Costello Affirmation -
Excerpt from the Ross University School of
Medicine Student Handbook, dated May, 2006 ...................... A180

Exhibit H1 to Costello Affirmation -
Excerpts from the Ross University School of
Medicine Student Handbook, dated May, 2006 ...................... A182

iv

# Table of Contents
## (Continued)

**Page**

Exhibit I1 to Costello Affirmation -
(i) Certification of Enrique S. Fernandez, M.D. ...................... A184
(ii) Excerpt from the Deposition Testimony of
Enrique S. Fernandez, taken October 21, 2010 ...................... A185
(iii) Excerpt from the Ross University School of
Medicine Student Handbook, dated May, 2006 ...................... A187

Exhibit J1 to Dasrath Affidavit -
Excerpts from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................ A189

Exhibit K1 to Dasrath Affidavit -
Letter from Ross University to Anand Dasrath,
dated April 17, 2003 ................................................................ A192

Exhibit L1 to Dasrath Affidavit -
Excerpt from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................ A193

Exhibit M1 to Dasrath Affidavit -
Excerpt from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................ A195

Exhibit N1 to Dasrath Affidavit -
Grades for Anand Dasrath from Ross University ................... A197

Exhibit O1 to Dasrath Affidavit -
Excerpt from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................ A198

Exhibit P1 to Dasrath Affidavit -
Excerpts from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................ A200

Exhibit Q1 to Dasrath Affidavit -
Excerpts from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................ A203

**Table of Contents**
**(Continued)**

**Page**

Exhibit R1 to Dasrath Affidavit -
Excerpt from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................ A206

Exhibit S1 to Dasrath Affidavit -
Excerpt from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................ A208

Exhibit T1 to Dasrath Affidavit -
Excerpt from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................ A210

Exhibit U1 to Dasrath Affidavit -
Excerpt from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................ A212

Exhibit V1 to Dasrath Affidavit -
Excerpt from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................ A214

Exhibit W1 to Dasrath Affidavit -
Excerpt from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................ A216

Exhibit X1 to Dasrath Affidavit -
Excerpt from the Ross University School of
Medicine Student Handbook, dated May, 2006 ...................... A218

Exhibit Y1 to Dasrath Affidavit -
Excerpt from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................ A220

Exhibit Z1 to Dasrath Affidavit -
Excerpt from the Deposition Testimony of
Enrique S. Fernandez, taken October 21, 2010 ....................... A222

## Table of Contents
### (Continued)

**Page**

Exhibit A2 to Dasrath Affidavit -
Excerpts from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................ A224

Exhibit B2 to Dasrath Affidavit -
Excerpt from the Ross University School of
Medicine Student Handbook, dated May, 2006 ...................... A227

Exhibit C2 to Dasrath Affidavit -
Excerpt from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................ A229

Exhibit D2 to Dasrath Affidavit -
Excerpt from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................ A231

Exhibit E2 to Dasrath Affidavit -
Excerpt from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................ A233

Exhibit F2 to Dasrath Affidavit -
Excerpt from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................ A235

Exhibit G2 to Dasrath Affidavit -
Excerpts from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................ A237

Exhibit H2 to Dasrath Affidavit -
Excerpt from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................ A240

Exhibit I2 to Dasrath Affidavit -
Excerpt from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................ A242

**Table of Contents**
**(Continued)**

**Page**

Exhibit J2 to Dasrath Affidavit -
Excerpt from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................ A244

Exhibit K2 to Dasrath Affidavit -
Memorandum for the Record, dated April 24, 2006 ............... A246

Exhibit L2 to Dasrath Affidavit -
Excerpts from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................ A247

Exhibit M2 to Dasrath Affidavit -
Excerpt from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................ A250

Exhibit N2 to Dasrath Affidavit -
Excerpt from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................ A252

Exhibit O2 to Dasrath Affidavit -
Excerpt from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................ A254

Exhibit P2 to Dasrath Affidavit -
Excerpt from the Ross University School of
Medicine Student Handbook, dated May, 2006 ...................... A255

Exhibit Q2 to Dasrath Affidavit -
Excerpts from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................ A257

Exhibit R2 to Dasrath Affidavit -
Excerpt from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................ A260

Exhibit S2 to Dasrath Affidavit -
Excerpt from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................ A262

**Table of Contents**
**(Continued)**

**Page**

Exhibit T2 to Dasrath Affidavit -
(i) Excerpt from the Deposition Testimony of
Nancy Perri, taken October 15, 2010 ...................................... A264
(ii) Excerpt from the Deposition Testimony of
Enrique S. Fernandez, taken October 21, 2010 ...................... A266

Exhibit U2 to Dasrath Affidavit -
Recommendation of Anthony F. Almeida, MA, Ph.D.,
dated February 21, 2006 ........................................................... A268

Exhibit V2 to Dasrath Affidavit -
Student Copy of Anand Dasrath's
Transcript from Ross University ............................................... A269

Exhibit W2 to Dasrath Affidavit -
Email from Brijette Sena to Anand Dasrath,
dated March 9, 2006 ................................................................. A270

Exhibit X2 to Dasrath Affidavit -
Excerpts from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................. A272

Exhibit Y2 to Dasrath Affidavit -
Excerpts from the Deposition Testimony of
Anand Dasrath, taken September 30, 2010 ............................. A275

Exhibit Z2 to Dasrath Affidavit -
Excerpts from Response to Interrogatories ............................. A280

Memorandum of Law by Plaintiff in Support
of Motion, dated March 2, 2011 .................................................... A283

Notice of Motion by Defendant for Summary
Judgment, dated March 3, 2011 .................................................... A291

Affidavit of Enrique Fernandez, M.D., for Defendant,
in Support of Motion, sworn to February 27, 2011 ...................... A292

**Table of Contents**
**(Continued)**

**Page**

**Volume II**

Affidavit of Jennifer A. McLaughlin, for Defendant,
    in Support of Motion, sworn to March 3, 2011 ............................ A301

    Exhibit A to Fernandez Affidavit -
    Various Ross University Documents ...................................... A303

    Exhibit B to Fernandez Affidavit -
    Email from Enrique S. Fernandez to Anand Dasrath,
    dated April 23, 2006
    (Reproduced Herein at page A137)

    Exhibit C to Fernandez Affidavit -
    Memorandum for the Record, dated April 24, 2006
    (Reproduced Herein at page A138)

    Exhibit D to Fernandez Affidavit -
    Ross University School of Medicine Student Handbook,
    dated May, 2006
    (Reproduced Herein at pages A74 to A103)

    Exhibit E to Fernandez Affidavit -
    Letter from Ross University to Anand Dasrath,
    dated June 29, 2006
    (Reproduced Herein at page A170)

    Exhibit F to Fernandez Affidavit -
    Letter from William C. Kelly to Anand Dasrath,
    dated August 16, 2006 ........................................................... A309

    Exhibit G to Fernandez Affidavit -
    Certification by Ross University, dated March 20, 2006 ........ A311

    Exhibit H to Fernandez Affidavit -
    Certification by Ross University, dated May 5, 2006 ............. A312

# Table of Contents
## (Continued)

**Page**

Exhibit I to Fernandez Affidavit -
Request by Anand Dasrath for Transcript,
dated May 15, 2006, with Student Copy of Transcript  ...........  A313

Exhibit J to Fernandez Affidavit -
Transcript Request by Anand Dasrath,
dated August 1, 2006 ...............................................................  A315

Exhibit K to Fernandez Affidavit -
Unofficial Copy of Anand Dasrath's
Transcript from Ross University  .............................................  A316

Exhibit L to McLaughlin Affidavit -
Deposition Testimony of Anand Dasrath,
taken September 30, 2010  ......................................................  A318

## Volume III

Exhibit M to McLaughlin Affidavit -
Deposition Testimony of Nancy Perri,
taken October 15, 2010  ..........................................................  A524

Exhibit N to McLaughlin Affidavit -
Order to Show Cause by Plaintiff in the Queens County
Action, dated July 25, 2006, with Supporting Documents ......  A613

Exhibit O to McLaughlin Affidavit -
Order of the Honorable Roger N. Rosengarten in
the Queens County Action, dated January 31, 2007,
with Notice of Entry ...............................................................  A630

Exhibit P to McLaughlin Affidavit -
Certificate of William C. Kelly of Authenticity of Business
Records Pursuant to Federal Rule of Evidence 902(11),
dated November 10, 2010, with Attachments thereto  .............  A632

Memorandum of Law by Defendant in
    Support of Motion, dated March 3, 2010  .....................................  A635

# Table of Contents
## (Continued)

**Page**

Statement of Material Facts by Defendant
      Pursuant to Local Rule 56.1 ........................................................... A649

Affidavit of Jennifer A. McLaughlin, for Defendant, in Opposition
      to Motion by Plaintiff, dated March 31, 2011 ............................... A660

           Exhibit 1 to McLaughlin Affidavit -
           Affidavit of Enrique Fernandez, M.D., for Defendant,
           sworn to February 27, 2011, with Exhibits A through K
           (Reproduced Herein at pages A292 to A300,
           and A303 to A317)

           Exhibit 2 to McLaughlin Affidavit -
           Affidavit of Jennifer A. McLaughlin, for Defendant,
           sworn to March 3, 2011, with Exhibits L through P
           (Reproduced Herein at pages A301 to A302,
           and A318 to A634)

Memorandum of Law by Defendant in Opposition
      to Motion by Plaintiff, dated March 31, 2011 ............................... A661

Affidavit of Anand Dasrath, Plaintiff, in Opposition
      to Motion by Defendant, sworn to April 14, 2011 ........................ A681

Reply Affidavit of Anand Dasrath, Plaintiff, in Further
      Support of Motion, sworn to April 28, 2011 ................................. A696

           Exhibit A to Dasrath Reply Affidavit -
           Excerpt from the Deposition Testimony of
           Enrique S. Fernandez, taken October 21, 2010 ....................... A705

           Exhibit B to Dasrath Reply Affidavit -
           Excerpt from the Deposition Testimony of
           Nancy Perri, taken October 15, 2010 ...................................... A707

Reply Memorandum of Law by Plaintiff in Further
      Support of Motion, dated April 28, 2011 ...................................... A709

# Table of Contents
## (Continued)

**Page**

Reply Memorandum of Law by Defendant in Further
    Support of Motion, dated April 28, 2011 ...................................... A723

Memorandum and Order of the Honorable Carol Bagley Amon,
    dated May 26, 2011, Appealed From ............................................ A737

Judgment of the United States District Court, Eastern District
    of New York, entered May 26, 2011, Appealed From .................. A750

Notice of Appeal, dated June 21, 2011 ................................................. A751

SHEET 1   PAGE 1

[1] COPY

```
 1
 2        UNITED STATES DISTRICT COURT
          EASTERN DISTRICT OF NEW YORK
 3        --------------------------------------------X
          ANAND DASRATH,
 4
                                      PLAINTIFF,
 5
              -against-              CASE NO. CV-07-2433
 6
          ROSS UNIVERSITY SCHOOL OF MEDICINE,
 7
                                      DEFENDANT.
 8        --------------------------------------------X

 9                        DATE: October 15, 2010

10                        TIME: 9:45 a.m.

11

12             EXAMINATION BEFORE TRIAL of the

13        Defendant, ROSS UNIVERSITY SCHOOL OF

14        MEDICINE, by NANCY PERRI, taken by the

15        Plaintiff, pursuant to an Order, held at the

16        offices of Cullen & Dkyman, Esqs., 44 Wall

17        Street, New York, New York, before a Notary

18        Public of the State of New York.

19

20

21

22

23

24

25
```

THIS PAGE INTENTIONALLY LEFT BLANK

SHEET 2  PAGE 2

2

```
 1

 2        A P P E A R A N C E S:

 3

 4              COSTELLO & COSTELLO, ESQS.
                      Attorneys for Plaintiff
 5                    5919 20th Avenue
                      Brooklyn, New York 11204
 6              BY:   JOSEPH R. COSTELLO, ESQ.

 7

 8              CULLEN & DYKMAN, ESQS.
                      Attorneys for the Defendant
 9                    100 Quentin Roosevelt Boulevard
                      Garden City, New York 11530
10              BY:   JUSTIN CAPUANO, ESQ.
                      File No. 11001-11
11

12                    *          *          *

13

14

15

16

17

18

19

20

21

22

23

24

25
```

SHEET 3   PAGE 3

3

1

2            F E D E R A L   S T I P U L A T I O N S

3

4

5                 IT IS HEREBY STIPULATED AND

6      AGREED by and between the counsel for the

7      respective parties hereto, that the filing,

8      sealing, and certification of the within

9      deposition shall be and the same are hereby

10     waived;

11

12                IT IS FURTHER STIPULATED AND

13     AGREED that all objections, except as to the

14     form of the question, shall be reserved to

15     the times of the trial.

16

17                IT IS FURTHER STIPULATED AND

18     AGREED that the within deposition may be

19     signed before any Notary Public with the same

20     force and effect as if signed and sworn to

21     before this court.

22

23

24               *      *      *      *

25

SEVERIN & ASSOCIATES, INC.  *  516 628-1402

SHEET 4  PAGE 4

4

```
 1
 2     N A N C Y    P E R R I, called as a witness,
 3     having been first duly sworn by a Notary
 4     Public of the State of New York, was examined
 5     and testified as follows:
 6     EXAMINATION BY
 7     MR. COSTELLO:
 8          Q.     Please state your name for the
 9     record.
10          A.     Nancy Perri.
11          Q.     What is your business address?
12          A.     630 Highway 1, North Brunswick,
13     New Jersey 08902.
14          Q.     Good morning, Dr. Perri.  How
15     are you today?
16          A.     Good, thank you.
17          Q.     My name is Joseph Costello.   I
18     represent the plaintiff Anand Dasrath in this
19     case against Ross University today.
20                 I'm going to be asking you a
21     series of questions about that lawsuit.
22                 As you can see we have the
23     court reporter here today so we ask that your
24     responses be verbal.
25                 If you do not understand any
```

Case 11-2531, Document 55, 10/07/2011, 412566, Page20 of 243

SHEET 5   PAGE 5

5

```
 1                      A. DASRATH

 2       question, please tell me and I will rephrase

 3       it.

 4                   If you do not hear the

 5       question, please tell me, I'll have the court

 6       reporter read it back to you.

 7            A.     Okay.

 8            Q.     I also ask that you wait until

 9       I finish the question before you respond

10       because the court reporter is not able to

11       take down the two of us talking at the same

12       time.

13                   So far do you understand these

14       instructions?

15            A.     Yes.

16            Q.     If you don't tell me you don't

17       understand the question, I will assume you

18       did understand it.

19            A.     Okay.

20            Q.     So I will continue.

21                   If you need to take a break,

22       please tell me.   I only ask that you wait

23       until you answer the question before you ask

24       for a break.

25            A.     Okay.
```

Case 11-2531, Document 55, 10/07/2011, 412566, Page21 of 243

**A529**

SHEET 6   PAGE 6

6

```
 1                        A. DASRATH

 2          Q.        Have you taken any medication

 3     today that would inhibit your ability to

 4     testify today?

 5          A.        No.

 6          Q.        Did you review any document in

 7     preparation for your testimony today?

 8          A.        Today, no.

 9          Q.        You are employed by whom?

10          A.        Ross University.

11          Q.        And that address that you gave

12     at 630 U.S. Highway 1, North Brunswick, New

13     Jersey, is that the main office of Ross?

14          A.        Yes.

15          Q.        Are there any campuses?

16          A.        Yes.

17          Q.        Can you please tell me those

18     addresses?

19          A.        Portsmouth, Dominica.

20          Q.        Is there a physical address or

21     just Portsmouth, Dominica?

22          A.        Portsmouth, Dominica.  St.

23     Kitts, Grand Bahama, Freeport.

24          Q.        Is that the third one?

25          A.        That's the third one.  And then
```

Case 11-2531, Document 55, 10/07/2011, 412566, Page22 of 243

**A530**

SHEET 7   PAGE 7

7

1                              A. DASRATH

2      additionally there are sixty-nine clinical

3      training affiliates in the United States for

4      the School of Medicine.

5                    And twenty-one clinical

6      training affiliates in the United States for

7      the School of Veterinarian Medicine.

8            Q.      What is your position with

9      Ross?

10           A.      I'm the chief academic officer

11     for Ross University.

12           Q.      Chief academic officer?

13           A.      Yes.

14           Q.      How long have you been the

15     chief academic officer?

16           A.      Eight and a half months.

17           Q.      What did you do prior to

18     that?

19           A.      I was the vice president of

20     academic affairs at Ross University.

21           Q.      How long did you hold that

22     position?

23           A.      Since January of 2004 through

24     January of this year.

25           Q.      What did you do before you were

SHEET 8   PAGE 8

8

```
 1                      A. DASRATH

 2      the vice president of academic affairs at

 3      Ross?

 4           A.      I was the dean of clinical

 5      sciences.

 6           Q.      Did you graduate from Ross

 7      University?

 8           A.      Yes.

 9           Q.      When did you graduate?

10           A.      1982.

11           Q.      Did you immediately go to work

12      for them after that?

13           A.      No.

14           Q.      What did you do upon

15      graduation?

16           A.      I completed internal medicine

17      post graduate training program.

18           Q.      Where?

19           A.      St. Elizabeth Hospital, in

20      Elizabeth, New Jersey.

21           Q.      When did you do that?

22           A.      From 1982 through 1985.

23           Q.      And from 1985 until -- well,

24      what did you do after that?

25           A.      I completed a fellowship in
```

Case 11-2531, Document 55, 10/07/2011, 412566, Page24 of 243

**A532**

SHEET 9  PAGE 9

9

```
 1                        A. DASRATH

 2      transplant nephrology.

 3              Q.      That was from what year?

 4              A.      1985 through 1987.

 5              Q.      After 1987, what did you do

 6      next?

 7              A.      I completed a post doctoral

 8      training in transplant medicine.

 9              Q.      Up to what year was that?

10              A.      Until 1990.

11              Q.      And from 1990 until --  what

12      did you do from 1990 on?

13              A.      I joined Ross University.

14              Q.      In 1990?

15              A.      Yes.

16              Q.      What was your first position at

17      Ross?

18              A.      Dean of clinical sciences.

19              Q.      That was 1990 through what

20      year?

21              A.      Through 2003.

22              Q.      That would be December of

23      2003?

24              A.      Correct.

25              Q.      As dean of clinical sciences,
```

Case 11-2531, Document 55, 10/07/2011, 412566, Page25 of 243
**A533**

SHEET 10   PAGE 10

10

```
1                      A. DASRATH

2      what was your job description?

3           A.        Primarily my job was to procure

4      and design clinical educational partnerships

5      for students at the School of Medicine,

6      recruit clinical faculty and I assumed the

7      regulatory role for the School of Medicine.

8           Q.        What do you mean when you say

9      assumed?

10          A.        Assume the regulatory role.

11          Q.        That was the position they gave

12     you?

13          A.        Yes.

14          Q.        And you did that until 2003?

15          A.        Until the end of 2003, yes.

16          Q.        And then in January of 2004 you

17     were promoted to vice president of academic

18     affairs?

19          A.        Yes.

20          Q.        What was your job description

21     at that?

22          A.        In addition to the School of

23     Medicine, academic activities I oversaw the

24     School of Veterinarian Medicine academic

25     activities as well.
```

Case 11-2531, Document 55, 10/07/2011, 412566, Page26 of 243

**A534**

SHEET 11  PAGE 11

11

```
 1                    A. DASRATH

 2          Q.      So, it would be similar to your

 3  role as dean of clinical services?

 4          A.      A bit different.

 5          Q.      How is it different?

 6          A.        It involved an additional

 7  program of education.  The medical school is

 8  a program of medical education, the

 9  veterinarian school is a program of

10  veterinarian education.

11          Q.      And then in January of this

12  year, you were promoted to chief of academic

13  offices?

14          A.      Yes.

15          Q.      What is your role as chief of

16  academic offices?

17          A.        In addition to the School of

18  Veterinarian Medicine and the School of

19  Academic Responsibilities, I assumed

20  responsibility for faculty recruitments,

21  faculty development, student professional

22  development, graduate education in the

23  regulatory role of both the medical and

24  veterinarian school.

25          Q.      Can you be more specific as to
```

SEVERIN & ASSOCIATES, INC. *  516 628-1402

Case 11-2531, Document 55, 10/07/2011, 412566, Page27 of 243

A535

SHEET 12  PAGE 12

12

1                           A. DASRATH

2      what you do in assuming these rolls?

3            A.      The regulatory role is mainly

4      the accreditation of both programs, medical

5      education and veterinarian education.

6                  Both are accrediting agencies

7      that are mandated to a credit program of

8      medical education and veterinarian education

9      and any voluntary body the school applies to

10     for the purposes of approval of licensures.

11                 I'm also the liaison for the

12     U.S. Department of Education.

13           Q.      Is your duty to oversee how

14     students are admitted, how faculties are

15     recruited?

16           A.      Yes.

17           Q.      As part of your duties as chief

18     academic officer and enrolling students,

19     shall we say, what documents do you review in

20     order to accept a student at Ross University?

21           A.      The documents that I review is

22     to ensure that the faculty, committees of

23     both the medical school and veterinarian

24     school assume their responsibilities as a

25     committee to make recommendation to the dean

Case 11-2531, Document 55, 10/07/2011, 412566, Page28 of 243

**A536**

SHEET 13  PAGE 13

13

                              A. DASRATH

1

2    at either program, to either accept a

3    students or not accept a student.

4         Q.      What do you base that on?

5         A.      Policy.   There is prerequisite

6    determinations as to, whether or not, a

7    student is acceptable to either the program

8    of medicine or veterinarian medicine.

9         Q.      What are those prerequisites?

10        A.      The standard prerequisite

11   requirements or the present medical and

12   veterinarian requirements include, but are

13   not limited to a year of biology with

14   laboratory sciences at an undergrad

15   institution.

16                A year of inorganic chemistry

17   with laboratory, a year of organic chemistry

18   with laboratory, six months or one semester

19   of physics.   One semester of mathematics and

20   at least a semester of humanities.

21        Q.      So, these students as they

22   apply they had to have passed these courses

23   in order to be considered for the position?

24        A.      They have to take those courses

25   and pass those courses.

SHEET 14  PAGE 14

14

1                          A. DASRATH

2          Q.      At undergrad school?

3          A.      Correct.

4          Q.      Is there a certain GPA that

5     Ross University requires from that

6     undergraduate school before they even

7     consider accepting the student?

8          A.      No.

9          Q.      Approximately, how many

10    applications do you receive, let's say in a

11    year?

12         A.      I can't be absolutely certain

13    without looking, but approximately 1,800

14    annually at the medical school and probably

15    1,000 at the veterinarian school.

16         Q.      So, about 2,800 total?

17         A.      Approximately.

18         Q.      Of those 1,800 that are

19    accepted to the medical school, shall we say,

20    do you know the graduation?

21         A.      Those aren't accepted, those

22    are applications.

23         Q.      Of the 1,800 that are accepted,

24    approximately how many of those 1,800

25    graduate?

SHEET 15  PAGE 15

15

1                           A. DASRATH

2          A.        In how many years?

3                    MR. CAPUANO:  I'm going to

4          object, but in relation to the lawsuit,

5          it seems a little tangentile.

6                    MR. COSTELLO:  It is just

7          background information.

8                    MR. CAPUANO:  It is your

9          deposition, but it seems completely

10         irrelevant.

11                   At some point let's steer back.

12                   MR. COSTELLO:  I will move on,

13         but if she can just answer that

14         question.

15         A.        Can I ask a question?  Clarify

16    how many years?

17         Q.        Let me ask you this way.

18                   How many years is the medical

19    school program?

20         A.        The medical school program is a

21    four-year program.  The veterinarian program

22    is a four and a half year program.

23         Q.        Is there twelve months in the

24    year or is it broken up into semester,

25    trimesters?

SHEET 16  PAGE 16

16

```
 1                      A. DASRATH

 2           A.      It is broken up into

 3      trimesters.

 4           Q.      So, the medical school are four

 5      years?

 6           A.      Yes.

 7           Q.      So, for the 1,800 enrolled for

 8      the medical program, let's say, do you have

 9      an idea how many of those students graduate?

10           A.      The 1,800 are not enrolled.

11      They apply.

12           Q.      How many are accepted?

13           A.      Probably fifty percent of

14      those.

15           Q.      In 2006 as the vice president

16      of academic affairs, you would have been

17      familiar with the enrollment process at Ross,

18      correct?

19           A.      Correct.

20           Q.      When a student applies and is

21      there afterward accepted, does Ross at that

22      point ask for any money, for tuition, books,

23      an application fee?

24           A.      There is a tuition charge for

25      both the School of Medicine and the
```

SHEET 17  PAGE 17

17

1                          A. DASRATH

2        Veterinarian School of Medicine.

3                Q.      In 2006, do you know what that

4        tuition fee was?

5                A.      I don't recall.

6                Q.      Would it be reflected somewhere

7        in any document?

8                A.      Yes.

9                Q.      Back in your office?

10               A.      Yes.

11                       MR. COSTELLO:  Justin, I will

12               follow up in writing.

13                       I am going to call for the

14               production of that.

15                       MR. CAPUANO:  Are you going to

16               ask which document? It might have

17               already been produced.

18                       MR. COSTELLO:  She doesn't know

19               which document.

20                       THE WITNESS:  I didn't say I

21               didn't know which document.

22                       MR. COSTELLO:  She said she has

23               the record back in the office and she

24               hasn't reviewed anything in preparation

25               for her testimony today.

Case 11-2531, Document 55, 10/07/2011, 412566, Page33 of 243

**A541**

SHEET 18  PAGE 18

18

```
1                       A. DASRATH

2                  MR. CAPUANO:  Why don't you ask

3             the follow-up question.

4                  MR. COSTELLO:  Read back my

5             last question.

6                  (Whereupon, the referred to

7             question was read back by the

8             Reporter.)

9             Q.     Do you know what document would

10       reflect the tuition cost for the year 2006?

11            A.     Yes.

12            Q.     What document would that be?

13            A.     The catalog.

14            Q.     That's the name, the Ross

15       University catalog?

16            A.     The medical school catalog.

17                  STPHRAO:   Off the record.

18                  (Whereupon, a discussion was

19            held off the record.)

20                  MR. COSTELLO:  Back on the

21            record.

22                  I will follow-up in writing.

23                  I'm going to call for

24            production of that 2006 school of

25            medicine catalog.
```

SEVERIN & ASSOCIATES, INC.  *  516 628-1402

SHEET 19  PAGE 19

19

1                      A. DASRATH

2                      MR. CAPUANO:   Taken under

3          advisement.

4          Q.      So, after the student pays the

5    initial tuition, what happens next?

6          A.      The students matriculate at the

7    program medical education or veterinarian

8    education.

9          Q.      Before he matriculates, is he

10   or she sent notification that you have been

11   enrolled or accepted?

12         A.      That happens before the tuition

13   exchange.

14         Q.      Once they matriculate, with

15   that initial letter, it says that you need to

16   report on such and such a date to the

17   campus?

18         A.      The acceptance letter is sent

19   to the student after the faculty committee

20   reviews an application, makes a

21   recommendation to the dean, the dean can

22   chose to accept that recommendation, amend

23   the recommendation or not accept the

24   recommendation and a student is sent an

25   acceptance letter.

Case 11-2531, Document 55, 10/07/2011, 412566, Page35 of 243

**A543**

SHEET 20  PAGE 20

20

1                          A. DASRATH

2          Q.      What would be grounds for

3      amending an acceptance letter?

4          A.      If it was a transfer student

5      and a student was transferring into a

6      specific semester and the dean didn't feel

7      that the committee appropriately evaluated

8      credentials for purposes of transferring

9      credits.

10         Q.      You mean transfer from one

11     medical school to Ross?

12         A.      Transfer from one medical

13     school or a veterinarian school.

14         Q.      And once the student

15     matriculates to Ross for the School of

16     Medicine, I'm speaking strictly of the School

17     of Medicine now so we will cut to the chase

18     on that.

19                 They are then given their

20     course requirements?

21         A.      Yes.

22         Q.      And how are they given the

23     course requirements?

24         A.      The student would be told that

25     they would matriculate if they are coming as

Case 11-2531, Document 55, 10/07/2011, 412566, Page36 of 243

A544

SHEET 21   PAGE 21

21

1                    A. DASRATH

2       a first semester student.

3                    They would be told when they

4       get to the campus what courses that they

5       would be taking and the campus is in

6       Dominica.

7            Q.      But where would they actually

8       report, to Dominica or to North Brunswick?

9            A.      To Dominica.

10           Q.      What would be the first

11      semester requirements for a first year

12      medical student back again only 2006.

13                   I don't know if they changed

14      since then.

15           A.      They may have.   I'm going to

16      speak from memory.  Anatomy, physiology,

17      biochemistry, doctor patient society.

18           Q.      What is doctor patient society?

19           A.      It is a medical ethics course.

20      It is a didactic program.

21           Q.      So, they have to take those

22      core classes?

23           A.      They would be required

24      classes.

25           Q.      And that's all for the first

SHEET 22  PAGE 22

22

1                        A. DASRATH

2     semester?

3          A.      First semester.

4          Q.      And the first semester runs

5     from September to December?

6          A.      The first semester runs three

7     times a year.

8          Q.      Can you please explain that?

9          A.      The medical school program runs

10    on a trimester basis so there is four intakes

11    annually.

12                 The first intake of students in

13    January and intake of first semester students

14    in May and a third intake of first semester

15    students in September.

16         Q.      And January, May and September

17    are all considered still first semesters

18    though?

19         A.      Yes.

20         Q.      After the student passes those

21    required, classes is he then matriculated

22    into a second semester?

23         A.      Yes.

24         Q.      What are the courses for the

25    second semester?

SHEET 23   PAGE 23

23

1                    A. DASRATH

2          A.      They would be part two of the

3    first semester courses.

4          Q.      Part two of the, sorry.  Gross

5    anatomy --

6          Q.      Did you say first semester

7    courses?

8          A.      Yes.

9          Q.      And again, so then they go to

10   the third semester?

11         A.      Correct.

12         Q.      And do the courses change at

13   that point?

14         A.      Yes.

15         Q.      What do the courses become at

16   that point?

17         A.      Pharmacology, micro biology,

18   pathology, introduction to clinical

19   medicine.

20         Q.      What was the third one, I'm

21   sorry?

22         A.      Pathology, micro biology.

23         Q.      Pathology.  And introduction to

24   clinic studies?

25         A.      Clinical medicine.

**A547**

SHEET 24  PAGE 24

24

1                          A. DASRATH

2          Q.      Are these practical courses or

3    theorhetical courses?

4          A.      They are disciplined specific.

5    They are required course work in a medical

6    school.  They are not theorhetical.

7          Q.      So, it's not essentially

8    working on patients, let's say?   It is

9    reading about the subject matter --

10         A.      It would be both actually.

11   There is application of the disicipline.

12         Q.      And then the students would

13   need to pass those four courses in order to

14   be matriculated to the fourth semester?

15         A.      Right.

16         Q.      What are the courses of the

17   fourth semester?

18         A.      They are the second part of the

19   third semester.

20         Q.      And then the fifth semester?

21         A.      Advanced introduction to

22   clinical medicine.

23         Q.      Is that typically referred to

24   as the AICM?

25         A.      Yes.

Case 11-2531, Document 55, 10/07/2011, 412566, Page40 of 243

**A548**

SHEET 25  PAGE 25

25

1                               A. DASRATH

2          Q.      And what are the requirements,

3    I will just refer to the acronym if that is

4    okay?

5          A.      Yes.

6          Q.      What are the requirements of

7    the AICM course?

8          A.      It's the first compulsory

9    clinical rotation.

10         Q.      When you say first compulsory

11   clinical rotation, what do you mean?

12         A.      The program is broken down into

13   two major parts.  There is a pre-medical

14   education component and then there is a

15   clinical education component.

16                 The advanced introduction to

17   clinical medicine is the clinical education

18   component.

19         Q.      That is the first clinical?

20         A.      Yes.

21         Q.      And what courses are required

22   for the AICM?

23         A.      It is a course within itself.

24   It is a 1-12C course and one-grade is issued

25   for it.

Case 11-2531, Document 55, 10/07/2011, 412566, Page41 of 243
**A549**

SHEET 26  PAGE 26

26

1                          A. DASRATH

2          Q.      That grade is issued at the end

3     of the course?

4          A.      Yes.

5          Q.      And that is based upon one

6     final exam?

7          A.      No, it is based on a series of

8     activities that the student must successfully

9     complete.

10         Q.      During the course of the

11    semester?

12         A.      Yes.

13         Q.      What are those activities?

14         A.      They are practical activities,

15    history and physical taking skills, there are

16    written examinations based on didactic

17    components of the advanced introduction to

18    clinic medicine.

19         Q.      When you say didactic

20    components, can you please expand on that?

21         A.      In any clinical rotation there

22    is a component where a student is in a

23    hospital with a patient and traditionally

24    evaluated on their competency with their

25    approach on the patient of the physical

Case 11-2531, Document 55, 10/07/2011, 412566, Page42 of 243

**A550**

SHEET 27  PAGE 27

27

1                    A. DASRATH

2      evaluation.

3                     There are also components of

4      the clinical rotation where the faculty

5      members are required to teach in a classroom

6      setting.

7                     That's preparation in any core

8      roation, and then the student is tested on

9      that course material.

10          Q.      What kind of an exam is it?

11          A.      It could be written, it could

12     be an oral examination.

13          Q.      Is that a professor preference,

14     let's say, or is it something that Ross

15     University dictates and say hey, it has to be

16     given this way?

17          A.      It could be either.

18          Q.      Do you know who was teaching

19     this course in 2006, in the spring of 2006?

20          A.      I don't recall all the faculty

21     members' names.

22          Q.      Would that be reflected in a

23     document back in your office?

24          A.      Yes.

25                  MR. COSTELLO:  Justin, again I

SEVERIN & ASSOCIATES, INC. *  516 628-1402

SHEET 28  PAGE 28

28

1                           A. DASRATH

2              will follow-up in writing, but I will

3              call for the production of the faculty

4              names that were doing the spring

5              semester 2006 to the extent they have

6              not been provided.

7              Q.      So, what happens upon

8      completion of the AICM course with the

9      student, is he or she then matriculatd to the

10     next semester, are they then --  do they have

11     to sit for another exam?

12             A.      If the student completes the

13     advanced introduction of clinical medicine

14     program, they are then required to take and

15     pass the first step of the United States

16     medical licensing examination.

17             Q.      Is that called a step I

18     or --

19             A.      USMLE step I.

20             Q.      Is there a break in between the

21     AICM and the issuance of the USMLE step I

22     exam?

23             A.      Is there a break between the

24     step I --  I don't understand your question.

25             Q.      For lack of a better term,

Case 11-2531, Document 55, 10/07/2011, 412566, Page44 of 243

SHEET 29  PAGE 29

29

```
 1                      A. DASRATH

 2      let's say like a spring break or a summer

 3      break, there is a period of time that the

 4      student is off from school during this

 5      time?

 6           A.      No.   There is not a period of

 7      time where the student is required to take

 8      any time off.

 9                      In accordance with the U.S.

10      Department of Education, the student can

11      apply at any time during an academic program

12      to take time off.

13           Q.      But if a student doesn't apply

14      to take time off, the student remains

15      enrolled in the school?

16           A.      If the student doesn't apply to

17      take time off, they will remain enrolled as

18      long as they are making satisfactory academic

19      progress.

20           Q.      But, the satisfactory progress,

21      what are the courses that are giving, to be

22      taken between the USMLE step I and the

23      completion of the AICM?

24           A.      Well, they have to complete

25      AICM to take USMLE step I.
```

SHEET 30   PAGE 30

30

1                              A. DASRATH

2          Q.       Correct, I understand that, but

3    if they complete the AICM?

4          A.       Successfully complete it.

5          Q.       Successfully complete it.

6          A.       Right.

7          Q.       There are no course

8    requirements between the AICM and the USMLE

9    step I exam?

10         A.       Correct.

11         Q.       So, what activities would a

12   student need to be for filling in order to

13   remain enrolled?

14         A.       They would have to be

15   registered to take the first step of the

16   United States medical licensing examination

17   and take the examination on the date that

18   they registered for the exam.

19         Q.       And how does a student register

20   for the USMLE step I exam?

21         A.       There is a registration process

22   the student goes through with the National

23   Board of Medical Examiners.  That is the

24   administrators of the examination.

25         Q.       So, just so I'm clear.

Case 11-2531, Document 55, 10/07/2011, 412566, Page46 of 243

SHEET 31  PAGE 31

31

1                          A. DASRATH

2                      They just have to register for

3      this National Board Medical Examiners?

4           A.      And then the University

5      registrar has to confirm that they are making

6      satisfactory academic progress to take the

7      examination.

8           Q.      Can you please explain the

9      process to register for the USMLE other than

10     the registering with the NBME?

11          A.      National Board of Medical

12     Examiners.  The student completes a

13     registration form with the National Board

14     Medical Examiners.  They do that

15     electronically.  It is done on-line.

16                      The University registrar at the

17     School of Medicine has to confirm that the

18     student is eligible to take the examination.

19          Q.      How does Ross University

20     confirm that the student is registered?

21          A.      The student has to complete all

22     course work that is requisite to take the

23     examination.

24          Q.      Is a student then issued or is

25     this application processed through Ross?

SEVERIN & ASSOCIATES, INC. *  516 628-1402

Case 11-2531, Document 55, 10/07/2011, 412566, Page47 of 243

# A555

SHEET 32   PAGE 32

32

1                              A. DASRATH

2            A.        No, the application is not

3      processed through Ross.  The application is

4      processed through the National Board of

5      Medical Examiners.

6            Q.        But, at some point in time Ross

7      has to let the NBME --

8            A.        They send it.

9            Q.        What does Ross send, that the

10     student is making satisfactory progress?

11           A.        I don't recall if they send --

12           Q.        Let me ask it you this way.

13                     How does Ross notify the board?

14           A.        It is usually a signature from

15     the registrar that the student has either met

16     the requirement or has not met the

17     requirement to take the examination.

18           Q.        Are you aware if Mr. Dasrath

19     applied for the USMLE step I exam?

20           A.        I believe he did apply for the

21     USMLE step I examination.

22           Q.        Were you aware he applied

23     twice?

24           A.        I'm not aware that he applied

25     twice.

Case 1:07-cv-02433-CBA -RER   Document 94-15   Filed 04/28/11   Page 34 of 90

SHEET 33  PAGE 33

33

1                        A. DASRATH

2              Q.      Do you know when he applied for

3        the USMLE step I exam?

4              A.      No, I don't.

5              Q.      He would not have been able to

6        apply or any student for that matter would

7        not have been able to apply for the USMLE had

8        he not passed or had the student not passed

9        the AICM course; is that correct?

10             A.      That is not correct.

11             Q.      Why is that not correct?

12             A.      A student can make application

13       to the National Board Medical Examiner any

14       time they want.  It is an independent testing

15       agency.  The university is required to

16       confirm the students' readiness to take the

17       exam or to notify the National Board of

18       Medical Examiners that they are not ready.

19             Q.      And if they are not ready, what

20       happens?

21             A.      The National Board of Medical

22       Examiners will not allow them to take the

23       exam.

24                     If they do take the

25       examination, they will not release a grade.

SHEET 34   PAGE 34

34

1                           A. DASRATH

2            Q.        But they are still allowed to

3     sit for the exam, correct?

4            A.        I don't know that to be the

5     case.  That would be up to the National Board

6     of Medical Examiners.

7            Q.        Do you know if Mr. Dasrath

8     passed the National Board Medical Exam or the

9     NBME?

10           A.        I don't know.

11           Q.        Would that be reflected in any

12    documents back at the school, let's say?

13           A.        I don't know that either.

14                     MR. COSTELLO:  Justin, to the

15                extent it has not already been

16                provided, any document that would

17                reflect Mr. Dasrath's score for the

18                NBME.

19                     MR. CAPUANO:  To the extent

20                that we have them or it has already

21                been provided.

22           Q.        So, in a situation where a

23    student fails the AICM course, he is not

24    eligible to make application for the USLME

25    step I?

Case 11-2531, Document 55, 10/07/2011, 412566, Page50 of 243

SHEET 35   PAGE 35

                                                           35

1                              A. DASRATH

2              A.        That is not the case.   The

3       University registrar cannot confirm to the

4       National Board Medical Examiners that the

5       students completed all the course work

6       successfully to take that examination.

7              Q.        But a student would need to

8       receive some sort of certificate of

9       completion?

10             A.        No.

11             Q.        For the AICM?

12                       MR. CAPUANO:   Can you be more

13                  specific what you have talking about.

14                  I think it is getting a little

15                  jumbled.

16             Q.        So, a student does not need to

17      pass the AICM in order to apply for the USLME

18      step I, is that what you telling me?

19             A.        That is what I'm telling you.

20             Q.        Are you aware if Mr. Dasrath

21      received a certificate of commission for the

22      AICM course?

23             A.        I don't know.

24             Q.        Did you review his grades?

25             A.        Yes.

SHEET 36  PAGE 36

36

```
1              A. DASRATH
2              MR. CAPUANO:  Objection.  I
3      know she spoke to you about that and
4      that was part of settlement
5      discussion.
6              MR. COSTELLO:  No, that was a
7      little bit different.  I didn't ask if
8      she reviewed his grades because of
9      Judge Reyes' statement during the
10     settlement discussion.
11             I'm asking as part of the
12     record now if she's ever reviewed his
13     grades during the course of his studies
14     at the school.
15             MR. CAPUANO:  I don't think
16     that was clear in the question.
17             MR. COSTELLO:  I will rephrase
18     the question.
19     Q.      During the course of Mr.
20     Dasrath's enrollment at Ross University, did
21     you review his grades?
22     A.      Yes.
23     Q.      When?
24     A.      I don't remember the exact
25     date, but it was a while ago I was asked to
```

Case 11-2531, Document 55, 10/07/2011, 412566, Page52 of 243

# A560

SHEET 37  PAGE 37

37

1                          A. DASRATH

2      look at his grade.

3          Q.     Was it a year ago, two years

4      ago, was it three years ago, four years ago

5      or was it while he was still enrolled in

6      Ross?

7          A.     It was after he was enrolled in

8      Ross.

9          Q.     Do you recall what document you

10     reviewed --

11             MR. CAPUANO:  Objection.  I'm

12         not going to, because this was after

13         --  this is part of this litigation as

14         part of the settlement and I'm not

15         going to allow any questions on it.

16             MR. COSTELLO:  Let's mark that

17         for a ruling, please.

18         Q.     Are you aware that Mr. Dasrath

19     sat for the NBME, the National Board Medical

20     Examiners?

21         A.     No, I'm not.

22         Q.     Were you ever his instructor?

23         A.     No.

24         Q.     But, you are aware that he

25     submitted an application to take the USLME,

SHEET 38   PAGE 38

38

1                          A. DASRATH

2       correct?

3               A.      Correct.

4               Q.      Do you recall what the outcome

5       of this application was?

6               A.      I do.

7               Q.      What would that be?

8               A.      The University registrar

9       notified the National Board Medical Examiners

10      that Mr. Dasrath did not successfully

11      complete the AICM course.

12              Q.      Did they notify Mr. Dasrath

13      that he did not successfully complete the

14      AICM course?

15              A.      I don't know.

16              Q.      Who would know?

17              A.      Mr. Dasrath may know.

18              Q.      Who from Ross University would

19      know?   Would that be the registrar, he or

20      herself?

21              A.      The University registrar.

22              Q.      Do you know who the registrar

23      was back in 2006?

24              A.      I believe it was Mr. Michael

25      Rendon.

Case 11-2531, Document 55, 10/07/2011, 412566, Page54 of 243

**A562**

SHEET 39  PAGE 39

39

```
 1                     A. DASRATH
 2          Q.      Is he still with the school?
 3          A.      No.
 4                  MR. COSTELLO:  I'm going to
 5          call, to the extent it is available,
 6          Mr. Rendon's current address or any
 7          current place of employment.
 8          Q.      So, then at what point in time
 9   after the application for the USLME, if it is
10   applicable, would you become involved with
11   the student's grading or enrollment at
12   Ross?
13          A.      Can I get clarification on
14   that?
15          Q.      Yes.  You stated that you are
16   not aware of whether he sat for the NBME, you
17   are aware that he did file, make a filing
18   application to take the USLME step I, but it
19   was rejected.
20                  You don't know when, or why,
21   but it was rejected by the registrar's
22   office.
23                  At what point in time were you
24   made aware of these transactions?
25                  MR. CAPUANO:  I'm sorry, I
```

SEVERIN & ASSOCIATES, INC.  *  516 628-1402

Case 11-2531, Document 55, 10/07/2011, 412566, Page55 of 243

**A563**

SHEET 40  PAGE 40

40

                         A. DASRATH

1
2    don't think she testified that the
3    USLME was rejected by the registrar's
4    office.
5              MR. COSTELLO:  She testified
6    that the registrar would notify the
7    governing body, let's say that it was
8    rejected.
9    A.    No, that is not what I said.
10   Q.    What did you say?
11   A.    I said the University registrar
12   would have notified the National Board of
13   Medical Examiners that the student didn't
14   successfully complete all the course work
15   required to take the examination.
16   Q.    Would you be made aware of
17   that?
18   A.    No.  In general terms, no.
19   Q.    What do you mean when you say
20   in general terms no, you would not be made
21   aware of that?
22   A.    If a student applies to the
23   National Board of Medical Examiners to take
24   the USLME step I, and a student does not
25   successfully complete all the course work

SHEET 41   PAGE 41

41

                                    A. DASRATH

1

2        prior to taking that exam and if the

3        University registrar had to notify the

4        National Board of Medical Examiners that that

5        was the case, they would not be required to

6        notify me that they were doing that.

7             Q.      So, this all goes through the

8        registrar's office or a good part of it goes

9        through the registrar's office?

10            A.      The University registrar would

11       notify the National Board of Medical

12       examiners if the student did not successfully

13       complete the requirements to take the

14       examination.

15            Q.      In order to sit for the USLME,

16       the student has to pass the AICM, correct?

17            A.      Correct.

18            Q.      Are you aware that Mr. Dasrath

19       sat for the USLME?

20            A.      No, I'm not.

21            Q.      Are you aware that he passed

22       basisc science curriculum?

23            A.      The basic science courses?

24            Q.      Yes.

25                    MR. CAPUANO:  Objection.

SHEET 42   PAGE 42

42

1                    A. DASRATH

2        A.      Yes.

3                MR. COSTELLO:  What is your

4        objection?

5                MR. CAPUANO:  It is not

6        established whether he actually did

7        pass or not.

8                Objection as to form.

9                MR. COSTELLO:  She answered the

10       question.

11       Q.      From Ross University.

12               MR. CAPUANO:  To the extent you

13       know the answer.

14       A.      I don't recall exactly.

15               There are a number of things

16       that could happen in order for a student to

17       be administratively withdrawn from the

18       program.

19       Q.      Can you elaborate on some of

20       these events?

21       A.      Sure.  If the students fails to

22       register, if the student fails to return from

23       a leave of absence that he or her applied

24       for, those would be the two primary reasons.

25       Q.      Are you aware if Mr. Dasrath

Case 11-2531, Document 55, 10/07/2011, 412566, Page58 of 243

**A566**

SHEET 43  PAGE 43

43

                              A. DASRATH

1

2     ever applied for a leave of absence?

3          A.      I am not aware.

4          Q.      Do you know if he ever failed

5     to register?

6          A.      Yes.

7          Q.      He did fail to register,

8     correct?

9          A.      Yes.

10         Q.      When did he fail to register?

11         A.      After Mr. Dasrath did not

12    successfully complete the advanced

13    introduction to clinical medicine course, he

14    didn't re-register to take the course again.

15         Q.      Isn't it true though that the

16    studdent remains fully enrolled after the

17    AICM course?

18         A.      If they successfully complete

19    it.

20         Q.      But I believe you testified

21    earlier that if he's fulfilling the

22    requirements for the USLME, he remains fully

23    enrolled?

24              MR. CAPUANO:  Objection.  That

25         is not her testimony, but she can

44

A. DASRATH

2    answer.

3    A.       I don't remember saying that.

4    However, Mr. Dasrath did not successfully

5    complete the advanced introduction to

6    clinical medicine course.

7    Q.       What particular course in the

8    AICM did he not successfully complete?

9    A.       The AICM is one course.   There

10   is one grade transcribed for the course.

11   Q.       When did he fail this course?

12   A.       I don't remember the exact

13   date.

14            MR. CAPUANO:  By course, you

15   are referring to the AICM?

16            MR. COSTELLO:  Yes.

17   Q.       Do you know the reason why he

18   received a failing grade?

19   A.       I didn't complete all

20   components of the course successfully.

21   Q.       Can you be more specific as to

22   what components he did not complete?

23   A.       Not without looking at the

24   documents, no.

25   Q.       What documents would help

Case 11-2531, Document 55, 10/07/2011, 412566, Page60 of 243

**A568**

SHEET 45  PAGE 45

45

1                          A. DASRATH

2       you?

3           A.      I would have to look at the

4       grade sheet.

5           Q.      When you say grade sheets, you

6       mean his transcript?

7           A.      No.

8           Q.      What are the grade sheets, the

9       tests?

10          A.      Grade sheets are kept by the

11      examination center and they reflect student's

12      grades in each test that they take or

13      clerkship that they do.

14          Q.      Where are those grade sheets?

15          A.      The exam center is in Dominica

16      and there is an exam center in Miami.

17          Q.      Do you have a campus in

18      Miami?

19          A.      Pardon me?

20          Q.      Do you have a campus in Miami?

21          A.      No, it is a clinical location.

22          Q.      For both medicine and

23      veterinarian school?

24          A.      No, just medical school.

25                  MR. COSTELLO:  Just to the

Case 11-2531, Document 55, 10/07/2011, 412566, Page61 of 243

SHEET 46   PAGE 46

46

```
 1              A. DASRATH

 2         extent not already provided, I'm going

 3         to call for production of the exam

 4         sheet for the AICM course for Mr.

 5         Dasrath.

 6              MR. CAPUANO:  That is fine.  To

 7         the extent they haven't been provided

 8         we will provide it.

 9              Please follow it up in

10         writing.

11         Q.     Typically what is the time

12    frame between once an exam is given by a

13    professor and the release of the scores to

14    the students?

15              MR. CAPUANO:  Objection.

16         Q.     In other words, I don't want to

17    speak in hypotheticals, but if an exam is

18    given in June, when does a student typically

19    receive his or her score?

20         A.     Results of an exam, the

21    students would know in short order, whether

22    or not, they passed an examination.

23         Q.     What do you mean when you say a

24    short order?

25         A.     A week or two.
```

Case 11-2531, Document 55, 10/07/2011, 412566, Page62 of 243

# A570

SHEET 47  PAGE 47

47

```
 1                   A. DASRATH
 2         Q.       Would they be notified in
 3    writing or orally?
 4         A.       No, the grades are posted
 5    generally and they are shared with the
 6    students electronically.
 7         Q.       After Mr. Dasrath was given
 8    this failing grade to the AICM, did he
 9    attempt to contact you?
10         A.       I don't recall.
11         Q.       Do you recall ever receiving an
12    e-mail or a phone call from him regarding his
13    failing grade?
14         A.       I believe I did.
15         Q.       Do you recall when?
16         A.       No, I don't.
17         Q.       Did you try to assist him with
18    their failing grade at any point in time?
19         A.       I don't understand the nature
20    of your question.
21              MR. COSTELLO:  I will withdraw
22         that question.
23              Can you please read back my
24         last question?
25              (Whereupon, the referred to
```

SHEET 48  PAGE 48

48

```
 1                    A. DASRATH

 2         question was read back by the

 3         Reporter.)

 4         Q.     Do you recall if you received a

 5    phone call or an e-mail from Mr. Dasrath

 6    regarding the failing grade in the AICM?

 7         A.      I believe I saw an e-mail.

 8              MR. COSTELLO:  Would you mark

 9         this document, please.

10              (Whereupon, the aforementioned

11         e-mail was marked as Plaintiff's

12         Exhibit 1 for identification, as of

13         this date, by the Reporter.)

14         Q.      Dr. Perri, you now have in

15    front of you what has been marked as

16    Plaintiff's Exhibit 1.

17              Can you please take a look at

18    it and let me know when you are finished.

19              MR. CAPUANO:  Can we clarify

20         that the highlighting or the -- that

21         magic marker was not originally in it.

22              Was that done by your office?

23              MR. COSTELLO:  No, it wasn't

24         done by my office.

25              MR. CAPUANO:  Okay.
```

SHEET 49  PAGE 49

49

1                    A. DASRATH

2        A.      Okay.

3        Q.      Have you had a chance to review

4   it?

5        A.      Yes.

6        Q.      Do you recall if this is the

7   e-mail that you received from Mr. Dasrath?

8        A.      Yes.

9        Q.      He said on May 8th he spoke to

10  you about his failed grade in the Miami

11  program and you promised to speak to Dr.

12  Fernandez?

13       A.      Yes.

14       Q.      Do you recall if you ever spoke

15  to Dr. Fernandez about that?

16       A.      Yes, I did.

17       Q.      Do you recall when you spoke to

18  Dr. Fernandez?

19       A.      No, I don't.

20       Q.      Do you recall the sum and

21  substance of the conversation that you had

22  with Dr. Fernandez?

23       A.      No.

24       Q.      Do you recall where you were

25  when you had the conversation with Dr.

SHEET 50  PAGE 50

50

1                              A. DASRATH

2        Fernandez?

3             A.      No.

4             Q.      Do you recall how many times

5        you spoke to Dr. Fernandez about this?

6             A.      Can you clarify over what

7        course of time?

8             Q.      From the time of May 12th, 2006

9        when you received the e-mail and your

10       response at about 1:17 that day, where you

11       state that you were still waiting to speak

12       with him, did you speak to him after May

13       12th, 2006?

14            A.      I did speak with him after May

15       12th, 2006.

16            Q.      Do you recall the day?

17            A.      No, I don't.

18            Q.      Do you recall the sum and

19       substance of that conversation?

20            A.      Can you clarify regarding

21       specifically to this?

22            Q.      Yes, regarding this e-mail and

23       the failing grade?

24            A.      I don't remember specifically

25       about this e-mail, although I did speak to

Case 11-2531, Document 55, 10/07/2011, 412566, Page66 of 243

**A574**

SHEET 51  PAGE 51

51

1                        A. DASRATH

2       him about Mr. Dasrath's e-mail to me about

3       failing, his failed grade in the Miami

4       program.

5               Q.      Did you also state to Mr.

6       Dasrath that you would look into why he

7       received a C, a grade of C?

8                       MR. CAPUANO:  Objection.  What

9               are you referring to?

10              Q.      In your response on May 12th at

11      approximately 1:17, you stated that you would

12      follow-up with Dr. Fernandez when you get the

13      details from him.

14                      Do you recall what details you

15      were speaking about, referring to?

16              A.      I don't recall the details in

17      2006 that I was talking about.

18              Q.      Do you know if you ever got the

19      details from him?

20              A.      From Dr. Fernandez?

21              Q.      Yes.

22              A.      Yes.

23              Q.      Were those details provided to

24      you in writing or was that a conversation

25      that you had with him?

SHEET 52   PAGE 52

                                                    52

1                          A. DASRATH

2           A.        I don't recall.

3           Q.        Did there come a point in time

4      again while he was enrolled at Ross that you

5      reviewed Mr. Dasrath's grades?

6                     MR. CAPUANO:  Essentially prior

7                to April 2006 or May 2006.

8                     MR. COSTELLO:  It should be

9                subsequent to May of 2006.

10                    You said while he was

11               enrolled?

12                    MR. COSTELLO:  Correct.

13               Because as of May 12th, he was still

14               enrolled.

15                    MR. CAPUANO:  We won't get into

16               that, but essentially you are talking

17               about from 2006 earlier.

18                    MR. COSTELLO:  Well, define

19               when in 2006.  Because she's testified

20               about that she reviewed.

21                    MR. CAPUANO:  While he was

22               enrolled.

23                    MR. COSTELLO:  While he was

24               enrolled, yes.

25           Q.        Do you recall how many times

SHEET 53   PAGE 53

53

                              A. DASRATH

1

2    you reviewed Mr. Dasrath's grades?

3         A.      While he was enrolled in the

4    school of medicine once.

5         Q.      Do you recall when that was?

6         A.      It was around the specific

7    time.

8         Q.      Around May of 2006?

9         A.      Around that time.  I don't know

10   specifically the date.

11        Q.      But, as of May 2006 Mr. Dasrath

12   would have completed the NBME, correct?

13        A.      I don't know.

14        Q.      And then he would have made

15   application for the USLME step I?

16        A.      I don't know.

17        Q.      Did there come a point in time

18   that Ross withdrew its sponsorship for Mr.

19   Dasrath for the USLME?

20        A.      Yes.

21        Q.      Do you recall when that was

22   made?

23        A.      No.

24        Q.      Do you recall who withdrew the

25   sponsorship of Mr. Dasrath for the USLME?

Case 11-2531, Document 55, 10/07/2011, 412566, Page69 of 243

A577

SHEET 54  PAGE 54

54

1                    A. DASRATH

2                    MR. CAPUANO:  Objection.  You

3          mean the specific individual who

4          communicated?

5                    MR. COSTELLO:  Yes.

6          A.        As I recall, it was the

7          University registrar.

8          Q.        But, upon completion of the

9          AICM and NBME, the student is then advised

10         that he passed and he can now apply for the

11         USLME, correct?

12         A.        I think you are confusing,

13         there is USLME step I and step two, CS and CK

14         are administered by the National Board of

15         Medical Examiners.  So, they are not two

16         entities.  That is what I'm inferring from

17         your question that we are taking about two

18         different entities.

19                    MR. COSTELLO:  Can we mark

20         this, please.

21                    (Whereupon, the aforementioned

22         document was marked as Plaintiff's

23         Exhibit 2 for identification, as of

24         this date, by the Reporter.)

25         Q.        Dr. Perri, I now show you what

SHEET 55   PAGE 55

55

1                          A. DASRATH

2       has been marked as Plaintiff's 2.  Please

3       take a moment to look at that document and

4       let me know when you are ready.

5              A.     Okay.

6              Q.     Plaintiff's Exhibit 2, can you

7       please describe in your words what it says?

8              A.     This is a letter from Ms.

9       Sena.

10             Q.     Who is Ms. Sena?

11             A.     Brijette Sena.  She works in

12      the University --  she worked in the

13      University registrar's office.

14             Q.     She is no longer employed by

15      Ross?

16             A.     She is employed by Ross.

17             Q.     She is employed by Ross?

18             A.     Yes.

19             Q.     What is her title now?

20             A.     She is the associate director

21      of the Office of Students and Professional

22      Development.

23             Q.     I'm sorry, you were saying that

24      this was a letter from Ms. Brijette Sena?

25             A.     To the students giving them

SHEET 56   PAGE 56

56

```
1                     A. DASRATH

2         instruction about their registration

3         deadlines for various windows to sit for the

4         step I examination after they completed the

5         NBME comprehensive exam.

6              Q.      But, in order to complete the

7         NBME comprehensive exam, they would have had

8         to pass the AICM, correct?

9              A.      No.

10             Q.      Is that not part of the

11        requirements for sitting or applying for the

12        NBME?

13             A.      You must successfully complete

14        the comp.  The comp. is a self assessment

15        preparatory course for the, preparatory

16        examination for the USLME step I.

17             Q.      The comp.?

18             A.      The comp.

19             Q.      I'm sorry?

20             A.      The National Board of Medical

21        Examiner comprehensive examination is an

22        examination that the National Board of

23        Medical Examiners produces, that

24        institutions, medical school programs can

25        utilize, if they choose to allow their
```

SHEET 57  PAGE 57

57

1             A. DASRATH

2     students to self-assess there readiness for

3     the USLME step I examination.

4          Q.      So, if they are eligible to sit

5     for the USLME they would have had to complete

6     the comprehensive exam, correct?

7          A.      The comp., correct.

8          Q.      And it states here that the

9     eligibility period is between April 1st and

10    September 30th of 2006?

11         A.      That is for step I.

12         Q.      The USLME step I?

13         A.      Right.

14               MR. COSTELLO:  Can you please

15         mark this as Plaintiff's Number 3.

16               (Whereupon, the aforementioned

17         part C medical education and employment

18         information document was marked as

19         Plaintiff's Exhibit 3 for

20         identification, as of this date, by the

21         Reporter.)

22         Q.      You have now before you what is

23    marked as Plaintiff's Exhibit 3.

24               Do you recognize this document?

25         A.      Yes.

SHEET 58   PAGE 58

58

```
 1                    A. DASRATH

 2          Q.      Can you please tell me what

 3     this is?

 4          A.      This is a student application.

 5          Q.      Application for what?

 6                  MR. CAPUANO:  While Dr. Perri

 7     is reviewing this, this is only seven

 8     of seven, the only page that is

 9     produced is page seven of seven.

10                  MR. COSTELLO:  Yes.

11          A.      This is a student application

12     to the Educational Commission for Foreign

13     Medical Graduate.

14          Q.      And this application is for the

15     USLME step I?

16          A.      Correct.  Or any part of the

17     United States medical licensing examination.

18     It is fairly generic.

19          Q.      This is the application whether

20     it be step I, II, III?

21          A.      Correct.

22          Q.      Obviously Mr. Dasrath only

23     applied for step I?

24          A.      Right.

25          Q.      This document is dated March
```

SEVERIN & ASSOCIATES, INC.  *  516 628-1402

**A582**

SHEET 59  PAGE 59

59

```
1                    A. DASRATH

2      12th, 2006, correct?

3                 MR. CAPUANO:  Where do you see

4           that?

5                 MR. COSTELLO:  Next to Mr.

6           Dasrath's signature.

7                 MR. CAPUANO:  That is December

8           3rd, 2006.

9                 MR. COSTELLO:  Not, it is day,

10          month, year.

11          A.      I'm sorry, yes.  Mr. Dasrath

12     dated it March the 12th, 2006.

13          Q.      He would have dated that date

14     because at that point he was eligible to sit

15     for the USLME step I exam, correct?

16                MR. CAPUANO:  Objection.

17          A.      I don't know why he dated is

18     that day.

19          Q.      Ms. Sena dated it March 20th,

20     2006 and the application itself on the

21     right-hand side states going down, vertically

22     2006.

23                So, at this point in time when

24     Mr. Dasrath made application he was enrolled

25     at Ross, correct?
```

SEVERIN & ASSOCIATES, INC.  *  516 628-1402

Case 11-2531, Document 55, 10/07/2011, 412566, Page75 of 243

SHEET 60   PAGE 60

60

1                    A. DASRATH

2      A.      Correct.

3                    MR. CAPUANO:  You mean March

4       12th of 2006, when you say the date.

5                    MR. COSTELLO:  You lost me.

6                    MR. CAPUANO:  You just said the

7       date.  You didn't specify which date.

8       There are several dates on this

9       document.

10                   MR. COSTELLO:  I see this date,

11      but I'm referring to the date that Mr.

12      Dasrath signed it and the date that

13      Brijette Sena signed it.  So, March of

14      2006.

15      Q.      Is this the application that

16      you are aware of that Mr. Dasrath filed with

17      the ECFMG which was rejected?

18      A.      I don't know that.

19      Q.      Would the reason why the

20      application was rejected be reflected

21      somewhere in the office of Ross, or in your

22      office?

23      A.      No.

24      Q.      Are you aware that after this

25      application, do you know if Ross collected

SHEET 61  PAGE 61

61

1                    A. DASRATH

2     any money from Mr. Dasrath for tuition?

3          A.    .  I don't know.

4          Q.      Are you aware when Ross

5     notified the ECFMG of his failing grade of

6     the AICM?

7          A.      No, I don't.

8          Q.      Do you know who would know

9     that?   Would that be the registrar?

10         A.      Most likely.

11                 MR. COSTELLO:  Justin, again

12            and I will follow-up in writing to the

13            extent we don't have them, his

14            registrar's record.

15                 MR. CAPUANO:  Okay.

16         Q.      Do you recall when Ross

17    withdrew its sponsorship for Mr. Dasrath for

18    the USLME?

19         A.      No.

20         Q.   .  Would that be in the

21    registrar's record as well, the reason or the

22    date I should say of when his sponsorship for

23    the USLME was?

24         A.      It may be.

25         Q.      Going back to the failing

Case 11-2531, Document 55, 10/07/2011, 412566, Page77 of 243

**A585**

SHEET 62  PAGE 62

62

```
1                    A. DASRATH

2    grade.  If a student fails a grade, does he

3    or she not have the right to inspect the

4    grade and the exam upon which that failing

5    grade was based?

6                    MR. CAPUANO:  Objection.  I

7              think you just stated a double

8              negative.

9                    Can you rephrase?

10         Q.       If a student fails a grade, do

11   they not have a right to inspect the exam?

12                   MR. CAPUANO:  You did it

13             again.

14         Q.       Can a student inspect his exam

15   if he falls?

16         A.       If he requests to, yes.

17         Q.       Does the request have to be in

18   writing?

19         A.       No.

20         Q.       Do you know if Mr. Dasrath

21   requested to examine his grades?

22        ·A.       I don't know.

23         Q.       Who would he have to make that

24   request to?

25         A.       Either the course director, the
```

Case 11-2531, Document 55, 10/07/2011, 412566, Page78 of 243
**A586**

SHEET 63   PAGE 63

63

1                          A. DASRATH

2     clerkship director.

3              Q.      Do you know who his course

4     director was for the AICM?

5              A.      Dr. Enrique Fernandez.

6                      MR. COSTELLO:  Let's take a

7              short break.

8                      (Whereupon, a short recess was

9              taken.)

10                     MR. CAPUANO:  She needs to

11             clarify something.

12             A.      You had asked the question

13    earlier if I reviewed any documents related

14    to this and I had commented I didn't review

15    any documents today and that's true.  I

16    didn't review any documents today, but I have

17    reviewed documents related to this matter in

18    the past.

19             Q.      What kind of documents?

20             A.      The academic record.  Students

21    file.

22             Q.      Do we have a complete copy of

23    that file?

24                     MR. CAPUANO:  Essentially she

25             didn't review anything that has not

SEVERIN & ASSOCIATES, INC. *  516 628-1402

SHEET 64  PAGE 64

64

```
1              A. DASRATH
2      been produced to make it easier.
3           MR. COSTELLO:  And that was
4      provided in your initial disclosure or
5      was it a combination of the two
6      disclosures?
7           MR. CAPUANO:  I think we made
8      three different productions now.  I
9      can't say which productions were
10     reviewed.
11          It was probably all three and
12     including what you provided.
13          MR. COSTELLO:  But, nothing has
14     been left out?
15          MR. CAPUANO:  She didn't review
16     or look at anything that hasn't been
17     produced by either party.
18          MR. COSTELLO:  Can we have this
19     marked, please, document entitled once
20     again, part C, medical education and
21     employment information.
22          (Whereupon, the aforementioned
23     part C, medical education and
24     employment information was marked as
25     Plaintiff's Exhibit 4 for
```

Case 11-2531, Document 55, 10/07/2011, 412566, Page80 of 243
**A588**

SHEET 65  PAGE 65

65

```
 1               A. DASRATH

 2          identification, as of this date, by the

 3          Reporter.)

 4          Q.      Dr. Perri, you now have in

 5     front of you what has been marked as

 6     Plaintiff's Exhibit Number 4.

 7               Can you please take a look at

 8     it and review it and let me know when you are

 9     finished?

10          A.      Okay.

11          Q.      Do you recognize this

12     document?

13          A.      Are you asking if I

14     recognize -- I recognize the document.  I

15     don't necessarily recognize it as a completed

16     document.

17               MR. COSTELLO:  I move to strike

18          that portion that is non-responsive.

19               MR. CAPUANO:  You can't strike

20          the response, it is a response, but

21          that is fine.   Just continue.

22          Q.      What has been marked as

23     Plaintiff's Exhibit 4, can you please

24     describe what it is?

25          A.      It is again an application for
```

SEVERIN & ASSOCIATES, INC.  *  516 628-1402

SHEET 66   PAGE 66

66

1                         A. DASRATH

2       the educational commission for the foreign

3       medical graduate.

4               Q.      It is a similar document to

5       Plaintiff's Exhibit 3 which was an

6       application for the USLME step I exam?

7               A.      Correct.

8               Q.      And that is dated April 27th or

9       signed by Mr. Dasrath on April 27th, 2006,

10      correct?

11              A.      Correct.

12              Q.      And it looks like signed by

13      Brijette Sena on May 5th, 2006?

14              A.      Correct.

15              Q.      Do you know why there was a

16      second application submitted for the USLME

17      step I exam?

18              A.      I don't know.

19              Q.      When does a student become

20      eligible to take the USLME step I exam?

21              A.      When they successfully complete

22      all the University requirements to take the

23      examination.

24              Q.      What are the University

25      requirements?

SHEET 67  PAGE 67

67

1                           A. DASRATH

2            A.       The students must successfully

3       complete all their course work.

4            Q.       What does the course work

5       consist of?

6            A.       This clinical course work,

7       their compulsory first clinical courtship

8       which is the advanced introduction to the

9       clinical medicine course.

10           Q.       That is the AICM?

11           A.       The AICM and the comp..

12           Q.       Pass the NBME?

13           A.       The comp., the comprehensive.

14           Q.       That is not or that is the

15      NBME?

16           A.       The NBME comp.  There are

17      different exams.

18           Q.       So, this is a comp. exam.  And

19      the AICM consist of what courses?

20           A.       It is a course within itself.

21           Q.       Upon completion of the AICM the

22      student is given a certificate of completion?

23           A.       No.

24           Q.       How are they notified that they

25      have successfully completed?

Case 11-2531, Document 55, 10/07/2011, 412566, Page83 of 243

**A591**

SHEET 68   PAGE 68

68

1                          A. DASRATH

2          A.      I believe their grades are

3    posted on e-college.

4          Q.      Posted where, I'm sorry?

5          A.      E-college.

6                  MR. COSTELLO:  Can you please

7          mark this document, please.

8                  (Whereupon, the aforementioned

9          document was marked as Plaintiff's

10         Exhibit 5 for identification, as of

11         this date, by the Reporter.)

12         Q.      Have you had a chance to review

13   that document?

14         A.      Yes.

15         Q.      In your own words, can you

16   please describe what that document is?

17         A.      This is a document that is

18   attached to each and every evaluation form at

19   the school of medicine.

20         Q.      Would it not be given unless

21   the student had completed the AICM?

22         A.      That document would come back

23   to the University from the clinical training

24   site with an evaluation of performance.  The

25   evaluation of performance would have this

SEVERIN & ASSOCIATES, INC. * 516 628-1402

Case 11-2531, Document 55, 10/07/2011, 412566, Page84 of 243

**A592**

SHEET 69   PAGE 69

69

1                          A. DASRATH

2       attached, whether the student passed the

3       rotation or failed the rotation.

4             Q.      It would not be issued unless

5       the student had completed the AICM, correct?

6             A.      Correct.

7             Q.      When does the student become

8       eligible for a clinical clerkship?

9             A.      They become eligible for the

10      first compulsory clinical clerkship which is

11      the advanced introduction to clinical

12      medicine once they successfully complete all

13      their pre-clinical requirements on the campus

14      in Dominica.

15            Q.      Which I think we already

16      established before.

17            A.      Correct.

18            Q.      Is that an actual clinical

19      clerkship where it would be more hands-on,

20      let's say?

21            A.      This is all clinical

22      education.  We can debate that.  I don't know

23      if you really want to go there.

24                  MR. CAPUANO:  I think her point

25              is that it is semantics probably.

Case 11-2531, Document 55, 10/07/2011, 412566, Page85 of 243

**A593**

SHEET 70   PAGE 70

70

```
 1                      A. DASRATH

 2          A.      Yes.

 3          Q.      So, there is no actually

 4    hands-on training is what you are saying?

 5          A.      It's hands-on training in every

 6    component of medical education.

 7          Q.      From semester one up to

 8    graduation?

 9          A.      Now there is, absolutely.

10          Q.      I'm not speaking about now.

11    I'm speaking 2006.

12          A.      I don't know how much hands-on

13    there was in 2006.

14          Q.      I believe you testified earlier

15    that Mr. Dasrath was administratively

16    withdrawn because he failed to re-register

17    after failing the AICM.

18                  When a student is

19    administrative withdrawn what is the

20    procedure?   How is he or she notified?

21          A.      I'm not sure how Mr. Dasrath

22    would have been notified in 2006.

23          Q.      Were they just automatically

24    administratively withdrawn or would there be

25    some sort of warning letter to say you are
```

**A594**

SHEET 71   PAGE 71

71

1                    A. DASRATH

2    going to be administratively withdrawn if you

3    don't fulfill your requirements, let's say?

4          A.      There is no warning letter.

5    The student understands that if they don't,

6    it is part of the student handbook that if

7    they don't successfully complete a course

8    they have to retake that course to promote

9    through the academic program.

10                 You have to be successful in

11   different courses.  If you don't pass the

12   course, whether it is D, S and anatomy course

13   or an advanced introduction to clinic

14   medicine course you retake the course.

15         Q.      But, being administratively

16   withdrawn he would have to be notified,

17   correct?

18         A.      I assume so.

19         Q.      I don't want you to assume.  I

20   rather know if you know with certainty?

21         A.      I don't know with certainty.

22         Q.      So, a student can be

23   administratively withdrawn without receiving

24   any notification?

25                 MR. CAPUANO:  That is not what

SHEET 72   PAGE 72

72

1                    A. DASRATH

2         she said.

3         A.     I can be more explanatory if I

4    need to.  A student reviews their course work

5    on-line through e-college and they know

6    whether they pass the course or failed a

7    course.

8         Q.     What is e-college?

9         A.     It is a technology system where

10   a student can actually log into a secured

11   site and review their grades.

12              So, they know, whether or not,

13   they are making satisfactory academic

14   progress.  So, if a student sees that they

15   passed all their courses they know they are

16   making satisfactory academic progress.

17              If they see they are not

18   passing ail their courses they know they have

19   to re-register to retake those courses.

20        Q.     And if the students doesn't

21   re-register?

22        A.     Then they are administratively

23   withdrawn from the school.

24        Q.     Without being provided

25   notification?

**A596**

SHEET 73  PAGE 73

73

1               A. DASRATH

2          MR. CAPUANO:  Objection.

3          MR. COSTELLO:  I will clarify.

4      Q.      Because it is incumbent upon

5   the student, for him or her to be aware of

6   his or her grades and if they see a failing

7   grade it is incumbent upon them to

8   re-register for that class?

9      A.      In accordance with the student

10  handbook, if a student doesn't successfully

11  complete a course, if they choose to continue

12  in the program, they can do so by

13  re-registering at school of medicine.

14          If they don't want to

15  re-register, then the institution

16  administratively withdraws the student.

17      Q.      If a student is

18  administratively withdrawn, the institution

19  wouldn't accept any further tuition from

20  them, correct?

21      A.      If a student is not part of the

22  program, the institution wouldn't accept any

23  further tuition from them unless they are

24  registered for course work.

25      Q.      To take the course that they

SHEET 74   PAGE 74

74

1                          A. DASRATH

2       failed, let's say?

3              A.       Right.

4              Q.       But not going forward?   In

5       other words, they would have to go back

6       before they can go forward?

7              A.       Correct.

8              Q.       Would they still be eligible to

9       take the USLME step I?

10                     MR. CAPUANO:   Objection.   Under

11             what circumstances?

12                     MR. COSTELLO:   If they are

13             administratively withdrawn.   I'm

14             following along that line of

15             questioning.

16             A.       If they haven't completed

17      successfully all the prerequisite

18      requirements to take the medical license

19      examination and they weren't a student making

20      satisfactory academic progress, they wouldn't

21      be certified to take the USLME step I.

22             Q.       Do you know when Mr. Dasrath

23      was administratively withdrawn?

24             A.       I don't know.

25             Q.       Would that be reflected in any

SHEET 75   PAGE 75

75

1                          A. DASRATH

2       document that either has been provided by

3       your attorney or in your office?

4            A.        It would be.

5                 MR. COSTELLO:  To the extent

6            not already provided, I will ask for

7            any follow-up documentation of Mr.

8            Dasrath being marked administratively

9            withdrawn.

10                MR. CAPUANO:  Okay.

11                MR. COSTELLO:  Off the record.

12                (Whereupon, a discussion was

13           held off the record.)

14                MR. COSTELLO:  Back on the

15           record.

16           Q.        When did Ross withdraw its

17      sponsorship for Mr. Dasrath for the USLME?

18           A.        I don't recall the exact date.

19           Q.        Do you know the month?

20           A.        No, I don't.

21           Q.        Do you know at the time the

22      sponsorship was withdrawn, whether Mr.

23      Dasrath had been certified to take the USLME

24      step I?

25           A.        I would be making an assumption

SHEET 76  PAGE 76

76

1                              A. DASRATH

2      and I don't want to do that.

3              Q.      I just want to go back to the

4      clinical clerkship.  In order to be assigned

5      to a clinical clerkship, is that the proper

6      way to say it, forgive me if it is not, the

7      student has to complete the NBME comp. exam?

8              A.      No.  The advanced introduction

9      to clinical medicine is a compulsory

10     clerkship, if you would.

11                     The student is assigned to it.

12     They can repeat the comp. if they were

13     unsuccessful, let's say.

14             Q.      Where is the AICM given, at

15     what campus?

16             A.      In 2006 it was given in Miami,

17     Florida.  Roseau, Dominica.

18             Q.      That is similar to

19     Portsmouth?

20             A.      It is different.  It is a

21     city.  It is a city in Dominica.  Is a

22     clinical site so that would be part of

23     another location.

24             Q.      So, that is where the AICM was

25     given?

Case 11-2531, Document 55, 10/07/2011, 412566, Page92 of 243

**A600**

SHEET 77   PAGE 77

77

1                          A. DASRATH

2          A.        Correct.

3          Q.        Is there another clinical

4     clerkship after the AICM?

5          A.        There is an additional

6     seventy-eight weeks clinical rotation after

7     the AICM course.

8          Q.        Is that immediately upon

9     passing the AICM or well after?

10          A.        After a student completes the

11     United States medical licensing examination

12     step I.

13          Q.        And then they are eligible for

14     that second clinical clerkship; let's say?

15          A.        To the additional seventy-eight

16     weeks.

17          Q.        And where is that given?

18          A.        Those are given in 2006

19     probably sixty-five different clinical

20     partnership with teaching institutions across

21     the United States.

22          Q.        Was Mr. Dasrath enrolled in

23     that clinical clerkship in 2006?

24          A.        I don't believe so.

25          Q.        He would have had to take the

SEVERIN & ASSOCIATES, INC.  *  516 628-1402

Case 1:07-cv-02433-CBA -RER   Document 94-15   Filed 04/28/11   Page 79 of 90

SHEET 78  PAGE 78

                                                    78

    1                          A. DASRATH

    2      USLME step I exam in order to be eligible for

    3      that seventy-eight weeks.

    4             A.       And pass it.

    5             Q.       Do you know if he passed the

    6      USLME step I exam?

    7             A.       I don't know.

    8             Q.       Do you know when he became

    9      eligible to sit with the ECFMG for the USLME

   10      step I exam?

   11             A.       I don't remember the exact

   12      date.

   13             Q.       Do you remember the month?

   14                      MR. CAPUANO:  Can you rephrase

   15             that.

   16                      MR. COSTELLO:  I think she

   17             understands it though.

   18                      MR. CAPUANO:  Do you

   19             understand?

   20             A.       It would have been at the end

   21      of the advanced introduction to clinical

   22      medicine course.  I don't remember the date.

   23             Q.       That he would have been

   24      eligible for the USLME step I?

   25             A.       He would have been ineligible

SHEET 79  PAGE 79

79

```
1                          A. DASRATH

2       after that.

3              Q.      And the reason he was

4       ineligible?

5              A.      He didn't successfully complete

6       the advanced introduction clinical medicine

7       course.

8              Q.      Dr. Perri, for your testimony

9       that you have given here today, is there

10      anything you would like to change or do you

11      not feel comfortable with any answer that you

12      have provided?

13                     Do you want to clarify?

14             A.      I don't understand the nature

15      of that question.

16             Q.      Do you want to change any of

17      your testimony?

18                     MR. CAPUANO:  Actually the

19                     deposition is over and is there any

20                     clarification to any of your testimony?

21                     THE WITNESS:  No, nothing.

22                     MR. COSTELLO:  Thank you.

23                     MR. CAPUANO:  I have two

24                     follow-up questions.

25      EXAMINATION BY
```

SEVERIN & ASSOCIATES, INC.  *  516 628-1402

SHEET 80   PAGE 80

80

1                           A. DASRATH

2       MR. CAPUANO:

3              Q.      With respect to Plaintiff's

4       Exhibit 2, I know there were a series of

5       questions asked by plaintiff's counsel, but

6       just to be clear, it says that you are now

7       eligible to sit for the USLME step I exam in

8       this e-mail and that is contigent upon

9       successful completion of the AICM course; is

10      that correct?

11             A.      Correct.

12             Q.      With respect to Plaintiff's

13      Exhibit 5, am I correct, did you say whether

14      a student, in this case the plaintiff passed

15      or failed the AICM course is a separate

16      document or did I misunderstand you?

17             A.      This would have been attached

18      to the evaluation that is completed at the

19      end of any clinical component of the program,

20      whether a student passed the clinical

21      rotation or in this case the AICM course, or

22      they passed or failed it.

23                     This is a statement from a

24      medical education person.

25             Q.      But, this document just

SHEET 81   PAGE 81

                                                           81

1                          A. DASRATH

2         indicates that he completed the course, it

3         doesn't indicate whether they passed or

4         failed?

5             A.      Right.

6                   MR. CAPUANO:   Thank you.   I

7             have no further questions.

8                   (Time Noted:   11:20 a.m.)

9

10                          _____
                                  NANCY PERRI

11        Subscribed and sworn to
          before me this ____ day
12        of _____, 2010.

13        _____
               Notary Public

14

15

16

17

18

19

20

21

22

23

24

25

SHEET 82  PAGE 82

82

1

2                              I N D E X

3    WITNESS              EXAMINATION BY           PAGE

4    NANCY PERRI          MR. COSTELLO            4

5                         MR. CAPUANO             80

6

7

8                         E X H I B I T S

9    PLAINTIFF'S             DESCRIPTION            PAGE

10        1          E-mail                       48

11        2          Document                     54

12        3          Part C medical education
                     and employment information   57

13        4          Part C medical education
14                   and employment information   64

15        5          Document                     68

16

17                         REQUESTS
                     Page            Line
18
19                    17              13

20                    18              22

21                    27              24

22                    39              4

23                    45              24

24                         RULINGS
                     Page            Line
25
                      37              9

SHEET 83   PAGE 83

83

```
 1

 2                          CERTIFICATION

 3    STATE OF NEW YORK )
                          : SS.:
 4    COUNTY OF KINGS    )

 5

 6         I, GARY J. MEROLA, a Notary Public for

 7    and within the State of New York, do hereby

 8    certify:

 9         That the witness(es) whose testimony as

10    herein set forth, was duly sworn by me; and

11    that the within transcript is a true record

12    of the testimony given by said witness(es).

13         I further certify that I am not related

14    to any of the parties to this action by blood

15    or marriage, and that I am in no way

16    interested in the outcome of this matter.

17         IN WITNESS WHEREOF, I have hereunto set

18    my hand this 17th day of October, 2010.

19

20

21                          GARY J. MEROLA

22

23

24

25
```

## 0

08902 [1] 4:13

## 1

1 [4] 4:12 6:12 48:12,16
1,000 [1] 14:15
1,800 [5] 14:13,18,23,24 16:7,10
1-12c [1] 25:24
1:17 [2] 50:10 51:11
100 [1] 2:9
11:20 [1] 81:8
12th [5] 50:8,13,15 51:10 52:13 59:2,12 60:4
13 [1] 82:17
15 [1] 1:9
17th [1] 83:18
1982 [2] 8:10,22
1985 [2] 8:22,23 9:4
1987 [2] 9:4,5
1990 [5] 9:10,11,12,14,19
1st [1] 57:9

## 2

2 [4] 54:23 55:2,6 80:4
2,800 [1] 14:16
2003 [3] 9:21,23 10:14,15
2004 [2] 7:23 10:16
2006 [39] 16:15 17:3 18:10,24 21:12 27:19,19 28:5 38:23 50:8,13,15 51:17 52:7,7,9,17,19 53:8,11 57:10 59:2,8,12,20,22 60:4,14 66:9,13 70:11,13,22 76:16 77:18,23
2010 [2] 1:9 83:18
20th [2] 2:5 59:19
22 [1] 82:18
24 [2] 82:27,45
27th [2] 66:8,9

## 3

3 [4] 57:15,19,23 66:5
30th [1] 57:10
3rd [1] 59:8

## 4

4 [4] 64:25 65:6,23 82:4,13,39
44 [1] 1:16
48 [1] 82:1

## 5

5 [4] 68:10 80:13
54 [1] 82:2
57 [1] 82:12
5919 [1] 2:5
5th [1] 66:13

## 6

630 [2] 4:12 6:12
68 [1] 82:5

## 8

80 [1] 82:5
8th [1] 49:9

## 9

9 [1] 82:37
9:45 [1] 1:10

## A

a.m [2] 1:10 81:8
ability [1] 6:3
able [3] 5:10 33:5,7
absence [2] 42:23 43:2
absolutely [2] 14:12 70:9
academic [2] 17:10,12,15,20 8:2 10:17,23,24 11:12,16,19 12:18 16:16 29:11,18 31:6 63:20 71:9 72:13,16 74:20
accept [2] 12:20 13:2,3 19:22,23 73:19,22
acceptable [1] 13:7
acceptance [3] 19:18,25 20:3
accepted [6] 14:19,21,23 16:12,21 19:11
accepting [1] 14:7
accordance [2] 29:9 73:9
accreditation [1] 12:4
accrediting [1] 12:5
acronym [1] 25:3
across [1] 77:20
action [1] 83:14
activities [6] 10:23,25 26:8,13,14 30:11
actual [1] 69:18
actually [6] 21:7 24:10 42:6 70:3 72:10 79:18
addition [4] 10:22 11:17
additional [3] 11:6 77:5,15
additionally [1] 7:2
address [4] 4:11 6:11,20 39:6
addresses [1] 6:18
administered [1] 54:14
administrative [1] 70:19
administratively [2] 42:17 70:15,24 71:2,15,23 72:22 73:16,18 74:13,23 75:8
administrators [1] 30:24
admitted [1] 12:14
advanced [12] 24:21 25:16 26:17 28:13 43:12 44:5 67:8 69:11 71:13 76:8 78:21 79:6
advised [1] 54:9
advisement [1] 19:3
affairs [4] 7:20 8:2 10:18 16:16
affiliates [1] 7:3,6
aforementioned [5] 48:10 54:21 57:16 64:22 68:8
afterward [1] 16:21
agencies [1] 12:8
agency [1] 33:15
ago [5] 38:25 37:3,4,4,4
agreed [3] 3:6,13,18
aicm [49] 24:24 25:7,22 28:8,21 29:23,25 30:3,8 33:9 34:23 35:11,17,22 38:11,14 41:16 43:17 44:8,9,15 46:4 47:8 48:6 54:9 56:8 61:6 63:4 67:10,11,19,21 68:21 69:5 70:17 76:14,24 77:4,7,9 80:9,15,21
ail [1] 72:18
allow [3] 33:22 37:15 56:25
allowed [1] 34:2
already [6] 17:17 34:15,20 46:2 69:

## B

15 75:6
although [1] 50:25
amend [1] 19:22
amending [1] 20:3
anand [1] 4:18
anatomy [2] 21:16 23:5 71:12
annually [2] 14:14 22:11
another [5] 28:11 76:23 77:3 79:11
answer [5] 5:23 15:13 42:13 44:2 79:1
answered [1] 42:9
applicable [1] 39:10
application [28] 16:23 19:20 24:11 31:25 32:2,3 33:12 34:24 37:25 38:5 39:9,18 53:15 58:4,5,11,14,19 59:20,24 60:15,20,25 65:25 66:6,16
applications [4] 14:10,22
applied [7] 32:19,22,24 33:2 42:23 43:2 58:23
applies [3] 12:9 16:20 40:22
apply [10] 13:22 16:11 29:11,13,16 32:20 33:6,7 35:17 54:10
applying [1] 56:11
approach [1] 26:25
appropriately [1] 20:7
approval [1] 12:10
approximately [5] 14:9,13,17,24 51:11
april [4] 52:7 57:9 66:8,9
aren't [1] 14:21
around [3] 53:6,8,9
assessment [1] 56:14
assigned [2] 76:4,11
assist [1] 47:17
associate [1] 55:20
assume [5] 5:17 10:10 12:24 71:18,19
assumed [3] 10:6,9 11:19
assuming [1] 12:2
assumption [1] 75:25
attached [8] 68:18 69:2 80:17
attempt [1] 47:9
attorney [1] 75:3
automatically [1] 70:23
available [1] 39:5
avenue [1] 2:5
aware [19] 32:18,22,24 35:20 37:18,24 39:16,17,24 40:16,21 41:18,21 42:25 43:3 60:16,24 61:4 73:5

## B

back [18] 5:6 16:11 17:9,23 18:4,7,20 21:12 27:23 34:12 38:23 47:23 48:2 61:25 82:22 74:5 75:14 76:3
background [1] 15:7
bahama [1] 6:23
base [1] 13:4
based [4] 28:5,7,16 62:5
basic [1] 41:23
basis [1] 22:10
basisc [1] 41:22
became [1] 78:8
become [5] 23:15 39:10 66:19 69:7,9
believe [9] 32:20 38:24 43:20 47:

## C

14 48:7 68:2 70:14 77:24
better [1] 28:25
between [7] 3:6 28:20,23 29:22 30:8 46:12 57:9
biochemistry [1] 21:17
biology [3] 13:13 23:17,22
bit [2] 11:4 36:7
blood [1] 83:14
board [7] 30:23 31:3,11,13 32:4,13 33:13,17,21 34:5,8,9 37:19 38:9 40:12,23 41:4,11 54:14 56:20,22
body [2] 12:9 40:7
books [1] 16:22
both [7] 11:23 12:4,6,23 16:25 24:10 45:22
boulevard [1] 12:9
break [5] 21,24 28:20,23 29:2,3 63:7
brijette [4] 55:11,24 60:13 66:13
broken [3] 15:24 16:2 25:12
brunswick [4] 4:12 6:12 21:8
business [1] 4:11

## C

call [7] 17:13 18:23 28:3 39:5 40:3 47:12 48:5
called [2] 4:2 28:17
campus [7] 19:17 21:4,5 45:17,20 69:13 76:15
campuses [1] 6:15
cannot [1] 35:3
capuano [52] 2:10 15:3,8 17:15 18:2 19:2 34:19 35:12 36:2,15 37:11 39:25 41:25 42:5,12 43:24 44:14 46:6,15 48:19,25 51:8 52:6,15,21 54:2 58:6 59:3,7,16 60:3,6 61:15 62:6,12 63:10,24 64:7,15 65:19 69:24 71:25 73:2 74:10 75:10 78:14,18 79:18,23 80:2 81:6 82:5

case [6] 4:19 34:5 35:2 41:5 80:14,21
catalog [4] 18:13,15,16,25
center [2] 45:11,15,16
certain [2] 14:4,12
certainty [2] 71:20,21
certificate [3] 35:8,21 67:22
certification [2] 3:8 83:2
certified [2] 74:21 75:23
certify [2] 83:8,13
chance [2] 49:3 68:12
change [3] 23:12 79:10,16
changed [1] 21:13
charge [1] 16:24
chase [1] 20:17
chemistry [2] 13:16,17
chief [7] 7:10,12,15 11:12,15 12:17
choose [2] 58:25 73:11
chose [1] 19:22
circumstances [1] 74:11
city [2] 76:21,21
ck [1] 54:13
clarification [2] 39:13 79:20
clarify [5] 15:15 48:19 50:6,20 63:11 73:3 79:13
class [1] 73:8

08902 - class

Case 1:07-cv-02433-CBA -RER   Document 94-15   Filed 04/28/11   Page 86 of 90

classes [3] 21:22,24 22:21
classroom [1] 27:5
clear [3] 30:25 36:16 80:6
clerkship [1] 45:13 63:2 69:8,10, 19 76:4,5,10 77:4,14,23
clinic [3] 23:24 26:18 71:13
clinical [45] 7:2,5 8:4 9:18,25 10:4, 6 11:3 23:18,25 24:22 25:9,11,15, 17,17,19 26:21 27:4 28:13 43:13 44:5 45:21 67:6,7,9 68:23 69:8,10, 11,18,21 76:4,5,9,22 77:3,6,14,19, 23 78:21 79:6 80:19,20
collected [1] 60:25
combination [1] 64:5
come [3] 52:3 53:17 68:22
comfortable [1] 79:11
coming [1] 20:25
commented [1] 63:14
commission [3] 35:21 58:12 66:2
committee [3] 12:25 19:19 20:7
committees [1] 12:22
communicated [1] 54:4
comp [11] 56:14,14,17,18 57:7 67: 11,13,16,18 76:7,12
competency [1] 26:24
complete [11] 26:9 29:24 30:3,4,5 31:21 38:11,13 40:14,25 41:13 43: 12,18 44:5,8,19,22 56:6,13 57:5 63: 22 66:21 67:3 69:12 71:7 73:11 76: 7 79:5
completed [13] 8:16,25 9:7 35:5 53:12 56:4 65:15 67:25 68:21 69:5 74:16 80:18 81:2
completely [1] 15:9
completes [1] 28:12 31:12 77:10
completion [7] 28:8 29:23 35:9 54: 8 67:21,22 80:9
component [6] 25:14,15,18 26:22 70:6 80:19
components [5] 26:17,20 27:3 44: 20,22
comprehensive [6] 56:5,7,21 57: 6 67:13
compulsory [5] 25:8,10 67:7 69: 10 76:9
confirm [3] 31:5,17,20 33:16 36:3
confusing [1] 54:12
consider [1] 14:7
considered [2] 13:23 22:17
consist [2] 67:5,19
contact [1] 47:9
contigent [1] 80:8
continue [5] 5:20 65:21 73:11
conversation [4] 49:21,25 50:19 51:24
copy [1] 63:22
core [4] 21:22 27:7
correct [42] 9:24 14:3 16:18,19 23: 11 30:2,10 33:9,10,11 34:3 38:2,3 41:16,17 43:8 52:12 53:12 54:11 56:8 57:6,7 58:16,21 59:25 60:2 66:7,10,11,14 69:5,6,17 71:17 73: 20 74:7 77:20 82:10,10,11,13
cost [1] 18:10
costello [53] 2:4,4,6 4:7,17 15:6,12

17:11,18,22 18:4,20 27:25 34:14 36:6,17 37:16 39:4 40:5 42:3,9 44: 16 45:25 47:21 48:8,23 52:8,12,18, 23 54:5,19 57:14 58:10 59:5,9 60:5, 10 61:11 63:6 64:3,13,18 65:17 68: 6 73:3 74:12 75:5,11,14 78:16 79: 22 82:4
counsel [2] 3:6 80:5
county [1] 83:4
course [21] 13:22,24,25 21:4 22: 24 23:3,7,12,15 24:2,3,13,16 25:21 29:21 41:23 67:19 71:11 72:15,18, 19
court [5] 1:2 3:21 4:23 5:5,10
courtship [1] 67:7
credentials [1] 20:8
credit [1] 12:7
credits [1] 20:9
cs [1] 54:13
cullen [2] 1:16 2:8
current [2] 39:6,7
curriculum [1] 41:22
cut [1] 20:17

## D

dasrath [13] 4:18 5:1 6:1 7:1 8:1 9: 1 10:1 11:1 12:1 13:1 14:1 15:1 16: 1 17:1 18:1 19:1 20:1 21:1 22:1 23: 1 24:1 25:1 26:1 27:1 28:1 29:1 30: 1 31:1 32:1,18 33:1 34:1,7 35:1,20 36:1 37:1,18 38:1,10,12,17 39:1 40: 1 41:1,18 42:1,25 43:1,11 44:1,4 45:1 46:1,5 47:1,7 48:1,5 49:1,7 50: 1 51:1,6 52:1 53:1,11,19,25 54:1 55:1 56:1 57:1 58:1,22 59:1,11,24 60:1,12,16 61:1,2,17 62:1,20 63:1 64:1 65:1 66:1,9 67:1 68:1 69:1 70: 1,15,21 71:1 72:1 73:1 74:1,22 75: 1,8,17,23 76:1 77:1,22 78:1 79:1 80:1 81:1
dasrath's [6] 34:17 36:20 51:2 52: 5 53:2 59:6
date [2] 1:9 19:16 30:17 36:25 44: 13 48:13 53:10 54:24 57:20 59:13 60:4,7,7,10,11,12 61:22 65:2 68:11 75:18 78:12,22
dated [5] 59:25 59:12,13,17,19 66:8
dates [1] 60:8
day [5] 50:10,16 59:9,18 83:18
deadlines [1] 56:3
dean [8] 8:4 9:18,25 11:3 12:25 19: 21,21 20:6
debate [1] 69:22
december [3] 9:22 22:5 59:7
defendant [1] 1:13
define [1] 52:18
department [2] 12:12 29:10

deposition [4] 3:9,18 15:9 79:19
describe [3] 55:7 65:24 68:15
description [2] 10:2,20
design [1] 10:4
details [5] 51:13,14,16,19,23
determinations [1] 13:6
development [5] 11:21,22 55:22
dictates [1] 27:15
didactic [3] 21:20 28:16,19
different [9] 11:4,5 36:7 54:16 64:8 67:17 71:11 76:20 77:19
director [4] 55:20 62:25 63:2,4
disciplined [1] 24:4
disclosure [1] 64:4
disclosures [1] 64:6
discussion [4] 19:18 36:5,10 75: 12
discipline [1] 24:11
district [1] 1:2
dkyman [1] 1:16
doctor [2] 21:17,18
doctoral [1] 9:7
document [33] 6:6 17:7,16,19,21 18:9,12 27:23 34:16 37:9 48:9 54: 22 55:3 57:18,24 58:25 60:9 64:19 65:12,14,16 66:4 68:7,9,13,16,17, 22 75:2 80:16,25 82:2,5
documentation [1] 75:7
documents [12] 12:19,21 34:12 44: 24,25 63:13,15,16,17,19
doing [2] 28:4 41:6
dominica [10] 6:19,21,22 21:6,8,9 45:15 69:14 76:17,21
done [9] 31:15 48:22,24
double [1] 62:7
down [3] 5:11 25:12 59:21
duly [2] 4:3 83:10
during [9] 26:10 29:4,11 36:9,13,19
duties [1] 12:17
duty [1] 12:13
dykman [1] 2:8

## E

e-college [4] 68:3,5 72:5,8
e-mail [11] 47:12 48:5,7,11 49:7 50: 9,22,25 51:2 80:8 82:1
each [2] 45:12 68:18
earlier [4] 43:21 52:17 63:13 70:14
easier [1] 64:2
ecfmg [3] 60:17 61:5 78:9
education [23] 11:7,8,10,22 12:5,5, 8,8,12 19:7,8 26:14,15,17 29:10 57: 17 64:20,23 69:22 70:6 80:24 82:3, 13
educational [6] 10:4 58:12 66:2
effect [1] 3:20
eight [1] 7:16
either [9] 13:2,2,7 27:17 32:15 34: 13 62:25 64:17 75:2
elaborate [1] 42:19
electronically [2] 31:15 47:6
eligibility [1] 57:9
eligible [5] 31:18 34:24 57:4 59:14 66:20 69:8,9 74:8 77:13 78:2,9,24 80:7

elizabeth [2] 8:19,20
employed [4] 6:9 55:14,16,17
employment [9] 39:7 57:17 64:21, 24 82:12
end [4] 10:15 26:2 78:20 80:19
enrique [1] 63:5
enrolled [18] 16:7,10 19:11 29:15, 17 30:13 37:5,7 43:16,23 52:4,11, 14,22,24 53:3 59:24 77:22
enrolling [1] 12:16
enrollment [3] 16:17 36:20 39:11
ensure [1] 57:17
entities [4] 54:16,18
entitled [1] 64:19
esq [2] 2:6,10
esqs [3] 1:16 2:4,8
essentially [4] 24:7 52:6,16 63:24
established [2] 42:5 69:16
ethics [1] 21:19
evaluated [1] 20:7 26:24
evaluation [9] 27:2 68:18,24,25 80: 18
even [1] 14:6
events [1] 42:20
exact [4] 36:24 44:12 75:18 78:11
exactly [1] 42:14
exam [38] 26:6 27:10 28:11,22 30:9, 18,20 32:19 33:3,17,23 34:3,8 41:2 45:15,16 46:3,12,17,20 56:5,7 57:6 59:15 62:4,11,14 66:6,17,20 67:18 76:7 78:2,6,10 80:7
examination [21] 1:12 4:6 27:12 28:16 30:16,17,24 31:7,18,23 32:17, 21 33:25 35:6 40:15 41:14 45:11 46:22 56:4,16,21 62:3 58:17 66: 23 74:19 77:11 79:25 82:3
examinations [1] 26:16
examine [1] 62:21
examined [1] 4:4
examiner [2] 33:13 56:21
examiners [17] 30:23 31:3,12,14 32:5 33:18,22 34:6 35:4 37:20 38:9 40:13,23 41:4,12 54:16 56:23
exams [1] 67:17
except [1] 3:13
exchange [1] 19:13
exhibit [13] 48:12,16 54:23 55:6 57: 19,23 64:25 65:6,23 66:5 68:10 80: 4,13
expand [1] 26:20
explain [2] 22:8 31:8
explanatory [1] 72:3
extent [8] 28:5 34:15,19 39:5 42:12 46:2,7 61:13 75:5

## F

faculties [1] 12:14
faculty [8] 10:6 11:20,21 12:22 19: 19 27:4,20 28:3
fail [3] 43:7,10 44:11
failed [10] 43:4 49:10 51:3 69:3 70: 16 72:6 74:2 80:15,22 81:4
failing [12] 44:18 47:8,13,18 48:6 50:23 51:3 61:5,25 62:4 70:17 73:6
fails [5] 34:23 42:21,22 62:2,10

fairly [1]58:18
falls [2] 62:15
familiar [1] 16:17
far [1]5:13
fee [2] 16:23 17:4
feel [2] 20:6 79:11
fellowship [1]8:25
fernandez [5] 49:12,15,18,22 50:2,
 5 51:12,20 63:5
fifth [1] 24:20
fifty [1] 16:13
file [3] 39:17 63:21,23
filed [1] 60:16
filing [2] 3:7 39:17
filling [1] 30:12
final [1] 26:6
fine [2] 46:6 65:21
finish [1]5:9
finished [2] 48:18 65:9
first [22] 4:3 9:16 21:2,10,11,25 22:
 3,4,6,12,13,14,17 23:3,6 25:8,10,19
 28:15 30:15 67:7 69:10
florida [1] 76:17
follow [2] 17:12 46:9
follow-up [7] 18:3,22 28:2 51:12
 61:12 75:7 79:24
following [1]74:14
follows [1] 4:5
force [1]3:20
foreign [2] 58:12 66:2
forgive [1] 76:8
form [3] 43:14 31:13 42:8 68:18
forth [1] 83:10.
forward [2] 74:4,6
four [5] 15:22 16:4 22:10 24:13 37:
 4
four-year [1] 15:21
fourth [2] 24:14,17
frame [1] 46:12
freeport [1] 6:23
front [2] 48:15 65:5
fulfill [1]71:3
fulfilling [1] 43:21
fully [2] 43:16,22
further [5] 3:12,17 73:19,23 81:7
 83:13

G

gary [2] 83:6,21
gave [2]6:11 10:11
general [2] 40:18,20
generally [1] 47:5
generic [1] 58:18
getting [1] 35:14
given [15] 20:19,22 27:16 46:12,18
 47:7 67:22 68:20 76:14,16,25 77:
 17,18 79:9 83:12
giving [2] 29:21 55:25
got [1] 51:18
governing [1] 40:7
gpa [1] 14:4
grade [25] 26:2 33:25 37:2 44:10,18
 45:4,5,8,10,14 47:8,13,18 48:6 49:
 10 50:23 51:3,7 61:5 62:2,2,4,5,10
 73:7

grades [12] 35:24 36:8,13,21 45:12
 47:4 52:5 53:2 82:21 68:2 72:11 73:
 6
grading [1] 39:11
graduate [8] 8:6,9,17 11:22 14:25
 16:9 58:13 66:3
graduation [3] 8:15 14:20 70:8
grand [1] 6:22
gross [1] 23:4
grounds [1] 20:2

H

half [2]7:16 15:22
hand [1] 83:18
handbook [2] 71:6 73:10
hands-on [4] 69:19 70:4,5,12
happen [1] 42:16
happens [4] 19:5,12 28:7 33:20
hear [1] 5:4
held [1] 1:15 18:19 75:13
help [1] 44:25
hereby [3] 3:5,9 83:7
herein [1] 83:10
hereto [1] 3:7
hereunto [1] 83:17
herself [1] 38:20
highlighting [1] 48:20
highway [4] 4:12 6:12
history [1] 26:15
hold [1] 7:21
hospital [2] 8:19 26:23
however [1] 44:4
humanities [1] 13:20
hypotheticals [1] 46:17

I

idea [1] 16:9
identification [5] 48:12 54:23 57:
 20 65:2 68:10
ii [1] 58:20
iii [1] 58:20
immediately [2] 8:11 77:8
include [1] 13:12
including [1] 64:12
incumbent [2] 73:4,7
independent [1] 33:14
indicate [1] 81:3
indicates [1] 81:2
individual [1] 54:3
ineligible [2] 78:25 79:4
inferring [1] 54:16
information [3] 15:7 57:18 64:21,
 24 82:12
inhibit [1] 6:3
initial [2] 19:5,15 64:4
inorganic [1] 13:16
inspect [2] 62:3,11,14
institution [3] 13:15 73:15,18,22
institutions [2] 56:24 77:20
instruction [1] 56:2
instructions [1] 5:14
instructor [1] 37:22
intake [2] 22:12,13,14
intakes [1] 22:10
interested [1] 83:16
internal [1] 8:16

introduction [14] 23:18,23 24:21
 25:16 26:17 28:13 43:13 44:5 67:8
 69:11 71:13 76:8 78:21 79:6
involved [1] 11:6 39:10
irrelevant [1] 15:10
isn't [1] 43:15
issuance [1] 28:21
issued [3] 25:24 26:2 31:24 69:4
itself [3] 26:23 59:20 67:20

J

january [6] 7:23,24 10:16 11:11 22:
 13,16
jersey [3] 4:13 6:13 8:20
job [3] 10:2,3,20
joined [1] 9:13
joseph [2] 2:6 4:17
judge [1] 38:9
jumbled [1] 35:15
june [1] 46:18
justin [3] 2:10 17:11 27:25 34:14
 61:11

K

kept [1] 45:10
kind [1] 27:10 63:19
kings [1] 83:4
kitts [1] 6:23

L

laboratory [2] 13:14,17,18
lack [1] 28:25
last [2] 18:5 47:24
lawsuit [2] 4:21 15:4
least [1] 13:20
leave [2] 42:23 43:2
left [1] 64:14
letter [8] 19:15,18,25 20:3 55:8,24
 70:25 71:4
liaison [1] 12:11
license [1] 74:18
licensing [4] 28:16 30:16 58:17 77:
 11
licensures [1] 12:10
likely [1] 61:10
limited [1] 13:13
line [1] 74:14
litigation [1] 37:13
little [3] 15:5 35:14 36:7
location [2] 45:21 76:23
log [1] 72:10
long [2] 7:14,21 29:18
longer [1] 55:14
look [7] 37:2 45:3 48:17 51:6 55:3
 64:16 65:7
looking [2] 14:13 44:23
looks [1] 66:12
lost [1] 60:5

M

made [7] 39:24 40:16,20 53:14,22
 59:24 64:7
magic [1] 48:21
main [1] 6:13
mainly [1] 12:3
major [1] 25:13

mandated [1] 12:7
many [9] 14:9,24 15:2,16,18 16:9,
 12 50:4 52:25
march [2] 58:25 59:12,19 60:3,13
mark [3] 37:16 48:8 54:19 57:15 68:
 7
marked [7] 42] 48:11,15 54:22 55:2
 57:18,23 64:19,24 65:5,22 68:9 75:
 8
marker [1] 48:21
marriage [1] 83:15
material [1] 27:9
mathematics [1] 13:19
matriculatd [1] 28:9
matriculate [3] 19:6,14 20:25
matriculated [2] 22:21 24:14
matriculates [2] 19:9 20:15
matter [4] 24:9 33:6 63:17 83:16
mean [6] 10:8 20:10 25:11 40:19
 45:6 46:23 54:3 60:3
medical [57] 11:7,8,23 12:4,8,23 13:
 11 14:14,19 15:18,20 16:4,8 18:16
 19:7 20:11,12 21:12,19 22:9 24:5
 28:16 30:16,23 31:3,11,14 32:5 33:
 13,13 41:4,11 45:24 54:15 56:20,23,
 24 57:17 58:13,17 64:20,23 66:3
 70:6 74:18 77:11 80:24 82:3,13
medication [1] 6:2
medicine [30] 1:17 4:7 8:16 9:8
 10:5,7,23,24 11:18 13:8,8 16:25 17:
 2 18:25 20:16,17 23:19,25 24:22
 25:17 26:18 28:13 31:17 43:13 44:
 6 45:22 53:4 67:9 68:19 69:12 71:
 14 73:13 76:9 78:22 79:6
members [1] 27:5
members' [1] 27:21
memory [1] 21:16
merola [2] 83:6,21
met [2] 32:15,16
miami [9] 45:16,18,20 49:10 51:3
 76:16
michael [1] 38:24
micro [2] 23:17,22
might [1] 17:16
misunderstand [1] 80:16
moment [1] 55:3
money [2] 16:22 61:2
month [3] 59:10 75:19 78:13
months [2] 7:16 13:18 15:23
morning [1] 4:14
most [1] 61:10
move [2] 15:12 65:17
ms [4] 55:8,10,24 59:19
much [1] 70:12
must [3] 26:8 56:13 67:2

N

name [2] 4:8,17 18:14
names [2] 27:21 28:4
nancy [4] 1:14 4:10 81:10 82:4
national [9] 30:22 31:3,11,13 32:4
 33:13,17,21 34:5,8 35:4 37:19 38:9
 40:12,23 41:4,11 54:14 56:20,22
nature [2] 47:19 79:14

nbme [19] 31:10 32:7 34:9,18 37:19 39:16 53:12 54:9 56:5,7,12 67:12, 15,16 76:7
necessarily [1] 65:15
need [7] 5:21 19:15 24:13 30:12 35: 7,16 72:4
needs [1] 63:10
negative [1] 62:8
nephrology [1] 9:2
new [9] 1:17,17,18 4:4,13 6:12 8:20 83:3,7
next [4] 9:6 19:5 28:10 59:5
non-responsive [1] 65:18
north [3] 4:12 6:12 21:8
notary [4] 1:17 3:19 4:3 83:6
noted [1] 81:8
nothing [2] 64:13 79:21
notification [3] 19:10 71:24 72:25
notified [6] 38:9 40:12 47:2 61:5 67:24 70:20,22 71:16
notify [7] 32:13 33:17 38:12 40:6 41:3,6,11
number [3] 42:15 57:15 65:6

## O

object [1] 15:4
objection [13] 36:2 37:11 41:25 42: 4,8 43:24 46:15 51:8 54:2 59:16 62: 6 73:2 74:10
objections [1] 3:13
obviously [1] 59:22
october [2] 1:9 83:18
office [15] 6:13 17:9,23 27:23 39:22 40:4 41:8,9 48:22,24 55:13,21 60: 21,22 75:3
officer [4] 7:10,12,15 12:18
offices [3] 1:16 11:13,16
okay [10] 5:7,19,25 25:4 48:25 49:2 55:5 61:15 65:10 75:10
on-line [2] 31:15 72:5
once [6] 19:14 20:14 46:12 53:4 64: 19 69:12
one [14] 6:24,25 13:18,19 20:10,12 23:20 26:5 44:9,10 70:7
one-grade [1] 25:24
only [5] 5:22 21:12 58:7,8,22
oral [1] 27:12
orally [1] 47:3
order [13] 1:15 12:20 13:23 24:13 30:12 35:17 41:15 42:16 46:21,24 56:6 76:4 78:2
organic [1] 13:17
originally [1] 48:21
other [3] 31:9 46:16 74:5
out [1] 64:14
outcome [2] 38:4 83:16
over [2] 50:6 79:19
oversaw [1] 10:23
oversee [1] 12:13
own [1] 68:15

## P

page [3] 58:8,9 82:3
pardon [1] 45:19
part [12] 12:17 23:2,4 24:18 36:4,11 37:13,14 41:8 56:10 57:17 58:16
64:20,23 71:6 73:21 76:22 82:3,13
particular [1] 44:7
parties [2] 3:7 83:14
partnership [1] 77:20
partnerships [1] 10:4
parts [1] 25:13
party [1] 64:17
pass [11] 13:25 24:13 28:15 35:17 41:16 42:7 56:8 67:12 71:11 72:6 78:4
passed [14] 13:22 33:8,8 34:8 41: 21 46:22 54:10 69:2 72:15 78:5 80: 14,20,22 81:3
passes [1] 22:20
passing [2] 72:18 77:9
past [1] 63:18
pathology [5] 23:18,22,23
patient [4] 21:17,18 26:23,25
patients [1] 24:8
pays [1] 19:4
percent [1] 16:13
performance [2] 68:24,25
period [3] 29:3,6 57:9
perri [10] 1:14 4:10,14 48:14 54:25 58:6 65:4 79:8 81:10 82:4
person [1] 80:24
pharmacology [1] 23:17
phone [2] 47:12 48:5
physical [6] 6:20 26:15,25
physics [1] 13:19
physiology [1] 21:16
place [1] 39:7
plaintiff [4] 1:15 4:18 80:14
plaintiff's [19] 48:11,16 54:22 55:2, 6 57:15,19,23 64:25 65:6,23 66:5 68:9 80:3,5,12
please [24] 4:8 5:2,5,22 6:17 22:8 26:20 31:8 37:17 46:9 47:23 48:9, 17 54:20 55:2,7 57:14 58:2 64:19 65:7,23 68:6,7,16
point [13] 15:11 16:22 23:13,16 32: 6 39:8,23 47:18 52:3 53:17 59:14, 23 69:24
policy [1] 13:5
portion [1] 65:18
portsmouth [4] 6:19,21,22 76:19
position [5] 7:8,22 9:16 10:11 13: 20
post [2] 8:17 9:7
posted [5] 47:4 68:3,4
practical [2] 24:2 26:14
pre-clinical [1] 69:13
pre-medical [1] 25:13
preference [1] 27:13
preparation [3] 6:7 17:24 27:7
preparatory [2] 56:15,15
prerequisite [3] 13:5,10 74:17
prerequisites [1] 13:9
present [1] 13:11
president [4] 7:19 8:2 10:17 16:15
primarily [1] 10:3
primary [1] 42:24
prior [3] 7:17 41:2 52:6
probably [5] 14:14 16:13 64:11 69: 25 77:19

procedure [1] 70:20
process [5] 16:17 30:21 31:9
processed [5] 31:25 32:3,4
procure [1] 10:3
produced [4] 17:17 58:9 64:2,17
produces [1] 56:23
production [4] 17:14 18:24 28:3 46:3
productions [2] 64:8,9
professional [1] 11:21 65:21
professor [2] 27:13 46:13
program [26] 8:17 11:7,8,9 12:7 13: 2,7 15:19,20,21,21,22 16:8 19:7 21: 20 22:9 26:12 28:14 29:11 42:18 49:11 51:4 71:9 73:12,22 80:19
programs [2] 12:4 56:24
progress [7] 29:19,20 31:6 32:10 72:14,16 74:20
promised [1] 49:11
promote [1] 71:8
promoted [2] 10:17 11:12
proper [1] 76:5
provide [1] 46:8
provided [12] 28:6 34:16,21 46:2,7 51:23 64:4,12 72:24 75:2,6 79:12
public [5] 1:18 3:19 4:4 83:6
purposes [2] 12:10 20:8
pursuant [1] 1:15

## Q

quentin [1] 2:9
question [23] 3:14 5:2,5,9,17,23 15: 14,15 18:3,5,7 28:24 36:16,18 42: 10 47:20,22,24 48:2 54:17 63:12 79:15
questioning [1] 74:15
questions [5] 4:21 37:15 79:24 80: 5 81:7

## R

rather [1] 71:20
re-register [6] 43:14 70:16 72:19, 21 73:8,15
re-registering [1] 73:13
read [5] 5:6 18:4,7 47:23 48:2
readiness [2] 33:16 57:2
reading [1] 24:9
ready [3] 33:18,19 55:4
really [1] 69:23
reason [4] 44:17 60:19 61:21 79:3
reasons [1] 42:24
recall [7] 17:5 27:20 32:11 37:9 38: 4 42:14 47:10,11,15 48:4 49:6,14, 17,20,24 50:4,16,18 51:16,16 52:2, 25 53:5,21,24 54:6 61:16 75:18
receive [3] 14:10 35:8 46:19
received [9] 35:21 44:18 48:4 49:7 50:9 51:7
receiving [2] 47:11 71:23
recess [1] 63:8
recognize [5] 57:24 65:11,14,14,15
recommendation [5] 12:25 19:21, 22,23,24
record [13] 4:9 17:23 18:17,19,21 36:12 61:14,21 63:20 75:11,13,15 83:11

recruit [1] 10:6
recruited [1] 12:15
recruitments [1] 11:20
refer [1] 25:3
referred [3] 18:6 24:23 47:25
referring [4] 44:15 51:9,15 60:11
reflect [3] 18:10 34:17 45:11
reflected [5] 17:6 27:22 34:11 60: 20 74:25
regarding [4] 47:12 48:6 50:20,22
register [7] 30:19 31:2,9 42:22 43: 5,7,10
registered [4] 30:15,18 31:20 73: 24
registering [1] 31:10
registrar [14] 31:5,16 32:15 35:3 38:8,19,21,22 40:6,11 41:3,10 54:7 61:9
registrar's [7] 39:21 40:3 41:8,9 55:13 61:14,21
registration [3] 30:21 31:13 56:2
regulatory [4] 10:7,10 11:23 12:3
rejected [6] 39:19,21 40:3,8 60:17, 20
related [3] 63:13,17 83:13
relation [1] 15:4
release [2] 33:25 46:13
remain [2] 29:17 30:13
remains [2] 29:14 43:16,22
remember [7] 36:24 44:3,12 50:24 78:11,13,22
rendon [1] 38:25
rendon's [1] 39:6
repeat [1] 76:12
rephrase [4] 5:2 36:17 62:9 78:14
report [2] 19:16 21:8
reporter [10] 4:23 5:6,10 18:8 48:3, 13 54:24 57:21 65:3 68:11
represent [1] 4:18
request [2] 62:17,24
requested [1] 62:21
requests [2] 62:16 82:17
required [10] 21:23 22:21 24:5 25: 21 27:25 28:14 29:7 33:15 40:15 41: 5
requirement [2] 32:16,17
requirements [16] 13:11,12 20:20, 23 21:11 25:2,6 30:8 41:13 43:22 56:11 66:22,25 69:13 71:3 74:18
requires [1] 14:5
requisite [1] 31:22
reserved [2] 3:14
respect [2] 80:3,12
respective [1] 3:7
respond [1] 5:9
response [4] 50:10 51:10 65:20,20
responses [1] 74:24
responsibilities [2] 11:19 12:24
responsibility [1] 11:20
results [1] 46:20
retake [3] 71:8,14 72:19
return [1] 42:22
review [13] 6:6 12:19,21 35:24 36: 21 49:3 63:14,16,25 64:15 65:8 68: 12 72:11

# A611

reviewed [10] 17:24 36:8,12 37:10
52:5,20 53:2 63:13,17 64:10
reviewing [1] 58:7
reviews [2] 19:20 72:4
reyes' [1] 36:9
right-hand [1] 59:21
roation [1] 27:8
role [6] 10:7,10 11:3,15,23 12:3
rolls [1] 12:2
roosevelt [1] 2:9
roseau [1] 76:17
ross [1:13] 4:19 6:10,13 7:9,11,
20 8:3,6 9:13,17 12:20 14:5 16:17,
21 18:14 20:11,15 27:14 31:19,25
32:3,6,9,13 36:20 37:6,8 38:18 39:
12 42:11 52:4 53:18 55:15,16,17
59:25 60:21,25 61:4,16 75:16
rotation [25] 25:9,11 26:21 27:4 69:
3,3 77:6 80:21
ruling [1] 37:17
rulings [1] 82:24
runs [3] 22:4,6,9

## S

same [3] 3:9,19 5:11
sat [3] 37:19 39:16 41:19
satisfactory [7] 29:18,20 31:6 32:
10 72:13,16 74:20
saw [1] 48:7
saying [3] 44:3 55:23 70:4
says [3] 19:15 55:7 80:6
school [47] 1:13 7:4,7 10:5,7,22,24
11:7,9,17,18,24 12:9,23,24 14:2,6,
14,15,19 15:19,20 16:4,25 17:2 18:
16,24 20:11,13,13,15,16 22:9 24:6
29:4,15 31:17 34:12 36:14 39:2 45:
23,24 53:4 56:24 68:19 72:23 73:
13
science [2] 41:22,23
sciences [4] 8:5 9:18,25 13:14
score [2] 34:17 46:19
scores [1] 46:13
sealing [1] 3:8
second [5] 22:22,25 24:18 68:16
77:14
secured [1] 72:10
see [5] 4:22 59:3 60:10 72:17 73:6
seems [2] 15:5,9
sees [1] 72:14
self [1] 56:14
self-assess [1] 57:2
semantics [1] 69:25
semester [26] 13:18,19,20 15:24
20:6 21:2,11 22:2,3,4,6,13,14,22,25
23:3,6,10 24:14,17,19,20 26:11 28:
5,10 70:7
semesters [1] 22:17
sena [7] 55:9,10,11,24 59:19 60:13
66:13
send [3] 32:8,9,11
sent [3] 19:10,18,24
separate [1] 80:15
september [4] 22:5,15,16 57:10
series [4] 4:21 26:7 80:4
services [1] 11:3

set [2] 83:10,17
setting [1] 27:6
settlement [3] 36:4,10 37:14
seven [4] 58:7,8,9,9
seventy-eight [4] 77:6,15 78:3
several [1] 60:8
shall [4] 3:9,14 12:19 14:19
shared [1] 47:5
she's [2] 36:12 52:19
sheet [4] 44:6 46:4
sheets [4] 45:5,8,10,14
short [4] 46:21,24 83:7,8
show [1] 54:25
side [1] 69:21
signature [2] 32:14 59:6
signed [3] 3:19,20 60:12,13 66:9,
12
similar [3] 11:2 66:4 76:18
since [2] 7:23 23:14
sit [3] 28:11 34:3 41:15 56:3 57:4
59:14 78:9 80:7
site [3] 68:24 72:11 76:22
sitting [1] 56:11
situation [1] 34:22
six [1] 13:18
sixty-five [1] 77:19
sixty-nine [1] 7:2
skills [1] 26:15
society [2] 21:17,18
somewhere [1] 7:6 60:21
sorry [7] 23:4,21 39:25 56:23 56:19
59:11 68:4
sort [1] 35:8 70:25
speaking [4] 20:16 51:15 70:10,11
specific [7] 11:25 20:6 24:4 35:13
44:21 53:6 54:3
specifically [1] 50:21,24 53:10
specify [1] 60:7
spoke [5] 36:3 49:9,14,17 50:5
sponsorship [6] 53:18,25 61:17,
22 75:17,22
spring [3] 27:19 28:4 29:2
st [3] 6:22 8:19
standard [1] 13:10
state [7] 1:18 4:4,8 50:11 51:5 83:3,
7
stated [3] 39:15 51:11 62:7
statement [2] 36:9 80:23
states [10] 1:2 7:3,6 28:15 30:16 57:
8 58:17 59:21 77:11,21
steer [1] 15:11
step [18] 28:15,17,19,21,24 29:22,
25 30:9,15,20 32:19,21 33:3 34:25
35:18 39:18 40:24 55:1,13,13
56:4,16 67:3,11,12 58:15,20,23 59:
15 66:6,17,20 74:9,21 75:24 77:12
78:2,6,10,24 80:7
still [7] 22:17 34:2 37:5 39:2 50:11
52:13 74:8
stipulated [3] 3:5,12,17
stphrao [1] 18:17
street [1] 1:17
strictly [1] 80:5
strike [2] 65:17,19
studdent [1] 43:16

student [82] 11:21 12:20 13:3,7 14:
7 16:20 19:4,19,24 20:4,5,14,24 21:
2,12 22:20 26:8,22 27:8 28:9 29:
4,7,10,13,14,16 30:12,19,22 31:12,
18,20,21,24 32:10,15 33:6,8,12 34:
23 35:7,16 40:13,22,24 41:12,16 42:
16,22 46:18 54:9 58:4,11 62:2,10,
14 66:19 67:22 68:21 69:2,5,7 70:
18 71:5,6,22 72:4,10,14 73:5,9,10,
16,17,21 74:19 76:11 77:10 80:14,
20
student's [3] 39:11 45:11
students [21] 10:5 12:14,18 13:3,
21 16:9 19:6 22:12,13,15 24:2 35:
5 42:21 46:14,21 47:6 55:21,25 57:
2 63:20 67:2 72:20
students' [1] 33:16
studies [2] 23:24 36:13
subject [1] 24:9
submitted [7] 37:25 66:16
subscribed [1] 81:11
subsequent [1] 52:9
substance [2] 49:21 50:19
successful [2] 71:10 80:9
successfully [13] 34:4,5,5 35:6
39:10,13 40:14,25 41:12 43:12,18
44:4,8,20 56:13 66:21 67:2,25 69:
12 71:7 73:10 74:17 79:5
sum [4] 49:20 50:18
summer [1] 29:2
sworn [4] 3:20 4:3 81:11 83:10
system [1] 72:9

## T

tangentile [1] 16:5
teach [1] 27:5
teaching [2] 27:18 77:20
technology [1] 72:9
term [1] 28:25
terms [2] 40:18,20
test [1] 45:12
tested [1] 27:8
testified [6] 4:5 40:2,5 43:20 52:19
70:14
testify [1] 6:4
testimony [6] 6:7 17:25 43:25 79:6,
17,20 83:9,12
testing [1] 33:14
tests [1] 45:9
theorhetical [2] 24:3,6
third [6] 6:24,25 22:14 23:10,20 24:
19
though [3] 22:18 43:15 78:17
three [7] 22:6 37:4 64:8,11
title [1] 55:19
today [14] 4:15,19,23 6:3,4,7,8 17:
25 63:15,16 79:9
total [1] 14:16
traditionally [1] 26:23
training [7] 7:3,6 8:17 9:8 68:23 70:
4,5
transactions [1] 39:24
transcribed [1] 44:10
transcript [2] 45:6 83:11
transfer [3] 20:4,10,12

transferring [2] 20:5,8
transplant [7] 9:2,8
trial [7] 1:12 3:15
trimester [1] 22:10
trimesters [2] 15:25 16:3
true [3] 43:15 63:15 83:11
try [1] 47:17
tuition [9] 16:22,24 17:4 18:10 19:5,
12 61:2 73:19,23
twelve [1] 15:23
twenty-one [1] 7:5
twice [2] 32:23,25
two [12] 5:11 23:2,4 25:13 37:3 42:
24 46:25 54:13,15,17 64:5 79:23
typically [3] 24:23 46:11,18

## U

u.s [3] 6:12 12:12 29:9
under [2] 19:2 74:10
undergrad [2] 13:14 14:2
undergraduate [1] 14:6
understand [4] 4:25 5:13,17,18 28:
24 30:2 47:19 78:19 79:14
understands [2] 71:5 78:17
united [8] 1:2 7:3,6 28:15 30:16 58:
17 77:11,21
university [39] 1:13 4:19 6:10 7:11,
20 8:7 9:13 12:20 14:5 18:15 27:15
31:4,16,19 33:15 35:3 36:20 38:8,
18,21 40:11 43:10 42:11 54:7 55:
12,13 66:22,24 68:23
unless [3] 68:20 69:4 73:23
unsuccessful [1] 76:13
until [7] 5:8,23 8:23 9:10,11 10:14,
15
up [9] 9:9 15:24 16:2 17:12 34:5 46:
9 70:7
uslme [35] 34:24 35:17 37:25 39:9,
18 40:3,24 41:15,19 43:22 53:15,19,
25 54:11,13 56:16 57:3,5,12 58:15
59:15 61:18,23 66:6,16,20 74:9,21
75:17,23 78:2,6,9,24 80:7
usmle [11] 28:19,21 29:22,25 30:8,
20 31:9 32:19,21 33:3,7
utilize [1] 56:25

## V

various [1] 56:3
verbal [1] 4:24
vertically [1] 59:21
veterinarian [17] 7:7 10:24 11:9,
10,18,24 12:5,8,23 13:8,12 14:15
15:21 17:2 19:7 20:13 45:23
vice [4] 7:19 8:2 10:17 16:15
voluntary [1] 12:9

## W

wait [2] 5:8,22
waiting [1] 50:11
waived [1] 3:10
wall [1] 1:16
warning [4] 70:25 71:4
way [9] 15:17 27:16 32:12 76:6 83:
15
week [1] 46:25
weeks [3] 77:6,16 78:3

whereof [1] 83:17
whereupon [10] 18:6,18 47:25 48:
10 54:21 57:16 63:8 64:22 68:8 75:
12
whether [13] 13:6 39:16 42:6 46:21
58:19 69:2 71:12 72:6,12 75:22 80:
13,20 81:3
whom [1] 6:9
will [19] 5:2,17,20 15:12 17:11 18:
22 20:17 25:3 28:2,2 29:17 33:22,
25 36:17 46:8 47:21 61:12 73:3 75:
6
windows [1] 56:3
withdraw [2] 47:21 75:16
withdrawn [13] 42:17 70:16,19,24
71:2,16,23 72:23 73:18 74:13,23
75:9,22
withdraws [1] 73:16
withdrew [3] 53:18,24 61:17
within [6] 3:8,18 25:23 67:20 83:7,
11
without [4] 14:13 44:23 71:23 72:
24
witness [9] 4:2 17:20 79:21 82:3
83:17
witness(es [2] 83:9,12
words [4] 46:16 55:7 68:15 74:5
work [11] 8:11 24:5 31:22 35:5 40:
14,25 67:3,4,6 72:4 73:24
worked [1] 55:12
working [1] 24:8
works [1] 55:11
writing [6] 17:12 18:22 28:2 46:10
47:3 51:24 61:12 62:18
written [2] 26:16 27:11

## Y

year [16] 7:24 9:3,9,20 11:12 13:13,
16,17 14:11 15:22,24 18:10 21:11
22:7 37:3 59:10
years [7] 15:2,16,18 16:5 37:3,4,4
york [6] 1:17,17,18 4:4 83:3,7

Case 1:07-cv-02433-CBA -RER   Document 94-16   Filed 04/28/11   Page 2 of 18

Courthouse, 88-11 31  41n
Boulevard, Jamaica, New York 11435,
Queens County, on   7 - 25 - 06

Present:
Hon.   HON. ROGER N. ROSENGARTEN   Justice

------------------------------------X   Index No.   15989/06

ANAND DASRATH

          Plaintiff,              **ORDER TO SHOW
                                  CAUSE**

        -against-

ROSS UNIVERSITY SCHOOL OF MEDICINE

          Defendant.

------------------------------------X

      Upon the reading of the annexed Affidavit of the
Plaintiff in this action, Anand Dasrath sworn to on the 19 day
of July, 2006, and the Supporting Emergency Affirmation of
George M. Gilmer, the attorney for the Plaintiff herein,
affirmed on the 14 day of July, 2006, and all of the Supporting
documents contained herein, it is

      **ORDERED,** that the Plaintiff, Anand Dasrath shall show cause
before Part   23   of this Court, to be held in and for the
COUNTY OF QUEENS, at the Courthouse at 88-11 Sutphin Boulevard,
Jamaica, New York, on the 26 day of July , 2006, at 9:30
A.M. in the forenoon of that day, or as soon thereafter as
counsel can be heard, why an Order should not be made:

**EXHIBIT A**

Medicine; and for an Order

2. compelling Defendant to sponsor Plaintiff for the upcoming USMLE Step 1 Exam and

3. Any such further relief as the Court may deem just and proper.

*together with the Summons & Complaint*

ORDERED, that service of a copy of this Order and the papers upon which it is granted upon the Defendant, Ross University School of Medicine, by ~~ordinary mail~~ *Personal Service* on or before the 25th day of , 2006, shall be deemed good and sufficient service.

~~Dated: July , 2006~~                    ENTER:

J.S.C.

HON. ROGER N. ROSENGARTEN

**A615**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
------------------------------------------x

Anand Dasrath,                              Index No. 15989/0

          Plaintiff,                  **EMERGENCY
                                            AFFIRMATION IN
                                            SUPPORT**

Ross University School of Medicine

          Defendant.
------------------------------------------x

    I, George M. Gilmer, Esq., an attorney duly authorized
to practice law before the Courts of the State of New York,
hereby affirms under the penalties of perjury that:

1. I make this emergency application in support of the
   present motion to reenroll the Plaintiff in Ross
   University School of medicine and to compel the
   medical school to sponsor for the upcoming USMLE step
   medical boards, scheduled for July 27, 2006.

2. I make an emergency affirmation because the test is
   scheduled for one week from today.

3. As shown in the annexed summons and complaint,
   attached here to as Exhibit A and in the annexed
   Affidavit of the Plaintiff the school has wrongly
   denied the plaintiff opportunity to take the USMLE
   Medical Boards and has wrongly withdrawn the Plaintiff
   from its Medical School.

**A616**

4. As the annexed letter shows the Defendant Administratively Withdrew the Plaintiff from its school because he allegedly did not successfully complete the AICM course and pass the USMLE Step 1 exam. This letter is attached here to as Exhibit "B".

5. The plaintiff is currently registered for the USMLE step 1 exam. Attached hereto as Exhibit "C" is proof that the Plaintiff is registered for this exam.

6. The school has promised that it would sponsor the Plaintiff for this exam. Attached hereto as Exhibit "D" of the school's sponsorship for this exam.

7. Last week the school told the Plaintiff that they will withdraw their sponsorship of him for the exam and because of this the plaintiff will not be able to take the test.

8. According to the school manual attached here to as Exhibit "E" a student is eligible to take the USMLE step 1 in the following was

   a. Passing all courses in the Basic Science Curriculum  and having a 4th semester cumulative GPA of 4.90 or higher; or

   b. Passing all courses in the Basic Science Curriculum and having a 4th semester cumulative GPA of 2.89 or lower, and passing the NBME

Comprehensive Basics Sciences Examination at the
end of the 4ᵗʰ semester; or

c. Taking the BMSI course and passing either the
BMSI final comprehensive examination or the NBME
Comprehensive Basic Science Examination
administered after the completion of the BMSI
course

9. The Plaintiff has met the eligibility requirements of
this section.

10.    Furthermore, this student manual states that a
student may be administratively withdrawn only under
the following grounds:

a. Does not return to the campus to register for the
following semester and attend classes in Week One
of a semester.

b. Does not return at time specified for the end of
an approved leave.

c. Is not scheduled for a clinical rotation for a
period of 30 days or more and has not applied for
and received an approved academic leave of
absence;

See Exhibit "F."

11.    The letter attached hereto as Exhibit "B" states
only two reasons for the administrative withdrawal of

the Plaintiff. One of the reasons, failure to successfully complete AICM course, is not listed in the student manual. The second reason, the plaintiff's failure to pass the USMCE step 1 is incorrect because the plaintiff has yet to take this exam and is registered to do so.

12.   Finally, Plaintiff believes that he should have passed the AICM course but the Defendant has not provided Plaintiff his grade for this course.

13.   As stated earlier the school has told the Plaintiff that they have withdrawn their sponsorship for the Plaintiff.

14.   The Plaintiff has paid for this school semester, and I have attached proof of payment for this school semester as Exhibit "G."

15.   Since the school has no reason for withdrawing the Plaintiff from school and no basis for withdrawing their sponsorship of Plaintiff, the Plaintiff seeks to reenroll in the Defendant's school and seeks to compel the Defendant to sponsor the Plaintiff for the USMLE Step 1 Exam.

16.   Moreover, the school has reneged on its agreement to sponsor the Plaintiff for the USMLE Step 1 Exam. Exhibit "D".

17.    The Plaintiff will suffer irreparable harm and
injury if this relief is not granted because if he is
not allowed to take the USMLE step 1 exam, now his
education will be delayed and the next exam is not
until July 27, 2006.

18.    As shown above there is a likelihood that
Plaintiff will be successful on his cause of action
for breach of contract against the school because the
school had no reason to Withdraw the Plaintiff from
its school and to renege on it obligation to sponsor
the Plaintiff for the USMCLE Step One Exam.

19.    No previous application has been made to any
Court or Judge for the relief requested herein.

Dated: July 19, 2006
       Brooklyn, New York 11232

                          George M. Gilmer, Esq.
                          943 Fourth Avenue
                          Brooklyn, New York 11232
                          718-788-0100
                          718-788-1611

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS
------------------------------------------x
Anand Dasrath,

         Plaintiff,              Index No. 15989/08

            -against-           **AFFIDAVIT IN**
                                    **SUPPORT**

Ross University School of Medicine,

         Defendant.
------------------------------------------x

STATE OF NEW YORK      )
                      )ss:
COUNTY OF NEW YORK    )

    ANAND DASRATH, being duly sworn, deposes and says

that:

1. I am the individual Plaintiff in the above-referenced

   matter and as such am fully familiar with the facts

   and circumstances set forth herein.

2. I was administratively withdrawn from the Ross

   University School of Medicine and denied the

   opportunity to take the USMLE Medical Boards Step One.

3. I am currently registered for the USMLE step 1 exam,

   although the school has informed me that they will

   withdraw their sponsorship and as a result I will not

   be able to take the test.

4. I believe that I have passed the AICM course but have

   not received a grade from the school as of yet.

**EXHIBIT A**

# A621

5. I have paid for this school semester, and I have proof of such payment for this school semester.

6. I wish to re-enroll in the school and have the Defendant sponsor me for the USMLE Step 1 Exam.

7. If I am not allowed to take this exam I will be irreparably harm and injured because I will not be allowed to pursue my medical license.

8. I will likely succeed on the merits of this action because as the documents attached to this motion show I was wrongfully withdrawn from the Defendant's school and the Defendant is wrongfully denying me sponsorship for the upcoming July 27, 2006 exam.

9. I am seeking that the school immediately reenroll me and sponsor me for the July 27, 2006 exam.

Dated: July 19 , 2006
       Brooklyn, New York

                                  _____
                                  Anand Dasrath

Sworn to before me this
19th day of July 2006

_____
NOTARY PUBLIC

**GEORGE M. GILMER**
Notary Public, State of New York
No. 02GI6093945
Qualified in New York County
Commission Expires _____

**EXHIBIT A**

COUNTY OF QUEENS
-----------------------------------X  Index No. 15989/06

ANAND DASRATH

                                        Plaintiff designates
                                        Kings County as the
                                        place of trial.
                        Plaintiff,      The basis of venue is
                                        CPLR 509.

        -against-                       SUMMONS
                                        Plaintiff resides at
                                        89-25 209th Street,
                                        Queens Village, New
                                        York, 11427

ROSS UNIVERSITY SCHOOL OF MEDICINE

                Defendant.

-----------------------------------X

ACTION FOR A BREACH OF CONTRACT

To the above named Defendant:

        YOU ARE HEREBY SUMMONED to answer the complaint
in this action and to serve a copy of your answer on
Plaintiff's Attorney within twenty (20) days after the
service of this summons, exclusive of the day of service,
where service is made by delivery upon you personally
within the State of New York, or within thirty (30) days
after completion of service where service is made in any
other manner. In case of your failure to appear or answer,
judgment will be taken against you by default for the
relief demanded in the complaint.

Dated:  July 19, 2006

                        _____

                        George M. Gilmer
                        Attorney for Plaintiff
                        943 Fourth Avenue
                        Brooklyn, NY 11232
                        718-788-0100
                        718-788-1611 Facsimile



TEL: (732) 978-8909 FAX (732) 978-5346
Email: registration@ross.edu
www.rossmed.edu

June 29, 2006

Dear Anand E Dasrath:

I regret to inform you that effective immediately you have been Administratively Withdrawn from Ross University. School of Medicine for failure to register for the May 2006 AICM course. RUSM policy dictates that students must successfully complete the AICM course and pass USMLE Step 1 before advancing into the clinical curriculum. In order for a student to remain enrolled with RUSM, they must either be registered for courses and/or registered for the Boards. Once a student becomes inactive, they are Administratively Withdrawn from RUSM.

Please be advised that if you are a recipient of federal guaranteed student loans, we must inform your lender(s) that you have not attended Ross University since the last day you attended classes or rotated in a clinical clerkship. The impact of your withdrawn status on your federal guaranteed student loans will depend on your specific situation, applicable regulations and the terms and conditions of your loan(s).

Should you ever wish to resume your studies at Ross University School of Medicine, you will be required to submit an application for re-admission to the Admissions Department and be reviewed by the Admissions Committee. To do so, please complete an Admissions application, indicating the reasons of your withdrawal, and submit it to the Admissions Office.

Best wishes in your future endeavors.

Sincerely,

Michael Rendon
University Registrar

Cc:   Bursar
      Financial Aid
      Clinical Department

**From:** emailconfirmations@thomson.com  [🔲] Add to Address Book  [🔲] Add Mobile Alert

**To:** ANAND_DASRATH@YAHOO.COM

**Subject:** Step 1 - United Stated Medical Licensing Examination Exam Confirmation

**Date:** Thu, 29 Jun 2006 09:43:12 -0400

This is an automatic email. Do not reply to this mail. If you have any
questions you must contact the Registration Center by telephone or fax
during regular operating hours.

Your appointment for the computer-based Step 1 – United Stated Medical
Licensing Examination
exam is confirmed. Please find the confirmation details that follow:

Examinee Name:            Anand Emanuel Dasrath
Examinee ID:              3761174B
Confirmation:             0000000050652630
Program:                  STEP1
Exam:                     Step 1 – United Stated Medical Licensing
Examination
Exam Date:                27 July 2006
Exam Time:                09:00 AM

rometric Test Center:
24 SEVENTH STREET
BLOCK EAST FRANKLIN AVE LOWER LEV
OWER LEVEL
ARDEN CITY, UNITED STATES - 11530

EXHIB.    Exhibit    **EXHIBIT D**    **EXHIBIT E**

**From:** Dasrath, Anand

🔲 The sender of this message has requested a read receipt. Click here to send a receipt.

**To:** Sena, Brigette                                                    **Sent:** Thu 3/9/2006 4:52 PM
**Cc:** Fernandez, Dr. Enrique; Rendon, Michael; Reardon, Rosemary; Perri, Dr. Nancy
**Subject:** Results of NBME comprehensive shell exam
**Attachments:**

Dear Students,

We have received the results of your NBME comprehensive exam. Congratulations! You have passed the exam and are now eligible to sit for the USMLE Step 1 exam. Your six-month eligibility period is April 1 – September 30, 2006. You are required to sit for the USMLE Step 1 no later than 9/30/06. You will have 3 attempts or until April 30, 2007 to pass Step 1.

If you have previously submitted a USMLE application along with a waiver, you may now schedule your USMLE Sitting date as soon as you receive your scheduling permit. Be sure to notify this office of the date you schedule.

Please see below for eligible USMLE windows and deadlines to submit USMLE applications. You will be ineligible for an extension beyond the 9/30/06 date so please plan accordingly.

| Window you may apply for | Deadline to submit application to NJ Registrar | |
|---|---|---|
| May 1 – July 31, 2006 | March 15, 2006 | * please inform me if you are choosing this window by replying to this email |
| June 1 – August 31, 2006 | April 15, 2006 | * please inform me if you are choosing this window by replying to this |
| July 1 – Sept. 30, 2006 | May 15, 2006 | * please inform me if you are choosing this window by replying to this email |

EXHIB        Exhibit F                    EXHIBIT E

JUL-25-2006 TUE 04:32 PM   GEORGE#

FAX NO. 17187881611

P. 24/30

Information regarding the examinations may be obtained from the Educational Commission for Foreign Medical Graduates (ECFMG), 3624 Market Street, Philadelphia, Pennsylvania 19104-2685. Telephone: (215) 386-5900; Fax: (215) 387-9196; Website: www.ecfmg.org

Certification by the ECFMG is required for entrance to residency training and licensure. In order to become certified, RUSM students, in addition to passing Steps 1 and 2 of the USMLE, must pass the Test of English as a Foreign Language (TOEFL) and the USMLE Step 2 Clinical Skills (Step 2 CS).

## POLICY REGARDING UNITED STATES MEDICAL LICENSING EXAMINATION (USMLE), STEPS 1 & 2

The University has adopted the following policy regarding the United States Medical Licensing Examination:

### THE USMLE STEP 1

The School of Medicine uses the USMLE Step 1 as one criteria of a student's overall knowledge necessary for entering into clinical clerkships.

Students become eligible to take the USMLE Step 1 in one of the following ways:

a) passing all courses in the Basic Science Curriculum and having a 4th semester cumulative GPA of 2.90 or higher; or

b) passing all courses in the Basic Science Curriculum and having a 4th semester cumulative GPA of 2.89 or lower, and passing the NBME Comprehensive Basic Sciences Examination at the end of the 4th semester; or

c) taking the BMS1 course and passing either the BMS1 final comprehensive examination or the NBME Comprehensive Basic Science Examination administered after the completion of the BMS1 course.

Students are required to sit for the USMLE Step 1 examination for the first time within 5 months after becoming eligible. Otherwise, the student will be administratively withdrawn.

Students are required to take and pass the USMLE Step 1 in no more than three attempts, and within one calendar year of becoming eligible.

Students who do not pass the USMLE Step 1 in three attempts within a year after becoming eligible are dismissed from the School of Medicine. Such students may apply for readmission. If granted such readmission may require additional preparation in courses taken in Dominica.

Those who receive very low scores on the USMLE in the first or second attempts may be required to repeat certain parts of the curriculum before they can be certified for another attempt. This will also

EXHIB.   Exhibit F   f

## WITHDRAWALS

Students who have been withdrawn (by student request or administrative action) must apply for readmission if they wish to return to the School. Such readmission must be reviewed by the Promotions Committee and is not guaranteed. They will be subject to all academic policies and tuition and fees then in effect, without any "grandfathering" provisions based on their original admission.

## STUDENT WITHDRAWALS

Students may not withdraw from a single course during a semester; they must withdraw completely from the School. Basic Science students may begin the withdrawal process by obtaining a withdrawal form from the Campus Registrar's Office in Dominica, and appropriate clearances from the Library, Financial Aid Office, and the Dean of Academic Administration and Student Affairs. Such students will receive W, WP, or WF on their transcripts depending on whether they were passing or failing a course at the time of their withdrawal, as specified under the *Student Grading and Promotions Policies* section of this Handbook.

Refunds, if required, will be determined by the last day of attendance in an academically related activity.

Those who received WF in any of their courses at the time of withdrawal will be reviewed by the Promotions Committee to determine whether they are eligible for readmission.

Students who were failing one or more courses at the time of withdrawal will be on academic probation if they are readmitted.

These students will also be on financial aid probation, and will not receive funds to continue if they are still on academic probation in the succeeding semester.

## ADMINISTRATIVE WITHDRAWALS

The University Registrar enters an administrative withdrawal in the student's record when any of the following apply. The student:

- does not return to the campus to register for the following semester and attend classes in Week One of a semester.

- does not return at the time specified for the end of an approved leave.

- is not scheduled for a clinical rotation for a period of 30 days or more and has not applied for and received an approved academic leave of absence.

All students who are administratively withdrawn will be reported as withdrawn effective as of the last day they attended classes. The date of withdrawal will be reported to the U.S. Department of Education, if these students had Stafford loans.

**EXHIBIT G**

Case 11-2531, Document 55, 10/07/2011, 412566, Page120 of 243

**A628**

| | | |
|---|---|---|
| 9-JAN-06 Bond Caterers co KEAN | 10,972.50 | 200620 |
| 9-JAN-06 Staff, James, Fall/Spring | 4,850.00 | 200626 |
| 9-JAN-06 Staff, Sue, Fall/Spring | 4,532.50 | 200620 |
| 9-JAN-06 Alt Loan, Fall/Spring/Summer | 12,000.00 | 200620 |
| 9-JAN-06 Sem SM AICN Tuition, Wed 12wks | 16,156.00 | 200420 |
| TOTAL: | 20,972.50 20,972.50 | |

EXHIBIT A

Queens County Cl...
Paym #303009M    07/31/2006 11:0...
Th... 20 ........

                                        $45.30

Tr#10671334 $45.30
Notice of Motion/Cross Motion
15903/2006   DASRATH.ANAND vs. RO
15903/2006   DASRATH.ANAND vs. ROS
                                        $95.30

Tr#10671314 $95.30
All
15903/2006   DASRATH.ANAND vs. RO
15903/2006   DASRATH.ANAND vs. ROS
                                        $140.30

Total:

037303.Check                           $140.30
Change:                                 $0.30

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS
----------------------------------------------------------------- X

ANAND DASRATH,                                          Index No. 15989/06

                                  Plaintiff,            **ORDER WITH**
                                                        **NOTICE OF ENTRY**

          - against -

ROSS UNIVERSITY SCHOOL OF MEDICINE,


                                  Defendant.
-----------------------------------------------------------------X

S I R S :

          PLEASE TAKE NOTICE, that the within is a true copy of an Order duly entered in the

Office of the Clerk of the County of Queens, on February 5, 2007.

Dated:  Garden City, New York
        February 9, 2007


                                        CULLEN AND DYKMAN LLP

                         By: _____
                                        Jennifer A. McLaughlin
                                        Attorneys for Defendant
                                        100 Quentin Roosevelt Boulevard
                                        Garden City, New York 11530
                                        (516) 357-3700


To:


Stephen Kutner, Esq.
Kutner & Gurlides, Esqs.
Attorneys for Plaintiff
300 Old Country Road, Suite 311
Mineola, New York 11501

# A631

Case 1:07-cv-02433-CBA -RER   Document 94-17   Filed 04/28/11   Page 3 of 3

Short Form Order

**ORIGINAL**

## NEW YORK SUPREME COURT - QUEENS COUNTY

PRESENT:   ROGER N. ROSENGARTEN,
                              JUSTICE.

PART IAS 23

-----------------------------------------------------------------x

ANAND DASRATH,

Index No. 15989/06

                                        Plaintiff,

Motion Date: 11/22/06

                  -against-

Calendar No. 8

ROSS UNIVERSITY SCHOOL OF MEDICINE,

                                        Defendant.

-----------------------------------------------------------------x

The following papers numbered 1 to 7 read on this motion to dismiss.

Defendant's Notice of Motion to Dismiss - Affidavit of Nancy A. Perri -
   Exhibits - Defendant's Memorandum of Law.....................................................1 - 4
Affidavit in Opposition...............................................................................................5
Reply Affidavit of Enrique Fernandez in Support of Defendant's Motion to
   Dismiss - Exhibits...............................................................................................6 - 7

Defendant's motion to dismiss the action is granted due to plaintiff's failed to properly serve and file the summons and complaint in this action.  The court thus does not have jurisdiction over defendant.  Plaintiff avers that he is sure his former attorney has properly served defendant but plaintiff has failed to acquire any affidavit of service and asks the court to find it in its stead.   Plaintiff has failed to take any other step to correct this procedural, yet, very significant defect.  Accordingly, it is hereby

**ORDERED**, that the motion is granted and the complaint of said plaintiff, ANAND DASRATH, is dismissed as against said defendant ROSS UNIVERSITY SCHOOL OF MEDICINE; and it is further

**ORDERED**, that the Clerk of the Court is authorized to enter judgment in accordance with the above.

ENTER,

Dated _____1/31/07_____

ROGER N. ROSENGARTEN, J.S.C.

2007 FEB -5  P 1: 24
FILED
QUEENS COUNTY CLERK

H:\Civil Decisions\Dismissal\15989_00.wpd

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------X

ANAND DASRATH,                                    Case No.: CV 07-2433
                                                  (CBA)
                            Plaintiff,            (RER)

            -against-

ROSS UNIVERSITY SCHOOL OF MEDICINE,               **CERTIFICATE OF AUTHENTICITY
                                                  OF BUSINESS RECORDS
                            Defendant.            PURSUANT TO FEDERAL
                                                  RULE OF EVIDENCE 902(11)**

---------------------------------------------------------X

        I, William C. Kelly, attest, under penalties of perjury under the laws of the United

States of America pursuant to 28 U.S.C. Section 1746 that the information contained in this

declaration is true and correct. I am employed by the Educational Commission for Foreign

Medical Graduates ("ECFMG"), and my official title is Associate Vice President for Operations.

I am a custodian of records for such business entity. I state that each of the records attached

hereto is a true and correct copy of an original record in the custody of ECFMG, and that I am

the custodian of the attached records consisting of ___586___ pages.

        I further state that:

A.     such records were kept in the course of a regularly conducted business
        activity of ECFMG; and

B.     any such records created by ECFMG were done so in the course of its
        regular business activities.

_November 10, 2010_
Date

_____
William C. Kelly

**A633**

 **ECFMG®** | EDUCATIONAL COMMISSION FOR
FOREIGN MEDICAL GRADUATES

3624 Market Street
Philadelphia PA 19104-2685 USA
215-386-5900 ⋮ 215-386-9767 Fax
www.ecfmg.org

Personal and Confidential
Via Federal Express

October 9, 2009

Mr. Anand Emanuel Dasrath
89-25 209 St.
Queens Village, NY 11427

Re: USMLE®/ECFMG® Identification No. 0-704-162-7

Dear Mr. Dasrath:

On behalf of the Educational Commission for Foreign Medical Graduates (ECFMG) Medical Education Credentials Committee, I am writing to inform you the Committee has completed its review of the allegation you engaged in irregular behavior in connection with your failure to notify ECFMG of a change in your eligibility after you applied but before you took the United States Medical Licensing Examination® (USMLE) Step 1 on July 27, 2006, and in your taking the USMLE Step 1 on July 27, 2006 when you were not eligible to take this examination. The ECFMG Committee reviewed this matter at its October 1, 2009 meeting.

In advance of the review, the members of the Committee were provided with the documents listed in my August 9, 2007, March 12, 2008, June 6, 2008 and August 13, 2009 letters.

The ECFMG Committee considered the documentation presented to it. Following careful review, the ECFMG Committee determined that you had engaged in irregular behavior in connection with your failure to notify ECFMG of a change in your eligibility after you applied but before you took the USMLE Step 1 on July 27, 2006, and in your taking the USMLE Step 1 on July 27, 2006 when you were not eligible to take this examination. The ECFMG Committee took action to bar you from admission to all ECFMG examinations and from ECFMG Certification for a yet to be specified period of time, to refer this matter to the USMLE Committee on Irregular Behavior and Score Validity, and to review this matter again after the USMLE Committee's decision.

In accordance with ECFMG policies and procedures, a permanent annotation that you engaged in irregular behavior will be included in your ECFMG record. This annotation shall appear on your ECFMG Certification Verification Service (CVS) Report and ECFMG Status Report. Additional information explaining the basis for the finding of irregular behavior and the resulting action will accompany every ECFMG Status Report and CVS Report and may also be provided to legitimately interested entities. In addition, ECFMG will report the determination of irregular behavior and bar from

**ECFMG AED - 000198**

ECFMG® is an organization committed to promoting excellence in international medical education.

Mr. Anand Emanuel Dasrath
October 9, 2009
Page 2

admission to all ECFMG examinations and from ECFMG Certification to the Federation
of State Medical Boards, state medical licensing authorities, directors of graduate
medical education programs, and other interested entities.

As noted in the enclosed ECFMG Rules of Appellate Procedure, decisions of the
ECFMG Medical Education Credentials Committee may be appealed within the 60-day
time period specified.

If you have any questions, please telephone me at (215) 823-2277 or e-mail me
at bkelly@ecfmg.org.

Sincerely,

William C. Kelly
Associate Vice President for Operations

/wck
Enclosure

cc: Bradley M. Zelenitz, Esq.

ECFMG AED - 000199

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

ANAND DASRATH,                                    Case No.: CV 07 2433

                       Plaintiff,                  (C. Amon)
                                                  (R. Reyes)

      - against -

ROSS UNIVERSITY SCHOOL OF MEDICINE,

                         Defendant.

------------------------------------------------------------------X

### MEMORANDUM OF LAW IN SUPPORT OF ROSS UNIVERSITY SCHOOL OF MEDICINE'S SUMMARY JUDGMENT MOTION PURSUANT TO RULE 56



                               **Garden City Center**
                  **100 Quentin Roosevelt Boulevard**
                 **Garden City, New York 11530-4850**
                    **Telephone (516) 357-3700**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... ii

PRELIMINARY STATEMENT ............................................................................... 1

FACTUAL BACKGROUND .................................................................................... 1

PROCEDURAL BACKGROUND ............................................................................ 2

STANDARD OF REVIEW ....................................................................................... 3

ARGUMENT      PLAINTIFFS' CONTRACT CLAIM FAILS AS A MATTER OF
             LAW SINCE THE UNIVERSITY HAS FOLLOWED ITS
             ESTABLISHED POLICIES AND PROCEDURES AND HAS
             NOT ACTED IN BAD FAITH OR CONTRARY TO LAW ................... 4

       A.    Ross University followed its Policies and Procedures When
             Administratively Withdrawing Plaintiff for Failing to Remediate a
             Failing Grade in the AICM Class ............................................................. 7

       B.    Ross University's Administration of Grades to Plaintiff Was
             Neither Contrary to any Policy Nor Arbitrary or Capricious ...................... 8

       C.    Allegations Concerning the Release of Plaintiff's USMLE Step 1
             Exam Score Cannot Form the Basis of a Breach of Contract Claim
             Against Ross University .......................................................................... 10

CONCLUSION ...................................................................................................... 11

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986)..........................................3

*Babiker v. Ross Univ. Sch. of Med.*, 2000 U.S. Dist. LEXIS 6921, at *3-*10, *25-*26
   (S.D.N.Y. 2000), *aff'd* 2004 U.S. App. LEXIS 1118 (2d Cir. 2004) ........................5-6

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ...........................................3

*D'Amico v. City of New York*, 132 F. 3d 145, 149 (2d Cir. 1998) ......................................4

*Fradd-Wolff v. Vassar Coll.*, 932 F. Supp. 88, 92-93 (S.D.N.Y. 1996) ............................6

*Gally v. Columbia Univ. in N.Y. City*, 22 F. Supp.2d 199 (S.D.N.Y. 1998).......................3

*Keles v. New York Univ.*, 1994 U.S. Dist. LEXIS 4202, at *20-*22
   (S.D.N.Y. 1994) ...............................................................................4, 6-7

*Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).......3

*Susan M. v. N.Y. Law Sch.*, 76 N.Y.2d 241, 245, 556, N.E.2d 1104, 1106 (1990) ............4

**Statutes**

Fed. R. Civ. P. 56(e) ...........................................................................................3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
ANAND DASRATH,                                          Case No.: CV 07 2433
                                                        (C. Amon)
                                                        (R. Reyes)
                                    Plaintiff,

              - against -

ROSS UNIVERSITY SCHOOL OF MEDICINE,

                                    Defendant.
--------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF ROSS UNIVERSITY SCHOOL OF MEDICINE'S SUMMARY JUDGMENT MOTION PURSUANT TO RULE 56

### PRELIMINARY STATEMENT

This memorandum of law is submitted on behalf of Defendant Ross University

School of Medicine ("Defendant" or "Ross University") in support of its motion for

summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Plaintiff's amended complaint in this action contains one cause of action for breach of

contract as the remaining causes of action were dismissed by this Court on May 7, 2010.

(SMF 9)[1]. For the reasons set forth herein, Plaintiff's breach of contract cause of action

should also be dismissed.

### FACTUAL BACKGROUND

Ross University is a medical school located on the island of Dominica in the West

Indies.  For foreign medical school graduates to become licensed to practice medicine in

the United States, students are required to take several qualifying exams.  The United

States Medical Licensing Examination Step 1 ("USMLE Step 1 Exam") is the first of

several exams required to be taken by foreign medical school students.  To be eligible to

---

[1]    All references to defendant's Statement of Material Facts are referred to herein as "SMF."

1

sit for the USMLE Step 1 Exam, a student is required to (among other prerequisites) take and successfully complete a prerequisite class known as Advanced Introduction to Clinical Medicine ("AICM") and be enrolled at the university.

Plaintiff was enrolled as a student at Ross University during the spring semester of 2006 and was a student in the AICM course. *See* Amended Complaint at ¶ 6. At the same time, Plaintiff was applying to take the USMLE Step 1 Exam. However, his eligibility to sit for the USMLE Step 1 Exam was revoked when Plaintiff received his failing grade in the AICM course and failed to return to campus to remediate the failed course. Plaintiff disputes his failing grade in the class. *Id.* at ¶ 10.

Plaintiff was also administratively withdrawn from enrollment at Ross University when he failed the required AICM class and did not re-take it. *Id.* at ¶¶ 8-9. Plaintiff *believes* that "his grades were changed, withheld, and/or inaccurately reported." *Id.* at ¶ 10. His supposition does not support a breach of contract claim against Ross University and is insufficient to defeat a motion for summary judgment.

## PROCEDURAL BACKGROUND

On June 15, 2007, Plaintiff filed a complaint against Ross University (the "Original Complaint") and Ross University moved to dismiss. The motion was referred by this Court to Magistrate Ramon E. Reyes who issued a Report and Recommendation dated August 6, 2008 (the "Report and Recommendation") dismissing the Original Complaint in its entirety. (Docket Entry 40). On March 31, 2009, this Court adopted, in part, the Report and Recommendation allowing Plaintiff leave to amend his pleading. (Docket Entry 45).

Plaintiff filed an Amended Complaint on June 18, 2009. Ross University moved to dismiss the Amended Complaint and this Court granted its motion to dismiss all claims except the breach of contract cause of action. (Docket Entry 67). That remaining cause of action, as will be shown more fully below, is nothing more than a claim by a disgruntled student that he should have passed a course that he failed. *Gally v. Columbia Univ. in N.Y. City*, 22 F. Supp.2d 199, 206 (S.D.N.Y. 1998) ("not every dispute between a student and a university is amenable to a breach of contract claim…"). As such, Plaintiff's Amended Complaint sounding in breach of contract should be dismissed.

## STANDARD OF REVIEW

Ross University is entitled to judgment as a matter of law since there are no genuine issues of material fact before the Court. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Summary judgment may be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Plaintiff may not rest upon mere allegations in his pleading. See Fed. R. Civ. P. 56(e). Plaintiff must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Specifically, Plaintiff will need to proffer "some hard evidence showing that its version of the events is not wholly fanciful." *D'Amico v. City of New York*, 132 F. 3d 145, 149 (2d Cir. 1998). It is respectfully submitted that Plaintiff will be unable to survive summary judgment as the only "evidence" presented by Plaintiff in discovery was wholly fanciful.

3

## ARGUMENT

**PLAINTIFF'S CONTRACT CLAIM FAILS AS A MATTER OF LAW
SINCE THE UNIVERSITY HAS FOLLOWED ITS ESTABLISHED POLICIES
AND PROCEDURES AND HAS NOT ACTED IN BAD FAITH
OR CONTRARY TO LAW**

It is well-settled that courts will not intervene in an educational institution's decisions regarding a student's academic performance. *Susan M. v. N.Y. Law Sch.*, 76 N.Y.2d 241, 245, 556, N.E.2d 1104, 1106 (1990) ("[s]trong policy considerations militate against the intervention of courts in controversies relating to an educational institution's judgment of a student's academic performance.") In *Keles v. New York Univ.*, 1994 U.S. Dist. LEXIS 4202, at *20-*22 (S.D.N.Y. 1994), the court, in reviewing a student's breach of contract claim against a defendant university, noted:

> although the relationship between [plaintiff-student] and [defendant-university] may be analyzed as a contractual one, it is well established under New York law that judicial review of a university's academic decisions is limited to a determination of whether the university acted arbitrarily, capriciously, irrationally, in bad faith or contrary to law

> . . .[t]o determine whether a university has acted in bad faith, arbitrarily or capriciously, its actions must be judged against its own stated policies and regulations. Generally, however, determinations regarding a student's academic performance are entitled to great deference and are rarely found to be arbitrary, as such determinations require the special expertise of educations and play an important role in preserving the integrity of the credentials conferred by the educational institution. (internal citations omitted).

As such, a plaintiff-student asserting a breach of contract claim against a university must demonstrate that the university acted arbitrary, capriciously and against

4

its own stated policies and regulations in order to defeat summary judgment.   For example, in *Babiker v. Ross Univ. Sch. of Med.*, 2000 U.S. Dist. LEXIS 6921, at *25-*26 (S.D.N.Y. 2000), *aff'd* 2004 U.S. App. LEXIS 1118 (2d Cir. 2004) summary judgment was awarded on plaintiff's breach of contract claim since the university acted in accordance with the procedures set forth in its Handbook, and, as such, "no rational jury could find that the university acted in an arbitrary or irrational manner in dismissing [plaintiff]." *Id.*  Strikingly similar to Plaintiff's claim in this case, the plaintiff in *Babiker* alleged that the university had breached its contract with plaintiff by wrongly and unjustly dismissing him and refusing to award him a medical degree. *Babiker,* 2000 U.S. Dist. LEXIS 6921, at *3-*10.   However, the court noted that a university will not be found liable for breach of contract if it acted in accordance with the procedures set forth in its handbook and did so in a way that was not arbitrary and capricious. *Id.* at 22.

In *Babiker*, the Student Handbook required that students take and pass portions of the USMLE in three attempts.   If not, the student would be expelled.   The Student Handbook also required that a student to be in good standing in order to participate in clinical studies.   Despite these requirements, the plaintiff, who had failed portions of the USMLE three times, continued to participate in clinical studies, and then was expelled for doing so. Plaintiff sued defendant for a number of things, including breach of contract. Plaintiff alleged that the defendant had breached its contract with plaintiff for wrongly and unjustly dismissing him and refusing to award him a medical degree. *Babiker,* 2000 U.S. Dist. LEXIS 6921, at *3-*10.

The Court's holding first discussed the "implied contract" that arises between a student and a university when the student enrolls, such that if a student complies with the

5

terms prescribed by the university, he will obtain the degree he seeks. *Id.* at *22. Implicit in this contract is an understanding that the university will not act in an arbitrary and capricious manner. *See id.*  Since the university followed the procedures in its Student Handbook, and in so doing did not act in an arbitrary and capricious manner, the university was granted summary judgment dismissing plaintiff's complaint, including his breach of contract claim in its entirety.

Similarly, in *Fradd-Wolff v. Vassar Coll.*, 932 F. Supp. 88 (S.D.N.Y. 1996), plaintiff sued defendant university alleging that defendant had breached a contract between plaintiff and defendant, as plaintiff alleged that defendant had failed to follow procedures outlined in its student handbook with regard to investigating and adjudicating a disciplinary charge against plaintiff. Defendant moved for summary judgment on this claim.   The Court granted defendant's motion for summary judgment because "the undisputed facts indicate that it substantially observed its established procedures in investigating and adjudicating the charge against plaintiff." *Id.* at 92. Further, plaintiff, in opposition, had failed to demonstrate a question of fact as to whether defendant substantially observed its established procedures. *Id.* at 93.

Moreover, in *Keles*, 1994 U.S. Dist. LEXIS 4202, plaintiff sued defendant for terminating him from its graduate school after plaintiff had failed a qualifying test a number of times.  Plaintiff sued for breach of contract, arguing that he had a contract with defendant as set forth in the defendant's Guidelines which, when plaintiff had started at the school, permitted him to take the exam an indefinite number of times, but then were amended over time to limit the amount of times the exam could be taken. *Id.* at *19. After analyzing the Guidelines (the original and amended) the Court found that defendant had

6

acted in accordance with all of them as even the original required him to pass the exam within a certain amount of time despite allowing him to take it an indefinite number of times. *Id.* Thus, treating defendant's motion to dismiss as a summary judgment motion, the Court granted defendant summary judgment.

The law is clear that without evidence that a university acted in an arbitrary or capricious manner and in contravention of its stated policies and procedures, a student's breach of contract claim will not withstand summary judgment.  Plaintiff's allegations that Ross University breached a contractual relationship with him by (1) failing to timely report his grade; (2) issuing an administrative withdrawal; (3) preventing him to sit for the USMLE Step 1 Exam; and (4) improperly withholding Plaintiff's USMLE Step 1 Exam score is devoid of merit.

**A.    Ross University Followed its Policies and Procedures
When Administratively Withdrawing Plaintiff for
Failing to Remediate a Failing Grade in the AICM Class**

The Student Handbook provides that an administrative withdrawal is required when a student does not return to campus to register for the following semester. *See* Fernandez Affidavit, Exh. D, p. 23.  If a student fails a course, he or she must re-register for that course to remediate the failing grade or else they are considered academically withdrawn from the university. *See* Fernandez Aff. ¶ 21-22.  Plaintiff was well aware of this requirement, as he had failed courses prior to his academic withdrawal and took those courses over immediately after the failing grade was issued in order to remain enrolled in the university. *See* McLaughlin Aff., Exh. L, p. 32.  It is undisputed that to remediate a failing grade one must re-take the course and failure to return to campus to re-register and take that course will result in academic withdrawal.

7

As demonstrated in the Fernandez Affidavit, Plaintiff failed the Advanced Introduction to Clinical Medicine ("AICM") course.  Plaintiff learned of and discussed his failing AICM grade with his professor on April 24, 2006.  *See* Fernandez Aff. ¶¶ 15, Exh. B.  He discussed the fact that he would need to re-register to take the AICM course that began in the semester commencing on May 22, 2006 to ameliorate the failing grade. *See* Fernandez Aff. ¶17 and Exh. C.   Plaintiff never registered to take the AICM course and instead chose a course of action to challenge that failing grade in a court of law that resulted in the state court litigation commenced in July 2006 (which was dismissed) and ultimately the action commenced in this Court.  *See* Fernandez Aff. ¶19 and Exh. C. Failing to return to campus to register to take the AICM course in the semester following his failure of the AICM course resulted in academic withdrawal in accordance with the Student Handbook.  *See* Fernandez Aff. ¶21 and Exh. D, p.23.  Moreover, by failing the AICM course Plaintiff was not eligible for a sixteen-week vacation break afforded to students in good standing who successfully complete the AICM course and during which time they remain fully enrolled.  *See* Fernandez Aff. ¶¶48-49.  Thus, it cannot be said that Ross University breached any agreement by issuing the academic withdrawal based on Plaintiff's failure to return to campus and register to take the AICM course commencing on May 22, 2006.

**B.      Ross University's Administration of Grades to Plaintiff**
         **Was Neither Contrary to any Policy Nor Arbitrary or Capricious**

Dr. Fernandez taught the AICM course  from January 16, 2006 to April 7, 2006. Out of 1,000 possible points for the AICM, Plaintiff received 426.6, which is a failing grade.  *See* Fernandez Aff. ¶ 11, Exh. A.  This grade was posted on "eCollege" which is a secure website by which students can review their grades.  As previously discussed,

Plaintiff acknowledged receiving this grade in an email to Dr. Fernandez dated April 22, 2006 wherein Plaintiff responded to Dr. Fernandez' email alerting all students that the AICM course grades were posted on eCollege.  Dr. Fernandez spoke with Plaintiff via telephone and during that conference the failing grade was discussed as well as the fact that Plaintiff needed to repeat the AICM course in the semester starting on May 22, 2006. *See* Fernandez Aff. ¶ 15, Exh. C.  There is nothing in the record to suggest that issuance of the failing grade, and posting the failing grade within two weeks after the conclusion of the AICM course via eCollege defied any practice or policy or was arbitrary or capricious.

In the same vein, there is nothing in the record that would suggest that grades are required to be transmitted to students via any other method, including via transcript.  In fact, there is nothing in the Handbook that requires Ross University to administer transcripts to students in any timeframe or at all.  *See* Fernandez Aff. ¶60.  Ross University issues school transcripts as a courtesy to its students either on request or by regular mailings. *See* Fernandez Aff. ¶52.  As mentioned, individual course grades are available through eCollege in advance of the grade being available on an official school transcript. *See* Fernandez Aff. ¶ 53.  Thus, under no circumstance could the method or timeliness of the administration of the AICM grade to Plaintiff amount to breach of any contract and as such Plaintiff's breach of contract claim should be dismissed as a matter of law.

C.    **Allegations Concerning the Release of Plaintiff's**
      **USMLE Step 1 Exam Score Cannot Form the**
      **Basis of a Breach of Contract Claim Against Ross University**

The USMLE Step 1 Exam, administered by an entity known as the Educational Commission for Foreign Medical Graduates ("ECFMG"), is one of several qualifying exams which foreign medical school graduates must complete and pass before becoming licensed to practice medicine in the United States. *See* Fernandez Aff. ¶ 25. It is not administered by Ross University. Ross University provides information on a student's application to take the exam that would reflect whether certain information on the application is accurate and whether, *at the time of the application*, the applicant is "officially enrolled" or "a graduate" of Ross University. *See* Fernandez Aff. ¶29. As demonstrated in the Fernandez Affidavit, at the time Plaintiff applied for the USMLE Step 1 Exam, Plaintiff was enrolled at Ross University. *See* Fernandez Aff. ¶ 31-33.

However, by the time the exam was administered, Plaintiff was administratively withdrawn from the university as a result of his failing grade in the AICM course, and his failure to re-register to re-take the failing class. *See* Fernandez Aff. ¶¶ 22-23, Exh. E. Successful completion of the AICM course and enrollment at the university is a prerequisite to taking the USMLE Step 1 Exam. Fernandez Aff. ¶¶ 35 and 37. Despite these requirements, Plaintiff sat for the exam anyway and asserts in this lawsuit that Ross University improperly failed to sponsor him to take the exam and that Ross University is improperly withholding release of Plaintiff's USMLE Step 1 Exam score in breach of an unidentified contract to perform such tasks. As demonstrated above, Plaintiff became ineligible for the exam when his status at Ross University changed and he was no loner enrolled at the university. Thus, Ross University could no longer "sponsor" Plaintiff to

take the exam.   With regard to the release of his score, it should be noted that the examining board (ECFMG) has determined that Plaintiff engaged in "irregular behavior" in connection with his failure to notify ECFMG of a change in Plaintiff's eligibility to take the USMLE Step 1 Exam and has barred Plaintiff admission to all ECFMG administered examinations.   *See* McLaughlin Aff, Exh. E.   Any claim that ECFMG has improperly withheld examination scores lies with ECFMG and not Ross University.

<div align="center">

**CONCLUSION**

</div>

Based on the foregoing, Ross University respectfully submits that its motion for summary judgment pursuant to Rule 56 dismissing Plaintiff's breach of contract claim be granted in its entirety.

Dated:  Garden City, New York
         March  3, 2010

<div align="right">

Respectfully submitted,

CULLEN AND DYKMAN LLP

</div>

By: _____
    Jennifer A. McLaughlin (JM 5678)
    Attorneys for Defendant
    100 Quentin Roosevelt Boulevard
    Garden City, New York 11530

Of Counsel:
Jennifer A. McLaughlin (JM 5678)
Justin F. Capuano (JC 5853)

11

**A649**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X

ANAND DASRATH,                                              Case No.: CV 07 2433
                                                            (C. Amon)
                                                            (R. Reyes)
                                       Plaintiff,

              - against -

ROSS UNIVERSITY SCHOOL OF MEDICINE,


                                       Defendant.
--------------------------------------------------------------X

## STATEMENT OF MATERIAL FACTS
## PURSUANT TO LOCAL RULE 56.1

        Defendant, Ross University School of Medicine ("Ross" or "Ross University"), by and

through its attorneys, Cullen and Dykman LLP, submits the following Statement of Material

Facts of which it contends there is no genuine issue, in accordance with Local Rule 56.1:

### PARTIES

        1.      Plaintiff is an individual residing in Queens County, New York and was a

medical student at Ross University from May 2004 to May 22, 2006 at which time he was

administratively withdrawn from Ross University because he failed a required course and did

not re-enroll to remediate the failing grade the semester immediately following.  (Amended

Compl. ¶5; Affidavit of Doctor Enrique S. Fernandez sworn to on February 27, 2011 (the

"Fernandez Affidavit") ¶ 6).

        2.      Ross University is a corporation organized and existing under the laws of the

Commonwealth of Dominica in the Eastern Caribbean with its principal office located at Ross

University Boulevard, Portsmouth, Dominica, West Indies.  (Fernandez Affidavit ¶ 2).

1

3.      Doctor Nancy Perri is and at all times referenced in the Amended Complaint was the Vice President of Academic Affairs at Ross University.  (Fernandez Affidavit ¶ 4).

4.      Doctor Enrique S. Fernandez is the Senior Associate Dean for Clinical Sciences at Ross University.  (Fernandez Affidavit ¶ 1).

5.      In 2006, Dr. Fernandez was the Associate Dean for Clinical Sciences and Director of the Advanced Introduction to Clinical Medicine course ("AICM").  (Fernandez Affidavit ¶ 3).

## THE COMPLAINT

6.      The original complaint in this action was filed with the United States District Court for the Eastern District of New York on June 15, 2007 (Docket Entry 1) which was dismissed with leave to re-file an amended complaint.  (Docket Entry 45).

7.      The Amended Complaint was filed with this Court on June 18, 2009.  (Docket Entry 56).

8.      The Amended Complaint was also subject to a motion to dismiss. (Docket Entry 64).

9.      This Court's order of May 7, 2010 dismissed three of the four causes of action in the Amended Complaint.  (Docket Entry 67).

10.     The only surviving cause of action in the Amended Complaint alleges that Ross University breached an alleged contractual agreement with Plaintiff.  (Amended Compl. ¶ 19-23).

11.     Plaintiff alleges in the Amended Complaint that Ross University breached an alleged contract with Plaintiff by: (1) failing to accurately record his grades; (2) administratively withdrawing Plaintiff; and (3) withdrawing its sponsorship of Plaintiff to take

**A651**

the U.S. Medical Licensing Examination, Step One Exam (the "USMLE Step 1 Exam").
(Amended Compl. ¶ 19-23).

## THE AICM COURSE

12.     Ross University's academic year is divided into trimesters.  (Fernandez
Affidavit ¶ 9).

13.     In their fifth semester, students take the AICM course.  (Affidavit of Jennifer A.
McLaughlin sworn to on March 3, 2011 (the "McLaughlin Affidavit"), Exhibit M, Perri Dep. at
pg. 24, ln. 20-22); (Fernandez Affidavit ¶ 9).

14.     Plaintiff took the AICM course taught by Dr. Fernandez from January 16, 2006
to April 7, 2006.  (Fernandez Affidavit ¶ 10).

15.     Out of 1,000 possible points for the AICM, Plaintiff received 426.6, which is a
failing grade.  (Fernandez Affidavit ¶ 11 and Exhibit A).

16.     After students complete a course and grades are finalized, their grades are
posted on "eCollege" for the students to view.  (Fernandez Affidavit ¶ 12).

17.     ECollege is a system whereby students can log in to a secured website to review
their grades.  (Fernandez Affidavit ¶ 12).

18.     Plaintiff learned of his failing AICM grade via eCollege at least as early as April
22, 2006.  (Fernandez Affidavit ¶ 13-14 and Exhibit B; McLaughlin Affidavit, Exhibit L,
Dasrath Dep. at pg. 77, ln. 14-17; pg. 79, ln. 8-11).

19. .     On April 22, 2006 Plaintiff acknowledged via email that he saw his "failing
grade" in the AICM course and asked Dr. Fernandez to review Plaintiff's failing AICM grade.
(Fernandez Affidavit ¶ 14 and Exhibit B).

20.      Plaintiff admits that he learned of his failing grade before sending the April 22nd email to Dr. Fernandez.  (McLaughlin Affidavit, Exhibit L, Dasrath Dep. at pg. 89, ln. 19-22).

21.      On April 24, 2006 Plaintiff participated in a telephone conversation with Dr. Fernandez regarding Plaintiff's failing AICM grade.  (Fernandez Affidavit ¶ 15; McLaughlin Affidavit, Exhibit L, Dasrath Dep. at pg. 80, ln. 12- pg. 81, ln. 14).

22.      Dr. Fernandez reviewed Plaintiff's failing grade prior to the April 24, 2006 telephone conversation with Plaintiff.  (Fernandez Affidavit ¶ 16).

23.      In the April 24, 2006 telephone conversation Dr. Fernandez discussed with Plaintiff, among other things, Plaintiff re-taking the class in the semester scheduled to begin on May 22, 2006 as reflected in a memorandum memorializing the discussion.  (Fernandez Affidavit ¶ 17 and Exhibit C).

24.      Plaintiff also discussed his failing grade with Dr. Perri, the Vice President of Academic Affairs, on May 8, 2006.  (McLaughlin Affidavit, Exhibit L, Dasrath Dep. at pg. 83, ln. 18 – pg. 84, ln. 13; Exhibit M, Perri Dep. at pg. 49, ln. 9-13; Plaintiff's Exhibit 1).

25.      Plaintiff does not dispute that he received his failing grade via eCollege on or before April 22, 2006.  (McLaughlin Affidavit, Exhibit L, Dasrath Dep. at pg. 77, ln. 14-17; pg. 79, ln. 8-11).

26.      Plaintiff never registered to re-take the AICM course. (Fernandez Affidavit ¶ 19).

27.      Plaintiff believes he should have passed the AICM course and calls the grade he received "phony."  (McLaughlin Affidavit, Exhibit L, Dasrath Dep. at pg. 114, ln. 10-23).

Case 1:07-cv-02433-CBA -RER   Document 94-22   Filed 04/28/11   Page 5 of 11

## PLAINTIFF'S ADMINISTRATIVE WITHDRAWAL

28.    The Ross University Student Handbook of Academic Rules and Regulations ("Handbook") provides that an administrative withdrawal is required when the student does not return to campus to register for the following semester. (Fernandez Affidavit ¶ 21, Exhibit D at pg. 23).

29.    If a student fails a course, they need to re-register for that course in order to remediate the failing grade or else they are academically withdrawn from Ross University. (Fernandez Affidavit ¶ 21 and Exhibit D at pg. 23; McLaughlin Affidavit, Exhibit M, Perri Dep. pg. 73, ln. 4-16).

30.    Plaintiff admits that if a student fails a course at Ross University, that student is required to repeat the course. (McLaughlin Affidavit, Exhibit L, Dasrath Dep. at pg. 32, ln. 18-21).

31.    Plaintiff had failed courses at Ross University prior to failing the AICM and acknowledges having to repeat those classes the semester following the failed course. (McLaughlin Affidavit, Exhibit L, Dasrath Dep. at pg. 32, ln. 19-21).

32.    Plaintiff admits he never registered to retake the AICM course. (McLaughlin Affidavit, Exhibit L., Dasrath Dep. at pg. 111, ln. 5-21;  Dasrath Dep. at pg. 126, ln. 6-12).

33.    Plaintiff believes he did not need to re-register for the AICM course because he passed the AICM course. (McLaughlin Affidavit, Exhibit L., Dasrath Dep. at pg. 153, ln. 12-21).

34.    Plaintiff's failure to reregister and attend the AICM course that began on May 22, 2006 required Plaintiff to be administratively withdrawn from Ross University. (Fernandez Affidavit ¶ 22 and Exhibit D at p. 23).

35.     Plaintiff was notified of the administrative withdrawal on June 29, 2006 by letter. (Fernandez Affidavit ¶ 23 and Defendant's Exhibit E).

36.     Plaintiff was never denied the opportunity to return to Ross University to continue his studies – he just chose not to.  (McLaughlin Affidavit, Exhibit L, Dasrath Dep. at pg. 122, ln. 5- pg. 123, ln. 3).

## USMLE STEP ONE EXAM

37.     The USMLE Step 1 Exam, administered by an organization called Educational Commission for Foreign Medical Graduates ("ECFMG"), is one of several qualifying exams which foreign medical school graduates must complete and pass before becoming licensed to practice medicine in the United States.  (Fernandez Affidavit ¶ 25).

38.     Ross University students apply to sit for the USMLE Step 1 Exam while their fifth semester AICM course is in progress.  (Fernandez Affidavit ¶ 26).

39.     Students must be enrolled at Ross University both at the time they apply to take the examination and on the date the examination is administered.  (Fernandez Affidavit ¶ 27).

40.     Ross University certifies students to take the USMLE while the AICM course is in progress under the assumption that they are going to pass the course or continue to make satisfactory progress in their studies by retaking the failed AICM course.  (Fernandez Affidavit ¶ 28; McLaughlin Affidavit, Exhibit M, Perri Dep. at pg. 31, ln. 4-7).

41.     As part of the application process, a Ross University official is asked to certify the "photograph, signature and information" entered in the application is accurate as well as checking a box to indicate whether the applicant is "officially enrolled" or "a graduate" of Ross University.  (Fernandez Affidavit ¶ 29).

42.     Plaintiff submitted for Ross University certification two applications to take the USMLE Step 1 exam.  (Fernandez Affidavit ¶ 30).

43.     The first application was submitted to Ross University for approval in March, 2006 but was rejected by ECFMG because of an issue with Plaintiff's birth date.  (Fernandez Affidavit ¶ 31, McLaughlin Affidavit, Exhibit L, Dasrath Dep. at pg. 133, ln. 2-11).

44.     The second application was submitted to Ross University for certification on May 5, 2006 in order to ameliorate the birth date problem.  (Fernandez Affidavit ¶ 32; McLaughlin Affidavit, Exhibit L, Dasrath Dep. at pg. 133, ln. 12-25).

45.     At the time of Plaintiff's second application dated May 5, 2006, Plaintiff was still enrolled at Ross University and the applications reflected as such.  (Fernandez Affidavit ¶ 33; McLaughlin Affidavit, Exhibit L, Dasrath Dep. at pg. 134, ln. 19-22).

**PLAINTIFF BECOMES INELIGIBILE TO TAKE THE USMLE STEP ONE EXAM**

46.     According to the Handbook, to be eligible to take the USMLE Step 1 Exam, a student must have:  (1) passed all courses in the basic science curriculum during the first four semesters; (2) have successfully completed the fifth semester AICM course; and (3) have passed National Board of Medical Exams ("NBME').  (Fernandez Affidavit ¶ 35 and Exhibit D at p. 13;  McLaughlin Affidavit, Exhibit M; Perri Dep. at pg. 66, ln. 19- pg. 67, ln. 11; pg. 29, ln. 20-25).

47.     Plaintiff passed all courses in the basic science curriculum and passed the NBME but did not pass the AICM course.  (Fernandez Affidavit ¶ 36).

48.     Moreover, ECFMG requires that a student be enrolled in medical school both at the time the individual applies for the examination and at the time the individual takes the examination.  (Fernandez Affidavit ¶ 37 and Exhibit F).

**A656**

49.     Plaintiff was not eligible to take the USMLE Step 1 Exam because he failed the
AICM course and because he was not an enrolled student based on his status as
"administratively withdrawn." (Fernandez Affidavit ¶ 39; McLaughlin Affidavit, Exhibit M;
Perri Dep. at pg. 41, ln. 15-17; Exhibit "F").

50.     Plaintiff admits that he had to pass the AICM course to be eligible for the
USMLE Step 1 exam. (McLaughlin Affidavit , Exhibit L; Dasrath Dep. at pg. 128, ln. 13-20;
pg. 157, ln. 14-21).

### THE JULY 27, 2006 USMLE STEP 1 EXAM

51.     Plaintiff was aware that he failed the AICM course on or before April 22, 2006
and that he was administratively withdrawn from Ross University by the letter dated June 29,
2006. (Fernandez Affidavit ¶ 40).

52.     Several days before the July 27, 2006 USMLE Step 1 Exam was scheduled to be
administered, Plaintiff moved by order to show cause in the Supreme Court of the State of New
York, Queens County (Index No. 15989/2006) to compel Ross University to reenroll Plaintiff
in the University and to sponsor Plaintiff for the USMLE Step 1 exam. (Fernandez Affidavit ¶
41; McLaughlin Affidavit, Exhibit N).

53.     The case was dismissed. (Fernandez Affidavit ¶ 42; McLaughlin Affidavit,
Exhibit O).

54.     Plaintiff took the USMLE Step 1 Exam despite his ineligibility. (McLaughlin
Affidavit, Exhibit L, Dasrath Dep. at pg. 145, ln. 8-11).

### ECFMG WITHHOLDS PLAINTIFF'S SCORE AND BARS PLAINTIFF FROM SITTING FOR FUTURE EXAMS

55.     In an October 1, 2009 meeting, the ECFMG Medical Educational Credentials
Committee conducted a review of Plaintiff's failure to notify ECFMG of a change in his

8

eligibility to take the USMLE Step 1 exam and despite his ineligibility sitting for the July 27, 2006 exam. (McLaughlin Affidavit, Exhibit P).

56.     The ECFMG Medical Educational Credentials Committee determined that Plaintiff engaged in irregular behavior in connection with his failure to notify ECFMG of a change in Plaintiff's eligibility to take the USMLE Step 1 exam and Plaintiff's taking the USMLE Step 1 exam on July 27, 2006 when he was not eligible to take the exam. (McLaughlin Affidavit, Exhibit P).

57.     The ECFMG Medical Educational Credentials Committee barred Plaintiff from admission to all ECFMG examinations and from ECFMG Certification for an unspecified period of time. (McLaughlin Affidavit, Exhibit P).

58.     ECFMG, not Ross University, withheld the release of Plaintiff's USMLE Step 1 exam scores because Plaintiff was not eligible to take the exam. (McLaughlin Affidavit, Exhibit P).

59.     Plaintiff has admitted that ECFMG – not Ross University – refuses to release his USMLE Step 1 exam score. (McLaughlin Affidavit, Exhibit L, Dasrath Dep. at pg. 145, ln. 22-25; pg. 144, ln. 1-8).

**SCHOOL TRANSCRIPT**

60.     There is nothing in The Ross University Student Handbook of Academic Rules and Regulations ("Handbook") that requires Ross University to administer transcripts to students in any timeframe or at all. (Fernandez Affidavit ¶ 51).

61.     Ross University issues school transcripts as a courtesy to its students either on request or by regular mailings. (Fernandez Affidavit ¶ 52).

62.     Individual course grades are available through eCollege in advance of the grade being available in an official school transcript. (Fernandez Affidavit ¶ 53).

63.     Plaintiff requested a transcript on or about May 15, 2006. (Fernandez Affidavit ¶ 54).

64.     At that time the fifth semester AICM course grade was not yet posted to his school transcript. (Fernandez Affidavit ¶ 55).

65.     Plaintiff requested a transcript on or about August 1, 2006. (Fernandez Affidavit ¶ 56 and Exhibit J).

66.     At that time the fifth semester AICM course grade was reflected in his school transcript. (Fernandez Affidavit ¶ 57 and Exhibit C).

67.     The fact that there is no grade listed on the transcript requested by Plaintiff in May does not indicate that he in fact passed the AICM course. (Fernandez Affidavit ¶ 58).

68.     Similarly, Plaintiff's contention that he did not receive the failing grade until he received a transcript reflecting the grade in August 2006 does not indicate that he did not "officially" fail until such time. (Fernandez Affidavit ¶ 59).

**PLAINTIFF BECOMES INELIGIBLE FOR THE POST-AICM SEMESTER BREAK**

69.     Students who successfully pass the fifth semester AICM course are eligible for a 16 week vacation period. (Fernandez Affidavit ¶ 48).

70.     Students would only remain enrolled at Ross University during this 16 week period if they successfully completed the AICM course. (Fernandez Affidavit ¶48; McLaughlin Affidavit, Exhibit M; Perri Dep. at pg. 43, ln. 15-19).

71.     Because Plaintiff failed the AICM course, he was required to reregister for the AICM course that began on May 22, 2006. (Fernandez Affidavit at ¶ 49 and Exhibit C).

72.    Plaintiff, however, did not reregister or attend the AICM course that began on May 22, 2006.  (Fernandez Affidavit ¶ 49).

73.    Plaintiff was not eligible for the 16 week vacation period.  (Fernandez Affidavit ¶ 49).

<div style="text-align:right">

Respectfully submitted,

CULLEN AND DYKMAN LLP

By: _____
Jennifer A. McLaughlin (JM 5678)
Attorneys for Defendant
100 Quentin Roosevelt Boulevard
Garden City, New York  11530
(516) 357-3700

</div>

To:    Costello & Costello, P.C.
       Joseph R. Costello
       5919 20th Avenue
       Brooklyn, New York 11204

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------ X

ANAND DASRATH,                                    Case No.: CV 07 2433
                                                   (C. Amon)
                                                   (R. Reyes)

                                  Plaintiff,

          - against -                              AFFIDAVIT OF
                                                   JENNIFER McLAUGHLIN
ROSS UNIVERSITY SCHOOL OF MEDICINE,                IN OPPOSITION TO
                                                   PLAINTIFF'S MOTION
                                                   FOR SUMMARY JUDGMENT
                                  Defendant.
------------------------------------------------------X

STATE OF NEW YORK)
                 SS)
COUNTY OF NASSAU )

          JENNIFER A. McLAUGHLIN, being duly sworn, deposes and says:

          1.      I am a member of the firm of Cullen and Dykman LLP, attorneys for defendant

Ross University School of Medicine ("Ross University").

          2.      I submit this affidavit in opposition to plaintiff's motion for summary judgment

pursuant to Rule 56 for the limited purpose of attaching the following documents:

          Exhibit 1:     Affidavit of Dr. Enrique Fernandez, M.D. with exhibits sworn to on
                         February 27, 2011 and previously submitted in support of Ross
                         University's motion for summary judgment with Exhibits A through K
                         attached.

          Exhibit 2:     Affidavit of Jennifer A. McLaughlin with exhibits sworn to on March 3,
                         2011 and previously submitted in support of Ross University's motion
                         for summary judgment with Exhibits L through P attached.

                                                   Jennifer A. McLaughlin (JM-5678)

Sworn to before me this
31st day of March, 2011

Notary Public

MAUREEN SAUTER
Notary Public, State of New York
#01SA5898285
Qualified in Nassau County
Commission Expires June 30, 2011

                                        1

**A661**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

ANAND DASRATH,                                    Case No.: CV 07 2433

                              Plaintiff,          (C. Amon)
                                                  (R. Reyes)

          - against -

ROSS UNIVERSITY SCHOOL OF MEDICINE,

                              Defendant.

-------------------------------------------------------------X

## <u>MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S</u><br><u>SUMMARY JUDGMENT MOTION PURSUANT TO RULE 56</u>



Garden City Center
100 Quentin Roosevelt Boulevard
Garden City, New York 11530-4850
Telephone (516) 357-3700

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................... ii

PRELIMINARY STATEMENT ........................................................ 1

PROCEDURAL BACKGROUND ....................................................... 2

PLAINTIFF'S FAILURE TO SUBMIT A RULE 56.1 STATEMENT OF MATERIAL
    FACT WARRANTS DISMISSAL OF THE MOTION ................................. 3

STATEMENT OF FACTS ........................................................... 5

STANDARD OF REVIEW ........................................................... 7

ARGUMENT       PLAINTIFF'S CONTRACT CLAIM FAILS AS A MATTER OF
               LAW SINCE THE UNIVERSITY HAS FOLLOWED ITS
               ESTABLISHED POLICIES AND PROCEDURES AND HAS
               NOT ACTED IN BAD FAITH OR CONTRARY TO LAW ...................... 8

          A.    Ross University followed its Policies and Procedures When
               Administratively Withdrawing Plaintiff for Failing to Remediate a
               Failing Grade in the AICM Class ............................................. 10

               1. Plaintiff Failed the AICM Course and Learned of His Failing
               Grade by April 4, 2006 at the Latest ...................................... 10

               2. Academic Withdrawal was Warranted and Consistent with the
               Ross University Student Handbook .......................................... 12

          B.    Ross University's Administration of Grades to Plaintiff Was
               Neither Contrary to any Policy Nor Arbitrary or Capricious ................... 13

          C.    Allegations Concerning the Release of Plaintiff's USMLE Step 1
               Exam Score Cannot Form the Basis of a Breach of Contract Claim
               Against Ross University ...................................................... 15

CONCLUSION ................................................................... 17

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50, 91 L.Ed.2d 202, 246-48, 106 S. Ct. 2505, 2509-11 (1986).................................................................................. 8

*Babiker v. Ross Univ. Sch. of Med.*, 2000 U.S. Dist. LEXIS 6921, at \*25-\*26 (S.D.N.Y. 2000), *aff'd* 86 Fed. Appx. 457 (2d Cir. 2004).................................... 2, 9-10

*Cf. Photopaint Tech., LLC v. SmartLens Corp.*, 335 F.3d 152 (2d Cir. 2003).................. 3

*Chimarev v. TD Waterhouse Investor Servs., Inc.*, 280 F. Supp. 2d 208, 223 (S.D.N.Y. 2003)........................................................................................................ 7

*Gally v. Columbia Univ. in N.Y. City*, 22 F. Supp.2d 199, 206 (S.D.N.Y. 1998)........... 2 4

*Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001) ........................................... 3, 4

*Keles v. New York Univ.*, 1994 U.S. Dist. LEXIS 4202 (S.D.N.Y. 1994)...................... 2, 9

*Nawanko v. Williams*, 2008 U.S. Dist. LEXIS 77850 at \*7 (E.D.N.Y 2008) (Amon, J.). . 3

*Owasso Indep. School Dist. v. Falvo*, 534 U.S. 426, 433 (2002). .................................... 14

*Raber v. Wilson-Coker*, 362 F.3d 190, 201 (2d Cir. 2004)................................................ 14

*Stolow v. Greg Manning Auctions, Inc.*, 258 F. Supp. 2d 236, 252-53 (S.D.N.Y. 2003)... 4

*Susan M. v. N.Y. Law Sch.*, 76 N.Y.2d 241, 245, 556 N.E.2d 1104, 1106 (1990) ............. 8

*Tadros v. Coleman*, 717 F. Supp. 996, 1006 (S.D.N.Y. 1989)........................................... 4

*U.S. v. Gillette*, 383 F.2d 843, 848-49 (2d Cir. 1967)........................................................ 5

*U.S. v. Maldonado-Rivera*, 922 F.2d 934, 972 (2d Cir. 1990) ........................................ 4-5

*Watt v. New York Botanical Garden*, No. 98 Civ. 1095 (BSJ), 2000 U.S. Dist. LEXIS 1611, 2000 WL 193626, at \*1 n.1 (S.D.N.Y. Feb. 16, 2000)......................................... 4

**Statutes**

Fed. R. Civ. P. 56(c) ...................................................................................................... 7, 8

**A664**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X

ANAND DASRATH,                                    Case No.: CV 07 2433
                                                  (C. Amon)
                                                  (R. Reyes)

                                    Plaintiff,

        - against -

ROSS UNIVERSITY SCHOOL OF MEDICINE,

                                    Defendant.
------------------------------------------------------X


## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S SUMMARY JUDGMENT MOTION PURSUANT TO RULE 56

### PRELIMINARY STATEMENT

This memorandum of law, along with the Affidavits of Dr. Enrique Fernandez

and Jennifer A. McLaughlin and attached exhibits, previously submitted in support of

defendant's motion for summary judgment, is respectfully submitted on behalf of

Defendant Ross University School of Medicine ("Defendant" or "Ross University") in

opposition to plaintiff's motion for summary judgment pursuant to Rule 56 of the Federal

Rules of Civil Procedure.

Plaintiff's amended complaint in this action contains one cause of action for

breach of contract as the remaining causes of action were dismissed by this Court on May

7, 2010. Both parties moved for summary judgment on March 3, 2011. For the reasons

set forth herein, Plaintiff's motion for summary judgment on its breach of contract cause

of action should be denied and Defendant's motion for summary judgment, submitted

simultaneously herewith, should be granted.

1

## PROCEDURAL BACKGROUND

On June 15, 2007, Plaintiff filed a complaint against Ross University (the "Original Complaint") and Ross University moved to dismiss. The motion was referred by this Court to Magistrate Ramon E. Reyes who issued a Report and Recommendation dated August 6, 2008 (the "Report and Recommendation") dismissing the Original Complaint in its entirety. (Docket Entry 40). On March 31, 2009, this Court adopted, in part, the Report and Recommendation allowing Plaintiff leave to amend his pleading. (Docket Entry 45).

Plaintiff filed an Amended Complaint on June 18, 2009. Ross University moved to dismiss the Amended Complaint and this Court granted its motion to dismiss all claims except the breach of contract cause of action. (Docket Entry 67). Both parties moved for summary judgment on March 3, 2011. Defendant in its motion for summary judgment contends that as a matter of law plaintiff cannot sustain a breach of contract cause of action against defendant and as such his complaint should be dismissed as a matter of law. *Gally v. Columbia Univ. in N.Y. City*, 22 F. Supp.2d 199, 206 (S.D.N.Y. 1998) ("not every dispute between a student and a university is amenable to a breach of contract claim..."). As will be demonstrated herein, plaintiff is not entitled to summary judgment as he fails to demonstrate as a matter of law that Ross University acted arbitrary, capriciously and against its own stated policies and regulations. *Keles v. New York Univ.*, 1994 U.S. Dist. LEXIS 4202, at *20-*22 (S.D.N.Y. 1994); *Babiker v. Ross Univ. Sch. of Med.*, 2000 U.S. Dist. LEXIS 6921, at *25-*26 (S.D.N.Y. 2000), *aff'd* 86 Fed. Appx. 457 (2d Cir. 2004).

**A666**

## PLAINTIFF'S FAILURE TO SUBMIT A RULE 56.1 STATEMENT OF MATERIAL FACT WARRANTS DISMISSAL OF THE MOTION

It should be noted at the outset that plaintiff did not submit a Rule 56.1 statement

of material facts with his motion for summary judgment. Failure to submit this required

statement warrants denial of this motion as this Court found in *Nawanko v. Williams*,

2008 U.S. Dist. LEXIS 77850 at *7 (E.D.N.Y 2008)(Amon, J.). "The purpose of Local

Rule 56.1 is to streamline the consideration of summary judgment motions by freeing

district courts from the need to hunt through voluminous records without guidance from

the parties." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001). The 108

paragraph affidavit of plaintiff coupled with the 119 paragraph attorney affirmation and

combined exhibits clearly requires this court to "hunt" through the record to ascertain

which facts are material and undisputed.

Plaintiff's memorandum of law compounds this problem by raising facts that are

either mistakes or simply invented out of whole cloth. *Cf. Photopaint Tech., LLC v.*

*SmartLens Corp.*, 335 F.3d 152 (2d Cir. 2003). In Plaintiff's Memorandum of Law at

page 7, plaintiff states that his breach of contract claim is based on "Ross University's

April 1 1996 decision to dismiss plaintiff." However, plaintiff was not enrolled at Ross

University in 1996. Plaintiff goes on to state, without support, that he participated in

clinical rotations at St. Luke's Hospital and "by participating in clinical rotations without

notifying the university and without having first passed Step I he was not in good

standing" Pl. Mem. of Law p. 7. There is nothing in the record or the affidavits

submitted on this motion that relates or refers to participation in clinical rotations at St.

Luke's Hospital. In fact, plaintiff's affidavit directly contradicts this claim: "I was never

3

registered for, nor did I do a clinical clerkship course at any hospital." Dasrath Aff. ¶ 93.
The brief submitted in support of plaintiff's motion is confusing to say the least.

The affidavits submitted in support are equally unhelpful. Even if plaintiff's
affidavit were to be considered for purposes of Local Rule 56.1 it has little to no
evidentiary value. It is well-settled that an unsupported, self-serving Rule 56.1 Statement
which contains conclusory statements cannot be used to contradict basic facts or create a
genuine issue of material fact. *Stolow v. Greg Manning Auctions, Inc.*, 258 F. Supp. 2d
236, 252-53 (S.D.N.Y. 2003); *Tadros v. Coleman*, 717 F. Supp. 996, 1006 (S.D.N.Y.
1989) ("Self-serving, conclusory allegations cannot defeat [a summary judgment
motion]."). In fact, Local Rule 56.1 "[has been interpreted] to provide that 'where there
are no[] citations or where the cited materials do not support the factual assertions in the
Statements, the Court is free to disregard the assertion.'" *Holtz*, 258 F.3d at 73-74
(quoting *Watt v. New York Botanical Garden*, No. 98 Civ. 1095 (BSJ), 2000 U.S. Dist.
LEXIS 1611, 2000 WL 193626, at *1 n.1 (S.D.N.Y. Feb. 16, 2000)). Failure to provide
any citations in a 56.1 Statement of Material Facts will leave any such factual allegation
without evidentiary value. *Chimarev v. TD Waterhouse Investor Servs., Inc.*, 280 F. Supp.
2d 208, 223 (S.D.N.Y. 2003).

Out of the 108 paragraph affidavit submitted by plaintiff more than half of the
purported undisputed factual allegations are evidenced only by his own self-serving
deposition testimony and interrogatory responses. His lawyer's equally lengthy factual
affidavit cannot form the basis for support of any undisputed facts as it is well-settled
attorney affirmations cannot form the basis of facts in support of summary judgment
when the attorney has no personal knowledge of the alleged facts. *U.S. v. Maldonado-*

4

*Rivera*, 922 F.2d 934, 972 (2d Cir. 1990); *U.S. v. Gillette*, 383 F.2d 843, 848-49 (2d Cir. 1967). For these reasons alone, summary judgment should be denied. To the extent this Court considers plaintiff's motion without the benefit of a Rule 56.1 Statement, plaintiff's motion is addressed factually and substantively herein.

## STATEMENT OF FACTS

Ross University is a medical school located on the island of Dominica in the West Indies. For foreign medical school graduates to become licensed to practice medicine in the United States, students are required to take several qualifying exams. The United States Medical Licensing Examination Step 1 ("USMLE Step 1 Exam") is the first of several exams required to be taken by foreign medical school students. To be eligible to sit for the USMLE Step 1 Exam, a student is required to (among other prerequisites) take and successfully complete a prerequisite class known as Advanced Introduction to Clinical Medicine ("AICM") and be enrolled at the university. It is undisputed that to be eligible to sit for the USMLE Step 1 Exam a student must pass the AICM course. *See* Affidavit of plaintiff Anand Dasrath in support of his motion for summary judgment sworn to on March 2, 2011, ¶ 37 ("Dasrath Aff.").

Plaintiff was enrolled as a student at Ross University during the spring semester of 2006 and was a student in the AICM course. It is undisputed that plaintiff took and completed the AICM course. *See* Dasrath Aff. ¶ 34. Plaintiff's lawsuit challenges the failing grade that he was issued in the AICM course by calling it "fabricated." *See* Dasrath Aff. ¶¶ 62 and 82. As will be demonstrated herein, his allegations of a "fabricated" grade should <u>not</u> be entertained by a court of law and even if it were there is no evidence submitted that he was entitled to a passing grade, or that the consequences

that followed as a result of the failing grade was not warranted. Under all circumstances plaintiff's grade dispute claim does rise to the level of breach of contract.

At the same time plaintiff was enrolled in the AICM course, plaintiff was applying to take the USMLE Step 1 Exam. Dasrath Aff. 30. However, his eligibility to sit for the USMLE Step 1 Exam was revoked when Plaintiff received in or about April, 2006 a failing grade in the AICM course and failed to return to campus to remediate the grade during the semester commencing on May 22, 2006. It is undisputed that plaintiff is required to re-take a failed course in the semester immediately following the course failure. Dasrath Aff. ¶ 69. In fact, plaintiff did just this when he failed courses he took prior to the AICM course. *See* Dasrath Aff. ¶ 69; Dasrath Dep. pg. 32-33. However, plaintiff did not return to campus to remediate the failing AICM course grade at any time. Plaintiff contends only, without any evidentiary support, that it was not incumbent upon him to register for the class claiming that "Ross decided if a student should be registered." This is despite the clear language in the Ross University School of Medicine Student Handbook of Academic Rules and Regulations ("Student Handbook") that states the following:

> Continuing students in the Basic Sciences must register in person campus at the beginning of each semester...

*See* Fernandez Affidavit, attached as Exhibit 1 to the McLaughlin Affidavit sworn to on March 31, 2011, Exh. D, p. 18 ("Fernandez Aff.").

It is undisputed that Plaintiff was also administratively withdrawn from enrollment at Ross University when he failed the required AICM class and did not re-take the course. Dasrath Aff. ¶ 76. Plaintiff contends only that he was given the June 29, 2006 notice without warning and was not advised of the consequences of the status of

being academically withdrawn. Dasrath Aff. ¶ 76. However, he does not dispute that failing a required course and failing to remediate that required course is a basis for academic withdrawal. Dasrath Aff. ¶ 76-77; Fernandez Aff. ¶¶ 6, 21-22. Based on his academic withdrawal and failure to complete the AICM course, Dasrath was not eligible to take the USMLE Step I exam. The eligibility requirement is also evidenced by the Student Handbook:

> Students become eligible to take the USMLE Step 1 when they have passed all courses in the Basic Science Curriculum, successfully completed the Advanced [Introduction] to Clinical Medicine clerkship, and, passed the NBME Comprehensive Basic Sciences Exam.

Fernandez Aff., Exhibit D. pg. 13

Since a failing grade was issued, and plaintiff cannot and does not contend that he ever remediated the failing grade in a course required to remain enrolled at Ross University and to sit for the USMLE Step 1 Exam, plaintiff is not entitled to summary judgment that defendant breached a contract with him by issuing a failing grade in the AICM course, by marking him academically withdrawn when he failed to remediate the failed course, and for his ineligibility to sit for and receive a score for the USMLE Step 1 Exam.

## STANDARD OF REVIEW

It is well-settled that summary judgment is appropriate where "the pleadings. . . together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment must be denied unless the movant shows that there are no material issues of fact in dispute and it is entitled to judgment as a matter of law. Fed. R.

7

Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50, 91 L.Ed.2d 202, 246-48, 106 S. Ct. 2505, 2509-11 (1986). As shown more fully in Ross University's parallel motion for summary judgment, there are no genuine issues of material fact before the Court, however, the facts on which there is no genuine dispute, establish that Ross University, not plaintiff, is entitled to summary judgment. Moreover, plaintiff has not demonstrated as a matter of law that Ross University acted arbitrary, capricious and against its own stated policy and regulations. As such, it is respectfully submitted that Plaintiff's motion for summary judgment should be denied.

<div align="center">ARGUMENT</div>

<div align="center">PLAINTIFF'S CONTRACT CLAIM FAILS AS A MATTER OF LAW
SINCE THE UNIVERSITY HAS FOLLOWED ITS ESTABLISHED POLICIES
AND PROCEDURES AND HAS NOT ACTED IN BAD FAITH
OR CONTRARY TO LAW</div>

It is well-settled that courts will not intervene in an educational institution's decisions regarding a student's academic performance. *Susan M. v. N.Y. Law Sch.*, 76 N.Y.2d 241, 245, 556 N.E.2d 1104, 1106 (1990) ("[s]trong policy considerations militate against the intervention of courts in controversies relating to an educational institution's judgment of a student's academic performance.") In *Keles v. New York Univ.*, 1994 U.S. Dist. LEXIS 4202, at *20-*22 (S.D.N.Y. 1994), the court, in reviewing a student's breach of contract claim against a defendant university, noted:

> although the relationship between [plaintiff-student] and [defendant-university] may be analyzed as a contractual one, it is well established under New York law that judicial review of a university's academic decisions is limited to a determination of whether the university acted arbitrarily, capriciously, irrationally, in bad faith or contrary to law

<div align="center">8</div>

# A672

> . . .[t]o determine whether a university has acted in
> bad faith, arbitrarily or capriciously, its actions must
> be judged against its own stated policies and
> regulations. Generally, however, determinations
> regarding a student's academic performance are
> entitled to great deference and are rarely found to be
> arbitrary, as such determinations require the special
> expertise of educations and play an important role
> in preserving the integrity of the credentials
> conferred by the educational institution. (internal
> citations omitted).

As such, a plaintiff-student asserting a breach of contract claim based on the academic decisions of a university must demonstrate that the university acted arbitrary, capriciously and against its own stated policies and regulations not only to defeat summary judgment but also must meet this standard as a matter of law. Plaintiff agrees that this is the standard to be applied. *See* Plaintiff's Memorandum of Law in Support of Summary Judgment ("Pl. Mem. of Law"), p. 7 (citation omitted); *Keles v. New York Univ.*, 1994 U.S. Dist. LEXIS 4202 (S.D.N.Y. 1994). Plaintiff fails to meet this standard as a matter of law.

As cited in defendant's brief in support of defendant's motion for summary judgment, in *Babiker v. Ross Univ. Sch. of Med.*, 2000 U.S. Dist. LEXIS 6921, at *25-*26 (S.D.N.Y. 2000), *aff'd* 86 Fed. Appx. 457 (2d Cir. 2004) summary judgment was awarded to the university dismissing plaintiff's breach of contract claim since the university acted in accordance with the procedures set forth in its Handbook, and, as such, "no rational jury could find that the university acted in an arbitrary or irrational manner in dismissing [plaintiff]." *Id.* Strikingly similar to Plaintiff's claim in this case, the plaintiff in *Babiker* alleged that the university had breached its contract with plaintiff by wrongly and unjustly dismissing him and refusing to award him a medical degree.

9

*Babiker,* 2000 U.S. Dist. LEXIS 6921, at *3-*10. However, the court noted that a university will not be found liable for breach of contract if it acted in accordance with the procedures set forth in its handbook and did so in a way that was not arbitrary and capricious. *Id.* at 22.

It is respectfully submitted that Plaintiff has failed to demonstrate that Ross University acted in a arbitrary and capricious manner and not in accordance with its own Student Handbook when it (1) issued a failing grade in the AICM course; (2) issued the failing grade by a secure email system which was received by plaintiff two weeks after the course ended; (3) issued an administrative withdrawal when plaintiff failed to return to campus to re-take the failed course as is required by its Student Handbook; which (4) resulted in his ineligibility to take and receive a score from the examining body administering the USMLE Step 1 Exam as is also set forth in the Student Handbook.

**A.    Ross University Followed its Policies and Procedures
When Administratively Withdrawing Plaintiff for
Failing to Remediate a Failing Grade in the AICM Class**

**1.    Plaintiff Failed the AICM Course and Learned of His Failing Grade
by April 24, 2006 at the Latest**

Presumably this court will not disturb the failing grade issued to plaintiff. However, even if this court were to undertake a review of the failing grade in the AICM course, plaintiff 426.6 out of 1,000 possible points, which is a failing grade. *See* Fernandez Aff., ¶11, Exhibit "A". To controvert this failing grade, plaintiff claims in this motion that he must have passed since: he received a certification of completion for the AICM course; his transcript did not reflect a failing grade between April 22, 2006 to May 22, 2006; the registrar did not register him to re-take the course and issue a bill to re-take

10

the course; and there are inconsistencies in one of the evaluation forms reflecting his failing grade. *See* Dasrath Aff. ¶¶ 34, 40, 44, 71, 89, 90, 93.

The certification of completion is just that – a document certifying that the class was completed. *See* McLaughlin Aff., Ex. 5, pg. 80-81. Plaintiff points to nothing in the record that would indicate that this indicated a passing grade in the ACIM course or that by later issuing a failing grade defendant would be breaching any contract with plaintiff. Plaintiff learned of and discussed his failing AICM grade with his professor on April 24, 2006. *See* Fernandez Aff. ¶¶ 15, Exh. B. Specifically, on April 24, 2006 plaintiff responded to an email alerting all students in the AICM course that the ACIM grades were available via defendant's secure internet system. In response plaintiff stated: "I see a failing grade as my final grade." Fernandez Aff., Exh. "B". Despite this evidence, plaintiff circuitously reasons that since his grade was not yet available on his transcript between April 22, 2006 through May 22, 2006, despite being available electronically, he could not have failed the class. Dasrath Aff. ¶¶ 40-52, 62.

Individual course grades are available through eCollege in advance of the grade being available on an official school transcript. *See* Fernandez Aff. ¶ 53. However, Ross University issues school transcripts as a courtesy to its students either on request or by regular mailings. *See* Fernandez Aff. ¶ 52. There simply is no evidence that the lack of a grade listed on plaintiff's transcript from April 22, 2006 to May 22, 2006 or any time thereafter amounts to a passing grade or breach of any contract concerning this grade. Finally, plaintiff's self-serving and fanciful manufactured allegations concerning idiosyncrasies in an evaluation form issued in the class does not rise to the level of any

11

breach. Plaintiff failed the AICM course and has not proved as a matter of law that by issuing a failing grade defendant breached any contract with plaintiff.

**2.** **Academic Withdrawal was Warranted and Consistent with the Ross University Student Handbook**

Failing to return to campus to register to take the AICM course in the semester following his failure of the AICM course resulted in academic withdrawal in accordance with the Student Handbook. *See* Fernandez Aff. ¶ 21 and Exh. D, p.23. The Student Handbook provides that an administrative withdrawal is required when a student does not return to campus to register for the following semester. *See* Fernandez Aff., Exh. D, p. 23. If a student fails a course, he or she must re-register for that course to remediate the failing grade or else they are considered academically withdrawn from the university. *See* Fernandez Aff. ¶ 21-22. An administrative withdrawal is entered in the student's record when he fails to "return to the campus to register for the following semester and attend classes in Week One of a semester." *See* Fernandez Aff., Exh. D, p. 23. Plaintiff was well aware of this requirement, as he had failed courses prior to his academic withdrawal and took those courses over immediately after the failing grade was issued in order to remain enrolled in the university. *See* McLaughlin Aff., Exh. L, p. 32.

Nonetheless, in Plaintiff's Memorandum of Law at page 7, Plaintiff states that his breach of contract claim is based on "Ross University's April 1 1996 decision to dismiss plaintiff." However, Plaintiff was not enrolled at Ross University in 1996 but was considered *academically withdrawn* in 2006. Assuming plaintiff is relying on the 2006 academic withdrawal as the basis of his breach of contract claim, academic withdrawal was warranted in that it is required when the student fails to return the following semester to repeat a failing course. Defendant's decision to academically withdraw plaintiff is not

12

arbitrary capricious or against any stated policy and is, in fact, consistent with the expressed policy in the Student Handbook. *See* Fernandez Aff., Exh. D, p. 23.

Plaintiff claim suggests: "students do not have access to registration procedures. Rather, Ross decided if a student should be registered, and if so, for what class(es)" is nonsensical. Dasrath Aff. ¶ 70. The Student Handbook states:

> Continuing students in the Basic Sciences **must register in person** campus at the beginning of each semester...

*See* Fernandez Aff., Exh. D, p. 18.

Moreover, by failing the AICM course Plaintiff was not eligible for a sixteen-week vacation break afforded to students in good standing who successfully complete the AICM course and during which time they remain fully enrolled. *See* Fernandez Aff. ¶¶ 48-49. It cannot be said that as a matter of law Ross University breached any agreement by issuing the academic withdrawal based on Plaintiff's failure to return to campus and register to take the AICM course commencing on May 22, 2006. Plaintiff's motion for summary judgment should be denied.

**B.    Ross University's Administration of Grades to Plaintiff Was Neither Contrary to any Policy Nor Arbitrary or Capricious**

Dr. Fernandez taught the AICM course from January 16, 2006 to April 7, 2006. As described in the Fernandez Affidavit, out of 1,000 possible points for the AICM, Plaintiff received 426.6, which is a failing grade. *See* Fernandez Aff. ¶ 11, Exh. A. This grade was posted on "eCollege" which is a secure website by which students can review their grades. As previously discussed, Plaintiff acknowledged receiving this grade in an email to Dr. Fernandez dated April 22, 2006 wherein Plaintiff responded to Dr. Fernandez's email alerting all students that the AICM course grades were posted on

13

eCollege. Plaintiff's claim that he did not know about the website in which a student
could access his grades is defied by the email in which all students are advised that the
AICM course grades are available and Mr. Dasrath responds by stating "I see a failing
grade as my final grade." Fernandez Aff., Exh. B. Dr. Fernandez spoke with Plaintiff via
telephone during which the failing grade was discussed as well as the fact that Plaintiff
needed to repeat the AICM course in the semester starting on May 22, 2006. *See*
Fernandez Aff. ¶ 15, Exh. C.

There is nothing in the record to suggest that issuance of the failing grade, and
posting the failing grade within two weeks after the conclusion of the AICM course via
eCollege defied any practice or policy or was arbitrary or capricious. Plaintiff concedes
that posting of grades within two weeks of its issuance was consistent with defendant's
practice. Dasrath Aff. ¶ 43. However, all while feigning the existence of a website
access his grades, plaintiff contends the failing grade was not posted on an *academic
transcript* prior to the academic withdrawal. He points to no such requirement in the
Student Handbook.

Plaintiff attempts, to suggest, for the first time in this lawsuit, that by posting the
grade to a secure website was a violation of the The Family Educational Rights and
Privacy Act ("FERPA"). However, not only is there no FERPA allegation mentioned in
the Amended Complaint, FERPA does not confer a private right of action. *See Raber v.
Wilson-Coker*, 362 F.3d 190, 201 (2d Cir. 2004) ("FERPA was not designed to convey
rights on individual plaintiffs"). Moreover, the United States Supreme Court has held
that filing records on a secure database does not violate FERPA. *Owasso Indep. School
Dist. v. Falvo*, 534 U.S. 426, 433 (2002).

14

In conclusion, there is nothing in the record that would suggest that grades are required to be transmitted to students via any method, including via transcript. In fact, there is nothing in the Handbook that requires Ross University to administer transcripts to students in any timeframe or at all. *See* Fernandez Aff. ¶ 60, Exhibit D. Ross University issues school transcripts as a courtesy to its students either on request or by regular mailings. *See* Fernandez Aff. ¶ 52. As mentioned, individual course grades are available through eCollege in advance of the grade being available on an official school transcript. *See* Fernandez Aff. ¶ 53. Thus, under no circumstance could the method or timeliness of the administration of the AICM grade to Plaintiff amount to breach of any contract and as such Plaintiff's breach of contract claim should be dismissed as a matter of law.

**C.    Allegations Concerning the Release of Plaintiff's**
      **USMLE Step 1 Exam Score Cannot Form the**
      **Basis of a Breach of Contract Claim Against Ross University**

The USMLE Step 1 Exam, administered by an entity known as the Educational Commission for Foreign Medical Graduates ("ECFMG"), is one of several qualifying exams which foreign medical school graduates must complete and pass before becoming licensed to practice medicine in the United States. *See* Fernandez Aff. ¶ 25. It is not administered by Ross University. Ross University provides information on a student's application to take the exam that would reflect whether certain information on the application is accurate and whether, *at the time of the application*, the applicant is "officially enrolled" or "a graduate" of Ross University. *See* Fernandez Aff. ¶ 29. As demonstrated in the Fernandez Affidavit, at the time Plaintiff applied for the USMLE Step 1 Exam, Plaintiff was enrolled at Ross University. *See* Fernandez Aff. ¶ 31-33.

However, by the time the exam was administered, Plaintiff was administratively

**A679**

withdrawn from the university as a result of his failing grade in the AICM course, and his failure to re-register for the failing class. *See* Fernandez Aff. ¶¶ 22-23, Exh. E. Successful completion of the AICM course and enrollment at the university is a prerequisite to taking the USMLE Step 1 Exam. Fernandez Aff. ¶¶ 35 and 37. Despite these requirements, Plaintiff sat for the exam anyway and asserts in this lawsuit that Ross University improperly failed to sponsor him to take the exam and that Ross University is improperly withholding release of Plaintiff's USMLE Step 1 Exam score in breach of an unidentified contract to perform such tasks.

As demonstrated above, Plaintiff became ineligible for the exam when his status at Ross University changed and he was no longer enrolled at the university. Thus, Ross University could no longer "sponsor" Plaintiff to take the exam. With regard to the release of his score, it should be noted that the examining board (ECFMG) has determined that Plaintiff engaged in "irregular behavior" in connection with his failure to notify ECFMG of a change in Plaintiff's eligibility to take the USMLE Step 1 Exam and has barred Plaintiff admission to all ECFMG administered examinations. *See* McLaughlin Aff, Exh. E. Any claim that ECFMG has improperly withheld examination scores lies with ECFMG and not Ross University.

**A680**

## CONCLUSION

Based on the foregoing, Ross University respectfully submits that plaintiff's motion for summary judgment pursuant to Rule 56 dismissing Plaintiff's breach of contract claim be granted in its entirety.

Dated:  Garden City, New York
      March 31, 2011

                                   Respectfully submitted,

                                   CULLEN AND DYKMAN LLP

                By:                            

                                   Jennifer A. McLaughlin (JM 5678)
                                   Attorneys for Defendant
                                   100 Quentin Roosevelt Boulevard
                                   Garden City, New York 11530

Of Counsel:
Jennifer A. McLaughlin (JM 5678)
Justin F. Capuano (JC 5853)

17

**A681**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X    Index No.: CV 07-2433
ANAND DASRATH

                            Plaintiff (s),        **AFFIDAVIT IN OPPOSITION
                                           TO DEFENDANTS MOTION**
           -against-                           **FOR SUMMARY JUDGMENT**

ROSS UNIVERSITY SCHOOL OF MEDICINE,

                            Defendant (s).
-----------------------------------------------------------------X
STATE OF NEW YORK    )
                           )
COUNTY OF KINGS     )

    **ANAND DASRATH**, being duly sworn deposes and says:

    1. I am the Plaintiff in the above entitled matter and submit this Affidavit in Opposition to the Defendants Motion for Summary Judgment and in further support of my Motion for Summary Judgment pursuant to the Federal Rules of Civil Procedure - Rule 56 and for such other and further relief as this Court deems just and proper.

    1. I am a resident of the County and Borough of Queens, New York.

    2. From May 2004 to June 29, 2006, I was a medical student at the Defendant Ross University School of Medicine (Hereinafter referred to as "Ross").

    3. In or around June 29, 2006, I was marked administratively withdrawn from Ross because it alleged that I failed the Advanced Introduction to Clinical Medicine (Hereinafter referred to as the "AICM"), course and failed to re-enroll so as to remediate the failing grade.

<u>**THE AICM COURSE**</u>

    4. The AICM course is a prerequisite to the United States Medical Licensing Examinations Step 1 (USMLE Step 1 Exam). The USMLE Step 1 in turn is a prerequisite for commencing Clinical Clerkships courses.

    5. To be eligible for Clinical Clerkships courses, a student must first have a passing score on the USMLE Step 1 Exam. ***See Exhibit "G1" of Plaintiffs Motion for Summary Judgment.***

- 1 -

# A682

6. I took the USMLE Step 1 Exam on June 29, 2006. However, Ross blocked the release of my score for this exam.

7. Furthermore, I was not even registered by Ross to do any Clinical Clerkship courses. This was testified to by Dr. Fernandez. *See Plaintiff's Motion, Exhibit "R", Fernandez Dep. at pg.56, ln. 5 – 7, pg.56, ln.20 – 22.*

8. Therefore, it was not possible for me to be enrolled in a Clinical Clerkship, let alone begin one.

9. Ross claims that out of a 1000 possible points for the AICM course, I received 426.6, which is a failing grade. *See Affidavit of Dr. Fernandez at para. 11 annexed to Defendants Affirmation in Opposition.*

10. However, Ross did not grade students on a 1000 point scale in the spring of 2006. Rather students were graded on a 100% scale. *See Plaintiff's Motion for Summary Judgment, Exhibit V"* (Hereinafter referred to as the "Student Handbook"), at pages 5 and 6 particularly referring to grading.

11. To date, Ross has failed to produce any actual examination materials that could indicate that I failed any part of the AICM course, although demands for same have been made upon Ross.

12. At Dr. Perri's deposition page 25 line 23, she stated that the AICM, "is a course within itself" and on page 25 line 24 that "one grade is issued for it". Over the course of time Ross has produced several failing grades for the same AICM course based on several different grading procedures, which in turn makes any of the issued failing AICM grades erroneous and arbitrary. *See Plaintiff's Motion for Summary Judgment, Exhibit "K", Perri Dep. at pg. 25, line. 23 and line 24.*

13. Ross had in fact issued a Certificate of Completion for my AICM course *See Plaintiff's Motion for Summary Judgment, Exhibit "II".* It then subsequently issued failing grades for the same AICM course.

14. This is not the first time that Ross has issued a passing grade to me then subsequently withdrew it. At the end of my first semester Ross had issued a B+, a passing grade, for my Medical Genetics course. It then withdrew said passing grade and issued an F, a failing grade. As a result, I was compelled to pay for, and repeat a semester that I had completed. *See Exhibit "J" of the Plaintiffs Motion for Summary Judgment.*

- 2 -

15. Likewise in Dr. Fernandez's Memorandum *(See Plaintiff's Motion for Summary Judgment Exhibit "M"*, dated April 24, 2006 he was expecting "full tuition" for repeating the AICM course for which I had already been issued a Certificate of Completion.

16. Defendant claims that after students complete a course and grades are finalized, their grades are posed on "E-College" for the students to view.

17. In prior semesters, end of semester grades were issued via an academic transcript in hardcopy format, not on E-College.

18. On page 25 of Ross' University School of Medicine Student Handbook of Academic Rules and Regulations (Hereinafter Referred to as the "Student Handbook"), it is stated that Ross has adopted the Family Educational Rights and Privacy Act. (Hereinafter referred to as FERPA), *See Exhibit "B2" of Plaintiffs Motion for Summary Judgment*. For confidentiality reasons, FERPA does not approve of students grades being posted on the Internet.

19. The Student Handbook does not recognize the Internet as a means of posting student grades. On page 6 of the Student Handbook it is stated, "A student... will receive grades...on his/her transcript." In all of the Plaintiffs previous semesters he received his grades via an academic transcript, not on E-college. *See Plaintiff's Motion for Summary Judgment, Exhibit "V"*.

20. Furthermore, Ross does not post all of its students' grades on E-College.

21. In the Defendant's moving papers, it is claimed that I learned of my failing AICM grade via E-College as early as April 22, 2006. (See Dr. Fernandez's affidavit paragraph 13-14 and Exhibit "B"; McLaughlin's affidavit Exhibit "L" and Plaintiff's deposition page 77, lines 14-17 and page 79 lines 8-18). However, Ross has not yet been able to substantiate its claim of issuing a failing grade for the AICM course. Although repeated demands have been made for Ross to produce any and all of the alleged failed examinations Ross has not produced any of them. The reason is simple, they do not exist.

22. In the Spring of 2006, when I took the AICM course in Miami, Fl., Dr. Perri was the Vice President of Academic Affairs and the Dean of Clinical Sciences. As such, she was ultimately responsible for the pre-clinical AICM course. Dr. Perri was in fact, Dr. Enrique Fernandez's superior whose duty and responsibility it was to oversee that Dr.

Fernandez did not fabricate and/or assign arbitrary grades to students via the Internet or any other unreliable source.

23. In his affidavit at paragraph 4, Dr. Fernandez stated that Dr. Perri "was the Vice-President of Academic Affairs at Ross University" at all times. It was Dr. Perri's duty to review my grade when I complained to her that there was an irregularity with my AICM course grade. Although she represented that she would look into the problem, she failed to do so. And when she was ordered by The Honorable Judge Ramon Reyes on January 9, 2008 to review my grade she issued a statement that she "concurred" with the failing grade that Dr. Fernandez issued. It is to be noted that she did not set forth any valid findings as to how she reached this conclusion. Essentially, she was pre-disposed into agreeing with Dr. Fernandez.

24. Defendant further claims that on April 22, 2006 I acknowledged via e-mail that I saw my "failing grade" in the AICM course and asked Dr. Fernandez to review this failing AICM grade. (See Dr. Fernandez affidavit paragraph 14 and Exhibit "B"). It is important to note that it is stated on page 25 of the Student Handbook the student has, "The right to request the amendment of the student's educational records that the student believes are inaccurate and misleading". *See Exhibit "H1" of the Plaintiffs Motion for Summary Judgment.*

25. Ross continuously claims that I "admitted" or "acknowledged" to receiving a "failing grade" in the AICM course. A careful analysis of defense's Exhibit "B" clearly informs Dr. Fernandez that it was not possible for me to have failed the AICM course. Moreover, it is also stated on page 25 of the student handbook that, *See Exhibit "B2" of Plaintiffs Motion for Summary Judgment*:

> "If the university decides not to amend the record as requested by the student, the university will notify the student of the decision and advise the student of his or her right to a hearing regarding the request for amendment. Additional information regarding the hearing procedures will be provided when the student is notified of the right to a hearing."

- 4 -

At no point in time has Ross conducted, let alone offered, a hearing before placing a failing grade for the AICM course in my transcript. Clearly Ross is in breach of this regulation of the Student Handbook.

26. Ross merely alleges that I received a failing grade in the AICM course. The alleged failing grade was then used as a basis for issuing an administrative withdrawal letter on June 29, 2006; withdrawing its sponsorship of me for sitting the USMLE Step 1 Exam on August 14, 2006; and thereafter blocking the release of my USMLE Step 1 score on the same date. Prior to this, it was Ross that stated in an e-mail to me that I was "eligible" to take the USMLE Step 1 Exam. It then directed me to submit an application for certification and sponsorship to take the examination within the period May 1, 2006 to July 31, 2006. I followed these instructions and took the Examination on July 27, 2006.

27. In Defendant's moving papers it is also claimed that I admit to learning of my failing grade before sending the April 22, 2006 e-mail to Dr. Fernandez. (See McLaughlin's affidavit, Exhibit "L" and Plaintiffs deposition on page 89, Lines 19-22).

However, this statement is grossly mischaracterized. At no point in time have I admitted to failing the AICM course. It is argued that Ross has submitted an arbitrary failing grade.

28. McLaughlin Affidavit submitted in Support of Ross' Motion for Summary Judgment has also falsely accused me of failing the AICM course. However, at my deposition, at page 89, lines 19 to 22, I did not admit to failing the AICM course as claimed. Rather, Ross has not produced any actual examinations indicating that I failed any part of the AICM course, although requested to do so.

Moreover, Dr. Perri has stated at her deposition that upon successful completion of the AICM course the student is then instructed to sit and take the USMLE Step 1 Exam, which I did. See Dr. Perri's deposition at page 28 lines 12 to 16. At my deposition, I clearly informed defense counsel that I did not fail the AICM course. *(Dasrath Dep. at. pg.128, ln. 13 – 20; pg. 157, ln. 14 – 21).*

29. Ross next claims that on April 24, 2006 I participated in a telephone conversation with Dr. Fernandez regarding a failing grade for the AICM course. (See Dr. Fernandez affidavit paragraph 15, McLaughlin Affidavit, Exhibit L and Plaintiffs deposition page 80 line 12 and page 81 line 14). At the very least it would be irrational for Dr. Fernandez to

engage me in a discussion over a failed AICM course. It was Dr. Fernandez that issued a Certificate of Completion for the said AICM course.

30. Defendants Exhibit "L" is dated April 24, 2006 but first surfaced on November 22, 2006 while the case was in the Queens County Supreme Court. It is to be noted that that case was dismissed without prejudice because the Supreme Court lacked jurisdiction. There are significant issues with this memorandum as is set forth herein:

(a) Dr. Fernandez has already issued a Certificate of Completion for the AICM course to the Plaintiff. *(See Plaintiff's Motion, Exhibit "J")*. One must ask, why would I have been certified if I had failed the AICM course?

(b) In the same memorandum, *(Defendants Exhibit "L")* Dr. Fernandez advised me to take the USMLE Step 1 Exam, for which a successful completion of the AICM course is required. It becomes evident that I did not fail said course.

(c) Based on the fact that I had already requested a review of my AICM grade in *(See Defendants Exhibit "B", dated April 22, 2006)* it is not in accordance with Ross' procedures that a failing AICM grade could be issued without first complying with FERPA's procedure as stated on page 25 of the Student Handbook: " that the student will be advised of his or her right to a hearing regarding the request for amendment". Ross has never scheduled a hearing in the matter.

Further, since a hearing was never offered or conducted, Ross cannot contend that a failing AICM grade was officially issued. Dr. Perri's review of my grade was not really a review. Rather, she only "concurred" with Dr. Fernandez's issuance of a failing grade. She did not follow the formality of a grade review, nor did she abide by the provisions of FERPA. *See Exhibit "B2" of Plaintiffs Motion for Summary Judgment.*

During discovery, Ross was not able to provide any actual examination materials which may indicate that I had failed any part of the AICM course. Rather, Ross provided several failing grade evaluations for the same AICM course in which only one grade evaluation is possible. (Perri dep. at page 25, line24).

31. At paragraph 16 of Dr. Fernandez' Affidavit, he claims to have reviewed the failing grade prior to our April 24, 2006 telephone conversation.

However, even before this date, Dr. Fernandez had already issued a Certificate of Completion for the AICM course. He then capriciously attempted to present a failing grade for the same course despite the fact that he has yet to produce the actual examinations on which this grade is based.

32. Defendant next claims that in that telephone conversation between myself and Dr. Fernandez, we discussed, amongst other things, my retaking of the AICM course scheduled to begin on May 22, 2006. *See Dr. Fernandez's affidavit paragraph 17 Exhibit "C"*.

However, it is not reasonable to believe that Dr. Fernandez would enter into a conversation regarding my retaking the AICM course beginning May 22, 2006 for the following reasons:

(a) Dr. Fernandez had already issued a Certificate of Completion for said course. *See Plaintiff's Motion for Summary Judgment, Exhibit "I"*.

(b) As stated on page 25 of the Student Handbook, "If the University decides not to amend the record as requested by the student, the University will notify the student of the decision and advise the student of his or her right to a hearing regarding the request for amendment". *See Exhibit "B2" of Plaintiffs Motion for Summary Judgment.* This was never done by Ross.

(c) An academic transcript dated May 22, 2006 and issued by Ross' Registrar did not bear a failing grade for said AICM course. *See Plaintiff's Motion for Summary Judgment, Exhibit "V2"*.

(d) Ross did not re-register me for the AICM course; nor did it send me a bill to satisfy as would be the case if I did indeed fail the AICM course.

(e) Dr. Fernandez would not have advised me to take the USMLE Step 1 Exam in his memorandum of April 24, 2006 if indeed I failed the AICM course. The AICM course is a prerequisite for taking the USMLE Step 1 Exam. *See Exhibit "M" of Plaintiffs Motion for Summary Judgment.*

(f) I could not have been issued a certification and sponsorship by Ross to sit and take the USMLE Step 1 Exam if I had in fact failed the AICM course. *See Exhibit "D1" of Plaintiffs Motion for Summary Judgment.*

- 7 -

(g) At Dr. Perri's deposition, she confirmed that I would have had to pass the AICM course in order to receive certification and sponsorship to sit for the USMLE Step 1 Exam. *See Exhibit "H" of Plaintiffs Motion for Summary Judgment.* (Perri Dep. at pg. 28 ln. 12 – 16, pg. 28 ln.24).

(h) At the time that Ross' Registrar informed me of passing the National Board of Medical Examiners Comprehensive Exam (NBME) they also stated that I was now "eligible" to take the USMLE Step 1 Exam and dictated a time interval during which I must sit and take said Exam. This time interval was between May 1, 2006 to July 31, 2006. *See Exhibit "W2" of Plaintiffs Motion for Summary Judgment.* I took the USMLE Step 1 Exam on July 27, 2006 as directed by Ross.

(i) At her deposition, Dr. Perri confirmed this date as the correct date that I took the exam. *See Exhibit "C1" of Plaintiffs Motion for Summary Judgment, Dr. Perri's deposition page 57, lines 8-13.*

33. I also discussed this alleged failing grade with Dr. Perri, the Vice President of Academic Affairs on May 8, 2006. (See McLaughlin Affidavit, Exhibit "L", Dr. Perri's deposition on page 49, line 9-13 and Plaintiffs Exhibit "I").

As Vice President of Academic Affairs, it was Dr. Perri's responsibility to investigate and "amend" this record as stated on page 25 of the student handbook. *See Exhibit "B2" of Plaintiffs Motion for Summary Judgment.* Although she promised to "look into" the problem, she did not do so. This is stated in her deposition. (Perri Dep. at pg. 44, ln. 17 – 20)

## ADMINISTRATIVE WITHDRAWAL

34. Ross next claimed that I received an administrative withdrawal letter on May 22, 2006. *See Affidavit of Dr. Enrique Fernandez annexed to Defendants Affirmation in Opposition.*

35. By falsely stating that the administrative withdrawal was on May 22, 2006, Defendant is distracting attention from the following chronology of events:

(a)   I completed the AICM course on April 7, 2006 and received a Certificate of Completion for this course. Following the completion of this course, I began a scheduled 17 week break during which time I remained fully enrolled. (It is to be

- 8 -

noted that 17 weeks from April 7, 2006 is August 4, 2006). At no point in time after this, was there any reason for me to register for this course again, as I had already successfully completed it.

(b)    During this break I received a transcript dated May 22, 2006 in which there was no failing grade for the AICM course. *See Exhibit "V2" of Plaintiffs Motion for Summary Judgment.*

36. On June 23, 2006, Dr. Fernandez issued a Clinical Clerkship Evaluation Form, which in reality can be anything but valid. As set forth in the Student Handbook at page 13, "Passing Step 1 is **required** by the University to proceed to the core clinical clerkships of the curriculum". That is, in order to take a Clinical Clerkship course, a student must first have a passing score on the USMLE Step 1 Exam. In as much as I had not yet sat for the USMLE Step 1 Exam, I could not have been licensed to take such a course. In fact, I was not even registered to take a Clinical Clerkship course. This too was testified to by Dr. Fernandez. *See Plaintiff's Motion, Exhibit "R".* Also, at the deposition of Dr. Fernandez, he testified that he did not supervise me in any Clinical Clerkship course. *See Dep. of Dr. Fernandez P.56 Lines 5-7.* *See Plaintiff's Motion for Summary Judgment, Exhibit " R".*

Thus, it is quite evident that the Clinical Clerkship Evaluation Form is fabricated.

(d)    It was also during the 17 week break, specifically on June 29, 2006, that Ross, without justification, administratively withdrew me from its university. *See Plaintiff's Motion, Exhibit "A1".* It is this letter that Ross would use as a prelude for blocking the release of my USMLE Step 1 Exam score.

(e)    On July 27, 2006 I sat for the USMLE Step 1 Exam. It was my understanding that these test scores would be released on August 15, 2006. However, on August 14, 2006 Ross subsequently released a transcript indicating a failing grade for the AICM course, which I had already completed and received Certification for on April 7, 2006. *See Exhibit "I1" of Plaintiffs Motion for Summary Judgment.*

(f)    It should also be noted that the June 29, 2006 administrative withdrawal letter, preceded the tentative USMLE Step 1 Exam that was scheduled to be administered on June 30, 2006. In essence, by failing to record my AICM grade in my academic transcript, Ross now had the option of thwarting with the grade for the

purpose of blocking the release of my USMLE Step 1 score and ultimately caused my barring at the USMLE/ECFMG office. Though this barring has been reversed on appeal, I am not allowed to participate in USMLE/ECFMG examinations until such time as this case is resolved.

37. In reality, the administrative withdrawal letter, in conjunction with the certification and sponsorship to take the USMLE Step 1 Exam became a well calculated attempt to preclude me from achieving my goal of becoming a medical doctor.

38. It is undisputed that I complied with Ross' stipulation to take the USMLE Step 1 as certified, sponsored and, not only upon the recommendation of Dr. Fernandez but also as directed by Ross itself. However, my certification and sponsorship was withdrawn on August 14, 2006; at about the same time my score for the USMLE Step 1 was scheduled to be released. *See Exhibit "F1" of Plaintiffs Motion for Summary Judgment.*

## THE USMLE STEP ONE EXAM

39. As has been set forth above, I completed the AICM course on April 7, 2006.

40. According to the Student Handbook, at page 9, it is stated, "following the 12- week AICM, there is a 17- week scheduled break during which students remain fully enrolled". *See Plaintiff's Motion for Summary Judgment, Exhibit "B1".*

41. It was after the completion of the AICM course that my 17 week recess, in which I remain "fully enrolled", as a student at Ross began.

42. According to the Student Handbook, at page 13, before a student is eligible to sit for the USMLE Step 1 Exam, he/she must pass the Basic Science Curriculum, the AICM course and the National Board of Medical Examiners (NBME) Comprehensive examination. *See Plaintiff's Motion, Exhibit "C1".*

43. Having passed said courses, and on the recommendation of Dr. Fernandez, on March 12, 2006 I made application to sit for the USMLE Step 1 Exam.

44. This aforementioned application was certified by Ross' Registrar's office. As a result of such certification, Ross had sponsored me to sit for the exam. It then forwarded my application to the United States Medical Licensing Examinations/Educational Commission for Foreign Medical Graduates (Hereinafter referred to as the USMLE/ECFMG") office; the governing body that administers the licensing

examinations. However, this first application was rejected because the USMLE/ECFMG needed to verify my date of birth.

45. Then, on May 5, 2006, I submitted a second application to Ross, who again certified it, then forwarded it to the USMLE/ECFMG office directly. That is, Ross has registered and sponsored me to take the USMLE Step 1 Exam

46. Thus, having completed the required courses, and being given certification from Ross, I became eligible to sit for the USMLE Step 1 Exam; which was going to be administered on July 27, 2006, which in fact, I did sit for, without any objection from any concerned entity. Thus, it cannot be said that I was ineligible to take the USMLE Step 1 Exam.

47. At no point in time in prior to sitting for the USMLE Step 1 exam did Ross issue a failing grade for the AICM course via my academic transcript. As has already been stated herein, if a student fails a course, Ross sends a bill to the student which is then paid for. In this case, Ross' Bursar's office did not issue a second bill for the AICM course; nor did any concerned party attempt to withdraw its certification and sponsorship of me for taking the USMLE Step 1 Exam. It wasn't until August 14, 2006, several weeks after taking the exam, did I learn that Ross withdrew its certification and sponsorship of me for the USMLE Step 1 Exam.

48. On or around November 22, 2006, Ross produced a memorandum dated April 24, 2006, which stated amongst other things that, "Dr. Fernandez conferred today by telephone with Anand Dasrath about the failing grade he earned for the fifth semester". *See Plaintiff's Motion for Summary Judgment Exhibit"M".*

49. Prior to November 22, 2006, I did not have knowledge of this memorandum. In fact, I testified at my deposition that the first time I saw this memorandum was when the case was pending in the Supreme Court of Queens County. *See Plaintiff's Motion Exhibit "L2".*

50. This deprived me of my right in knowing what was in my school record; if it was actually in the school records, or maybe it was fabricated. Whatever the reason, Ross again violated the Student Handbook at page 25 wherein it is stated that, "The University follows the guidelines of FERPA" and FREPA regulations afford students the right to know what is in their school record.

- 11 -

51. Therefore, the failure to post the grade for my AICM course in my academic transcript was an impediment to the completion of my studies at Ross. In addition, Ross cannot claim that I failed the AICM based upon its own registration process.

52. As an example of Ross' procedure for when a student fails a course, I direct the Court's attention to the failing grade that I was issued in the Medical Genetics class taken in my first semester. Upon learning of my failing grade in the Medical Genetics course, I did not register for the class a second time. Rather, Ross registered me for the class, and sent me a bill. Upon payment of the bill, I became registered for the class. *See Plaintiff's Motion Exhibit "M2"*.

53. For the AICM course, this did not happen. At the end of the Spring 2006 semester, and after I had completed the AICM course, I was issued a Certificate of Completion by Dr. Fernandez, the Course Director. At no point in time after this did I receive a bill to satisfy. Therefore, it was not possible that I failed the course. As a result, there would be no reason for me to re-take the class. *See Plaintiff's Motion Exhibit "N2"*.

54. As of June 29, 2006 Ross still had not forwarded an academic transcript bearing the AICM course grade. It was for this reason that I filed and action against Ross in the Queens County Supreme Court.

55. I believe that because of this ongoing litigation Ross may have decided to withdraw its sponsorship of me sitting for the USMLE Step 1 Exam, which it did on August 14, 2006, several weeks after having already sat for the exam and filed my case in Supreme Court. Ross also issued me a failing grade for the AICM course on my academic transcript, suspiciously, the same date. *See Plaintiff's Motion Exhibit "O2"*.

56. On the same date, (August 14, 2006) Ross withdrew its sponsorship of me for the USMLE Step 1 Exam by issuing the statement "no longer eligible, withdrawn" to the USMLE/ECFMG office.

57. It is quite clear that:

A) Ross never issued a failing grade for the said AICM course via an academic transcript before the issuance of the Administrative Withdrawal letter of June 29, 2006;

B) Ross' claim that I failed the AICM course cannot be substantiated and therefore never pre-registered me, or forwarded an invoice to me to sit for the AICM

course a second time after having completed it on April 7, 2006 and having received a certificate of completion for the AICM course;

C) Ross never issued any warning before the Administrative Withdrawal letter was issued on June 29, 2006. It was "effective immediately" as stated in the letter itself. Further, no notification came from any other concerned entity.

D) Ross never issued a warning that it would use the Administrative Withdrawal letter as a reason to withdraw its sponsorship of me to sit for the USMLE Step 1 Exam.

The above facts are in direct contrast to Ross' own regulation on page 14 of the Student Handbook wherein it is stated that withdrawn students may "take or re-take the USMLE through the University". *See Plaintiff's Motion Exhibit "P2"*.

58. Defense counsel has repeatedly accused me of admitting to failing the AICM course. Apart from being false and misleading, there is no valid justification or substantiating evidence for such a claim.

59. The e-mail posting of a grade for the student was unreliable, invalid, and against FERPA, which, as already established has been adopted by Ross. *See Exhibit "B2" of Plaintiffs Motion for Summary Judgment.* A failing grade for the AICM course via an academic transcript was sent to the student on August 14, 2006. The only thing significant about this grade was the date it was sent and the connection it has with all other events that occurred on this date set forth herein.

To reiterate, the AICM course is an Advanced Introduction to Clinical Medicine and is a prerequisite to sitting for the USMLE Step 1 Exam. The USMLE Step 1 license is the immediate prerequisite for commencing Clinical Clerkships. The AICM is not one of the Clinical Clerkship courses. Clinical clerkship courses are done exclusively at hospitals licensed by the State Board of Medicine to do so. A fabricated failing clinical clerkship evaluation was issued. *See Exhibit "K" of Plaintiffs Motion for Summary Judgement.*

60. Therefore, it is quite evident that Ross fabricated the failing AICM grade, which in turn resulted in your affiant being issued an Administrative Withdrawal letter. Thereafter, Ross blocked the release of my score for the USMLE Step 1 Exam, which was taken on July 27, 2006 and scheduled to be released on/or about the next day, August 15, 2006; the day after Ross withdrew its sponsorship of me.

- 13 -

61. In essence, I must have been enrolled as a medical student when I sat for the USMLE Step 1 Exam. The letter of June 29, 2006 wherein it is marked Administrative Withdrawn states that, "In order for a student to remain enrolled with RUSM (Ross), they must either be registered for courses and/or registered for the Boards." What Ross failed to recognize was *See Exhibit "A1" of Plaintiffs Motion for Summary Judgment*: (i) I was certified, sponsored and registered by Ross itself for the USMLE Step 1 Exam which is the "Boards" being referred to here, (ii) It is stated in the Student Handbook at page 9 that "Following the 12-week AICM, there is a 17-week scheduled break during which students remain fully enrolled." There is nothing in the Student handbook that states that students will be withdrawn during this 17-week break. (iii) As a matter of fact, it was Ross that last handled the Certification and sponsorship form: issued Certification, sponsorship and forwarded the documents to be registered with the USMLE. Therefore Ross should have recognized that I was registered for the "Boards." *See Exhibit "D1" of Plaintiffs Motion for Summary Judgment* (iv) Ross is in possession of my academic records and should have known that there was a Certificate of Completion for the AICM course in its Registrar's office. *See Exhibit "I" of Plaintiffs Motion for Summary Judgment.* I testified to these facts at my deposition. Thus, it is quite obvious that Ross has withdrawn me without justification. *See Plaintiff's Motion Exhibit "Q2".*

60. In light of the foregoing it is respectfully submitted that my Motion for Summary Judgment be granted in its entirety and the Defendant's Motion for the same relief be denied.

**ANAND DASRATH**

Sworn to before me this

14th day of April, 2011

NOTARY PUBLIC

DORI GUTIERREZ
NOTARY PUBLIC STATE OF NEW YORK
NO. 01GU6387394
QUALIFIED IN KINGS COUNTY
COMMISSION EXPIRES 05/19/2012

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X    Index No.: CV 07-2433

**ANAND DASRATH**

Plaintiff (s),                    **AFFIDAVIT IN REPLY**

-against-

**ROSS UNIVERSITY SCHOOL OF MEDICINE,**

Defendant (s).
------------------------------------------------------------X

STATE OF NEW YORK    )
                     )
COUNTY OF KINGS      )

**ANAND DASRATH,** being duly sworn deposes and says:

1.  I am the Plaintiff in the above entitled matter and submit this Affidavit in Reply to the Defendant's Opposition to Plaintiff's Motion for Summary Judgment and in further support of my Motion for Summary Judgment pursuant to the Federal Rules of Civil Procedure - Rule 56 and for such other and further relief as this Court deems just and proper.

1.  I am a resident of the County and Borough of Queens, New York.

2.  From May 2004 to June 29, 2006, I was a medical student at Defendant Ross University School of Medicine (Hereinafter: referred to as "Ross").

3.  On or around June 29, 2006, I was marked administratively withdrawn from Ross because it alleged that I failed the Advanced Introduction to Clinical Medicine (Hereinafter: referred to as the "AICM"), course and failed to re-enroll so as to remediate the failing grade.

4.  As a result of this administrative withdrawal, Ross blocked the release of my score for the United States Medical Licensing Examination Step 1 (Hereinafter: referred to as the "USMLE Step 1 Exam") and henceforth blocked my eligibility to participate in United States Medical Licensing Examinations/Educational Commission for Foreign Medical Graduates (USMLE/ECFMG) examinations pending the outcome of this court case.

5.  Ross and its Counsel argue that my allegation of a fabricated grade in the AICM course should not be entertained by a court of law and even if it were, there is no evidence

- 1 -

submitted that I was entitled to a passing grade, or the consequences that followed as a result of the failing grade was not warranted. Thus, my grade dispute does fall within the merits of a breach of contract.

### THE AICM COURSE

6. It must be reiterated that the failing Clinical Clerkship Evaluation Form that Dr. Enrique Fernandez issued was invalid for reasons which will be set forth herein. *See Exhibit "K" of Plaintiff's Motion for Summary Judgment.*

7. As stated on page 13 of Ross University's School of Medicine Student Handbook of Academic Rules and Regulations ("Student Handbook"), "Passing Step 1 is <u>required</u> by the University to proceed to the core clinical clerkship of the curriculum." *See Exhibit "G1" of Plaintiff's Motion for Summary Judgment at page 13.*

8. The AICM course is a prerequisite to the USMLE Step 1 Exam. The USMLE Step 1 Exam, in turn, is a prerequisite for commencing Clinical Clerkship courses. *See Exhibit "G1" of Plaintiff's Motion for Summary Judgment at page 13.*

9. Ross, in fact, issued a Certificate of Completion for my AICM course *See Plaintiff's Motion for Summary Judgment, Exhibit "I1".* It then subsequently issued a failing grade for the same AICM course. *See Exhibit "K" of Plaintiff's Motion for Summary Judgment.*

10. Upon completing the National Board of Medical Examiners (NBME) Comprehensive examination, I was advised by Ross, "You have passed the exam and are now eligible to sit for the USMLE Step 1." *See Exhibit "J" of Plaintiff's Motion for Summary Judgment.*

11. Furthermore, I was not even registered by Ross to do any Clinical Clerkship courses. This was testified to by Dr. Fernandez. *See Plaintiff's Motion for Summary Judgment, Exhibit "R", Fernandez Dep. at pg.56, ln. 5 – 7, pg.56, ln.20 – 22.*

12. To bolster the fact that I could not have been enrolled in a Clinical Clerkship course, page 13 of the Student Handbook states that students become eligible to take the USMLE Step 1 when they have **passed** (emphasis supplied) all courses in the Basic Science curriculum, successfully completed the Advanced Introduction to Clinical Medicine and passed the NBME Comprehensive examination. Defendant has testified that this is accurate in Defendant's Statement of Facts dated March 31, 2011. *See Exhibit*

-2-

*"G1" of Plaintiff's Motion For Summary Judgment at page 13*, Dr. Fernandez' Affidavit ¶ 35.

13. Thereafter and on May 5, 2006, I was certified, sponsored and registered by Ross with the (USMLE/ECFMG) to take the USMLE Step 1 Exam, which I took on July 27, 2006, thereby confirming that I could not have failed the AICM course. *See Exhibit "D1" of Plaintiff's Motion for Summary Judgment.*

14. At his deposition, Dr. Fernandez conceded that I was not enrolled in a Clinical Clerkship course and was not assigned to any hospital for Clinical Clerkship. *See Exhibit "R" of Plaintiff's Motion for Summary Judgment, Fernandez Dep. at pg. 56, ln. 5-7, ln. 20–22.*

15. Dr. Fernandez also conceded that in order for me to be certified by Ross to take the USMLE Step 1 Exam, I had to have passed the AICM course. *See Fernandez Dep. at pg. 42, ln. 19–22, pg. 44, ln. 3, Exhibit "P" & "Q" of Plaintiff's Motion for Summary Judgment.*

16. In fact, Dr. Fernandez issued to me a Certificate of Completion for the AICM course. *See Exhibit " I1" of Plaintiff's Motion for Summary Judgment.*

17. It is also to be noted that Ross has adopted the Family Educational Rights and Privacy Act (FERPA) at page 25 of the Student Handbook. *See Exhibit "B2" of Plaintiff's Motion for Summary Judgment at page 25.* Pursuant to FERPA, the placement of a student's social security number as well as his photograph on his grade report is in violation of this statute. *See Exhibit "K" of Plaintiff's motion for Summary Judgment.* At his deposition, Dr. Fernandez denied placing this information on said form. However he did admit to signing the form. *A copy of Dr. Fernandez deposition is annexed hereto as Exhibit "A".*

18. Upon information and belief, Dr. Fernandez is Board-Certified in Family Medicine. State Board of Medicine regulations do not allow Clinical Clerkship instructors to conduct Clinical Clerkship instruction outside of their specialties. I was never enrolled in the Family Medicine Clinical Clerkship or any other Clinical Clerkship courses. This was testified to by Dr. Fernandez at his deposition. *See Fernandez Dep. at pg. 56, ln. 5 – 7, Plaintiff Exhibit "R".*

- 3 -

19. Furthermore, the Clinical Clerkship evaluation form was graded on a one (1) to five (5) scale. The AICM course is not a Clinical Clerkship course and should have been graded on a 100% scale as outlined in the Student Handbook at pages 5 and 6. *See Exhibit "V" of Plaintiff's Motion for summary judgment at pages 5 to 6.*

20. The alleged hospital at which the Clinical Clerkship took place was the "H.E.T.C. – Greater Miami Health Education Centers". It should be noted that this facility is not a hospital listed in the state of Florida.

21. In addition, at his deposition, Dr. Fernandez admitted that I was never assigned to a hospital for Clinical Clerkship courses. *Fernandez Dep. at pg. 56, ln. 2 - 22, See Plaintiff's Exhibit "R".*

22. However, the address provided by Dr. Fernandez on the Clinical Clerkship form is 7000 S.W. 62nd Avenue, PH-A, Miami, FL, 33143. This is not a hospital at all. Rather, it is Dr. Fernandez' office address, which he testified to *Fernandez Dep. at pg.59, ln. 11, See Plaintiff's Exhibit "X".*

23. The date that Dr. Fernandez signed the Clinical Clerkship evaluation form was June 23, 2006. This became the date that Dr. Fernandez issued the failing Clinical Clerkship evaluation. It should be noted that this date is more than two and a half months after I completed the pre-clinical AICM course as of April 7, 2006. *See Exhibit "K" of Plaintiff's Motion for summary Judgment.* From a chronological point of view and in light of the fact that there was no failing grade listed in an academic transcript dated May 22, 2006 and assuming that this invalid Clinical Clerkship evaluation was to be followed, it still does not stand to reason that Ross would have directed me to re-commence the AICM course on May 22, 2006 as Defense Counsel claimed. *See Exhibit "V2" of Plaintiff's Motion for Summary Judgment.*

24. The instruction at the bottom of the Clinical Clerkship evaluation form states, "After completion of the rotation, return completed white copy to…Ross University School of Medicine… within 30 days." It must be noted that over two and a half months had elapsed between April 7, 2006 and June 23, 2006. Therefore, this "evaluation" does not meet the criteria of Ross' own regulation that it be sent in within 30 days. *See Exhibit "K" of Plaintiff's Motion for Summary Judgment.*

25. It is argued from the dating, that the intent and purpose of this failing Clinical Clerkship evaluation was to serve as a basis for issuing the Administrative Withdrawal letter on June 29, 2006, two days after it was entered in the Ross Registrar's office in New Jersey. *See date stamp of June 27, 2006 on the said Clinical Clerkship evaluation, Exhibit "K" of Plaintiff's Motion for Summary Judgment.*

26. Because the failing Clinical Clerkship evaluation was invalid, the Administrative Withdrawal letter then became invalid. *See Exhibit "A1" of plaintiff's Motion for Summary Judgment.*

27. The Administrative Withdrawal letter was used to keep me out of medical school, block the release of my USMLE Step 1 Exam score and bar me from USMLE/ECFMG examinations. The barring was reversed on appeal to the USMLE/ECFMG office. However, until such time as this litigation is resolved, I am precluded from participating in USMLE/ECFMG examinations.

28. On January 9, 2008, the Honorable Judge Ramon Reyes ordered Dr. Nancy Perri to review the failing AICM grade. On January 24, 2008, she issued a one-line statement that she "concurred" with Dr. Fernandez's failing grade. However, she did not offer any findings as to how she came to that conclusion; nor was I invited to the review as allowed by FERPA and adopted by Ross at page 25 of the Student Handbook. *See exhibit "B2" of Plaintiff's motion for summary judgment at page 25.* In effect, she was predisposed to agreeing with Dr. Fernandez's failing grade. Since a proper review was not conducted and in light of the fact that Ross did not produce any actual examination/testing with failing scores for the AICM course on demand, it is hereby argued that Ross cannot administer a failing grade for my AICM course. *See Exhibit "G" of Plaintiff's Motion for Summary Judgment.*

29. The above-outlined facts clearly demonstrate that Ross has breached the contractual agreement entered into when I enrolled as a student, paid tuition and fees, and endured tremendous sacrifice for Ross to educate, train and guide me into becoming a medical doctor.

## ADMINISTRATIVE WITHDRAWAL

30. In the Defendant's statement of Facts dated March 31, 2011, the defendant claimed that my "Eligibility to sit for the USMLE Step 1 Exam was revoked when I received on or

about April 2006 a failing grade in the AICM course and failed to return to campus to remediate the grade during the semester commencing on May 22, 2006." As will be set forth herein, this statement is inaccurate and/or misleading.

31. To begin, the Defendant is unable to substantiate its claim that I failed any part of the AICM course. Repeated demands upon Ross to provide copies of my actual examinations/testing indicating failing score(s) during the AICM course have still not been satisfied.

32. As set forth above, Ross' claim that I took and failed a Clinical Clerkship course is without merit no matter how it tries to validate its claim that I failed the said course.

33. Several other alleged failing grades for the same AICM course have emerged, but according to Dr. Nancy Perri, as stated in her Deposition at page 25, lines 23 to 24, the AICM course "is a course within itself" and "one grade is issued for it." This makes all of the failing grades allegedly issued at the different dates invalid. *A copy of Dr. Perri's Deposition is annexed hereto as Exhibit "B"*.

34. Furthermore, Ross did not revoke its sponsorship of my sitting for the USMLE Step 1 Exam in or about April 2006; it did so on August 14, 2006, weeks after I took the USMLE Step 1 Exam on July 27, 2006. *See Exhibit "F1" of Plaintiff's Motion for Summary Judgment.* On that same day, August 14, 2006, Ross issued a failing grade on an Academic Transcript for the AICM course. Ross claims that it issued a failing grade on a "secure" website for the AICM course on April 22, 2006. However, once the invalid failing Clinical Clerkship evaluation was issued, I no longer had access to this site. *See Exhibit "K" of plaintiff's Motion for summary Judgment.*

35. Furthermore, Ross did not re-register me to re-take the AICM course commencing on May 22, 2006; nor did it send me an invoice to satisfy as would have been the case if I had, in fact, failed the AICM course. In fact, Ross' Registrar's office was in possession of a Certificate of Completion for the AICM course that I completed in the spring of 2006. Miss Jennifer McLaughlin, in her Defense Statement of Facts herein on March 31, 2011, attempts to discredit the Certificate of Completion by stating that it only states when the AICM course has ended. A careful look at the document clearly shows the statement, "I hereby certify that Dasrath, Anand has completed the Advanced Introduction to Clinical Medicine". The document was signed by Dr. Enrique Fernandez, the AICM Course

- 6 -

Director and he admitted the validity of the document at his Deposition. *Fernandez Dep. at pg. 14, ln. 13 – 14, See Plaintiff's Exhibit "I".*

36. Completion of the AICM course is required before Ross can issue a certification, sponsorship and registration with the USMLE/ECFMG to take the USMLE Step 1 Exam. This much is not in dispute. Furthermore, Ross did in fact issue a certification and sponsorship, and registered me with the USMLE/ECFMG on May 5, 2006. As a result of these actions, I was entitled to, approved to sit for and did, in fact, sit for the examination as directed by Ross on July 27, 2006. *See Exhibit "D1" of Plaintiff's Motion for Summary Judgment.*

37. It is next claimed that I "failed courses" prior to taking the AICM course. (*See Miss Jennifer McLaughlin's Defense Statement of Facts herein on March 31, 2011).* However, I only know of one course, the Medical Genetics course, taken in my first semester at Ross in which a "B+", a passing grade, was initially issued. Inexplicably, it was later withdrawn by Ross and replaced with an "F", a failing grade. In that case, Ross sent me a bill to satisfy. However, this action was not taken for the AICM course. The reason is simple: I was not required to re-take the AICM course. A Certificate of Completion for my AICM course was present in Ross Registrar's office. *See Exhibit "I1" of Plaintiff's Motion for Summary Judgment.*

38. In the Statement of Facts of her Memorandum of Law, dated March 31, 2011 at page 6, Defense Counsel, Jennifer McLaughlin, Esq. states that there is "clear language in the Ross University School of Medicine Student Handbook of Academic Rules and Regulations ("Student Handbook") that states the following:

> "Continuing students in the Basic Sciences must register in person on campus at the beginning of each semester. . ."

However, the entire statement is not applicable to me for the following reasons:

1. I completed the Basic Sciences on the Dominica campus as of December 2005 and did not have to return to the Dominica campus as of that date. This is not in dispute. *(See Transcript, Exhibit "V2" of Plaintiff's Motion for Summary Judgment).*

2. I completed the pre-clinical AICM course as of April 7, 2006 in Miami, Florida and received a Certificate of Completion for the AICM course. *See Exhibit "I1-"of Plaintiff's Motion for Summary Judgment.*

- 7 -

3. I submitted a copy of my Student Identification card in which I am identified as being in the second phase of the M.D. Program in the U.S.

39. On page 18 of the Student Handbook, it specifically states that students in the second phase of the M.D. curriculum are registered, "through the Office of the Dean of Clinical Sciences in New Jersey." *See Exhibit "C" of Plaintiff's Motion for summary Judgment at page 18.* The only thing that I can do in this registration process is satisfy a bill that is mailed to me. To date, a second bill for re-registration for the said AICM course has not been received. Furthermore, Ross' Registrar is in possession of a Certificate of Completion for the AICM course. *See Exhibit "I1" of Plaintiff's Motion for Summary judgment.*

40. At page 7 of Miss McLaughlin's Statement of Facts in her Memorandum of Law dated March 31, 2011, she falsely claims that I do not "dispute" that I failed a required course. As detailed above and in previous court papers, I strongly dispute the invalid failing grade issued to me. Additionally, Miss McLaughlin falsely stated that I am in agreement with her claims in my previous Affidavit ¶ 76–77. I am not in agreement with her false claims as she mentions here.

41. Miss McLaughlin further states at page 7 of Defense's Statement of Facts dated, March 31, 2011, "Dasrath was not eligible to take the USMLE Step 1 exam." This statement is in direct contradiction to what Ross has stated and done:

- After I passed the National Board of Medical Examiners (NBME) Comprehensive examination, Ross sent me an e-mail stating, "Congratulations! You have passed the exam and are now eligible to sit for the USMLE Step 1 exam." *See Exhibit "W2" of Plaintiff's Motion for Summary Judgment.*

- Ross directed me to apply for certification and sponsorship to take the USMLE Step 1 Exam during the period of May 1, 2006 to July 31, 2006. *See Exhibit "W2" of Plaintiff's Motion for Summary Judgment.*

- 8 -

# A704

- On May 5, 2006, Ross certified, sponsored and registered me with the USMLE/ECFMG office to take the USMLE Step 1 exam on July 27, 2006. I took the examination on the scheduled date without any objection from any concerned entity. *See Exhibit "D1" of plaintiff's Motion for summary Judgment.*

- Ross' Registrar had verified that I met all the requirements for taking the USMLE Step 1 Exam before certifying, sponsoring and registering me to take the USMLE Step 1 exam. *See Exhibit "D1" of Plaintiff's motion for Summary Judgment.*

42. In light of the foregoing, it is respectfully submitted that my Motion for Summary Judgment be granted in its entirety and the Defendant's Motion for the same relief be denied.

**ANAND DASRATH**

Sworn to before me this

28th day of April, 2011

NOTARY PUBLIC

**DORI GUTIERREZ**
**NOTARY PUBLIC STATE OF NEW YORK**
**NO. 01GU6187394**
**QUALIFIED IN KINGS COUNTY**
**COMMISSION EXPIRES 05/19/2012**

- 9 -

COPY

```
 1    UNITED STATES DISTRICT COURT
      EASTERN DISTRICT OF NEW YORK
 2    - - - - - - - - - - - - - - - - - - - X
      ANAND DASRATH,
 3

 4                                 Plaintiff,

 5

 6         -against-                    Case No.
                                        CV-07-2433
 7

 8

      ROSS UNIVERSITY SCHOOL OF MEDICINE,
 9

10                                 Defendant.
      - - - - - - - - - - - - - - - - - - - X
11

12                                 October 21, 2010
                                   9:55 a.m.
13
                                   44 Wall Street
14                                 New York, New York

15

16

17              DEPOSITION OF DR. ENRIQUE S. FERNANDEZ,

18    appearing as a witness on behalf of the Defendant

19    herein, taken by the attorneys for Plaintiff,

20    Pursuant to Notice, held at the above-mentioned

21    time and place, before Alec Dazenski, a Notary

22    Public in and for the State of New York.

23

24

25                   ***     **     ***
```

SEVERIN & ASSOCIATES, INC.
1 South View Court
Bayville, New York  11709
TEL. (516) 628-1402 - FAX (516) 628-0423

Dr. Fernandez - Direct                          63

right of that?

          A     I can only assume that it's a Social

Security number but I don't know for sure.

        .  Q     Is there a reason why the Social

Security number would be posted on this form?

          A     I wouldn't know if there was a reason

for it.  I don't believe that's something that we

put on there.

          Q     Is that your handwriting?

          A     That's not my handwriting, no.

Student records include both the student ID

number which is called a banner ID.

          Q     Doctor, I just want to remind you

there's no question before you at this time.

               Did there come a point in time

when you became aware that Mr. Dasrath was

administratively withdrawn from Ross?

          A     Yes.

          Q     When?

          A     I don't recall the date.

          Q     Do you recall how?

          A     It was done by the registrar.

          Q     How would you have received word?

          A     I don't receive word.

SHEET 1   PAGE 1

                                                                    1    COPY

1

2          UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF NEW YORK
3          ------------------------------------------X
           ANAND DASRATH,
4
                                              PLAINTIFF,
5
               -against-              CASE NO. CV-07-2433
6
     ROSS UNIVERSITY SCHOOL OF MEDICINE,
7
                                              DEFENDANT.
8          ------------------------------------------X

9                              DATE: October 15, 2010

10                             TIME: 9:45 a.m.

11

12                   EXAMINATION BEFORE TRIAL of the

13       Defendant, ROSS UNIVERSITY SCHOOL OF

14       MEDICINE, by NANCY PERRI, taken by the

15       Plaintiff, pursuant to an Order, held at the

16       offices of Cullen & Dkyman, Esqs., 44 Wall

17       Street, New York, New York, before a Notary

18       Public of the State of New York.

19

20

21

22

23

24

25

25

1                    A. DASRATH

2          Q.      And what are the requirements,

3     I will just refer to the acronym if that is

4     okay?

5          A.      Yes.

6          Q.      What are the requirements of

7     the AICM course?

8          A.      It's the first compulsory

9     clinical rotation.

10         Q.      When you say first compulsory

11    clinical rotation, what do you mean?

12         A.      The program is broken down into

13    two major parts.  There is a pre-medical

14    education component and then there is a

15    clinical education component.

16               The advanced introduction to

17    clinical medicine is the clinical education

18    component.

19         Q.      That is the first clinical?

20         A.      Yes.

21         Q.      And what courses are required

22    for the AICM?

23         A.      It is a course within itself.

24    It is a 1-12C course and one-grade is issued

25    for it.

**A709**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____ **X** Case No.        CV07-2433
ANAND DASRATH,
                    Plaintiff(s),

          -against-

ROSS UNIVERSITY SCHOOL OF MEDICINE,


                    Defendant(s).
_____ **X**



**PLAINTIFF'S MEMORANDUM OF LAW IN REPLY TO DEFENDANTS OPPOSITION
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO
<u>FEDERAL RULES OF CIVIL PROCEDURE - RULE 56</u>**

**A710**

## PRELIMINARY STATEMENT

This Memorandum of Law, together with the Affidavit of the Plaintiff, Anand Dasrath, (Hereinafter referred to as "Dasrath") together with the Affirmation of Joseph R. Costello, Esq. attorney for the Plaintiff is submitted in Reply to the Defendant, Ross University (Hereinafter referred to as "Ross") Opposition to Plaintiff's Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

The above action arises out of several causes of action of which the sole cause that remains is a breach of contract action. On March 3, 2011, both sides moved for summary judgment.

## PROCEDURAL BACKGROUND

The above action was commenced on or about June 15, 2007 by service of a Summons and Complaint. On May 20, 2008 Ross moved to dismiss the action. The Motion was referred to Magistrate Judge Reyes for a report and recommendation on May 23, 2008. On March 31, 2009 an Order adopting in part the Report and Recommendations as to Ross' Motion to Dismiss was entered. Said Order granted Ross' dismissal of the ADA claim for lack of subject matter jurisdiction. Said granting was made with prejudice to refilling after Dasrath's compliance with the ADAs notice and administrative exhaustion requirements. That part of the Motion which sought dismissal as to the breach of contract claim, fraud and violation of New York Human Rights claims was granted. Dasrath's request to stay the proceedings was denied.

However, the Report and Recommendation was modified to provide Dasrath leave to file an amended complaint as to all claims within thirty (30) days of March 31, 2009. Thereafter, and on June 17, 2009, an amended summons and complaint was filed.

Thereafter, this case proceeded on the aforementioned amended Summons and Complaint filed. Depositions of Dasrath, Dr. Nancy Perri and Dr, Enrique Fernandez for the Defendant were held. Subsequent to the depositions both sides requested documents from each other as a follow up.

It is to be noted that on December 14, 2010, your deponent has made a demand upon Ross' counsel for Dasrath's actual exams on. Not having received a response an email was sent to Justin Capuano, Esq. on February 24, 2011 to which no response has been received. Thereafter, and on March 3, 2011, both sides moved for summary judgment.

- 2 -

Under New York law, a student can sue his school for breach of contract. See Gally v. Columbia University, 22 F.Supp.2d 199, 206 (S.D.N.Y.1998); Clarke v. Trustees of Columbia University, No. 95 Civ. 10627(PKL), 1996 WL 609271, at (S.D.N.Y. Oct. 23, 1996); Keles v. New York University, No. 91 Civ. 7457(SWK), 1994 WL 119525, at (S.D.N.Y. Apr. 6, 1994), aff'd, 54 F.3d 766 (1995); Olsson v. Board of Higher Education, 49 N.Y.2d 408, 413-414 (1980). When a student enrolls at a university, an implied contract arises: if the student complies with the terms prescribed by the university, he will obtain the degree he seeks. See Gally, 22 F.Supp.2d at 206; Keles, 1994 WL 119525. The terms of the implied contract are supplied by bulletins, circulars, and regulations made available to the student. See Clark, 1996 WL 609271; Keles, 1994 WL 119525; Vought v. Teachers College, Columbia University, 511 N.Y.S.2d 880, 881 (1987); Sweeny v. Columbia University, 704 N.Y.S.2d 617, 618 (2d Dept.2000). Implicit in a university's general contract with its students is a right to change the academic degree requirements, provided that such changes are not arbitrary and capricious. See Keles, 1994 WL 11952.

However, because the decisions that educational institutions make about academic standards involve "the subjective judgment of professional educators," claims regarding such matters are subject to judicial review only "to determine whether [the defendants] abided by their own rules, and whether they have acted in good faith or their action was arbitrary or irrational." Gertler v. Goodgold, 487 N.Y.S.2d 565, 569 (1985); see also Clarke, 1996 WL 609271; Keles, 1994 WL 119525; Garg v. Albert Einstein College of Medicine, 747 F.Supp. 231, 236 (S.D.N.Y.1990); Sweeny, 704 N.Y.S.2d at 618.

## PLAINTIFF'S FAILURE TO SUBMIT A RULE 56.1 STATEMENT OF MATERIAL FACT DOES NOT WARRANT DISMISSAL OF THE MOTION

It is argued by the Defendant's counsel that because the Plaintiff did not submit a Rule 56.1 statement of material facts with his motion for summary judgment, his motion should be denied.

However, the U.S. Court of Appeals for the Second Circuit has noted that a "district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules," and "may in its discretion opt to 'conduct an assiduous review of the record' even where one of the parties has failed to file [a Rule 56.1] statement," Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 74 (2d Cir. 2001).

- 3 -

# A712

To hold otherwise would risk creating tension between Local Rule 56.1 and Fed. R. Civ. P. 56, which permits a district court to grant an unopposed motion for summary judgment only when it is "appropriate," i.e., only when "the... admissions on file... show that... the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c), (e). In other words, "[w]here the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented." Fed. R. Civ. P. 56(e), Advisory Committee Note to 1963 Amendment.

Although it would have been more prudent to follow the rule, rather than rely upon the discretion of the court to relieve non-compliance, it is asked of this court to be forgiving in addressing a violation of this rule committed by Plaintiff's counsel and not deny the Plaintiff his day in court.

The issue in determining a motion for summary judgment ... is whether any genuine issue of material fact remains as to whether defendants acted in bad faith or in an arbitrary or irrational manner." Clarke, 1996 WL 609271. Plaintiff's claim of breach of contract is based on Ross University's April 1996 decision to dismiss plaintiff. It is undisputed that, at the time of his dismissal, plaintiff had participated in two clinical rotations at St. Luke's Hospital, without having first passed Step 1 of the USMLE. (See Ex. 11 to Pl. Aff.).

Summary judgment is appropriate where "there is no genuine issue as to any material fact and... the moving party is entitled to a judgment as a matter of law," Fed. R. Civ. P. 56(c), i.e., "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A fact is "material" for these purposes if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id

## STATEMENT OF FACTS

In the spring of 2003 Dasrath applied to Ross University School of Medicine (Hereinafter referred to as "ROSS"). ¶ 1 ("Dasrath Affidavit"). His goal in applying to Ross was to become a medical doctor. ¶ 3 ("Dasrath Affidavit"). He then submitted an application form and college transcript. ¶ 4 ("Dasrath Affidavit"). Later in the spring of 2003, he received an acceptance letter from Ross. ¶ 5 ("Dasrath Affidavit"). In May 200, he began his studies at Ross. Dasraths'

- 4 -

first four semesters of studies consisted of Basic Science Courses; which entails the theoretical part of medicine. In December of 2005, he completed all of the courses in the Basic Science Curriculum ¶ 8 ("Dasrath Affidavit").

In the Spring of 2006, Ross registered Dasrath for the Advanced Introduction to Clinical Medicine (Hereinafter referred to as the "AICM") course given in Miami, Florida. He completed the AICM course on April 7, 2006 upon which Ross Issued a Certificate of Completion for said course ¶ 34 ("Dasrath Affidavit"). Following the completion of the AICM course, Dasrath was on a 17-week scheduled break from Ross. However, he remained fully enrolled as a student at Ross as stated on page 9 of Ross University School of Medicine Student Handbook of Academic Rules and Regulations (Hereinafter referred to as the "Student Handbook") ¶ 34 ("Dasrath Affidavit").

In March of 2006, Dasrath Completed the National Board Medical Examiners Comprehensive Examination (Hereinafter referred to as the "NBME"). His next step was to sit and take the United States Medical Licensing Examination Step 1 (hereinafter referred to as the "USMLE Step 1"). As stated in the Student Handbook at page 13, students are eligible to take the USMLE Step 1 after they have completed the Basis Science Curriculum, the AICM course and the NBME. Upon successful completion of each course, and between the period of May 1, 2006 - July 31, 2006 Dasrath was instructed by Ross to apply for certification and sponsorship to sit and take the USMLE Step 1 Exam, which he did on July 27. 2006. ¶ 38 ("Dasrath Affidavit").

Plaintiff contends that (1) a contract was created when Ross, certified him, not once, but two times to sit for the USMLE Step 1, and (2) the Defendant improperly withdraw its sponsorship of him to take the USMLE Exam Step 1.

As stated above, in order to be eligible to sit for the USMLE Step 1, a student must complete Ross' Basic Science Curriculum; the AICM course, and the NBME. Only then can a student be certified by Ross to sit for the USMLE Step 1 Exam.

It is undisputed that Dasrath was certified to sit for the USMLE Step 1 Exam ¶ 45 ("Dr. Fernandez' Affidavit"). It is also undisputed that Dasrath did, in fact, sit for said exam as instructed. What is in dispute is whether he was given a failing grade in the AICM course, which in turn precluded the USMLE/ECFMG from releasing his grade for the USMLE Step 1 Exam as set by Ross' standards. As will be set forth herein, it is evident that Dasrath could not have been given such a grade by Ross.

# A714

It was not until August 14, 2006 that Dasrath received official documentation in the form of an academic transcript when he learned that Ross issued a failing grade for the AICM course. However, by this time he had already sat and taken the USMLE Step 1 Exam.

## SUMMARY JUDGMENT STANDARD

Summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Rule 56") is only appropriate where admissible evidence, in the form of affidavits, deposition transcripts, or other documentation, demonstrates both the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law. See, e.g., Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 309 (2d Cir.2008); Viola v. Philips Med. Sys. of N. Am., 42 F.3d 712, 716 (2d Cir.1994). The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); see also SCR Joint Venture L.P. v. Warshawsky, 559 F.3d 133, 137 (2d Cir.2009); Coppola v. Bear Stearns & Co., 499 F.3d 144, 148 (2d Cir.2007).

As set forth in Dasrath's Affidavit, both in support of his motion for summary judgment and in Reply to Defendant's Motion for summary judgment, Ross did in fact as arbitrary, capricious and against its own stated policy and regulations. As a result, Dasrath is entitled to the granting of his motion for summary judgment.

## ARGUMENTS

## WHETHER A CONTRACT EXISTS AND WHETHER THE DEFENDANT BREACHED THAT CONTRACT

Under New York law, to make out viable claim for breach of contract, complaint need only allege: (1) existence of agreement; (2) adequate performance of contract by plaintiff; (3) breach of contract by defendant; and (4) damages. St. John's University v Bolton and Spiridon Spireas, 2010 WL 5093347.

Under New York law, a student can sue his school for breach of contract. See Gally v. Columbia University, 22 F.Supp.2d 199, 206 (S.D.N.Y.1998); Clarke v. Trustees of Columbia University, No. 95 Civ. 10627(PKL), 1996 WL 609271, at (S.D.N.Y. Oct. 23, 1996); Keles v. New York University, No. 91 Civ. 7457(SWK), 1994 WL 119525, at (S.D.N.Y. Apr. 6, 1994), aff'd, 54 F.3d 766 (1995); Olsson v. Board of Higher Education, 49 N.Y.2d 408, 413-414 (1980).

- 6 -

# A715

When a student enrolls at a university, an implied contract arises: if the student complies with the terms prescribed by the university, he will obtain the degree he seeks. See Gally, 22 F.Supp.2d at 206; Keles, 1994 WL 119525. The terms of the implied contract are supplied by bulletins, circulars, and regulations made available to the student. See Clark, 1996 WL 609271; Keles, 1994 WL 119525; Vought v. Teachers College, Columbia University, 511 N.Y.S.2d 880, 881 (1987); Sweeny v. Columbia University, 704 N.Y.S.2d 617, 618 (2d Dept.2000). Implicit in a university's general contract with its students is a right to change the academic degree requirements, provided that such changes are not arbitrary and capricious. See Keles, 1994 WL 11952.

However, because the decisions that educational institutions make about academic standards involve "the subjective judgment of professional educators," claims regarding such matters are subject to judicial review only "to determine whether [the defendants] abided by their own rules, and whether they have acted in good faith or their action was arbitrary or irrational." Gertler v. Goodgold, 487 N.Y.S.2d 565, 569 (1985); see also Clarke, 1996 WL 609271; Keles, 1994 WL 119525; Garg v. Albert Einstein College of Medicine, 747 F.Supp. 231, 236 (S.D.N.Y.1990); Sweeny, 704 N.Y.S.2d at 618. "

Defendant agrees that this is the standard to be applied. See Defendant's Memorandum of Law in Opposition to Summary Judgment. (Def. Mem. of Law pg. 9). It is argued herein that Dasrath has met this standard, and is entitled to summary judgment.

Defendant cites Babiker v Ross University, 2000 U.S. Dist. Lexis 6921, at 25-26 (SDNY 2000 where summary judgment was granted to the Defendant. Although that case is "strikingly similar" to the case at hand, nonetheless it is distinguishable. In that case, *Babiker* failed the USMLE Step 1 three times, continued to participate in clinical studies and was then expelled for doing so. Therefore, *Babiker* had to have been enrolled in clinical clerkships because he passed portions of the USMLE Step 1. By passing portions of the USMLE Step 1, *Babiker* became eligible for a clinical clerkship. In this case, Dasrath's grade for the USMLE Step 1 was blocked. As a result he could not have been enrolled in a clinical clerkship course. In fact, Dr. Fernandez testified that Dasrath was not enrolled in a clinical clerkship course ***See Plaintiff's Motion, Exhibit "R", Fernandez Dep. at pg.56, ln. 5 – 7, pg.56, ln.20 – 22.***

- 7 -

It is undisputed that Dasrath passed the basic science courses, and the NBME. See ¶36 (Dr. Fernandez Affidavit). Furthermore, he testified that Dasrath obtained certification and sponsorship for the USMLE Step 1 Exam.

By subsequently issuing Dasrath failing grade in the AICM course; which in turned blocked the release of his score for the USMLE Step 1 Exam, and then issuing a letter, on August 14, 2006 (after he had sat for the USMLE Step 1 Exam), marking him administratively withdrawn as of June 29, 2006, and subsequently withdrawing its sponsorship of him, it is quite obvious that Ross breached the contract by acting in an arbitrary and capricious manner and therefore failed to abide by its own Student Handbook.

## A.  THE AICM COURSE

It is undisputed that the AICM course is a prerequisite to the USMLE Step 1 Exam.  (See Def. Mem. of Law pg. 5).  The USMLE Step 1 in turn is a prerequisite for commencing Clinical Clerkships courses.

To be eligible for Clinical Clerkships courses, a student must first have a passing score on the USMLE Step 1 Exam. *See Exhibit "G1" of Plaintiffs Motion for Summary Judgment.*  As is set forth herein Dasrath sat for the USMLE Step 1 Exam on July 27, 2006.  However, he was not registered by Ross to do any Clinical Clerkship courses.  This was testified to by Dr. Fernandez. *See Plaintiff's Motion, Exhibit "R", Fernandez Dep. at pg.56, ln. 5 – 7, pg.56, ln.20 – 22.* Therefore, it was not possible for him to have been enrolled in a Clinical Clerkship.

Ross next claims that out of a 1000 possible points for the AICM course, Dasrath received 426.6, which is a failing grade. *See Affidavit of Dr. Fernandez at para. 11 annexed to Defendants Affirmation in Opposition*.  However, Ross did not grade students on a 1000 point scale in the spring of 2006.  Rather students were graded on a 100% scale. *See Plaintiff's Motion for Summary Judgment, Exhibit V"*  (See "Student Handbook", at pages 5 and 6 particularly referring to grading).  In addition, Ross has failed to produce any actual examination materials that could indicate a failing grade in the AICM course.  At Dr. Perri's deposition page 25, line 23, she stated that the AICM, "is a course within itself" and on page 25 line 24 that "one grade is issued for it".  Over the course of time, Ross has produced several failing grades for the same AICM course based on several different grading procedures, which in turn makes any of the issued failing AICM grades erroneous and arbitrary. *See Plaintiff's Motion for Summary Judgment, Exhibit "K", Perri Dep. at pg. 25, line 23 and line 24.*

- 8 -

Ross had in fact issued a Certificate of Completion for the AICM course *See Plaintiff's Motion for Summary Judgment, Exhibit "I1"*. It then subsequently issued failing grades for the same AICM course.

Defendant claims that individual grades are available through eCollege in advance of the grade being available on an official transcript (See Fernandez Aff. ¶53 and Def. Mem. of Law pg 11). However, in prior semesters, end of semester grades were issued via an academic transcript in hardcopy format, not on E-College.

On page 25 of Ross' University School of Medicine Student Handbook of Academic Rules and Regulations (Hereinafter Referred to as the "Student Handbook"), it is stated that Ross has adopted the Family Educational Rights and Privacy Act. (Hereinafter referred to as FERPA), *See Exhibit "B2" of Plaintiffs Motion for Summary Judgment*. For confidentiality reasons, FERPA does not approve of students grades being posted on the Internet.

The Student Handbook does not recognize the Internet as a means of posting student grades. On page 6 of the Student Handbook it is stated, "A student… will receive grades…on his/her transcript." In all of the Plaintiffs previous semesters he received his grades via an academic transcript, not on E-college. *See Plaintiff's Motion for Summary Judgment, Exhibit "V"*. Defendant further claims that on April 22, 2006 he acknowledged via e-mail that he saw his "failing grade" in the AICM course and asked Dr. Fernandez to review it. (See Dr. Fernandez affidavit paragraph 14 and Exhibit "B"). It is important to note that it is stated on <u>page 25</u> of the Student Handbook the student has, "The right to request the amendment of the student's educational records that the student believes are inaccurate or misleading". *See Exhibit "H1" of the Plaintiffs Motion for Summary Judgment.*

Ross continuously claims that Dasrath "admitted"; "acknowledged" and/or was aware that he failed the AICM course ¶ 40 ("Dr. Ferenadez Affidavit"). A careful analysis of defense's Exhibit "B" clearly informs Dr. Fernandez that it was not possible for Dasrath to have failed the AICM course. Moreover, it is also stated on page 25·of the student handbook that, *See Exhibit "B2" of Plaintiffs Motion for Summary Judgment*:

> "If the university decides not to amend the record as requested by the student, the university will notify the student of the decision and advise the student of his or her right to a hearing regarding the request for amendment. Additional information regarding the

hearing procedures will be provided when the student is
notified of the right to a hearing."

At no point in time has Ross offered, let alone conducted, a hearing before placing a failing grade for the AICM course in my transcript. Clearly Ross is in breach of its own Student Handbook.

Ross next claims that on April 24, 2006 Dasrath participated in a telephone conversation with Dr. Fernandez regarding a failing grade for the AICM course. (See Dr. Fernandez affidavit paragraph 15, McLaughlin Affidavit, Exhibit L and Plaintiffs deposition page 80 line 12 and page 81 line 14). At the very least it would be irrational for Dr. Fernandez to engage in a discussion over a failed AICM course. It was Dr. Fernandez that issued a Certificate of Completion for the said AICM course.

Defendants Exhibit "L" is dated April 24, 2006 but first surfaced on November 22, 2006 while the case was in the Queens County Supreme Court. It is to be noted that that case was dismissed without prejudice because the Supreme Court lacked jurisdiction (See Copy of the Hon. Roger N. Rosengarten dated January 31, 2001. Thus, it is quite evident that Ross circumvents the issue of issuing a failing grade.

## B. ADMINISTRATIVE WITHDRAWAL

Ross next claimed that I received an administrative withdrawal effective May 22, 2006. *See ¶ 24 Affidavit of Dr. Enrique Fernandez in Support of Defendant's Motion for Summary Judgment.*

By falsely stating that the administrative withdrawal was effective May 22, 2006, Defendant is distracting attention from the following chronology of events:

(a)     Dasrath completed the AICM course on April 7, 2006 and received a Certificate of Completion for this course. ¶ 34 ("Dasrath Affidavit"). Following the completion of this course, he began a scheduled 17 week break during which time he remained fully enrolled ¶ 35 ("Dasrath Affidavit")

(b)     During the break he received a transcript dated May 22, 2006 in which no failing grade for the AICM course was issued. *See Exhibit "V2" of Plaintiffs Motion for Summary Judgment* ¶ 40 ("Dasrath Affidavit").

(c)     Thereafter, and on June 23, 2006, Dr. Fernandez issued a Clinical Clerkship Evaluation Form. As set forth in the Student Handbook at page 13, "Passing Step 1 is **required**

- 10 -

# A719

by the University to proceed to the core clinical clerkships of the curriculum" ¶ 86 ("Dasrath Affidavit"). That is, in order to take a Clinical Clerkship course, a student must first have a passing score on the USMLE Step 1 Exam ¶ 87 ("Dasrath Affidavit"). In as much as Dasrath had not yet sat for the USMLE Step 1 Exam, he could not have been licensed to take such a course. In fact, he was not even registered to take a Clinical Clerkship course. This too was testified to by Dr. Fernandez. *See Plaintiff's Motion, Exhibit "R"*. Also, at the deposition of Dr. Fernandez, he testified that he did not supervise Dasrath in any Clinical Clerkship course. *See Dep. of Dr. Fernandez P.56 Lines 5-7*. *See Plaintiff's Motion for Summary Judgment, Exhibit "R"*.

Thus, it is quite evident that the Clinical Clerkship Evaluation Form is fabricated.

(d)     It was also during the 17 week break, specifically on June 29, 2006, that Ross, without justification, administratively withdrew Dasrath from its university.

(e)     On July 27, 2006 I sat for the USMLE Step 1 Exam. It was my understanding that these test scores would be released on August 15, 2006. However, on August 14, 2006 Ross subsequently released a transcript indicating a failing grade for the AICM course, which I had already completed and received Certification for on April 7, 2006.

(f)     It should also be noted that the June 29, 2006 administrative withdrawal letter, preceded the tentative USMLE Step 1 Exam that was scheduled to be administered on June 30, 2006.

In reality, the administrative withdrawal letter, in conjunction with the certification and sponsorship to take the USMLE Step 1 Exam became a well calculated attempt to preclude me from achieving my goal of becoming a medical doctor.

It is undisputed that I complied with Ross' stipulation to take the USMLE Step 1 as certified, sponsored and, not only upon the recommendation of Dr. Fernandez but also as directed by Ross itself. However, my certification and sponsorship was withdrawn on August 14, 2006; at about the same time my score for the USMLE Step 1 was scheduled to be released.

In light of the foregoing it can be said that Ross breached its agreement with Dasrath and acted in an arbitrary and capricious manner, thus warranting denial of its motion for summary judgment.

Defendant further claims that out of 1,000 possible points for the AICM, Dasrath received 426.6, which is a failing grade (See Fernandez Aff. ¶11, Ex. A). It further argues that on April

22, 2006 he acknowledged via e-mail that he saw his "failing grade" in the AICM course and asked Dr. Fernandez to review this grade. (See Fernandez Aff. ¶14, Exh. "B").

Defendant's claim that Dasrath learned of his failing grade before sending the April 22, 2006 e-mail to Dr. Fernandez (See McLaughlin's affidavit, Exhibit "L" and Plaintiffs deposition on page 89, Lines 19-22), is without merit. At no point in time did Dasrath admit to failing the AICM course. It is argued that Ross has submitted an arbitrary failing grade of the AICM course. In fact, at his deposition, at page 89, lines 19 to 22, Dasrath did not admit to failing the AICM course as claimed ¶ 89 ("Dasrath Affidavit").

Moreover, Dr. Perri has stated at her deposition that upon successful completion of the AICM course the student is then instructed to sit and take the USMLE Step 1 Exam, which he did. See Dr. Perri's deposition at page 28 lines 12 to 16. At his deposition, he clearly informed defense counsel that he did not fail the AICM course. ***Dasrath Dep. at. pg.128, ln. 13 – 20; pg. 157, ln. 14 – 21.***

Dr. Fernandez claims that he had reviewed the failing grade prior to the April 24, 2006 telephone conversation. (See Def. Mem. of Law pg 14). However, even before this date, Dr. Fernandez had already issued a Certificate of Completion for the AICM course. He then attempted to present a failing grade for the same course.

It is argued that Dr. Fernandez and Dasrath discussed his retaking of the AICM course set to begin on May 22, 2006. ***See Dr. Fernandez's affidavit paragraph 17 Exhibit "C"*** and Def. Mem. of Law pg 14. However, it is not reasonable to believe that Dr. Fernandez would engage in such a conversation for the following reasons:

(a) Dr. Fernandez had already issued a Certificate of Completion for said course. ***See Plaintiff's Motion for Summary Judgment, Exhibit "I1"***.

(b) As stated on page 25 of the Student Handbook, "If the University decides not to amend the record as requested by the student, the University will notify the student of the decision and advise the student of his or her right to a hearing regarding the request for amendment". ***See Exhibit "B2" of Plaintiffs Motion for Summary Judgment.*** This was never done by Ross.

(c) An academic transcript dated May 22, 2006 and issued by Ross' Registrar did not bear a failing grade for said AICM course. ***See Plaintiff's Motion for Summary Judgment, Exhibit "V2"***.

(d) Ross did not re-register Dasrath for the AICM course; nor did it send him a bill to satisfy.

(e) Dr. Fernandez would not have advised him to take the USMLE Step 1 Exam in his memorandum of April 24, 2006 if he did in fact fail the AICM course. The AICM course is a prerequisite for taking the USMLE Step 1 Exam. ***See Exhibit "M" of Plaintiffs Motion for Summary Judgment.***

(f) He could not have been issued a certification and sponsorship by Ross to sit and take the USMLE Step 1 Exam if he had in fact failed the AICM course. ***See Exhibit "D1" of Plaintiffs Motion for Summary Judgment.***

(g) At Dr. Perri's deposition, she confirmed that Dasrath would have had to pass the AICM course in order to receive certification and sponsorship to sit for the USMLE Step 1 Exam. ***See Exhibit "H" of Plaintiffs Motion for Summary Judgment.*** (Perri Dep. at pg. 28 ln. 12 – 16, pg. 28 ln.24).

(h) At the time that Ross' Registrar informed him of passing the National Board of Medical Examiners Comprehensive Exam (NBME) they also stated that he was now "eligible" to take the USMLE Step 1 Exam. In fact, they dictated a time interval during which he was required to sit and take said Exam. This time interval was between May 1, 2006 to July 31, 2006. ***See Exhibit "W2" of Plaintiffs Motion for Summary Judgment.*** He then proceeded to take the USMLE Step 1 Exam on July 27, 2006 as directed by Ross.

(i) At her deposition, Dr. Perri confirmed this date as the correct date that Dasrath took the exam. ***See Exhibit "C1" of Plaintiffs Motion for Summary Judgment, Dr. Perri's deposition page 57, lines 8-13.***

Dasrath is not arguing for the first time that Ross violated The Family Educational Rights and Privacy Act ("FERPA"). Rather, Dasrath claims that in its Student Handbook Ross has adopted the principals of FERPA. Pursuant to those principals, the posting of grades to a secure website is a violation on FERPA, which in turn makes this a breach of Ross' own rules and regulations.

## THE USMLE STEP 1 EXAM AND THE ECFMG

It is undisputed that the USMLE Step 1 exam is administered by the Educational Commission for Foreign Medical Graduates ("ECFMG") ¶ 25 ("Dr. Fernandez' Affidavit"). It is also undisputed that the USMLE Step 1 exam is not administered by Ross. Lastly, it is

# A722

undisputed that Dasrath was enrolled at the time he applied for the USMLE ¶ 33 ("Dr. Fernandez' Affidavit"). What is in dispute is whether Dasrath was administratively withdrawn by the time he sat for the exam. Because Ross sponsored him, certified him twice to sit for the exam, he must have successfully completed the AICM and therefore Ross could not have administratively withdrawn him at the time the USMLE Step 1 exam was administered.

## CONCLUSION

To reiterate, Dasrath completed the AICM course on April 7, 2006; was certified by Ross on May 5, 2006 to sit for the USMLE Step 1 Exam on July 27, 2006; did in fact sit for said exam; but was issued a failing grade on August 14, 2006 and marked administratively withdrawn as of May 22, 2006. Thus, it is evident that Ross acted in an arbitrary and capricious manner. Because of its actions, it is in violation of its rules and regulations.

**WHEREFORE,** Plaintiff requests that this Court grant his motion in its entirety and for the costs and disbursements of this action and for such other and further relief as this Court deems just and proper.

Dated: Brooklyn, New York
     April 28, 2011

                           COSTELLO & COSTELLO, P.C
                           BY:   JOSEPH R. COSTELLO (9668)
                           Attorneys for the Plaintiff
                           5919 20th Ave.
                           Brooklyn, N.Y. 11204
                           (718) 331-4600
                           Our File No. 6970

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X

ANAND DASRATH,                                  Case No.: CV 07 2433

                          Plaintiff,            (C. Amon)
                                                (R. Reyes)

          - against -

ROSS UNIVERSITY SCHOOL OF MEDICINE,

                          Defendant.

------------------------------------------------------------X

## MEMORANDUM OF LAW IN FURTHER SUPPORT OF ROSS UNIVERSITY'S SUMMARY JUDGMENT MOTION PURSUANT TO RULE 56



CULLEN and DYKMAN LLP

Garden City Center
100 Quentin Roosevelt Boulevard
Garden City, New York 11530-4850
Telephone (516) 357-3700

**TABLE OF CONTENTS**

|  | Page |
|---|---|
| TABLE OF AUTHORITIES | ii |
| PRELIMINARY STATEMENT | 1 |
| STATEMENT OF FACTS | 1 |
| DEFENDANT'S FACTS ARE UNDISPUTED AS PLAINTIFF FAILED TO SUBMIT A RULE 56.1 COUNTERSTATEMENT OF MATERIAL FACT | 2 |
| PLAINTIFF'S FAILURE TO SUBMIT A MEMORANDUM OF LAW IN OPPOSITION WARRANTS SUMMARY JUDGMENT | 2 |
| ARGUMENT | 3 |
| POINT I | |
| PLAINTIFF HAS FAILED TO PRESENT ANY LAW OR FACT THAT WOULD WARRANT DENIAL OF SUMMARY JUDGMENT | 3 |
| POINT II | |
| PLAINTIFF'S BREACH OF CONTRACT CLAIM FAILS AS A MATTER OF LAW | 4 |
| A. Plaintiff's Failing Grade in the AICM Course Was Neither Contrary to any Policy Nor Arbitrary or Capricious | 4 |
| B. Ross University Properly Administratively Withdrew Plaintiff for Failing to Remediate a Failing Grade in the AICM Class | 7 |
| C. Ross University Did Not Block Plaintiff's USMLE Step 1 Score | 9 |
| CONCLUSION | 11 |

# A725

## TABLE OF AUTHORITIES

Page

*Derienzo v. Metro. Transp. Auth.,*
01 Civ. 8138, 2006 U.S. Dist. LEXIS 63350
(S.D.N.Y. Sept. 1, 2006)……………………………….………………… 2


*Keles v. New York Univ.,*
1994 U.S. Dist. LEXIS 4202 (S.D.N.Y. 1994)……………………………. 3


*Nawanko v. Williams,*
2008 U.S. Dist. LEXIS 77850
(E.D.N.Y 2008) (Amon, J.)……………..………………………………. 2

*Owasso Indep. School Dist. v. Falvo,*
534 U.S. 426, 433 (2002)…………………………………………….... 7

*Raber v. Wilson-Coker,*
362 F.3d 190, 201 (2d Cir. 2004)…………………………………… 5

*Rivera v. Inc. Vill. of Farmingdale,*
06 CV 2613, 2011 U.S. Dist. LEXIS 34185,
(E.D.N.Y. March 30, 2011)……………..……………………………….. 7


*Susan M. v. N.Y. Law Sch.,*
76 N.Y.2d 241, 556 N.E.2d 1104 (1990)………………..……………….. 3

ii

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X

ANAND DASRATH,                                          Case No.: CV 07 2433
                                                        (C. Amon)
                                                        (R. Reyes)
                                       Plaintiff,

        - against -

ROSS UNIVERSITY SCHOOL OF MEDICINE,

                                       Defendant.
-------------------------------------------------------- X

## MEMORANDUM OF LAW IN FURTHER SUPPORT OF ROSS UNIVERSITY'S SUMMARY JUDGMENT MOTION PURSUANT TO RULE 56

### PRELIMINARY STATEMENT

This memorandum of law, along with the Affidavits of Dr. Enrique Fernandez and Jennifer A. McLaughlin and attached exhibits, previously submitted with defendant's motion for summary judgment, is respectfully submitted in further support of Defendant Ross University School of Medicine's ("Defendant" or "Ross University") motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth herein, Defendant's motion for summary judgment dismissing plaintiff's sole cause of action for breach of contract should be granted.

### STATEMENT OF FACTS

The facts relevant to this memorandum of law have been set forth more fully in Ross University's Statement of Material Facts Pursuant to Local Rule 56.1 and, for the sake of brevity, will not be repeated herein, except as specifically cited below.

## DEFENDANT'S FACTS ARE UNDISPUTED AS PLAINTIFF FAILED TO SUBMIT A RULE 56.1 COUNTERSTATEMENT OF MATERIAL FACT

It should be noted at the outset that plaintiff did not submit a Rule 56.1 counterstatement of material facts with his opposition to Ross University's motion for summary judgment. Failure to submit this required statement warrants a finding that all of Ross University's factual assertions in support of its motion are uncontroverted and were thus deemed to be admitted. *Derienzo v. Metro. Transp. Auth.*, 01 Civ. 8138, 2006 U.S. Dist. LEXIS 63350, *4-5 (S.D.N.Y. Sept. 1, 2006). Pursuant to the plain terms of Local Rule 56.1, those uncontroverted assertions, which have a proper foundation in the record, should be admitted. *Id.* (citing *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003)).

## PLAINTIFF'S FAILURE TO SUBMIT A MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION WARRANTS SUMMARY JUDGMENT

In addition, Plaintiff's failure to submit a memorandum of law in opposition to defendant's motion for summary judgment is a violation of Local Rule 7.1(a). As expressly provided in the Rule, Plaintiff's failure to comply with Local Rule 7.1(a) constitutes separate grounds to resolve the instant motion against the plaintiff by default. *See Nawanko v. Williams*, 2008 U.S. Dist. LEXIS 77850 at *7 (E.D.N.Y 2008) (Amon, J.) (denying summary judgment because, among other things, Plaintiff failed to submit a 56.1 statement and memorandum of law).

## ARGUMENT

### POINT I

### PLAINTIFF FAILS TO PRESENT ANY LAW OR FACT
### THAT WOULD WARRANT DENIAL OF SUMMARY JUDGMENT

Plaintiff's affidavit submitted in opposition to Ross University's motion for summary judgment (the "Dasrath Aff."), although somewhat disjointed, essentially makes one argument: Plaintiff did not fail the AICM course. Plaintiff's opposition, however, fails to show that Ross University breached any contractual obligation it had to Plaintiff. Instead, Plaintiff simply asks the Court to give him an "A" in the AICM course despite the fact that the undisputed evidence shows Plaintiff failed the course.

It is well-settled, however, that courts will not intervene in an educational institution's decisions regarding a student's academic performance. *Susan M. v. N.Y. Law Sch.*, 76 N.Y.2d 241, 245, 556 N.E.2d 1104, 1106 (1990) ("[s]trong policy considerations militate against the intervention of courts in controversies relating to an educational institution's judgment of a student's academic performance."). In addition, under New York law, judicial review of a university's academic decisions is limited to a determination of whether the university acted arbitrarily, capriciously, irrationally, in bad faith or contrary to law. *Keles v. New York Univ.*, 1994 U.S. Dist. LEXIS 4202, at *20-*22 (S.D.N.Y. 1994). As such, a plaintiff-student asserting a breach of contract claim based on the academic decisions of a university must demonstrate that the university acted arbitrary, capriciously and against its own stated policies and regulations to defeat summary judgment. *Keles*, 1994 U.S. Dist. LEXIS 4202. Plaintiff simply has not

3

presented any triable issue of fact to demonstrate an arbitrary and irrational action on the part of Ross University that violated its own stated policies and regulations.

**POINT II**

**PLAINTIFF'S BREACH OF
CONTRACT CLAIM FAILS AS A MATTER OF LAW**

Unfortunately, Plaintiff's affidavit is simply too disorganized and convoluted in its reasoning to permit a paragraph by paragraph counter to all of Plaintiff's conclusory allegations. Additionally, most of Plaintiff's claims are completely unsupported by any facts, whatsoever. Therefore, Ross University will simply bring to the Court's attention the indisputable facts that contradict Plaintiff's conclusory claims.

A.    **Issuing a Failing Grade in the AICM Course
Was Neither Contrary to any Policy Nor Arbitrary or Capricious**

Plaintiff claims throughout his affidavit in opposition to this motion that he must have passed the AICM course since he received a certification of completion. The certification of completion, however, is simply a document certifying that the AICM class was completed, not that it was *successfully* completed. *See* McLaughlin Aff., Ex. 5, pg. 80-81. Even if this court were in a position to determine whether or not plaintiff failed the course, Plaintiff points to nothing that would demonstrate that he in fact passed the course or that would indicate the certificate of completion represented a passing grade or that by later issuing a failing grade defendant would be breaching any contract with plaintiff.

Similarly, plaintiff's claim that the 426.6 points received out of 1,000 possible points available for the AICM course is somehow "fabricated" because students received scores based on a 100 percent scale and not on a point system is unsupported, inane and

4

of no import. His unsupported and conclusory statement that over the course of time "Ross has produced several failing grades for the same AICM course based on several different grading procedures, which in turn makes any of the issued failing AICM grades erroneous and arbitrary" is without merit. Plaintiff earned one final failing grade for the AICM course and one final failing grade was issued based on his failure to achieve the requisite point level in the course.[1]  *See* Fernandez Aff., Ex. "A".

Plaintiff's claim that Ross University failed to post his grade on his official transcript as of May 22, 2006 (the date Plaintiff was required to retake the AICM course), is meaningless. Plaintiff was notified of his failing grade one month before May 22, 2006 when his grade was posted on "eCollege".[2]  Plaintiff acknowledged receiving this grade in an email to Dr. Fernandez, dated April 22, 2006, wherein Plaintiff responded to Dr. Fernandez' email alerting all students that the AICM course grades were posted on eCollege. Dr. Fernandez spoke with Plaintiff via telephone and during that conference the failing grade was discussed as well as the fact that Plaintiff needed to repeat the AICM course in the trimester starting on May 22, 2006. *See* Fernandez Aff. ¶ 15, Exh. C.

Plaintiff does not dispute that he received the failing grade in the AICM course on or about April 22, 2006, he simply states that Ross has not "yet been able to substantiate its claim of issuing a failing grade for the AICM course," i.e., he believes he passed the class :

---

[1] Plaintiff also mentions a review of Plaintiff's grade by Dr. Perri as ordered by Magistrate Judge Ramon Reyes, however, that review – as counsel for Ross University has had to repeatedly state to Plaintiff's counsel – was part of settlement negotiations and, as such, is inadmissible.

[2] Contrary to Plaintiff's brand new argument that posting the grade to a secure website violated The Family Educational Rights and Privacy Act ("FERPA"); FERPA does not confer a private right of action. *See Raber v. Wilson-Coker*, 362 F.3d 190, 201 (2d Cir. 2004). Additionally, filing records on a secure database does not violate FERPA. *Owasso Indep. School Dist. v. Falvo*, 534 U.S. 426, 433 (2002).

> 21. In the Defendant's moving papers, it is claimed that I learned of my failing AICM grade via E-College as early as April, 22 2006 (citation omitted). However, Ross has not yet been able to substantiate its claim of issuing a failing grade for the AICM course.

Dasrath Aff. ¶21. There is nothing in the record to suggest that issuance of the failing grade, and posting the failing grade within two weeks after the conclusion of the AICM course via eCollege defied any practice or policy or was arbitrary or capricious.

In fact, there is nothing in the record that would suggest that grades are required to be transmitted to students via any other method, including via transcript. In fact, there is nothing in the Handbook that requires Ross University to administer transcripts to students in any timeframe or at all. *See* Fernandez Aff. ¶60. Ross University issues school transcripts as a courtesy to its students either on request or by regular mailings. *See* Fernandez Aff. ¶52. There simply is no evidence that the lack of a grade listed on plaintiff's transcript from April 22, 2006 to May 22, 2006 or any time thereafter amounts to a passing grade or breach of any contract concerning this grade.

Plaintiff states in his affidavit that the Student Handbook reads "A student…will receive grades…on his/her transcript." *See* Dasrath Affidavit at ¶ 19. Plaintiff seeks to mislead this court by editing the language in the handbook. The Student Handbook states "A student **electing to withdraw from the School prior to the time of the first examinations** will receive grades **of W** on his/her transcript." *See* Fernandez Affidavit, Exh. D, p. 6 (emphasis added). His conduct should be sanctioned.

As mentioned, individual course grades are available through eCollege in advance of the grade being available on an official school transcript. *See* Fernandez Aff. ¶ 53. Thus, under no circumstance could the method or timeliness of the administration of the

**A732**

AICM grade to Plaintiff amount to breach of any contract and as such Plaintiff's breach of contract claim should be dismissed as a matter of law. In addition, Plaintiff offers no fact in opposition to this motion to controvert this and, as previously mentioned, all of Ross University's facts are deemed admitted.

As to Plaintiff's claim that Ross University should have held a hearing regarding his failing AICM grade, this is the first time Plaintiff has made such a claim. It is well-settled that it is inappropriate to consider claims raised for the first time in opposition to summary judgment. *Rivera v. Inc. Vill. of Farmingdale*, 06 CV 2613, 2011 U.S. Dist. LEXIS 34185, *20-21 (E.D.N.Y. March 30, 2011).

Regardless, this claim is without merit. Under the Student Handbook:

> Students may ask the University to amend a record that they believe is inaccurate. They should write to the University Registrar, clearly identify the part of the record they want corrected, and specify why it is inaccurate.

> If the University decides not to amend the record as requested by the student, the University will notify the student of the decision and advise the student of his or her right to a hearing regarding the request for amendment.

Plaintiff has submitted no evidence, whatsoever, that he ever wrote to the University Registrar and requested an amendment to his record. Finally, this "claim" is part of Plaintiff's newly raised FERPA claims. As mentioned previously, there is no private cause of action under FERPA. As such, this claim fails as a matter of law.

**B.    Ross University Properly Administratively Withdrew Plaintiff for Failing to Remediate a Failing Grade in the AICM Class**

Plaintiff's claim that he was improperly administratively withdrawn fails as a matter of law as well. Ross University's Student Handbook provides that administrative withdrawal is required when a student does not return to campus to register for the

7

following trimester. *See* Fernandez Affidavit, Exh. D, p. 23. In addition, if a student fails a course, he or she must re-register for that course to remediate the failing grade or else they are considered academically withdrawn from the university. *See* Fernandez Aff. ¶ 21-22. It is indisputable that Plaintiff failed the AICM course and failed to retake that course, which began on May 22, 2006, when the next school trimester began. *See* Fernandez Affidavit ¶¶ 11 and 19.

Plaintiff's argument that he did not have to register to retake the failed AICM course and that Ross University was responsible for registering Plaintiff is nonsensical and contrary to the facts. Indeed, the Student Handbook states:

> Continuing students in the Basic Sciences **must register in person** on campus at the beginning of each semester…

*See* Fernandez Aff., Exh. D, p. 18.

It is indisputable that to remediate a failing grade one must re-take the course and failure to return to campus to re-register and take that course will result in academic withdrawal. Defendant's decision to academically withdraw plaintiff is not arbitrary capricious or against any stated policy and is, in fact, consistent with the expressed policy in the Student Handbook. *See* Fernandez Aff., Exh. D, p. 23.

For reasons known only to Mr. Dasrath, Plaintiff never registered to take the AICM course and instead chose to challenge that failing grade in a court of law. Contrary to Plaintiff's wishes, however, failing to return to campus to register to take the AICM course in the trimester following his failure of the AICM course resulted in academic withdrawal in accordance with the Student Handbook. *See* Fernandez Aff. ¶21 and Exh. D, p.23.

As to Plaintiff's claim that he could not have been academically withdrawn because he was on an authorized break from school, that break is only available to students who passed the AICM course. By failing the AICM course, Plaintiff was not eligible for that sixteen-week break. *See* Fernandez Aff. ¶¶48-49. Thus, it is clear that Ross University did not breach any agreement by issuing the academic withdrawal based on Plaintiff's failure to return to campus and register to take the AICM course commencing on May 22, 2006.

## C.    Ross University Did Not Block Plaintiff's USMLE Step 1 Score

Plaintiff makes passing reference to an allegation that Ross University blocked the release of his USMLE Step 1 exam scores. As stated more fully in Ross University's motion for summary judgment, this is simply not true.

The USMLE Step 1 Exam is administered by an entity known as the Educational Commission for Foreign Medical Graduates ("ECFMG"). *See* Fernandez Aff. ¶ 25. It is not administered by Ross University. Ross University provides information on a student's application to take the exam that would reflect whether certain information on the application is accurate and whether, *at the time of the application*, the applicant is "officially enrolled" or "a graduate" of Ross University. *See* Fernandez Aff. ¶ 29. As demonstrated in the Fernandez Affidavit, at the time Plaintiff applied for the USMLE Step 1 Exam, Plaintiff was enrolled at Ross University. *See* Fernandez Aff. ¶ 31-33.

By the time the exam was administered, Plaintiff was administratively withdrawn from the university as a result of his failing grade in the AICM course, and his failure to re-register for the failing class. *See* Fernandez Aff. ¶¶ 22-23, Exh. E. Successful completion of the AICM course and enrollment at the university is a prerequisite to

9

taking the USMLE Step 1 Exam. Fernandez Aff. ¶¶ 35 and 37. Plaintiff, however, sat

for the exam anyway and asserts in this lawsuit that Ross University improperly failed to

sponsor him to take the exam. Contrary to Plaintiff's claim, there is no evidence,

whatsoever, that Plaintiff was instructed to sit for the USMLE Step 1 Exam. *See* Dasrath

Affidavit ¶ 28.

     Plaintiff became ineligible for the exam when his status at Ross University

changed and he was no longer enrolled at the university. Thus, Ross University could no

longer "sponsor" Plaintiff to take the exam. Plaintiff again misquotes the Handbook by

falsely claiming that academically withdrawn students may "take or re-take the USMLE

through the University." *See* Dasrath Aff. ¶ 57. The Student Handbook actually states:

> Students who are administratively withdrawn, and have not passed
> the USMLE on their first or second attempts, may request to be
> sponsored to take or re-take the USMLE through the University
> through a process of reapplication made through the University
> Admissions Office. Such requests for sponsorship will be review
> individually, and may include certain conditions for approval.

*See* Fernandez Affidavit, Exh. D, p. 14. This provision has absolutely no bearing,

whatsoever on this action as Plaintiff has failed to allege any facts, whatsoever, that any

of these preconditions has occurred. This is for the simple reason that they have not

occurred.

     With regard to the release of his score, it should be noted again that the examining

board (ECFMG) has determined that Plaintiff engaged in "irregular behavior" in

connection with his failure to notify ECFMG of a change in Plaintiff's eligibility to take

the USMLE Step 1 Exam and has barred Plaintiff admission to all ECFMG administered

examinations. *See* McLaughlin Aff, Exh. E. Any claim that ECFMG has improperly

**A736**

withheld examination scores lies with ECFMG and not Ross University and, as such, cannot be the basis of a breach of contract claim against Ross University.

## CONCLUSION

Based on the foregoing, Ross University respectfully submits that plaintiff's motion for summary judgment pursuant to Rule 56 dismissing Plaintiff's breach of contract claim be granted in its entirety.

Dated:  Garden City, New York
       April 28, 2011

<div style="margin-left:50%">

Respectfully submitted,

CULLEN AND DYKMAN LLP

By:

Justin F. Capuano (JC 5853)
Attorneys for Defendant
100 Quentin Roosevelt Boulevard
Garden City, New York 11530

</div>

Of Counsel:
Jennifer A. McLaughlin (JM 5678)
Justin F. Capuano (JC 5853)

11

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
ANAND DASRATH,

                       Plaintiff,

  -against-

ROSS UNIVERSITY SCHOOL OF MEDICINE,

                   Defendant.
-----------------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM &**
**ORDER**
07-CV-2433 (CBA) (RER)

AMON, Chief United States District Judge:

       Anand Dasrath sued Ross University School of medicine, an institution at which he was

once a medical student, and alleged various state and federal causes of action stemming from

Ross's spring 2006 decision to award him a failing grade, to administratively withdraw him from

its degree program, and to revoke its sponsorship of his application to sit for the United States

Medical Licensing Examination, Step One Exam ("USMLE Step 1").

       The only claim left in this case is one for breach of contract. The parties have cross-

moved for summary judgment. Ross's motion is granted.

## BACKGROUND

### 1. Enrollment and AICM Course

       Ross, a foreign corporation, operates a medical school in the West Indies on the island of

Dominica. Ross educates at least some individuals who hope to practice medicine in the United

States, and those individuals, before they may be licensed to practice in the United States, must

successfully complete several qualifying examinations, including the USMLE Step 1 exam.

       One of those individuals is Dasrath, who first enrolled at Ross in May 2004 when he was

forty six years old. From that time, Dasrath was regularly enrolled at Ross, earning credits

towards his medical degree.

1

At the close of the academic term ending in December 2005, Dasrath had accumulated an academic average of 2.36 over sixty seven credits.  To that point, Dasrath had earned one failing grade, which he earned in a biogenetics course that he originally took during his first semester at Ross.  (Def. S.J. Ex. I.)

Dasrath, in an affidavit filed in connection with the cross motions, says that this grade was originally issued as a B plus, but lowered to an F after the semester break.  (Pl. S.J. Aff. ¶¶ 10–11.)  He states that he discussed this failing grade with his professor, a Dr. Houghton, who "laughed in his face" and told him that she could do nothing about his grade.  (Id. ¶ 12.)  Dasrath subsequently spoke with the head of the Genetics Department, a Dr. Larsen, who told him that he could not assist him because he did not assign the grade.  (Id. ¶ 13.)

Dasrath next took his complaint to the chairman of the Biochemistry Department (of which the Genetics Department is a part), a Dr. Meisenberg, who took him to see a Dr. Desalu, who was in charge of the examination center.  (Id. ¶ 14.)  Dr. Desalu told Dasrath and Dr. Meisenberg that there appeared to be a problem with the grade, but Dasrath says that "by the tone of Dr. Desalu's voice, it became obvious to [Dasrath] that [he] was not going to resolve this issue."  (Id. ¶¶ 15–17.)

In January 2006, at the beginning of Dasrath's fifth semester, Dasrath began taking a course called Advanced Introduction to Clinical Medicine ("AICM"), which was taught that term by Dr. Enrique Fernandez.  (Def. R. 56.1 ¶ 14.)  It is undisputed that Ross students must successfully complete the AICM course before they may sit for the USMLE Step 1 exam.  (Id. ¶ 46; Def. S.J. Ex. D at 13.)

Although there is no evidence in the record on this fact, at oral argument on the cross motions, Ross represented that the Educational Commission for Foreign Medical Graduates, the

2

organization that administers the USMLE Step 1 exam, also requires that students who sit for the exam first pass the AICM course.

Ross students hoping to sit for the USMLE Step 1 exam also must successfully complete the basic sciences curriculum and an exam called the National Board of Medical Exams ("NBME"). (Id.) Dasrath successfully completed the basic sciences curriculum during the final academic term of 2005, and he passed the NBME sometime before March 9, 2006. (Def. R. 56.1 ¶ 47; Pl. S.J. Ex. J.)

Consistent with Ross policy, in March 2006, while he was enrolled in the AICM course, Dasrath applied to sit for the July 27, 2006 USMLE Step 1 exam. (Def. R. 56.1 ¶ 38.) As part of that application, Dasrath asked Ross to certify his application and a Ross associate registrar certified the application on March 20, 2006. (Def. S.J. Ex. G.)

Dasrath subsequently completed the AICM course on April 7, 2006 and was, apparently at some point after April 7, issued what the parties have called a "certificate of completion," which was signed by Dr. Fernandez. (Def. R. 56.1 ¶ 14; Pl. S.J. Ex. 2d I.)

Sometime before April 22, 2006, Dr. Fernandez posted the AICM course grades on a secure website called "eCollege" and emailed his students to let them know that the course grades were posted. According to records that Ross produced during discovery, Dasrath was awarded a failing grade; he had earned only 426.6 of a possible 1,000 points. (Fernandez Aff. ¶ 11; Def. S.J. Ex. A.)

On April 22, 2006, Dasrath emailed Dr. Fernandez about his grade, writing that he saw "a failing grade as [his] final grade" and asking that Dr. Fernandez "review the components of [his] grade." (Def. S.J. Ex. B.)

Dasrath specifically identified four grade components about which he was concerned,

3

including (1) his "Epi/Biostatics grade," which he thought had been remediated to correct his initial failing grade; (2) his final essay, for which he received a score of thirty six percent (Dasrath thought that he may have been marked down for his poor penmanship); (3) his "second case write up," for which he received a C minus; and (4) an extra credit portion of the course for which Dasrath received thirty six of fifty points. (Id.)

Dasrath closed the April 22, 2006 email by noting that he had already passed the NBME, had already moved back to New York from Dominica, and had already begun preparing for the USMLE Step 1 exam. (Id.)

Dasrath and Dr. Fernandez spoke by telephone on April 24, 2006. Dr. Fernandez, who has testified that he memorialized the conversation, avers that he and Dasrath discussed the failing grade and that he advised Dasrath that, as a result of the grade, Dasrath would have to repeat the AICM course. In his affidavit, Dr. Fernandez states that he told Dasrath that he "would need to repeat the AICM course in the semester starting May 22, 2006." (Fernandez Aff. ¶ 17.)

The "memorandum to file" that Dr. Fernandez says he prepared after the telephone conference states that he advised Dasrath that Dasrath would have to repeat the AICM course, that he "may" repeat the course during the academic term beginning May 22, 2006, and that he could choose to begin the AICM course in September 2006. (Def. S.J. Ex. C.)

Dasrath appears to deny that Dr. Fernandez discussed the requirement that he retake the AICM course in the academic term beginning May 22, 2006, although he seems to concede that the telephone conversation occurred.

Sometime before May 5, 2006, Dasrath learned that his USMLE Step 1 application had been rejected because his date of birth had been misreported in some respect. Dasrath

subsequently prepared a new application and asked Ross to certify his application for a second time. Ross certified that application, as it had the first, on May 5, 2006. (Def. S.J. Ex. H.)

On May 8, 2006, Dasrath met with Dr. Nancy Perri, Ross's vice president for academic affairs. Dasrath asked Dr. Perri to investigate his failing AICM grade and to speak with Dr. Fernandez. Dr. Perri testified that she did this, although she was unable to recall the details of her conversation with Dr. Fernandez. (Def. R. 56.1 ¶ 24; Perri Dep. at 49.) Dasrath's grade was not changed.

By letter dated May 15, 2006, Dasrath, who had returned to his home in New York, wrote Ross asking that he be provided a copy of his academic transcript. (Def. S.J. Ex. I.) Ross sent Dasrath a copy of his transcript, which did not reflect any grade for the AICM course.

### 2. Administrative Withdrawal and State Court Litigation

Dasrath never registered for, or returned to campus to retake, the AICM course during the academic term beginning May 22, 2006. There is no evidence that he told anyone at Ross that he wanted to retake the AICM course in the academic term beginning September 2006.

Ross says that, because Dasrath failed to return for the May 22, 2006 term, it decided to administratively withdraw Dasrath from the medical school. Ross says that this decision was consistent with its internal policies, which state that the registrar "enters an administrative withdrawal when . . . the student does not return to the campus to register for the following semester and attend classes in Week One of a semester." (Def. S.J. Ex. D at 23.) Ross regulations provide that all administrative withdrawals are "effective as of the last day [the student] attended classes." (Id.)

Ross informed Dasrath of the administrative withdrawal by letter dated June 29, 2006, explaining that he had been withdrawn "for failure to register for the May 2006 AICM course."

(Def. S.J. Ex. E.)  The letter further explained that if Dasrath wished to resume his studies at Ross (then or in the future), he would have to reapply through the admissions office and to explain the reasons for his withdrawal.  (Id.)

Dasrath did not reapply; instead, through counsel, he filed a lawsuit in New York state court, alleging breach of contract and seeking to compel Ross to "sponsor" him for the July 27, 2006 USMLE Step 1 exam.  (Def. S.J. Ex. N.)  In support of Dasrath's request for emergency relief, Dasrath's attorney submitted an affirmation in which he stated that Ross had promised to sponsor Dasrath for the exam and had, impermissibly, informed Dasrath that it would withdraw that sponsorship.  He further stated that Dasrath "believes that he should have passed the AICM course but the Defendant has not provided Plaintiff with his grade for the course."  (Id.)

Although it is not clear just how the state court litigation progressed, Dasrath sat for the July 27, 2006 USMLE Step 1 exam, notwithstanding the fact that he had not succeeded in changing his AICM grade, was not enrolled at Ross, and had not successfully compelled Ross to sponsor him for the examination.  (Def. R. 56.1 ¶ 8.)

The state court suit was dismissed on January 31, 2007 for lack of personal jurisdiction—Dasrath had not properly served the summons and complaint.  (Def. S.J. Ex. O.)

### 3. This Litigation

On June 15, 2007, Dasrath, through counsel, filed suit in this Court, alleging breach of contract, fraud, and age discrimination in violation of 42 U.S.C. § 6102 and the New York Human Rights Law, N.Y. Exec. Law § 296.

On March 31, 2009, the Court adopted in part the report and recommendation of the Honorable Ramon Reyes, U.S. Magistrate Judge, which recommended that (1) the federal age discrimination claim be dismissed for failure to exhaust administrative remedies; (2) the fraud

claim be dismissed as inadequately pleaded; (3) the state law discrimination claim be dismissed as inadequately pleaded; and (4) the breach of contract claim be dismissed as inadequately pleaded. The Court adopted all of those recommendations, but it permitted Dasrath leave to re-plead all of the dismissed claims. See Dasrath v. Ross Univ. Sch. of Med., No. 07-CV-2433, 2009 WL 891765 (E.D.N.Y. Mar. 31, 2009).

Dasrath, again through counsel, then filed the currently operative complaint on June 18, 2009. In that complaint, by way of background, he alleged that he "did not receive a grade for the AICM course despite his demand for his grade." (Am. Compl. ¶ 6.) He further alleged that he had been denied the right to inspect school records, including "scantron" sheets that he had submitted in connection with certain unnamed examinations. (Id.) Additionally, he alleged that Dr. Fernandez had advised him that "he received a 94% on the physical exam," which, presumably, was a component of the AICM course. (Id.) He further alleged that on or about June 29, 2006, he was notified that he had been withdrawn from Ross and that, without any warning, his sponsorship to sit for the USMLE Step 1 exam had been revoked. (Id. ¶ 8.) He additionally claimed that "upon information and belief, during Plaintiff's time as a student at Defendant's school of medicine, his grades were changed, withheld, and / or inaccurately reported." (Id. ¶ 10.)

Dasrath again pleaded four claims. The first was for federal age discrimination. He pleaded that "upon information and belief" Ross had excluded him from participation in the medical school, denied him the benefits of that school, harassed him, and "evaluated and treated [him] differently than similarly situated younger students." (Id. ¶ 15.) Dasrath alleged that Ross maintained a policy of discriminating against older students because Ross found it difficult to place older students in hospital training programs after they passed the USMLE Step 1 exam.

(Id. ¶¶ 16–17.)

The second claim alleged breach of contract.  Dasrath alleged that he contracted with

Ross and that the contract required Ross to "accurately record Plaintiff's grades and sponsor

Plaintiff to take the USMLE Step 1 examination."  (Id. ¶ 20.)  He claimed that Ross breached the

contract when it withdrew him from school "without justification and in violation of its own

academic rules and regulations."  (Id. ¶ 22.)  Moreover, Ross breached the contract when it

"without any justification or valid reason withdrew its sponsorship for the USMLE exam after it

had accepted Plaintiff's application and duly certified Plaintiff to take said exam."  (Id. ¶ 23.)

The third claim alleged fraud, pleading that (1) on August 14, 2006, Ross falsely stated

that Dasrath had failed the AICM course; (2) by letter dated June 27, 2006 Ross falsely stated

that Dasrath was being withdrawn for failure to register for the May 2006 AICM course; and

(3) Dr. Perri falsely stated that she had reviewed Dasrath's AICM evaluations and that Dasrath

had failed the AICM course.  (Id. ¶¶ 25–27.)  Dasrath pleaded that each of these false statements

was made in furtherance of a scheme to prevent older students from passing the USMLE Step 1

exam.  (Id. ¶ 28.)

The fourth and final claim was for tortious interference with contractual relations, and it

alleged that Ross had interfered with its contract with Dasrath.  (Id. ¶¶ 30–35.)

By way of relief, Dasrath requested money damages as well as an order directing that

Ross reinstate him, sponsor him to sit for the USMLE Step 1 exam, and effectuate the release of

his USMLE Step 1 exam score from the July 2006 sitting.

On May 7, 2010, on the record at oral argument, the Court granted in part Ross's second

motion to dismiss and dismissed every claim except the claim for breach of contract.  After the

parties conducted discovery on the contract claim, they filed the cross motions for summary

judgment that are the subject of this order.

## DISCUSSION

The parties have not clearly addressed the issue, but both treat New York law as governing this dispute. The Court accepts that agreement. See Babiker v. Ross Univ. Sch. of Med., No. 98 Civ. 1429, 2000 WL 666342, at *6 n.9 (S.D.N.Y. May 19, 2000), citing Am. Fuel Corp. v. Utah Energy Dev. Co., 122 F.3d 130, 134 (2d Cir. 1997) ("where the parties have agreed to the application of the forum law, that consent concludes the choice of law inquiry").

The parties also agree that, "[u]nder New York law, a student can sue his school for breach of contract." Babiker, 2000 WL 666342, at *6; see also Clarke v. Trs. of Columbia Univ., No. 95 Civ. 10627, 1996 WL 609271, at *5 (S.D.N.Y. Oct. 23, 1996) ("New York courts have suggested that a student can sue a school for breach of contract."). "According to this line of cases, when a student is admitted to a school, an implied contract arises between the student and the school." Clarke, 1996 WL 609271, at *5 (citing Olsson v. Bd. of Higher Educ., 49 N.Y.2d 408, 414 (1980)); see also Gally v. Columbia Univ., 22 F. Supp. 2d 199, 206 (S.D.N.Y. 1998) ("When a student enrolls at a university, an implied contract arises . . . .").

"The terms of the implied contract are supplied by the bulletins, circulars and regulations made available to the student." Gally, 22 F. Supp. 2d at 206; see also Garg v. Albert Einstein Coll. of Med., 747 F. Supp. 231, 236 (S.D.N.Y. 1996) ("New York courts have reviewed academic decisions where the plaintiff has alleged that the school officials failed to adhere to the school's regulations or policies and have therefore breached a contract entered into with the students."); Vought v. Teachers Coll., Columbia Univ., 127 A.D.2d 654, 655 (2d Dep't 1987).

"Implicit in this contract is that the university must act in good faith in dealing with the student." Id. "Also implicit is that the student must fulfill her end of the bargain by satisfying

the university's academic requirements and complying with its procedures . . . ." Id.; see also

Keles v. New York Univ., No. 91 Civ. 7457, 1994 WL 119525, at *5 (S.D.N.Y. Apr. 6, 1994)

("by not passing the examinations at the proper stage of his studies, Keles did not fulfill the

requirements of the 1983 Guidelines, and thus, breached his part of the contract").

It is worth stressing that "the mere allegation of mistreatment without the identification of

a specific breached promise or obligation does not state a claim on which relief can be granted."

Gally, 22 F. Supp. 2d at 207.  That is, "application of contract principles to the student-university

relationship does not provide judicial review for every disgruntled student."  Id.

Moreover, as the parties agree, attacks on "the substantive evaluation of . . . academic

performance . . . are beyond judicial review." Benson v. Trs. of Columbia Univ., 215 A.D.2d

255, 255 (1st Dep't 1995); see also Gertler v. Goodgold, 107 A.D.2d 481, 485 (1st Dep't 1985)

("since the academic and administrative decisions of education institutions involve the exercise

of subjective professional judgment, public policy compels a restraint which removes such

determinations from judicial scrutiny").

Although his precise theory of the case is not entirely clear, Dasrath clearly contends that

Ross had a contractual duty not to withdraw its sponsorship of his application to sit for the

USMLE Step 1 exam that was administered in July 2006.  His papers and representations at oral

argument suggest that this obligation stemmed from the fact of his enrollment at, and payment of

tuition to, Ross.

Ross contends that it honored this obligation because, consistent with its regulations, it

withdrew its sponsorship of Dasrath's application only after he failed the AICM course.  At oral

argument on the pending motions, Dasrath agreed that Ross had the right to do what it did if he

failed the AICM course and he conceded that his contract claim depends on the truth of his

allegation that he passed the course.

Recognizing that, under New York law, he cannot challenge the academic judgment that he did not satisfactorily complete the requirements of the AICM course, Dasrath further conceded that his contract claim ultimately depends on the truth of his allegation that Ross "fabricated" his failing grade. That is, Dasrath concedes that, on his theory of the case, if after trial no reasonable jury could conclude that his AICM grade was fabricated, he cannot prevail.

Dasrath's motion papers are not helpful, but, at oral argument, when asked to identify the record evidence that supports his claim of grade fabrication, he said that he is relying on three pieces of evidence that he believes would permit a reasonable jury to find that his grade was fabricated: (1) the March 2006 certification to sit for the USMLE Step 1 exam; (2) the May 2006 certification to sit for the USMLE Step 1 exam; and (3) the undated "certificate of completion" for the AICM course. These forms, he contends, are evidence that Ross at various times took the position that he had passed the AICM course, which in turn is evidence of fabrication.

No reasonable jury could rely on the application certifications as evidence that, in March or May 2006, Ross took the position that Dasrath had passed the AICM course. The portion of the application that the parties have provided the Court (i.e. the certification page) shows only that a Ross associate registrar certified that certain representations—including representations regarding medical school attendance dates and student status—are true and that Dasrath was at the time of certification enrolled at Ross. (Def. S.J. Exs. G, H.) The portion of the application that is in the record does not show that the associate registrar certified that Dasrath had passed the AICM course.[1]

_____

[1] Although the copies of the certification page provided the Court are of poor quality, the registrar appears also to have certified that unspecified representations in "Section 23" of the application are accurate. Section 23 is not in the record. But Dasrath has not suggested, or offered any evidence, that Section 23, or some other portion of the application not in evidence, would show that Ross certified that he passed the AICM course. And Ross has

It is not even clear at all how the registrar could have certified that Dasrath passed the course.  She certified the first application in March 2006, which is before Dasrath had completed or received a grade in the AICM course.  That seems to be consistent with practice: students apply for the USMLE Step 1 exam while the final prerequisite course is in process on the assumption that they will pass that final course.

Significantly, it is undisputed that, but for an error in the application, March 2006 is the only time that any Ross official would have certified the application.  The fact that a registrar later certified a second application after Dasrath had been told of his failing grade, but before that grade had been officially made a part of his transcript, does not lessen the significance of this fact.

In sum, there is no reasonable view of the evidence on which the March and May 2006 certifications tend to prove that Ross ever took the position that Dasrath had passed the AICM course.

The certificate of completion also is not evidence that Ross thought that Dasrath had passed the AICM course.  That one-page form certification, signed by Dr. Fernandez, includes blanks in which to enter student name, number of weeks, name of rotation, and hospital.  The form, as completed, states that Dasrath completed twelve weeks in the AICM at Greater Miami Health Education and Training Center.  (Pl. S.J. Ex. 2d I.)  The certificate says nothing at all about Dasrath's performance in the course.

Dasrath has not explained how this form shows that Dr. Fernandez at some point took the position that Dasrath had passed the AICM course.  He has not explained, or identified evidence in the record that explains, the purpose of the form, which purpose might show Dr. Fernandez's belief that Dasrath passed.  The only evidence in the record that attempts to explain the form is a

---

affirmatively represented that its certification did not certify that fact.

two-page excerpt of Dr. Fernandez's deposition in which he testifies unhelpfully that the "document goes to the registrar." (Id.)

The Court cannot see how any reasonable jury could rely on this form as evidence that Dr. Fernandez awarded Dasrath a passing grade in the AICM course, presumably (the form is not dated) at some point before he decided to take the position that Dasrath had earned a failing grade.

In sum, Dasrath's contract claim, as he has explained it to the court, depends on his proving at trial that Ross fabricated his failing grade in the AICM course, and Dasrath has not offered evidence sufficient to create a triable issue of fact with respect to fabrication.

## CONCLUSION

For the reasons stated, the defendant's motion for summary judgment is granted. The plaintiff's motion for summary judgment is denied.

The Clerk of Court is directed to enter judgment accordingly and to close this case.

SO ORDERED.

Dated: Brooklyn, New York
     May 26, 2011

                                                 /s/
                                       Carol Bagley Amon
                                 United States District Judge

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ANAND DASRATH,

                                        Plaintiff,

    -against-

ROSS UNIVERSITY SCHOOL OF MEDICINE,

                                        Defendant.
------------------------------------------------------------X

JUDGMENT
07-CV-2433 (CBA)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D. N.Y.

★ MAY 26 2011 ☆

BROOKLYN OFFICE

        A Memorandum and Order of Honorable Carol Bagley Amon, United States

District Judge, having been filed on May 26, 2011, granting the defendant's motion for

summary judgment; and denying the plaintiff's motion for summary judgment; it is

        ORDERED and ADJUDGED that plaintiff take nothing of the defendant; that

the defendant's motion for summary judgment is granted; and that the plaintiff's motion for

summary judgment is denied.


Dated:  Brooklyn, New York
        May 26, 2011

                                        s/RCH

                                        ROBERT C. HEINEMANN
                                        Clerk of Court

**A751**

## NOTICE OF APPEAL

*********************

## UNITED STATES DISTRICT COURT
## FOR THE
## EASTERN DISTRICT OF NEW YORK

_____X

ANAND DASRATH

                    Plaintiff(s),                    **NOTICE OF APPEAL**

        -against-                                    Docket NO: 07-CV-2433

ROSS UNIVERSITY SCHOOL OF
MEDICINE,

                    Defendant(s).

_____X

        Notice is hereby given that, Plaintiff, ANAND DASRATH hereby appeals to the United

States Court of Appeals for the Second Circuit from the decision of Honorable Carol Bagely

Amon dated May 26, 2011 denying Plaintiffs Motion for Summary Judgment for a claim for

Breach of Contract against the Defendants, ROSS UNIVERSITY SCHOOL OF MEDICINE and

entered in this action on the **26**th day of **May, 2011.**

                                        **COSTELLO & COSTELLO, P.C.**
                                        **BY: JOSEPH R. COSTELLO, ESQ.**
                                        Attorney for Plaintiff
                                        5919 20th Avenue
                                        Brooklyn, New York 11204
                                        (718) 331-4600
                                        File no: 6970

Dated: Brooklyn, New York
        June 21, 2011