# 11-2531-CV

IN THE

## United States Court of Appeals

FOR THE SECOND CIRCUIT



ANAND DASRATH,

*Plaintiff-Appellant,*

*v.*

ROSS UNIVERSITY SCHOOL OF MEDICINE,

*Defendant-Appellee.*

_____

*On Appeal from the United States District Court*
*for the Eastern District of New York (Brooklyn)*

## BRIEF FOR DEFENDANT-APPELLEE

CULLEN AND DYKMAN LLP
*Attorneys for Defendant-Appellee*
100 Quentin Roosevelt Boulevard
Garden City, New York 11530
516-357-3700

# TABLE OF CONTENTS

**Page**

COUNTER-STATEMENT OF THE ISSUES PRESENTED
FOR REVIEW ………………………………………………………… 1

STATEMENT OF THE CASE………………………………………… 1

STATEMENT OF FACTS ………………………………………… 3

    A.  Background ……………………………………………… 3

    B.  Dasrath's Certification For The USMLE Step 1 Exam ……………… 4

    C.  Dasrath's AICM Grade …………………………………… 4

    D.  USMLE Step 1 Exam ……………………………………… 6

SUMMARY OF ARGUMENT …………………………………… 7

ARGUMENT ………………………………………………………… 7

POINT I

    SINCE COURTS GENERALLY DISFAVOR JUDICIAL
    INTERVENTION IN ACADEMIC DECISIONS THE
    DISTRICT COURT WAS CORRECT IN AWARDING
    SUMMARY JUDGMENT ………………………………… 7

        A.  Dasrath Has Failed To Establish That Ross University
            Fabricated His Grade …………………………………… 12

POINT II

    ROSS UNIVERSITY DID NOT BREACH ANY
    CONTRACTUAL OBLIGATION REGARDING
    DASRATH'S ACADEMIC WITHDRAWAL …………………… 15

        A.  Ross University Followed Its Policies And Procedures
            When Administratively Withdrawing Dasrath For Failing
            To Remediate A Failing Grade In The AICM Class……………… 15

i

1. Dasrath Was Not Eligible For The 17-Week Break.............. 17

2. Ross University's Administration Of Grades
To Dasrath Via A Secure Website Known As
"ECOLLEGE" Was Not Improper............................... 17

3. Dasrath Was Not Eligible To Sit For The USMLE
Step 1 Exam........................................................ 18

4. Ross University Was Not Required To Re-Register
Dasrath For The AICM Course ................................. 20

5. The Clinical Clerkship Evaluation Was Not
Fabricated ......................................................... 21

POINT III

ROSS UNIVERSITY DID NOT BREACH ANY
CONTRACTUAL OBLIGATION REGARDING
ANY REVIEW OF DASRATH'S GRADE IN
THE AICM COURSE ....................................................... 22

A. Dasrath Improperly Raises Arguments Not Asserted
Before The District Court ............................................. 22

1. Dasrath Did Not Assert A Cause Of Action For Any
Alleged Failure To Perform A Formal Review Of
His Grade Or Provide Access To His Educational
Records ............................................................ 24

2. Dasrath Did Not Assert A Cause Of Action For Any
Alleged Failures Regarding The Purported "Court
Ordered" Review Of His Grade ................................. 26

POINT IV

DASRATH'S CLAIM REGARDING DISCOVERY WAS
NOT RAISED BEFORE THE DISTRICT COURT .......................... 27

ii

   A.  Dasrath Did Not Raise Any Discovery Issues With The
       Court Below.................................................................. 27

   B.  Dasrath Provides No Basis For His Claim Of Spoliation............. 29

CONCLUSION ................................................................................. 30

CERTIFICATE OF COMPLIANCE ................................................. 31

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Allianz Ins. Co. v. Lerner*, 416 F.3d 109 (2d Cir. 2005) ........................... 23

*Babiker v. Ross Univ. Sch. of Med.*, 2000 U.S. Dist. LEXIS 6921
    (S.D.N.Y. 2000), aff'd 2004 U.S. App. LEXIS 1118
    (2d Cir. 2004)................................................................. 9, 17

*Baker v. Dorfman*, 239 F.3d 415 (2d Cir. 2000)..................................... 23

*Benson v. Trs. Of Columbia Univ.*, 215 A.D.2d 255,
    626 N.Y.S.2d 495 (1st Dept. 1995) ................................... 9, 10, 11

*Gally v. Columbia Univ.*, 22 F. Supp. 2d 199 (S.D.N.Y. 1998) .................... 9

*In re Nortel Networks Corp. Secs. Litig.*, 539 F.3d 129 (2d Cir. 2008) ........ 23, 24

*Keles v. New York Univ.*, 1994 U.S. Dist. LEXIS 4202
    (S.D.N.Y. 1994) ...................................................... 8, 9, 10

*Krumme v. Westpoint Stevens, Inc.*, 238 F.3d 133 (2d Cir. 2000)................... 8

*Owasso Indep. Sch. Dist. v. Falvo*, 534 U.S. 426 (2002) .......................... 18

*Patrolmen's Benevolent Ass'n of the City of N.Y. v. City of New York*,
    310 F.3d 43 n.5 (2d Cir. 2002) ........................................... 23

*R.R. Love, Ltd. v. TVT Music, Inc.*, 282 Fed. Appx. 91 (2d Cir. 2008)............. 23

*Raber v. Wilson-Coker*, 362 F.3d 190 (2d Cir. 2004) ............................. 25

*Rivera v. Inc. Vill. of Farmingdale*, 06 CV 2613, 2011 U.S. Dist.
    LEXIS 34185 (E.D.N.Y. March 30, 2011)................................. 24

*Susan M. v. N.Y. Law Sch.*, 76 N.Y.2d 241, 556 N.E.2d 1104 (1990).............. 7

**Statutes**

42 U.S.C. §§ 6101 et seq.……………………………………………………………… 1

**Rules**

F.R.C.P. 12(b)(6)………………………………………………………………… 2

Fed. R. Civ. P. 12(b)(1) and (6) …………………………………………………… 1

Fed. R. Civ. P. 56 ………………………………………………………………… 2

## <u>COUNTER-STATEMENT OF THE ISSUES PRESENTED FOR REVIEW</u>

Whether the District Court correctly held that Plaintiff-Appellant Mr. Anand Dasrath[1] failed to offer evidence sufficient to create a triable issue of fact that Defendant-Appellee Ross University School of Medicine[2] breached any contract with Dasrath.

## <u>STATEMENT OF THE CASE</u>

Dasrath commenced this action, on June 15, 2007, with the filing of the original complaint against Ross University (the "Original Complaint") alleging: 1) a violation of the Age Discrimination Act ("ADA") of 1975 42 U.S.C. §§ 6101 et seq.; 2) breach of contract; 3) fraud; and 4) tortious interference with contractual relations. (A53-60). Ross University filed a motion to dismiss the Original Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6). (A8).[3] The motion was referred to Magistrate Judge Ramon E. Reyes who issued a Report and Recommendation dated August 6, 2008 (the "Report and Recommendation") dismissing the Original Complaint in its entirety. (A8). On March 31, 2009, the District Court adopted, in part, the Report and Recommendation. (A8-9).

---

[1] Unless otherwise noted, plaintiff-appellant Anand Dasrath will be referred to herein as "Dasrath".

[2] Unless otherwise noted, defendant-appellee Ross University School of Medicine will be referred to herein as the "Ross University".

[3] A__ refers to citations to the Appendix. SPA __ refers to citations to the Special Appendix.

Specifically, the District Court granted Ross University's motion to dismiss the ADA claim for lack of subject matter jurisdiction without prejudice to refiling after compliance with the ADA's notice and administrative exhaustion requirements. (A8-9). That Court also allowed Dasrath leave to amend his Original Complaint as to the remaining causes of action sounding in fraud, tortious interference and breach of contract. (A8-9).

Dasrath filed an amended complaint with revised facts, again asserting an ADA claim and a fraud claim, as well as claims for tortious interference and breach of contract ("Amended Complaint"). (A61). On March 5, 2009, the District Court granted Ross University's motion pursuant to F.R.C.P. 12(b)(6) to dismiss all of the aforementioned causes of action in the Amended Complaint except for the breach of contract cause of action. (A8).

At the conclusion of discovery on the breach of contract claim, Ross University and Dasrath each filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56. The District Court granted Ross University's motion for summary judgment and denied Dasrath's motion for summary judgment.[4] The District Court found that "Dasrath's contract claim, as he has explained it to the court, depends on his proving at trial that Ross fabricated his failing grade in the AICM course, and

---

[4] Dasrath is not appealing the denial of his summary judgment motion.

2

Dasrath has not offered evidence sufficient to create a triable issue of fact with respect to fabrication." (A737). This appeal followed.

## STATEMENT OF FACTS

### A. Background

Ross University is a medical school located on the island of Dominica in the West Indies. For foreign medical school graduates to become licensed to practice medicine in the United States, students are required to take several qualifying exams. (A292). The United States Medical Licensing Examination Step 1 ("USMLE Step 1 Exam") is the first of several exams required to be taken by foreign medical school students. (A295). As noted by Chief Judge Amon in the decision that is the basis for this appeal, it is undisputed that to be eligible to sit for the USMLE Step 1 Exam, a student is required to (among other prerequisites) take and successfully complete a class known as Advanced Introduction to Clinical Medicine ("AICM") and be enrolled at the university. (A738).

Dasrath was enrolled as a student at Ross University during the spring semester of 2006 and was a student in the AICM course taught by Ross University professor Dr. Enrique Fernandez. (A62). At the same time, in or about March of 2006, Dasrath was applying to take the USMLE Step 1 Exam. (A62). As part of this application, Dasrath asked that Ross University certify that he was enrolled at Ross University at the time of his application. (A295-296).

3

**B.      Dasrath's Certification For The USMLE Step 1 Exam**

Dasrath asked for Ross University to certify on two separate applications to take the USMLE Step 1 Exam that Dasrath was enrolled as a student at Ross University at the time of those applications.  (A296).  The first application was submitted to Ross University for approval in March, 2006 but was rejected by the Educational Commission for Foreign Medical Graduates ("ECFMG") because of an issue with Plaintiff's birth date.  (A296, A451).  The second application was submitted to Ross University for certification on May 5, 2006 to ameliorate the birth date problem.  (A296, A451).  At the time Dasrath's applications were signed by the Ross University Registrar in March 2006 and May 5, 2006, Dasrath was still enrolled at Ross University and the Ross University's certification on the applications ("Certifications") reflected as such.  (A296, A452).

**C.      Dasrath's AICM Grade**

On April 7 2006, Dasrath completed the AICM course.  The AICM course grades were posted on a secure website called "eCollege." (A294).  Dasrath was made aware of the posting of the grades via eCollege by way of an email from Dr. Fernandez.  (A137).  Dasrath achieved a failing grade in the class as he earned only 426.6 of a possible 1,000 points.  (A293).  Dasrath requested by email that Dr. Fernandez review his failing grade.  He noted in this email that he already moved

back to New York from Dominica and had already begun preparing for the USMLE Step 1 Exam which was due to be administered on July 27, 2006. (A137).

Dasrath and Dr. Fernandez discussed by phone, as memorialized in a memorandum dated April 24, 2006, that, as a result of the failing grade, Dasrath would have to repeat the AICM course in the academic semester commencing on May 22, 2006. (A138). Dasrath did not return to campus to repeat the failed AICM course during the academic semester commencing on May 22, 2006. (A294-295). In fact, there is no evidence in the record to suggest that Dasrath ever intended to re-take the failed AICM course.

As such, Dasrath's eligibility to sit for the USMLE Step 1 Exam was revoked since Dasrath failed the AICM course and did not take the necessary steps to remediate the failing grade and exhibited no intention to do so. (A296-297). Dasrath was also administratively withdrawn from enrollment at Ross University when he did not return to campus to re-take the AICM course in the May 2006 semester. (A295). Dasrath was notified of this administrative withdrawal by letter dated June 29, 2006. (A170). Dasrath was also informed that to continue his studies he would have to reapply through the admissions office and explain the reasons for his withdrawal. (A170).

**D.**    **USMLE Step 1 Exam**

Dasrath never reapplied for admission to Ross University.  Instead, on about July 25, 2006, he filed a lawsuit in New York State Supreme Court, Queens County, challenging the failing grade in the AICM course.  (A613-622).  Dasrath alleged breach of contract and sought to compel Ross University to "sponsor" him for the July 27, 2006 USMLE Step 1 Exam.  In support of this motion, Dasrath contended that he "believe[d] that he should have passed the AICM course." (A618).  Despite denial of this motion, and ultimate dismissal of the lawsuit, on July 27, 2006 Dasrath sat for the USMLE Step 1 Exam.  (A613-631).

The Educational Commission for Foreign Medical Graduates, the examining board that administers the USMLE Step 1 Exam, requires that if a student's eligibility to sit for the USMLE Step 1 Exam should change, the student is charged with notifying ECFMG that he/she is ineligible to sit for the Exam. (A309). ECFMG has determined that Dasrath engaged in "irregular behavior" in connection with Dasrath's failure to notify ECFMG of a change in his eligibility to take the USMLE Step 1 Exam when he sat for it on July 27, 2006 despite no longer being enrolled at Ross University and failing the AICM course.  (A632-634). ECFMG barred Dasrath's admission to all ECFMG administered examinations. (A632-634).

## SUMMARY OF ARGUMENT

The District Court properly determined that Dasrath failed to present sufficient evidence to create a triable issue of fact such that a reasonable jury would believe that Ross University fabricated Dasrath's failing grade in the AICM course. As noted by Chief Judge Amon: "Ross [University] had the right to do what it did if [Dasrath] failed the AICM course and [Dasrath] conceded that his contract claim depends on the truth of his allegation that he passed the course." (A746-747). Dasrath has failed to present any legal or factual arguments in this appeal sufficient to create a triable issue of fact that would warrant reversal of Chief Judge Amon's decision.

## ARGUMENT

## POINT I

## SINCE COURTS GENERALLY DISFAVOR JUDICIAL INTERVENTION IN ACADEMIC DECISIONS THE DISTRICT COURT WAS CORRECT IN AWARDING SUMMARY JUDGMENT

It is well-settled that courts will not intervene in an educational institution's decisions regarding a student's academic performance. *Susan M. v. N.Y. Law Sch.*, 76 N.Y.2d 241, 245, 556 N.E.2d 1104 (1990) ("[s]trong policy considerations militate against the intervention of courts in controversies relating to an

7

educational institution's judgment of a student's academic performance.").[5]   In

*Keles v. New York Univ.*, 1994 U.S. Dist. LEXIS 4202, at \*20-\*22 (S.D.N.Y.

1994), the court, in reviewing a student's breach of contract claim against a

defendant university, noted:

> although the relationship between [plaintiff-student] and [defendant-university] may be analyzed as a contractual one, it is well established under New York law that **judicial review of a university's academic decisions is limited to a determination of whether the university acted arbitrarily, capriciously, irrationally, in bad faith or contrary to law.**
>
> . . .[t]o determine whether a university has acted in bad faith, arbitrarily or capriciously, its actions must be judged against its own stated policies and regulations. Generally, however, determinations regarding a student's academic performance are entitled to great deference and are rarely found to be arbitrary, as such determinations require the special expertise of educations and play an important role in preserving the integrity of the credentials conferred by the educational institution.

(internal citations omitted) (emphasis added).

"[T]he mere allegation of mistreatment without the identification of a

specific breached promise or obligation does not state a claim on which relief can

be granted…[and the] application of contract principles to the student-university

---

[5] As the parties' briefs assume that New York law governs Plaintiff's state law claims, that is a sufficient basis to apply New York law to this matter.  See <u>Krumme v. Westpoint Stevens, Inc.</u>, 238 F.3d 133, 138 (2d Cir. 2000).

relationship does not provide judicial review for every disgruntled student." *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 207 (S.D.N.Y. 1998). Additionally, "the substantive evaluations of…academic performance…are beyond judicial review." *Benson v. Trs. Of Columbia Univ.*, 215 A.D.2d 255, 255, 626 N.Y.S.2d 495 (1st Dept. 1995). As such, a plaintiff-student asserting a breach of contract claim against a university must demonstrate that the university acted arbitrary, capriciously and against its own stated policies and regulations in order to defeat summary judgment. *Keles*, 1994 U.S. Dist. LEXIS 4202, at *20-*22.

In *Babiker v. Ross Univ. Sch. of Med.,* 2000 U.S. Dist. LEXIS 6921, at *25-*26 (S.D.N.Y. 2000), aff'd 2004 U.S. App. LEXIS 1118 (2d Cir. 2004) summary judgment was awarded on plaintiff's breach of contract claim since the university acted in accordance with the procedures set forth in its Handbook, and, as such, "no rational jury could find that the university acted in an arbitrary or irrational manner in dismissing [plaintiff]." In *Babiker*, plaintiff alleged that the university had breached its contract with him by wrongly and unjustly dismissing him and refusing to award him a medical degree. *Babiker,* 2000 U.S. Dist. LEXIS 6921, at *3-*10. However, the court noted that a university will not be found liable for breach of contract if it acted in accordance with the procedures set forth in its handbook and did so in a way that was not arbitrary and capricious. *Id.* at *22-24.

In *Babiker*, the Student Handbook required that students take and pass portions of the USMLE in three attempts. If not, the student would be expelled. The Student Handbook also required that a student be in good standing in order to participate in clinical studies. Despite these requirements, the plaintiff, who had failed portions of the USMLE three times, continued to participate in clinical studies, and then was expelled for doing so. Plaintiff sued defendant for a number of things, including breach of contract. Plaintiff alleged that the defendant had breached its contract with plaintiff for wrongly and unjustly dismissing him and refusing to award him a medical degree. *Id.*, at *3-*10.

The Court's holding first discussed the "implied contract" that arises between a student and a university when the student enrolls, such that if a student complies with the terms prescribed by the university, he will obtain the degree he seeks. *Id.* at *22. Implicit in this contract is an understanding that the university will not act in an arbitrary and capricious manner. *See id.* Since the university followed the procedures in its Student Handbook, and in so doing did not act in an arbitrary and capricious manner, the university was granted summary judgment dismissing plaintiff's complaint, including his breach of contract claim in its entirety. *Id.*

Similarly, in *Keles*, 1994 U.S. Dist. LEXIS 4202, plaintiff sued defendant for terminating him from its graduate school after plaintiff had failed a qualifying

test a number of times. Plaintiff sued for breach of contract, arguing that he had a contract with defendant as set forth in the defendant's Guidelines which, when plaintiff had started at the school, permitted him to take the exam an indefinite number of times, but then were amended over time to limit the amount of times the exam could be taken. *Id.* at *19. After analyzing the Guidelines (the original and amended) the Court found that defendant had acted in accordance with all of them as even the original required him to pass the exam within a certain amount of time despite allowing him to take it an indefinite number of times. *Id.* Thus, treating defendant's motion to dismiss as a summary judgment motion, the Court granted defendant summary judgment. The law is clear that without evidence that a university acted in an arbitrary or capricious manner and in contravention of its stated policies and procedures, a student's breach of contract claim will not withstand summary judgment.

Dasrath spends an inordinate amount of time in his brief citing cases for the proposition that Ross University is bound by its The Ross University School of Medicine Student Handbook of Academic Rules and Regulations (the "Student Handbook") and that Ross University can be held liable for breaching any of the provisions of that handbook. Indeed, Dasrath dedicates eight pages and cites by way of voluminous block quotes to support this uncontroversial point, apparently in the hope that the facts of those cases can somehow be transposed onto this case.

11

Dasrath's Brief pg. 18-25. Dasrath, however, does not argue, nor can he argue, that any of these cases have any factual similarity to this matter, whatsoever. As such, Dasrath's argument fails as a matter of law.

## A. Dasrath Has Failed To Establish That Ross University Fabricated His Grade

Although Dasrath's brief makes every effort to obfuscate the legal and factual issues that are at issue in this action, the reality is that Dasrath's claim amounts to nothing more than a belief that Dasrath should have received a passing grade in the AICM course. Indeed, consistent with the case law above, and as stated in the Memorandum and Order of Chief Judge Amon:

> [a]t oral argument on the pending motions, Dasrath agreed that Ross had the right to do what it did if he failed the AICM course and he conceded that his contract claim depends on the truth of his allegation that he passed the course.

> Dasrath further conceded that his contract claim ultimately depends on the truth of his allegation that Ross "fabricated" his failing grade. That is, Dasrath concedes that, on his theory of the case, if after trial no reasonable jury could conclude that his AICM grade was fabricated, he cannot prevail.

(A746-747).

Before the District Court, Dasrath raised three pieces of evidence that he suggested would permit a reasonable jury to find that his grade was "fabricated":

12

(1) the March 2006 certification to sit for the USMLE Step 1 Exam;

(2) the May 2006 certification to sit for the USMLE Step 1 Exam; and

(3) the undated "Certificate of Completion" for the AICM course.

Ross University provided Dasrath with a certification in March 2006 in connection with his application to take the USMLE Step 1 Exam. Dasrath argues that the certification is proof that Ross University took the position that Dasrath had actually passed the AICM course. (A747). The certification, however, in no way suggests that Dasrath passed the AICM course. In fact, the AICM course had not yet concluded at that point in time. Rather, as held by Chief Judge Amon, the certification only shows that:

> a Ross associate registrar certified that certain representations – including representations regarding medical school attendance and dates and student status – are true and that Dasrath was at the time of certification enrolled at Ross. The portion of the application that is in the record does not show that the associate registrar certified that Dasrath had passed the AICM course. (citations omitted)

(A747).

Indeed, as Chief Judge Amon noted,

> [i]t is not even clear at all how the registrar could have certified that Dasrath passed the course. She certified the first application in March 2006, which is before Dasrath had completed or received a grade in the AICM course … That seems to be consistent with practice: students apply for the USMLE Step 1 exam while the final

13

> prerequisite course is in process on the assumption that they will pass that final course.

(A748).

Moreover, but for an error in Dasrath's application, March 2006 is the only time Ross University would have certified the application. (A748). The only reason Ross University certified the second application was because of an issue with Plaintiff's birth date on the first application. At the time of Plaintiff's second application dated May 5, 2006, Plaintiff was still enrolled at Ross University and the application reflected as such. (A176).

Simply stated, Ross University provides information on a student's application to take the exam that would reflect whether certain information on the application is accurate and whether, *at the time of the application*, the applicant is "officially enrolled" or "a graduate" of Ross University. (A296). At the time Dasrath applied for the USMLE Step 1 Exam, Dasrath was enrolled at Ross University. (A296). However, by the time the USMLE Step 1 Exam was administered, Dasrath was administratively withdrawn from Ross University as a result of his failing grade in the AICM course, and his failure to re-register for the failing class. (A295, A170).

Similarly, the Certificate of Completion is not evidence sufficient to create a triable issue of fact that Dasrath passed the AICM course. As held by Chief Judge Amon, the Certificate of Completion "as completed, states that Dasrath completed

14

twelve weeks in the AICM…The certificate says nothing at all about Dasrath's performance in the course." (A748). The Certificate says absolutely nothing of Dasrath's grade in the AICM course or whether Dasrath actually passed the AICM course. (A175-176).

The Certification of Completion is just that – a document certifying that the class was completed. (A603-604). Dasrath points to nothing in the record that would indicate that the Certificate indicated a passing grade in the AICM course, or that by later issuing a failing grade defendant would be breaching any contract with Dasrath. For these reasons, the District Court was correct in granting summary judgment to Ross University. Notably, Dasrath on this appeal seems to be abandoning his arguments concerning the evidence he contended below demonstrated that he passed the AICM course in favor of arguments not presented to the District Court and/or not relied on by Dasrath in presenting his argument to the District Court. Those arguments are addressed herein.

## POINT II

### ROSS UNIVERSITY DID NOT BREACH ANY CONTRACTUAL OBLIGATION REGARDING DASRATH'S ACADEMIC WITHDRAWAL

**A.**     **Ross University Followed Its Policies And Procedures When Administratively Withdrawing Dasrath For Failing To Remediate A Failing Grade In The AICM Class**

The Student Handbook provides that an administrative withdrawal is required when a student does not return to campus to register for the following

semester. (A295, A96). If a student fails a course, he or she must re-register for that course to remediate the failing grade or else the student is considered academically withdrawn from the university. (A293, A295). Dasrath was well aware of this requirement, as he had failed courses prior to his academic withdrawal and took those courses during the semester immediately following the issuance of the failing grade in order to remain enrolled in the university. (A349-351). It is undisputed that to remediate a failing grade one must re-take the course and failure to return to campus to re-register and take that course will result in academic withdrawal.

Dasrath failed the AICM course. Dasrath learned of and discussed his failing AICM grade with his professor on April 24, 2006. (A137, A294). He discussed the fact that he would need to re-register to take the AICM course that began in the semester commencing on May 22, 2006 to ameliorate the failing grade. (A294, A138). Dasrath never registered to take the AICM course either in May or the following September 2006 semester. (A294). As held by Chief Judge Amon, "[t]here is no evidence that [Dasrath] told anyone at Ross that he wanted to retake the AICM course in the academic term beginning September 2006." (A741). Instead Dasrath chose a course of action to challenge that failing grade in a court of law that resulted in the state court litigation commenced in July 2006 (which was dismissed) and ultimately the action commenced in the District Court

that has led to this appeal. (A613-631). Failing to return to campus to register to take the AICM course in the semester following his failure of the AICM course resulted in academic withdrawal in accordance with the Student Handbook. (A295, A96). As it is well-settled, when a university follows the procedures set forth in its student handbook, "no rational jury could find that the university acted in an arbitrary or irrational manner in dismissing [plaintiff]." *Babiker*, 2000 U.S. Dist. LEXIS 6921 at *3-*10.

### 1.    Dasrath Was Not Eligible For The 17-Week Break

Dasrath alleges that he could not have been considered academically withdrawn in June of 2006 since he was entitled to a 17-week scheduled break following the conclusion of the 2006 spring semester. In making this argument, Dasrath simply ignores the fact that by failing the AICM course, Dasrath was not eligible for a 17-week vacation break afforded to students in good standing who successfully complete the AICM course. (A298). Thus, it cannot be said that Ross University breached any agreement by issuing the academic withdrawal based on Dasrath's failure to return to campus and register to retake the AICM course commencing on May 22, 2006.

### 2.    Ross University's Administration Of Grades To Dasrath Via A Secure Website Known As "ECOLLEGE" Was Not Improper

Out of 1,000 possible points available for the AICM course, Dasrath achieved 426.6, which is a failing grade. (A293, A303-308). This grade was

posted on "eCollege" which is a secure website by which students can review their grades. (A294). As previously discussed, Dasrath acknowledged receiving this grade in an email to Dr. Fernandez dated April 22, 2006 wherein Dasrath responded to Dr. Fernandez' email alerting all students that the AICM course grades were posted on eCollege. (A137). Dr. Fernandez spoke with Dasrath via telephone and during that conference the failing grade was discussed as well as the fact that Dasrath needed to repeat the AICM course in the semester starting on May 22, 2006. (A294, A138). There is nothing in the record to suggest that issuance of the failing grade, and posting the failing grade via a secure website either violated any provisions of the Handbook, state or federal regulations, or amounted to a breach of any contract. *Owasso Indep. Sch. Dist. v. Falvo*, 534 U.S. 426, 433 (2002) (filing records on a secure database does not violate FERPA).

### 3.   Dasrath Was Not Eligible To Sit For The USMLE Step 1 Exam

Dasrath also alleges that he could not properly be academically withdrawn because the Student Handbook states that, to be considered enrolled, students must be either registered for courses or registered for boards. Dasrath's Brief pg. 37. Dasrath seems to be arguing that, while it is undisputed that Dasrath was not registered for courses at the time he was withdrawn on June 29, 2006, he was technically registered for "Boards."

As for "the Boards," Dasrath is undoubtedly referring to the "USMLE Step 1 Exam." As previously explained, the USMLE Step 1 Exam is the first of several exams required to be taken by foreign medical school students in order to practice medicine in the United States. (A295). As noted by Chief Judge Amon, it is undisputed that to be eligible to sit for the USMLE Step 1 Exam, a student is required to (among other prerequisites) take and successfully complete a prerequisite class known as Advanced Introduction to Clinical Medicine ("AICM") and be enrolled at the university. (A738).

Dasrath became ineligible to sit for the USMLE Step 1 Exam, however, when he received his failing grade in the AICM course and failed to return to campus to remediate the failed course. The eligibility requirement is evidenced by the Student Handbook:

> Students become eligible to take the USMLE Step 1 when they have passed all courses in the Basic Science Curriculum, successfully completed the Advanced [Introduction] to Clinical Medicine clerkship, and, passed the NBME Comprehensive Basic Sciences Exam.

(A86).

A failing grade was issued in the AICM course. Dasrath cannot and does not contend that he ever remediated the failing grade as required to remain enrolled at Ross University and to sit for the USMLE Step 1 Exam. As such, Dasrath's argument that because he was technically "registered" for the USMLE Step 1

19

Exam (an exam he was <u>not</u> eligible to sit for), the school could not consider him "academically withdrawn" is preposterous.[6]

Successful completion of the AICM course and enrollment at the university is a prerequisite to taking the USMLE Step 1 Exam. (A296-297). Despite these requirements, Dasrath sat for the exam anyway. The examining board, ECFMG, has determined that Dasrath engaged in "irregular behavior" in connection with his failure to notify ECFMG of a change in Dasrath's eligibility to take the USMLE Step 1 Exam and has barred Dasrath admission to all ECFMG administered examinations. (A632-634). As such, any claim that Dasrath's decision to improperly sit for the USMLE Step 1 exam is proof that Dasrath remained "enrolled" at Ross University, such that an administrative withdrawal was not warranted, is impossible.

### 4. Ross University Was Not Required To Re-Register Dasrath For The AICM Course

Dasrath's failure to return to campus and re-take the AICM course in May 2006, <u>or</u> <u>ever</u>, is not the responsibility of Ross University. Dasrath claims that, because he was in the "second phase of the M.D. program" he "did not have access to registration procedures" and Ross University was required to register him for his courses under the terms of the Student Handbook. Dasrath's Brief pg. 38. Dasrath

---

[6] Dasrath's circular argument that the fact that he sat for the USMLE is proof that he was not academically withdrawn is a bit like saying a person who enters an area designated "for authorized personnel only" must be authorized to be there or else he would not be there.

fails to mention, however, that the section of the Student Handbook that he cites only applies to students who "have successfully completed the AICM course, have passed the USMLE Step 1, have submitted documentation of their scores to the University Registrar…, and have received financial clearance from the University Bursar." (A91).

The clear language in the Handbook states "[c]ontinuing students in the Basic Sciences **must register in person** on campus at the beginning of each semester…" (A91) (emphasis added). After failing the AICM course Dasrath failed to return to campus to register for any coursework, reapply for admission after his academic withdrawal, and instead engaged in the legal battle herein which began with his lawsuit in the New York State Supreme Court, Queens County, just months after failing the AICM course.

### 5.      The Clinical Clerkship Evaluation Was Not Fabricated

Dasrath argues that the Clinical Clerkship Evaluation ("Evaluation") dated June 23, 2006 was fabricated. Dasrath's Brief pg. 39. This is nothing more than a repackaging of Dasrath's claim that his AICM grade was fabricated. As proof of this claim, Dasrath asserts that Dr. Fernandez "admitted that Dasrath was never enrolled in the Clinical Clerkship course." This is untrue. Dr. Fernandez testified that Dasrath was never "assigned to a **hospital** for clinical clerkship." (A152) (emphasis added). The course Dasrath failed was Advanced Introduction to

Clinical Medicine, not a clinical clerkship in a hospital. As to Dasrath's claims that Dr. Fernandez listed his office as the address on the Evaluation or that the Evaluation was turned in late, these claims (besides being inane) have absolutely no bearing on the validity of Dasrath's failing grade. As such, Dasrath's claims regarding the Clinical Clerkship Evaluation are without merit and certainly cannot form the basis of a breach of contract action against Ross University.

<u>**POINT III**</u>

<u>**ROSS UNIVERSITY DID NOT BREACH ANY CONTRACTUAL OBLIGATION REGARDING ANY REVIEW OF DASRATH'S GRADE IN THE AICM COURSE**</u>

Dasrath argues, for the first time on this appeal, that Ross University breached its contractual obligations by (1) failing to conduct a formal review of Dasrath's AICM grade and (2) informing Dasrath that he was entitled to a hearing regarding the review of his AICM grade. These claims are not only improperly raised on this appeal, they are completely devoid of merit. Dasrath's Appellate Brief pg. 15-16. The only claim properly before this Court is Dasrath's breach of contract claim stemming from his failure of the AICM course (the grade which Dasrath claims is "fabricated") which resulted in his administrative withdrawal.

**A.**     **Dasrath Improperly Raises Arguments Not Asserted**
            <u>**Before The District Court**</u>

It is a well-settled that "an appellate court will not consider an issue raised for the first time on appeal…Although [the Appellate Court] may exercise

discretion to consider waived arguments where necessary to avoid a manifest injustice, the circumstances normally do not militate in favor of an exercise of discretion to address new arguments on appeal where those arguments were available to the parties below and they proffer no reason for their failure to raise the arguments below." *In re Nortel Networks Corp. Secs. Litig.*, 539 F.3d 129, 132-133 (2d Cir. 2008) (internal quotations omitted); *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 114 (2d Cir. 2005); *R.R. Love, Ltd. v. TVT Music, Inc.*, 282 Fed. Appx. 91 (2d Cir. 2008) (citing *Patrolmen's Benevolent Ass'n of the City of N.Y. v. City of New York*, 310 F.3d 43, 51 n.5 (2d Cir. 2002)); *Baker v. Dorfman*, 239 F.3d 415, 423 (2d Cir. 2000) (holding that an argument raised for the first time on appeal is ordinarily waived).

As stated above, Dasrath's arguments regarding the alleged failure of Ross University to conduct a formal review of his AICM grade and his right to a hearing regarding such were not asserted in Dasrath's complaint. (A65). The only claim asserted by Dasrath in his complaint is a breach of contract claim. Specifically, the Amended Complaint alleges:

> 22. The Defendant was in breach of its contractual obligation to the Plaintiff in administratively withdrawing Plaintiff from its school of medicine without justification and in violation of its own academic rules and regulations.
>
> 23. The Defendant breached the contractual agreement when without any justification or valid reason withdrew its sponsorship for the USMLE exam after it had accepted

23

Plaintiff's application and duly certified Plaintiff to take said exam.

(A 65).

In addition, these claims were not raised in opposition to Ross University's motion for summary judgment. As such, these arguments should not be considered by this Court. *See Nortel*, 539 F.3d at 132-33; *Rivera v. Inc. Vill. of Farmingdale*, 06 CV 2613, 2011 U.S. Dist. LEXIS 34185, *20-21 (E.D.N.Y. March 30, 2011). More importantly, as noted by Chief Judge Amon, "Dasrath's contract claim, as he has explained it to the court, depends on his proving at trial that Ross fabricated his failing grade in the AICM course, and Dasrath has not offered evidence sufficient to create a triable issue of fact with respect to fabrication." Thus, the newly asserted failure to formally review Dasrath's grade as a basis for breach of contract in the AICM course is improperly raised on this appeal.

Regardless, even if these arguments were considered by this Court, they are without merit.

### 1. Dasrath Did Not Assert A Cause Of Action For Any Alleged Failure To Perform A Formal Review Of His Grade Or Provide Access To His Educational Records

Dasrath alleges that Ross University failed to perform a formal review of his grade despite Dasrath's request that a review be performed. According to Dasrath, the Student Handbook provides that a student "may ask the University to amend a record that they believe is inaccurate. They should write the University Registrar,

24

clearly identify the part of the record they want corrected, and specify why it is inaccurate." (A98).

Dasrath also states that a student has the right to inspect and review his education records. Appellant's Brief pgs. 8 and 35. Dasrath states that the Handbook provides that "[s]tudents should submit to the University Registrar a written request that identifies the records they wish to inspect. The registrar will make arrangements for access and notify the student of the time and place where the record may be inspected." (A98).

Notably, what Dasrath fails to explain is that these sections of the Student Handbook are located under the "STUDENT PRIVACY RIGHTS" section and simply list the guidelines of the Family Educational Rights and Privacy Act ("FERPA"), and state that Ross University follows these guidelines. (A98). Not only is there no mention of a FERPA claim in the Amended Complaint, FERPA does not provide a private cause of action. *See Raber v. Wilson-Coker*, 362 F.3d 190, 201 (2d Cir. 2004); (A61-62).

Regardless, even if these claims were permissible as a breach of contract claim and could be raised for the first time on appeal, they lack any merit, whatsoever. Dasrath has failed to submit any evidence indicating that he submitted a written request to the University Registrar disputing his grade or requesting access to his educational records. The parts of the record to which Dasrath cites in

support of this claim are (1) Dasrath's 56.1 Statement submitted with his summary judgment motion; (2) an email to Dr. Fernandez in which Dasrath questions his failing grade; (3) a letter to the University Registrar requesting a copy of Dasrath's transcript and a copy of the Student Handbook; (4) a page of Dasrath's Affidavit in Opposition to Ross University's motion for summary judgment and; (5) a page of Dasrath's Affidavit in further support of his motion for summary judgment.  (A42, A44, A137, A313, A688, A700).  These citations, however, in no way even suggest that Dasrath submitted a written request to the University Registrar for an amendment/correction of his grade or for an inspection of his educational record. As such, this claim fails as a matter of law as Dasrath failed to allege any contractual obligation breached by Ross University by way of these veiled FERPA claims.

### 2.   Dasrath Did Not Assert A Cause Of Action For Any Alleged Failures Regarding The Purported "Court Ordered" Review Of His Grade

Dasrath also alleges that Magistrate Judge Ramon Reyes *ordered* Ross University to review Dasrath's failing AICM grade.  See Dasrath's Brief pg. 36. Dasrath alleges that this review violated FERPA because Dasrath was not invited to that review and the resulting report failed to advise Dasrath of his right to a hearing regarding the requested amendment as required by the Student Handbook. See Dasrath's Brief pg. 36.  This claim fails for three reasons.

First, Dasrath fails to mention that this review was part of Magistrate Judge Reyes' attempt to negotiate a *settlement* between the parties, not the result of a formal written request of Dasrath or "order" as Dasrath attempts to mislead this court into believing. In fact, Dasrath points to no such "court order" because none exists. More importantly, it is wholly improper for Dasrath to try and use a settlement document (that is clearly labeled "FOR SETTLEMENT PURPOSES ONLY NOT TO BE USED IN LITIGATION") as a basis for reversing the District Court or creating additional, baseless causes of action. As such, the provisions of the Student Handbook cited by Dasrath have no bearing on Ross University's review of the AICM grade in connection with settlement discussions conducted under the auspices of a District Court Magistrate Judge. Finally, as stated in Point III A.1., *supra*, there is no private cause of action under FERPA. As such, this argument fails as a matter of law.

## POINT IV

### DASRATH'S CLAIM REGARDING DISCOVERY WAS NOT RAISED BEFORE THE DISTRICT COURT

**A.** **Dasrath Did Not Raise Any Discovery Issues With The Court Below**

Dasrath argues for the first time in his appellate brief that Ross University failed "to produce Mr. Dasrath's actual test papers" and that "[d]espite a follow up request for the test results in a formal demand…the test results were never produced for Mr. Dasrath's review." Dasrath's Brief at pg. 5 and 8. Aside from

the fact that this argument is nothing more than an extension of Dasrath's preposterous argument that (despite production of the items in the record at pages 303 through 308 evidencing the failing grade in the AICM course) Dasrath should be permitted to review additional items concerning his score in the AICM course; this is an argument that cannot be made in this appeal.

Dasrath never raised an alleged failure to produce documents before the District Court. There simply was no motion to compel or related discovery dispute. Dasrath did not mention any discovery failures in his summary judgment motion papers, or his opposition papers, or by way of a motion before the Magistrate Judge and, therefore, any claim regarding discovery is waived. Dasrath has never raised any issue regarding discovery in any of the motion papers (nor did the appealed decision address any purported discovery failures). In fact, the only time Dasrath mentioned any issue regarding Ross University's discovery prior to this appeal was in Dasrath's memorandum of law in further support of his motion for summary judgment (which Dasrath is not appealing). In that memorandum of law, Dasrath mentioned **in passing** that he "made a demand upon Ross' counsel for Dasrath's actual exams." Dasrath did not make any legal arguments regarding that discovery demand or seek any formal relief in connection with that assertion. As such, the issue was not passed on below and is essentially being raised for the first time on appeal. Therefore, this argument should not be considered by this Court.

**B.** **Dasrath Provides No Basis For His Claim Of Spoliation**

Dasrath dedicates eight pages of his appellate brief to cases regarding spoliation, destruction of evidence, and adverse inferences that can be drawn from such acts. Dasrath's Brief pg. 26-33. What Dasrath does not do, however, is actually allege that Ross University destroyed any documents. It is dishonest and improper for Dasrath to imply that Ross University should be punished or sanctioned for destruction of evidence when Dasrath has not actually alleged any spoliation by Ross University. Because Dasrath has never made any claims regarding spoliation until this appeal, and because the District Court has never ruled on such issues, this allegation is without merit.

## <u>CONCLUSION</u>

For the reasons stated herein and in the Decision of the District Court, Dasrath has not met his burden of demonstrating there are issues of fact that warrant the reversal of Chief Judge Amon's Decision and Order granting Ross University's motion for summary judgment.  As such, the Decision and Order of the District Court below should be affirmed in all respects.


Dated:          Garden City, NY
                January 4, 2012

                               Respectfully Submitted,

                               CULLEN AND DYKMAN LLP

                     By:    \s\ Jennifer A. McLaughlin
                            Jennifer A. McLaughlin (JM-5678)
                            100 Quentin Roosevelt Boulevard
                            Garden City, New York 11530
                            (516) 357-3700


Of Counsel: Jennifer A. McLaughlin
            Justin F. Capuano

## CERTIFICATE OF COMPLIANCE

I, Jennifer A. McLaughlin, attorney of record for Defendant-Appellee Ross University School of Medicine, do hereby certify that the foregoing brief complies with the type-volume limitation as set forth in FRAP 32(a)(7). The total number of words in the foregoing brief is 6,767.

\s\Jennifer A. McLaughlin
Jennifer A. McLaughlin